Law Offices of:
**Philip J. Berg, Esquire**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Identification  No. 09867
(610) 825-3134                                    *Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA LIBERI, et al,                          :
                                             :
                    Plaintiffs,              :
                                             :
        vs.                                  :   Case No.: 09-cv-01898-ECR
                                             :
ORLY TAITZ, et al,                           :
                                             :
                    Defendants.              :
                                             :

### PLAINTIFFS' RESPONSE TO THIS COURT'S RULES TO SHOW CAUSE ISSUED BY THE HONORABLE EDUARDO C. ROBRENO ON JUNE 25, 2009

Plaintiffs' Lisa Liberi [hereinafter "Liberi"]; Philip J. Berg, Esquire [hereinafter "Berg"], the Law Offices of Philip J. Berg; Evelyn Adams a/k/a Momma E [hereinafter "Adams"]; Lisa Ostella [hereinafter "Ostella"]; and Go Excel Global by and through their undersigned counsel, Philip J. Berg, Esquire, hereby files the within Response to this Honorable Court's Rules to Show Cause as to why the case should not be dismissed for lack of personal jurisdiction over the Defendants; why the case should not be severed into three [3] or fewer cases; and why this case should not be transferred to Texas or California, in support thereof, Plaintiffs' aver as follows.

## I.    FACTUAL ALLEGATIONS

As better explained in Plaintiffs' Complaint, Plaintiffs' hereby incorporate their Complaint as if fully set forth herein.  Orly Taitz, et al through her company, DOFF threatened

Berg to take him down and to do so she would destroy his paralegal, Liberi, and get rid of her and anyone associated with Berg.

Adams donated her time to Berg and his law firm to handle his entire fundraising. Taitz then invaded the privacy of Liberi and published publicly Liberi's full Social Security number, date of birth, mother's maiden name, place of birth and other personal confidential information. Defendants Neil Sankey [hereinafter "Sankey"]; Sankey Investigations, Inc. [hereinafter "Sankey Investigations"]; the Sankey Firm, Inc. a/k/a the Sankey Firm [hereinafter "Sankey Firm"] joined forces with Taitz from the beginning to carry out Taitz threats and are the parties who, amongst other things, furnished Liberi's full Social Security number to Taitz. Defendants Edgar Hale, Caren Hale, Plains Radio, KPRN AM 1610 [hereinafter "the Hales"] joined forces with Taitz to carry out her threats against Berg, his staff and associates, by the Hales own admissions in or about February 2009; Linda Sue Belcher, et al [hereinafter "Belcher"] joined forces with Taitz in January 2009 to carry out her destructive behaviors against Liberi and assist Taitz in her destruction of Berg, Liberi, and all their associates. Taitz, by her own admission, sent Liberi's full Social Security number, date of birth and other private, confidential and personal identifying information, in her document called "Dossier #6", see **EXHIBIT "1"** and the Verification of Lisa Liberi attached as **EXHIBIT "2"** to over one hundred forty thousand [140,000] individuals and business, including internationally. Taitz through DOFF continued her nasty, illegal and malicious behaviors and was publicly posting things on the internet on her own website about Liberi on average every three [3] days, see **EXHIBITS "3" through "22"**, see the Affidavit of Matt Harris attached as **EXHIBIT "23"**; Affidavit of Mark McGrew attached as **EXHIBIT "24"**; and Affidavit of Donald R. and Patricia E. Turnbough as **EXHIBIT "25"**.

Taitz through DOFF and Sankey through Sankey Investigations and the Sankey Firm have invaded the privacy of Liberi, Ostella, and Adams by publicizing Liberi's full Social Security number, date of birth, mother's maiden name, place of birth and other personal information of Liberi's, including information about Liberi's medical conditions, child, husband, etc. and has targeted all the work Liberi has performed for Berg in Pennsylvania. Taitz through DOFF has also publicized Ostella's name, address, maiden name, where her family resides, parents names and where they reside, etc. and Taitz has also published Adams name, address, husband's information, etc. Taitz filed false law enforcement reports with the Federal Bureau of Investigations (FBI); police departments; called for people where the Plaintiffs' reside; falsely accused Liberi and Ostella of "hacking" her paypal account and website or forum; falsely accused Adams and Berg of diverting funds and making money off of her company name; falsely accused Liberi of "murdering" her sister; falsely accused Liberi's husband of diverting funds from Berg; falsely accused Liberi of being convicted of crimes including but not limited to identity theft, manipulation of police reports, manipulation of credit reports, real estate crimes, etc., which has placed the Plaintiffs' in the false light before the publics eye; slandering the Plaintiffs'; harassed the Plaintiffs; invaded the Plaintiffs' seclusion; publicly disclosed private facts about the Plaintiffs'; destroyed the Plaintiffs' reputation; and interfered with the Plaintiffs' business associates, etc.

Shortly thereafter, the Hales had Taitz through DOFF and Sankey through Sankey Investigations and the Sankey Firm on their radio show. Taitz continued her malicious lies about Plaintiffs' and Sankey continued his distribution of Liberi's private confidential information as well as Adams and Ostella's. In fact, Sankey and Hale announced on the radio show on May 28, 2009 that Liberi had recently taken out a loan, which she had. The only way they would have

known this is if they had illegally accessed Liberi's credit report or applied for and taken out credit in Liberi's name.  Sankey, Taitz and Hale then altered and forged Ostella's emails and published them on the internet.  Edgar Hale admitted in an email to Liberi that Taitz used him to assault Liberi to get to Phil, see **EXHIBIT "26"**.  The Hales also have viciously attacked, slandered, harassed and threatened Adams.  See Adams Affidavit attached as **EXHIBIT "27"**.

Belcher joined forces with Taitz in or about January 2009 in their attempts to destroy Berg and Liberi. See **EXHIBIT "28"** – Affidavit of Lisa Ostella.  Belcher sent out mass emails with all kinds of false statements about Liberi and Berg.  Belcher filed false reports with the Social Security Administration, manufactured emails and "chat logs" which she had filed with this Court; and further published Liberi's private confidential information.  See **EXHIBITS "29" through "39"**.

As a result, Plaintiffs' filed suit on May 4, 2009 of which all Defendants were served. The Defendants' Answers to the Plaintiffs' Complaint were due May 26, 2009.  Taitz and DOFF failed to timely Answer Plaintiffs' Complaint and therefore, default was entered against them, and they waived their rights to raise any type of affirmative defenses.  Despite this, Taitz and DOFF untimely filed a one sentence denial as their Answer and a "Motion to Dismiss" without any type of supporting law.

Plaintiffs' have attempted to obtain an emergency Injunction or Restraining Order to stop the Defendants' actions, however, to date have been unsuccessful.  The first hearing set in these matters was June 25, 2009.  After this Court date, the Hale Defendants and Belcher began threatening Plaintiffs' witnesses.  On June 27, 2009, Taitz through DOFF posted further libel about Liberi, false insinuating Liberi "murdered" her own sister.  See **EXHIBIT "22";** Affidavit

of Shirley Waddell attached as **EXHIBIT "40";** Affidavits of K. Strebel attached as **EXHIBITS "41" through "43".**

The second hearing regarding Protective Orders was August 7, 2009, wherein again this Court denied Plaintiffs' requests regarding protection of their witnesses being threatened and the fact Taitz through DOFF defied this Court's warnings and Orders regarding Liberi's Social Security number and other private personal information. Less then two [2] weeks later, Defendant Edgar Hale sent death threats to Plaintiffs' witnesses. See **EXHIBIT "44".** Of course, further reports have been made with the appropriate Federal Bureau of Investigations (FBI) offices.

Plaintiffs' would have been able to supply further Affidavits in support of their position, however, were deprived their right to do so as the Hale Defendants and Belcher had threatened, on more than one occasion, all of Plaintiffs' witnesses and many of the Plaintiffs' witnesses were too scared to supply Affidavits without a Protective Order from this Court. See **EXHIBITS "45" through "48".**

As this Court can see from all the attached Exhibits, the Defendants clearly targeted Philip J. Berg, his Law practice, his paralegal and their associates and volunteers in Pennsylvania.

## II.  THIS COURT HAS PERSONAL JURISDICTION OVER ALL THE DEFENDANTS NAMED HEREIN:

This Court has personal jurisdiction over the Defendants' as outlined below. In addition, since this Court Ordered Plaintiffs' to respond to this Court's Rules to Show Cause regarding the Jurisdictional issues and back up their responses with Affidavits; and the fact Defendant's Belcher and Hale have now threatened any witness who provide an Affidavit for the

Plaintiffs', this Court clearly has jurisdiction as the Defendants' have targeted the Plaintiffs' in Pennsylvania; any witnesses planning to supply an Affidavit or testify on behalf of Plaintiffs' in Pennsylvania; and this case is currently in Pennsylvania; in attempts to ensure Plaintiffs' are unable to comply with this Court's Order that Plaintiffs' are to respond to this Court's Rules to Show Cause due August 26, 2009.

### A.  This Court has Personal Jurisdiction over Taitz and DOFF:

Taitz cannot say she does not have any connections to this forum or that this forum does not have personal jurisdiction over her and DOFF.  First, Taitz and DOFF waived their right to raise the issue of personal jurisdiction as they failed to timely respond to Plaintiffs' Complaint and did not assert any objection of personal jurisdiction in a timely manner, see _Myers v. American Dental Ass'n_, 695 F.2d 716, 720 (3d Cir. 1982) (lack of personal jurisdiction waived because defendant did not include defense in motion to dismiss for improper venue; citing Moore's).  _Great Prize, S.A. v. Mariner Shipping Party, Ltd_., 967 F.2d 157, 159 n. 5 (5th Cir. 1992) (lack of personal jurisdiction may be waived under Fed. R. Civ. P. 12(b)(2), (h)(1)); _Swaim v. Moltan Co_., 73 F.3d 711, 718 (7th Cir. 1996) ("A defense of lack of [personal] jurisdiction is forfeited if not asserted in a timely motion to dismiss under Rule 12 or a responsive pleading or amendment of such as provided by Rule 15.").  Next, Taitz through DOFF has four [4] Plaintiffs whom she represents located within this Court's jurisdiction by her own admissions as posted by Taitz on the DOFF website[1] and [2] which proves she is conducting business in Pennsylvania and within this Court's jurisdiction, see **EXHIBIT "49"**, Taitz Pennsylvania clients include but are not limited to Charles Crusemire, James N. Glunt, Arthur J. Olscszewski, and Wayne Eugene Keller.  Additionally, Taitz through DOFF works with and has

---

[1] http://www.orlytaitzesq.com/blog1/?m=20090426
[2] http://www.orlytaitzesq.com/blog1/?p=332

obtained money from three [3] individuals within this Court's jurisdiction, names of which will be provided to this Court under seal due to confidentially of the individuals.  More importantly, Taitz through DOFF 'purposefully directed their illegal activities at residents of this forum, the Law Offices of Philip J. Berg; Philip J. Berg, Esquire, his paralegal, Liberi, etc. and this litigation results from alleged injuries that have "arisen out of and are related to" Taitz and DOFF's activities, which are detailed in Plaintiffs' Complaint.

Moreover, Taitz through DOFF is calling for a recall of United States Senator of Pennsylvania, Arlen Specter for the Commonwealth of Pennsylvania with an Office in Philadelphia.   See **EXHIBIT "50"**.  Taitz through DOFF states at her DOFF website http://www.orlytaitzesq.com/blog1/?p=450:

> "If you are a citizen of Pennsylvania and would like to run a recall campaign, please call me 949-683-5411.  Any citizens of Pennsylvania, who would like to recall  Arlen-Arnold, please put your name and contact info, so we can run a recall thread."

Taitz through DOFF has already obtained at least one participant, according to her website at http://www.orlytaitzesq.com/blog1/?p=450, see below:

> *"FedUp* says:
> April 29, 2009 at 8:54 am
>
> I WANT TO RECALL SPECTER. I voted for him and now he needs to go!!! Let me know what we need to do to get him OUT!"

Thus, Taitz through DOFF is currently and actively working within this Court's Jurisdiction as well as soliciting business within this Court's jurisdiction.  Also, I must mention the fact, Taitz has sent her emails, Dossier #6, postings and writings to her followers and worker's which gave rise to the within action.

As better explained above, May 31, 2009, Taitz through her company, DOFF posted under the header of "***I am trying to stay away from Liberi-Berg issue, but I got more questions***

*and here is more info*"[3].  With Taitz post, she falsified information and the emails put on her website by her and Defendant Neil Sankey are altered, forged and illegally created emails illegally using Plaintiff Ostella's email address.  See **EXHIBIT "28".**

Taitz also went after Adams falsely accusing her of financial gain from her (Taitz) "hi-jacked" website.  Taitz stated that Adams resided in California and her husband was JD.  Taitz called for her supporters to dig into Adams past and find everywhere Adams resided; Adams voting records; Adams associations; any criminal records of Adams; and any information on her husband.

Taitz through DOFF went after Ostella and falsely accused Ostella of "hacking" her PayPal account; "hi-jacking" her website; deterring donations from her (Taitz); sending out emails attempting to collect donations in Taitz company name; filed false law enforcement reports against Ostella; called for her (Taitz) supporters to contact the West Brunswick Police Department and file complaints against Ostella; called for the kidnapping of Ostella's children; stated Liberi and Ostella were the same person, etc., all the time knowing this information was false.

It is obvious as pointed out in the attached Exhibits statement by Taitz and DOFF were clearly directed at the Plaintiffs within Pennsylvania and within Montgomery County and further substantiates Plaintiffs' argument that this State and this Court are in fact the proper forum and this Court has personal jurisdiction over Taitz and DOFF.

This very Court maintains both General and Specific Jurisdiction over Taitz and DOFF as Taitz through her Company DOFF has four [4] clients within this Court's Jurisdiction as well as their continued efforts seeking to recall Arlen Specter, A United States Senator for Pennsylvania

---

[3] http://www.orlytaitzesq.com/blog1/?p=1843

with an office address in Philadelphia, which satisfies the "systematic and continuous" contacts within this forum.  In Addition, this Court also have Specific Jurisdiction over Taitz and DOFF as Plaintiffs' causes of actions relate to Taitz and DOFF's electronic communications with a group in this forum and Taitz and DOFF have purposely directed to this forum State injuries to Plaintiffs' within this Court's forum which Plaintiffs' cause of actions are based.

With our new Internet Cyber Space abilities, the Internet also confers jurisdiction upon this Court and in this forum.  Whether jurisdiction is proper in cases involving the Internet "depends on where on a sliding scale of commercial interactivity the web site falls." *Id.*  Where a Defendant is "clearly doing business through its web site in the forum state, and where the claim relates to or arises out of use of the web site, the *Zippo* Court held that personal jurisdiction exists." *Id.  Zippo Manufacturing. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 at 1124 (W.D. Pa. 1997).  To make this determination, the <u>*Zippo*</u> Court focused on whether the interactivity of a commercial web site reflects "purposeful availment" or intended interaction with residents of the forum state. *See id.* (citation omitted).  Purposeful availment is demonstrated when a defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." <u>*Toys "R" Us, Inc. v. Step Two, S.A.*</u>, 318 F.3d 446, 451 (3d Cir. N.J. 2003) at 453 (citation omitted).

Moreover, Taitz and DOFF sends and receives emails, Taitz prepares documents which she places on her website at <u>www.orlytaitzesq.com</u>, instructs her clientele in Pennsylvania to communicate with her via email, she accepts and solicits money from Pennsylvania, she has a post on her website directed at Pennsylvania residents with instructions for Pennsylvania residents in the Philadelphia area interested in being her clients and/or interested in seeking to

have U.S. Senator of Pennsylvania Arlen Specter recalled to immediately contact her, she has made vile threats to the Plaintiffs' through the internet, posted on her website, through emails, etc.  All of Taitz through DOFF's Pennsylvania military clients contacted Taitz through their website, www.orlytaitzesq.com which is on the internet and were instructed to download the Plaintiff forms, fill them out and return them to her.  Moreover, she currently has a post, which Taitz posted on her website[4] May 25, 2009 to her Clients which states:

>  ### "Reminder for members of the military
>
>  Members of the military, please don't forget to send your 138 Grievances addressed to Captain Crawford, legal counsel to Admiral Malin, Chairman of the Joint Chiefs of Staff, whereby you are demanding verification of eligibility of Obama for the position of the Commander in Chief. Please note Obama's refusal to unseal all vital records and the fact that he provided only a computer image of COLB with obliterated number, which makes it invalid.
>
>  Please mail me the copies of your 138s.
>
>  Orly"

June 10, 2009 Orly Taitz through DOFF posted on her website that she has made plans to be in Pennsylvania on June 25, 2009 to meet with PUMA and elected and appointed officials in New York, New Jersey and Pennsylvania.  See her post below[5]:

<u>Dr. Orly Taitz Esquire</u>

Defend Our Freedoms Foundation 26302 La Paz ste 211, Mission Viejo CA 92691 Copyright 2009

« <u>Update MO</u>

### Update NY, NJ, PA

tentative plans to meet with members of PUMA and elected and appointed officials in NY June 26.

---

[4] http://www.orlytaitzesq.com/blog1/?p=1568

[5] http://www.orlytaitzesq.com/blog1/?p=2125

Volunteer patriot in charge is Mark. Contact him mwestmann13@gmail.com

We are considering meeting in NJ on the 24th, and PA 25th. contact me at
dr_taitz@yahoo.com let me know if you can assist with those. Please put the name of
the state in the heading of the e-mail in big letters, so I can go straight to it

This entry was posted on Wednesday, June 10th, 2009 at 12:59 am and is filed under Uncategorized. You
can follow any responses to this entry through the RSS 2.0 feed. You can leave a response, or trackback
from your own site.

All of the criteria outlined in *Toys "R" Us, Inc. v. Step Two, S.A*., 318 F.3d 446, 451 (3d

Cir. N.J. 2003) *(citing Zippo Manufacturing. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 at

1124 (W.D. Pa. 1997) have been met and undoubtedly this Court has jurisdiction over Taitz and

DOFF and this Court is the proper forum for this action.

### B.     This Court has Personal Jurisdiction over Belcher:

Belcher cannot say she does not have any connections to this forum, or that this forum

does not have any jurisdiction over her.

Belcher called Berg and asked him if he had been following the questions raised

regarding President Obama's citizenship status.  Belcher told Berg he was the only attorney she

knew brave enough to follow through with any type of action against President Obama.  Belcher

claimed and posted all over the Internet world that she had known and worked with Berg for

over ten (10) years.  Belcher also contacted Liberi many times pushing for the filing of the

lawsuit against President Obama.

Berg filed the first action questioning President Obama's citizenship and Constitutional

eligibility/qualifications to hold the Office of President of the United States.  Shortly thereafter,

Belcher posted and claimed she did the research involved with the filing of Berg's lawsuit

against President Obama.  Belcher stated she was on the phone with Liberi when Liberi was

drafting the lawsuit on behalf of Berg for filing, which was true; said lawsuit was filed August

21, 2008.

Belcher recommended her friend, Geoff Staples to set-up and webmaster Berg's website, obamacrimes.com.  Next, Belcher contacted Berg and offered to moderate Berg's Pennsylvania website blog area.  Berg accepted Belcher's offer and Belcher represented the Law Offices of Philip J. Berg on the website and blog area while moderating the site on Berg's behalf.  In all events, Belcher happily availed herself to the Eastern District of Pennsylvania.

Problems began developing with Belcher and Berg's website blog area.  Belcher was verbally attacking those who mentioned President Bush; who didn't agree with her on the issues; and in one case even threatened one of Berg's supporter's.  The entire time, representing the Law Offices of Philip J. Berg.

Liberi would talk to Belcher in attempts to calm her down and put a stop to the inappropriate behaviors.  Belcher's behaviors would stop for a while, however, then began again wherein Belcher was accusing another website and other individuals of illegally "hacking" Berg's website and blog.  In or about the end of January 2009, Belcher began causing the webmasters and administrators problems with Berg's website.  Belcher was warned to calm down numerous times, however failed to comply.  Belcher felt she was in charge of Berg's website and sent e-mails to the website moderators deterring anyone from contacting Berg, Berg's assistant or the webmaster.  Belcher even stated she was in charge.  As a result, Belcher's moderator status was removed.  However, she was still capable of posting on the blogs at obamacrimes.com.

Steve Eddy in Sacramento, California who was banned from Berg's website by Belcher obtained a copy of a sealed case Berg had filed against President Obama and posted it on the internet.  Belcher called Steve Eddy stating she was calling from the Law Offices of Philip J.

Berg and left Mr. Eddy a message.   Belcher was attempting to ask Mr. Eddy to remove the posting of the Sealed Case.

Belcher began posting on Berg's blog that individuals who were assisting with Berg's website were hacking Berg's website.   Belcher even posted on the blog a third party blog called Politijab had hacked Berg's site.   All of this was unfounded and untrue.

In or about January 2009, Belcher joined teams with Taitz, Sankey and the Hale Defendants.   Belcher assisted the other Defendants in destroying Berg, Liberi, Adams and Ostella.   In fact, Belcher is who started the false rumor that Liberi was stealing Twelve Thousand [$12,000.00] Dollars per month from Berg to pay restitution, all the time knowing her statements were false.   Belcher was the first to send out the unverified and inaccurate article regarding a Lisa Liberi claiming it to be Berg's assistant, Plaintiff Liberi herein.   In fact, Sarah Redd as noted on Sankey's email as "Sarah redacted" is Linda Belcher's friend and obtained the information sent to Sankey from Linda Belcher.

In or about the end of February 2009, Belcher called Berg's assistant and asked her to attend a conference call.   Berg's assistant, Lisa, told Belcher she was not available to call Berg.   Belcher called Berg and called Lisa back excited that Berg had agreed.   During the conference call, Berg gave out his e-mail address and told folks with questions they could e-mail him.   Berg hung up the call.   One individual mentioned he had some important material to send to Berg, Belcher immediately stated, "send the e-mail to me at newwomensparty@aol.com and I will make sure Berg gets it.   Belcher told the caller not to send it to Berg's e-mail address."   Berg never received the e-mail.

On or about March 4, 2009, Belcher began calling all the webmasters, moderators and past volunteers of Berg's website telling them that Lisa, Berg's assistant was a liar, she was deleting Berg's e-mails and phone messages, no one could reach Berg and slandering Berg's assistant, she was hostile with some and harassing others.  Berg and his staff received numerous complaints regarding Belcher's unacceptable behaviors.  Berg's assistant stated she would quit, as the false rumors of Belcher's were not helping the cause.  Berg cut all ties with Belcher at that time.

On or about March 6, 2009, Belcher continued her unacceptable behaviors, badmouthing Liberi, Berg's Assistant, badmouthing and slandering Berg, harassing people from Berg's blog, etc.  Belcher made derogatory remarks about Berg and Liberi, on Berg's website blog.

On March 7, 2009, Belcher called the office and left a message for Berg stating, "Lisa is sending vial things out about me, she is bad mouthing me, she is deleting my e-mail to you and she sent me e-mails admitting it," knowing the entire time these were all lies and fabricated stories.  Belcher was referring to Liberi, Berg's Assistant as all of her above emails pertains too.

Belcher called Berg and told him Liberi had a criminal record and was stealing Twelve Thousand [$12,000.00] Dollars per month from Berg's PayPal account and was sending "vial" things around the internet about Belcher.  Belcher went on further stating Liberi had a criminal record going all the way back to the 1990's, all of which Belcher knew was false.  Berg told Belcher to send him an e-mail with all these e-mails attached.  Berg then called Liberi and asked for the same thing.  Liberi sent Berg thirty-seven [37] pages.  Belcher sent nothing.

As time went on, Berg sent e-mails to Belcher asking for her list.  Berg finally received another nasty e-mail about Liberi stating Liberi didn't like what Belcher had sent on Thursday so

Liberi deleted it. Berg asked Belcher numerous times to resend the "supposed" e-mail, Berg never received anything. Instead, Belcher blocked Berg's e-mail address.

Belcher sent the same accusations outlined above via e-mail to Defendants Neil Sankey; The Sankey Firm and Sankey Investigations, Inc. Instead of investigating the information Sankey e-mailed the information along with Liberi's Social Security number, date of birth and where she lived to a Reporter at World Net Daily and to Defendant Orly Taitz, et al.

Belcher's behaviors continued and she then began contacting moderators on Berg's website blog. Belcher was attempting to lure all of Berg's moderators over to her new website. Belcher was also attempting to steal Berg's supporters. It was later discovered Belcher was in fact the individual with an extensive criminal record dating back to 1992 through 2007 for Theft, Fraud, and Fraud by Check, etc., according to the Texas Department of Public Safety and according to a criminal background check run on her by her Social Security number.

Belcher was served with Plaintiffs' Complaint in the evening of May 5, 2009. After being served, Belcher continued her falsified, slanderous, libel behaviors. However, now she has taken it even further.

On or about May 21, 2009, Belcher appeared on Defendants, Edgar and Caren Hale's radio show, Defendant Plains Radio at www.plainsradio.com. Belcher and Defendant Edgar Hale, knowing Liberi suffers from severe heart problems stated they would make Liberi have a heart attack, Belcher stated, "it will be like the show Sanford and Sons and like Redd Foxx, Liberi is going to grab her chest and yell, it's the "big one" somebody, talking about Liberi, who has heart trouble is going to be grabbing her chest. Defendant, Edgar Hale then states it will be funny. Belcher is and was well aware Liberi has severe heart problems

Since Belcher has been served she has continued posting nasty falsified statements regarding Berg and Liberi.  Belcher has continued falsely claiming because suit was filed against her, Berg and Liberi have defamed her, slandered her, etc., knowing the entire time her statements were falsified.   In fact, Belcher did a long post on her website at www.obamacitizenshipdebate.org attempting to claim the event's Liberi had been through in her life and the reasons Liberi was issued a new Social Security number and a confidential address was Belcher's life.  In other words, Belcher is attempting to incorporate Liberi's life as her own life.

On or about May 27, 2009, Belcher was on Defendants, Edgar and Caren Hale and Plains radio blog at www.plainsradio.com.  Linda made the following statements directed at Berg and Liberi.  All of Belcher's comments were directed to Berg and Liberi in Pennsylvania to ensure damage to Berg and Liberi in Pennsylvania and to ensure damage to the Law Offices of Philip J. Berg, a Pennsylvania business, as well as Berg's common-law wife (Carol) in Pennsylvania.

lindastarr: look this is Phil & Lisa's standard bs to try to intimidate us
lindastarr: they can't shut me up
lindastarr: nope but trust me, he will wish he had
lindastarr: by the time this is finally over, he will go to bed every night of his life wishing he never filed this case
lindastarr: Carol is going to find out about some interesting dirt Lisa told me
lindastarr: of course, it's possible it isn't true if Phil wants to denounce her as a lair
lindastarr: liar
lindastarr: but in order to have peace at home, he will have to say she's a lair
lindastarr: and he might have to answer some questions to the bar ethics panel\stop it
lindastarr: oh I can do that on the Internet where the Whole World will find out Details
lindastarr: gee you think we are stirring up some toruble?
lindastarr: trouble

Postings by Belcher on May 28, 2009 on Defendants, Edgar and Caren Hale and Plains Radio website/blog at www.plainsradio.com.  All of Belcher's comments were directed to Berg

and Liberi in Pennsylvania to ensure damage to Berg and Liberi in Pennsylvania and to ensure

damage to the Law Offices of Philip J. Berg, a Pennsylvania company.

lindastarr: Oh I am going to make people wish they had stood up with me for the side of truth and justice
lindastarr: et me tell you wht, they were Stupid to file against me
lindastarr: I can bury them in ocurt
lindastarr: which is why they had to try to discredit me
lindastarr: we aren't obliged to file in Pa
lindastarr: he's got a cse pending right now I'm told defending Lisa for another one of "identity thet" cases
lindastarr: he's playing with fire
lindastarr: he has one day to withdraw all of this suit
lindastarr: believe me, he doesn't want me to start dishing on the worst dirt I know
lindastarr: Phil is going to end up wishing he had never started this mess
lindastarr: my cell phone is bugged
lindastarr: gee I wonder who would do such a despicable and illegal thing?
lindastarr: good I want them to know they are caught
lindastarr: it's an illegal bugging
lindastarr: which means someone must believe they will get a pardon if caught, Gee, I ownder who would do that?
lindastarr: I did
lindastarr: we are tracking it back to them
lindastarr: somebody call Momma E and be sure to let Phil know what a great paralegal Lisa is
lindastarr: already got it gong
lindastarr: and Phil acknowledged they were going to represent me
lindastarr: in an email where he attempted to extort me into silence
lindastarr: about Lisa's past
lindastarr: I have decided it's war baby
lindastarr: they ahve done pissed off the wrong person
lindastarr: oh no, i'm not going to be careful
lindastarr: let them see what a real war is all about
lindastarr: oh no you don't know me
lindastarr: I carry grudges for a Loooonnnngggg time
lindastarr: now they are bugging my phone?
**lindastarr: they come here to this redneck town they are going to be sent home**
**lindastarr: maybe in pieces**
lindastarr: Hey Ed when I get fired up, I'm very dangerous
lindastarr: I hope Momma e's spies are having fits and telling Phil & Lisa who are having coronaries right about now
lindastarr: Oh I am going to make people wish they had stood up with me for the side of truth and justice

It should be noted, Liberi has **<u>NEVER</u>** been charged with or convicted of Identity theft,

and Berg has never represented Liberi in any action prior to this one.  Furthermore, the "bugged"

cell phone is completely ridiculous and the accusations Belcher is inferring that Liberi is "bugging" her cell phone is a completely made up falsification and lie as well as her other statements herein.

Moreover, Belcher has continued her inferred threats directed at Berg and Liberi in Pennsylvania to ensure damage to Berg, the Law Offices of Philip J. Berg, his pending cases regarding President Obama, his paralegal Liberi and to ensure the damage has been caused in the Commonwealth of Pennsylvania.

May 28, 2009 Belcher posted on her website[6] the following:

**"Today is Lisa Liberi's 44th birthday!"**

"We want to be sure she knows how we all feel about her.  We want to be sure she knows we all send very special birthday wishes to her, especially those of us who *Lisa personally banned* (after repeatedly claiming she didn't know how to do anything techie)...like the moderators and supporters (basically anyone who learned the truth about her criminal past), people who Phil is now claiming I "stole".  I want to ask a silly little question that has really perplexed me since this suit was served to someone else at my home. Is it even possible to "steal" people over the Internet?  Since I was a volunteer, we didn't have any sort of signed contract, or even a verbal non-compete agreement..."

**COMMENTS:**

Linda Starr replied to comment from Constitutionalist | May 28, 2009 2:44 PM | Reply
"Yes, they are! I have it on good authority that there is a surprise Lisa may be getting, however, it might be delayed a few days.
On second thought, it will be a surprise, but probaby not a happy one for any of the plaintiff's, though it will definitely be a huge shock to Phil. "

Belcher subjected herself to the Eastern District of Pennsylvania, this Court's jurisdiction when she agreed to donate her time and work for a Pennsylvania law firm, Plaintiff, the Law Offices of Philip J. Berg and moderate the firm's Pennsylvania website.  Moreover, Belcher made sure she was subjected to the Jurisdiction of this Court by directing her actions towards the Plaintiffs, Berg, The Law Offices of Philip J. Berg and Liberi located in this Court's jurisdiction

---

[6] http://obamacitizenshipdebate.org/2009/05/may-28th-happy-birthday.html

and other parties who donated their time and worked for Berg's Pennsylvania Law Firm, Plaintiff, the Law Offices of Philip J. Berg.  Belcher sent out mass emailing stating Berg did not have any integrity, he was only involved in cases for the money; Liberi was a liar; Liberi deleted all emails from Berg's email account that she did not want him to see; Liberi deleted all phone messages she did not want Berg to receive; Belcher put out an address she wanted others to believe was Liberi's; Belcher filed false reports with the social security office; Belcher sent out false statements that Liberi was not a paralegal; Belcher publicized private facts  involving Berg and Liberi, which did not have any bearing in the publics eye in order to harass, humiliate and embarrass Liberi and Berg; Belcher slandered Adams and Ostella, calling them frauds, liars, etc.

As reflected in the attached Exhibits, it is obvious Belcher's libel postings, slanderous statements and threats were clearly directed at the Plaintiffs, Berg, Liberi and the Law Offices of Philip J. Berg and volunteers and associates of Berg's his law practice and Liberi within Pennsylvania and within Montgomery County and further substantiates Plaintiffs' argument that this State and this Court are in fact the proper forum and this Court has personal jurisdiction over Belcher.

Moreover, as pointed out in the attached Exhibits, Belcher's activities in threatening the Plaintiffs' witnesses, exposing the identity and location of one of Berg's witnesses in another case; sending slanderous and false emails out about Liberi and Berg; and her illegal activities in manufacturing evidence which was filed in this very Court, she has subjected herself to this Court's jurisdiction and this Court has personal jurisdiction over her.

This very Court maintains both General and Specific Jurisdiction over Belcher as she subjected herself to this Court's jurisdiction by donating her time and working for a Pennsylvania Company located in Montgomery County, of which her illegal activities stem

from.  Moreover, all of Belcher's illegal and outrageous conducts have affected the Plaintiffs' within this Court Jurisdiction.  Moreover, Belcher continues to this date, her outrageous and illegal behaviors that satisfy the "systematic and continuous" contacts within this forum.  In Addition, this Court also has Specific Jurisdiction over Belcher as Plaintiffs' causes of actions relate to Belcher's electronic communications with a group in this forum and Belcher has purposely directed to this forum State injuries to Plaintiffs' within this Court's forum which Plaintiffs' cause of actions are based.

With our new Internet Cyber Space abilities, the Internet also confers jurisdiction upon this Court and in this forum.  As can be seen by the attached Exhibits, Belcher used her website to further damage the within Plaintiffs.  All of the criteria outlined in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. N.J. 2003), *(citing Zippo Manufacturing. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 at 1124 (W.D. Pa. 1997), have been met and undoubtedly this Court has jurisdiction over Belcher and this Court is the proper forum for this action.

### C.    This Court has Personal Jurisdiction over Sankey, Sankey Investigations and the Sankey Firm:

Sankey through Sankey Investigations and the Sankey Firm were working with and for Taitz in Taitz's attempt to bring Berg down and destroy his paralegal, Liberi, to get rid of her. Sankey through Sankey Investigations and the Sankey Firm cannot say the forum of this Court is inconvenient or that they do not have any connections to this forum, or that this forum does not have any jurisdiction over them.  Sankey through Sankey Investigations and the Sankey Firm subjected themselves to the Eastern District of Pennsylvania, this Court's jurisdiction by directing their actions towards the Plaintiffs' and other parties who donated their time and worked for Berg's Pennsylvania Law Firm.

Sankey through Sankey Investigations and the Sankey Firm altered an unverified document found on the internet. See **EXHIBIT "51".** Sankey through Sankey Investigations and the Sankey Firm stated that Liberi had a criminal record going back to the 1990's to place her in a false light before the public's eye. Sankey through Sankey Investigations and the Sankey Firm also sent Liberi's full Social Security number and other falsified and unverified information to a reporter with World Net Daily and Taitz. See **EXHIBIT "52"**. All of which was sent out by Taitz in her "Dossier #6" to over One Hundred and Forty Thousand [140,000] individuals and businesses including internationally.

On May 28, 2009, Sankey through Sankey Investigations and the Sankey Firm went onto Plains Radio with Defendant Edgar Hale and stated, amongst other things, that Liberi was charged with over 200 criminal counts; that Liberi had sold her house numerous times to different people; that Liberi had manipulated police reports and credit reports; that Liberi had just taken out a loan; that he was aware of where Liberi resided and he would release the information when it suited him; that Ostella was the one who contacted him and requested the investigation into Liberi; that Ostella was the one who stated Liberi was convicted of identity theft/fraud type crimes; Sankey stated that he attempted to contact Berg, but Berg refused to return his calls; that he was still investigating Adams; that Adams was bad and had done bad things; and that Berg should not have shady characters working for him. Sankey through Sankey Investigations and the Sankey Firm also confirmed on this radio show that Liberi had just taken out a loan that meant Sankey either illegally accessed Liberi's credit report, which is a Federal Offense or Sankey applied for and obtained credit in Liberi's name.

It is obvious Sankey through Sankey Investigations and the Sankey Firm invaded Plaintiffs' right to privacy; invaded Plaintiffs' seclusion; made libel postings, slanderous

statements; made threats against the Plaintiffs; publicized embarrassing facts about the Plaintiffs' and all these actions were clearly directed at the Plaintiffs', Berg, Liberi, Adams and Ostella within Pennsylvania and within Montgomery County and further substantiates Plaintiffs' argument that this State and this Court are in fact the proper forum and this Court has personal jurisdiction over them.

This very Court maintains General and Specific Jurisdiction over Sankey, Sankey Investigations and the Sankey Firm for their illegal and outrageous conducts which have affected the Plaintiffs' within this Court Jurisdiction. Moreover, Sankey, Sankey Investigations and the Sankey Firm continue to this date, their outrageous and illegal behaviors, which satisfy the "systematic and continuous" contacts within this forum. In Addition, this Court also have Specific Jurisdiction over Sankey, Sankey Investigations and the Sankey Firm as Plaintiffs' causes of actions relate to Sankey, Sankey Investigations and the Sankey Firm electronic communications with a group in this forum and Sankey, Sankey Investigations and the Sankey Firm have purposely directed to this forum injuries to Plaintiffs' within this Court's forum which Plaintiffs' cause of actions are based.

### D.     <u>This Court has Personal Jurisdiction over all the Hale Defendants</u>:

The Hales have **<u>not</u>** claimed nor can they say the forum of this Court is inconvenient or that they do **<u>not</u>** have any connections to this forum, or that this forum does **<u>not</u>** have any jurisdiction over them. The Hales; Plains Radio; Bar H Farms; and KPRN subjected themselves to the Eastern District of Pennsylvania, this Court's jurisdiction when they solicited and accepted donations on behalf of a Pennsylvania business, www.obamacrimes.com owned and operated by Berg and the Law offices of Philip J. Berg. Moreover, the Hales made sure they were subjected

to the Jurisdiction of this Court by directing their actions towards Plaintiffs' and other parties who donated their time and worked for Berg's Pennsylvania Law Firm.

The Hales through their companies, Bar H Farm, KPRN and Plains Radio began operating a radio program, Plains Radio, through a tower, which they own, KPRN.  The Radio show is an internet radio show that is broadcast through different stations.  Plains Radio also has a website and chat room located at plainsradio.com. that Mr. and Mrs. Hale control.

In or about June 2008, Mr. and Mrs. Hale contacted Evelyn Adams and requested she co-host their radio shows on Plains Radio Network, an internet radio show.  Mrs. Adams quit and left Plaintiff's radio show on or about August 21, 2008.  Defendants Hale banned Mrs. Adams computer IP address from his website located at http://www.plainsradio.com, thus Adams could **not** access his website at all as she was permanently banned.

Shortly thereafter, Adams began hosting another show, Momma E Radio Rebels and co-hosted shows on Monks Media and donated her time to Berg and his law practice and fundraised on Berg's behalf.  Once Adams began with her own show and donating her time as a volunteer for Berg, Mr. & Mrs. Hale began slandering Adams name on their radio show.

Mr. & Mrs. Hale requested the appearance of Philip J. Berg on their radio show, Plains Radio through their tower KPRN.  Berg agreed to appear and did appear several times.

Berg's office than received calls regarding donations that Mr. Hale was seeking on behalf of Berg.  The callers were concerned and wanted verification that the Hales were in fact authorized to seek donations on behalf of Berg.

Due to some unethical behaviors of the Hales, Berg discontinued associations with the Hales and their companies and ceased all communications with the Hales.  The Hales became extremely angry.

The Hales began making horrible slanderous statements against Plaintiffs, Adams and Berg.

The Hales on their radio programs on Plains Radio through their tower, KPRN, stated Berg was a crook; he was conning and scamming people. Mr. Hale was cussing Berg, calling him a shyster and falsely claiming Berg had lied that he in fact had the Kenyan Birth Certificate of Barack H. Obama because he (Mr. Hale) had obtained it for him, that Berg's law license was going to be taken away, etc., all the time knowing these statements were false. Mr. and Mrs. Hale and others on their behalf also sent out this false information across the internet and through mass mailings from Bar H.

At the same time the Hales through their radio program, Plains Radio and their tower, KPRN, began calling Adams heinous names including but not limited to "Bitch," "Whore," "Worthless Piece of Shit," "a Fraud," "a Liar," a "Thief," etc. These remarks were broadcast through KPRN AM 1610 in Wellington, Texas, through talkstreamlive.com, posted on the Hale's internet website blogs and sent out by Hale's via the internet by mass mailing through Bar H. The Hales through their companies, Plains Radio, KPRN and Bar H were encouraging many individuals to call into Adams radio shows and tell Adams how stupid she was and what a liar she was. Mr. & Mrs. Hale gave out Mrs. Adams Radio show internet website and phone numbers. Mr. & Mrs. Hale went further and encouraged individuals to call into the show and harass Adams, which they did.

The Hales through Plains Radio and KPRN had listeners and staffs publish Adams home address and telephone number on the internet, which resulted in Mrs. Adams receiving threatening, harassing and degrading phone calls at all hours of the day and night stating Mrs.

Adams, "should stop trashing Ed Hale and leave Ed Hale alone." Defendants, Mr. and Mrs. Hale were well aware Adams has never harassed or trashed them.

The Hales through Plains Radio gave false statements regarding Adams which includes but is not limited to her radio shows; falsely accusing Adams of "trashing" them; falsely accusing Adams of stealing written documents, being the "Obama" divorce papers; falsely accusing Adams of defrauding the State of California for her disability, etc.

The Hales through Plains Radio posted on their internet website blog and sent mass e-mailings from Bar H falsely accusing Adams of "stealing" their "Obama" divorce records. Mr. and Mrs. Hale falsely claim they have their copy of the "Obama" divorce papers copyrighted when in fact Adams had possession of the said records prior to Mr. and Mrs. Hale's receipt of said divorce papers, which they were well aware of.

The Hales went on further through Plains Radio advising and posting on their internet website blog; they sent mass e-mailings through Bar H falsely accusing Adams of having a criminal record; and falsely claiming Adams has a history of lying and stealing. Mr. and Mrs. Hale also falsely claimed that Adams hides who she is on her radio shows; Mr. Hale even went as far as making the open threat, "your day is coming, you piece of shit," referring to Adams. In furtherance of this, Mr. Hale attached an unknown and unidentified printout of a woman by the name of Evelyn A. Adams with a date of birth of November 9, 1937, whom he was aware, was a completely different person.

In or about January 2009, Berg sent a Cease and Desist letter on behalf of Adams that was served upon the Hale Defendants. Unfortunately, the slander statements; libel postings and threats did not stop.

In or about March 2009 the Hales through Plains Radio filed a false lawsuit against Adams.  To further perpetrate their fraud and for further harassment, The Hales and Plains Radio did **not** have Adams served correctly and only served her with the Collingsworth County Small Claims Citation.

The Hales were very unhappy with the fact Berg responded on behalf of Adams to his frivolous lawsuit.  The Hales then prepared a letter, which they claimed they sent to the Justice of the Peace of Collingsworth County stating it is a fact Berg and Adams conspired to raise money for Berg; it is a fact that Berg is not licensed to practice law within the state of Texas; Liberi's e-mail sent to Adams with the "Obama" divorce papers was a forgery; Liberi's e-mail was doctored; Berg and Adams have partnered together and has collected thousands of dollars from people based on lawsuits that had no chance of success; Berg has been proven to be a shyster; Berg is under investigation by several Federal agencies; Berg and Adams have conned thousands of Americans out of hundreds of thousands of dollars, etc.  This very letter was never sent to Judge Henard, Justice of the Peace of the Collingsworth County Court, Precinct One, Number One, instead the Hales posted it on their radio show website, plainsradio.com and sent it out in mass e-mailing from Bar H which was nothing more than further slander and libel.

Mr. Hale continued his above behaviors and began sending harassing e-mails to Liberi. In one of his e-mails, Mr. Hale went as far and threatened Liberi and Berg stating, "***You and berg are going to regreat getting into this***" [*sic*].

The Hales were served with the within lawsuit on May 7, 2009.  Since these Defendants were served the Hale's behavior through their Companies have intensified and they have been inciting anger and encouraging hate and anger towards the Plaintiffs'.

Moreover, they have conspired with Defendants' Taitz; DOFF; Sankey; Sankey Investigations; the Sankey Firm.; and Belcher to further harm the Plaintiffs' herein and have now included Liberi; Ostella; and Go Excel Global.

The Hale Defendants went after Liberi and posted Liberi scammed Dr. Orly Taitz, see **EXHIBIT "53"**, knowing the information to be false.

The Hales have been having the other Defendants' on their Plains Radio Show. Sankey through Sankey Investigations and the Sankey firm, whom he is not licensed with, emailed Taitz Liberi's full Social Security number which Taitz through DOFF sent out to over One Hundred and Forty Thousand [140,000] individuals and companies. On or about May 28, 2009, Sankey appeared on Plains Radio hosted by the Hales. Sankey stated Ostella sent him emails and asked for Liberi to be investigated, which was untrue. Three [3] days later, on May 31, 2009 altered and forged emails were posted by Taitz on her website at www.orlytaitzesq.com. See **EXHIBIT "28"**. Also, on May 28, 2009, Defendant Edgar Hale made it clear that Sankey had sent him documents he claimed pertained to Liberi and on the documents the Hales received from Sankey, Liberi's full Social Security number, date of birth and other personal identifying information was present. Defendant Edgar Hale then stated Liberi had just taken out a loan that was confirmed by Sankey. The only way Hale and Sankey could have known this was to illegally access Liberi's credit file, which is a federal offense, or apply for and obtain a fraudulent loan in Liberi's name and Social Security number. The Hale Defendants also took Liberi's signature off of one of this Court's documents and placed it on the internet. Now, not only is Liberi's Social Security number, mother's maiden name, date of birth, place of birth floating all over the internet, so is her signature.

It is obvious the Hale Defendants libel postings, slanderous statements and threats were clearly directed at the Plaintiffs', Adams, Berg, the Law Offices of Philip J. Berg; Liberi; Ostella; and Go Excel Global within Pennsylvania and within Montgomery County and further substantiates Plaintiffs' argument that this State and this Court are in fact the proper forum and this Court has personal jurisdiction over the Hales, Plains Radio, KPRN and Bar H Farms.

On August 11, 2009, Edgar Hale sent Liberi an email stating Taitz used him to assault Liberi to get to Berg, see **EXHIBIT "54"**.  On August 27, 2009, Ed Hale was in a chat room at http://www.ptarmigannest.net/Docs/edtext2.txt where he clearly stated on page nine [9] at 16:10:30 that Orly used Plains Radio to attack Berg.  Also in this same chat, Ed Hale admits he is Mickey Martin on page fifteen [15] at 16:30:42; see **EXHIBIT "55"**.

This very Court maintains both General and Specific Jurisdiction over the Hales; Plains Radio; KPRN; and Bar H. Farms as they subjected themselves to this Court's jurisdiction by soliciting donations on behalf of Berg, www.obamacrimes.com and the Law Offices of Philip J. Berg, a Pennsylvania business located in Montgomery County, of which their illegal activities stem from.  Moreover, all of the Hales; Plains Radio; KPRN; and Bar H Farms illegal and outrageous conducts have affected the Plaintiffs' within this Court Jurisdiction.  Moreover, the Hale Defendants continue to this date, their outrageous and illegal behaviors that satisfies the "systematic and continuous" contacts within this forum.  In addition, this Court also have Specific Jurisdiction over the Hale Defendants as Plaintiffs' causes of actions relate to the Hale Defendants electronic communications with a group in this forum and the Hales have purposely directed to this forum injuries to Plaintiffs' within this Court's forum which Plaintiffs' cause of actions are based.

The Hale Defendants have a commercial website which was located at plainsradio.com and is now located at http://www.texasbroadcasting.net/ and all of the above information has been placed on the Hale Defendants company websites.

All of the criteria outlined in *Toys "R" Us, Inc. v. Step Two, S.A*., 318 F.3d 446, 451 (3d Cir. N.J. 2003) *(citing Zippo Manufacturing. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 at 1124 (W.D. Pa. 1997) have been met and undoubtedly this Court has jurisdiction over the Hale Defendants and this Court is the proper forum for this action.

Federal Courts may exercise personal jurisdiction over a non-resident of the forum "to the extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998)* (citation omitted.) In turn, Pennsylvania's long-arm statute authorizes the exercise of jurisdiction over a non-resident "to the fullest extent allowed under the Constitution of the United States." *42 Pa. Cons. Stat. Ann. § 5322 (b)*; *see also O'Connor v. Sandy Lane Hotel, 496 F.3d 312, 316 (3d Cir. 2007),* noting that Pennsylvania's long-arm statute "provides for jurisdiction based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States" (internal citations omitted.) That is, as long as the requirements of the *Due Process Clause of the Fourteenth Amendment to the United States Constitution* have been satisfied, jurisdiction will lie over non-resident Defendants in Pennsylvania. *Pennzoil Prods*., id.

All the Defendants' meet the minimum contact standards, which gives this Court jurisdiction and venue over them; their illegal, unethical and injurious behaviors and actions, which were activities purposefully directed towards residents of this State. In so doing, Defendants' were provided "fair warning" that they may be subject to suit in this forum. *Burger King Corp, v. Rudzewicz, 471 U.S. 462* at *472*. Again, Taitz is a licensed Attorney and is aware

of the laws of our land. Moreover, Taitz through DOFF have several military clients; has formed a group of Pennsylvania residents to work with her in having Arlen Specter, United States Senator of Pennsylvania recalled.

As stated in *JNA-1 Corp. v. Uni-Marts, LLC*, (In re Uni-Marts, LLC), 404 B.R. 767 (Bankr. D. Del. 2009 @ *9:

> "Where a non-resident defendant "purposefully directed his activities at residents of the forum," his contacts with the forum are sufficient to support personal jurisdiction in any "litigation [that] results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quotations omitted). A single transaction with the forum by the plaintiff will suffice. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957). The defendant's activity need not take place within the forum so long as it is "intentional conduct . . . calculated to cause injury" to the plaintiff within the forum. *Calder v. Jones, 465 U.S.* 783, 791, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *See also Burger King*, 471 U.S. at 476 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . .")"

Under the Federal Rules of Civil Procedure, "a district court may assert personal jurisdiction 'over non-resident Defendants to the extent permissible under the law of the state where the district court sits.'" *Remick*, 238 F.3d at 255 (quoting *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998)). Under Pennsylvania's long-arm statute, *42 Pa. Cons. Stat. Ann. § 5322(b)*, Pennsylvania Courts may "exercise personal jurisdiction over non-resident defendants to the constitutional limits of the *due process clause of the fourteenth amendment*." *Remick v. Manfredy*, 238 F.3d 248, 253 (3d Cir. Pa. 2001) at 255 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)).

There are two types of personal jurisdiction a Court may assert over a Defendant -- general jurisdiction or specific jurisdiction. *Mellon Bank (East) PSFS,* 960 F.2d at 1221. If general jurisdiction exists, a Court may exercise jurisdiction over a non-resident Defendant as to any claim against [him], regardless of whether the subject matter of the cause of action has any

connection to the forum." Id.  General Jurisdiction normally is invoked only when a Defendant has maintained "systematic and continuous" contacts with the forum state. *Marten*, 499 F.3d at 296 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 & n.8 (1984); *Remick*, 238 F.3d at 255.  Conversely, specific jurisdiction "is present only if the Plaintiffs' cause of action arises out of a Defendant's forum-related activities, such that the Defendant should reasonably anticipate being hauled into court in that forum." *Remick*, 238 F.3d at 255 (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996)); see also *Marten*, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

The Due Process clause of the Fourteenth Amendment of the Constitution of the United States limits the reach of state long-arm statutes and precludes personal jurisdictional over a nonresident defendant unless the nonresident has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Personal jurisdiction over a defendant may be specific or general.  Specific jurisdiction exists if the Plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum state or with the defendant's forum-related activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984).  In other words, Specific personal jurisdiction exists when a defendant has "'purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that "arise out of or are related to" those activities.'" *BP Chemicals, Inc*., 229 F.3d at 259, *quoting from Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985).  For there to be general jurisdiction over a defendant,

its contacts "with the forum, whether or not related to the litigation, [must be] 'continuous and systematic.'" Id., *quoting from* <u>Helicopteros Nacionales de Columbia v. Hall</u>, 466 U.S. 408, 416, 104 S. Ct. 1868 (1984).  As to individual defendants, "as a general rule, 'individuals performing acts in a state in their corporate capacity are not subject to the courts of that state for those acts.'" <u>Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania</u>, 785 F. Supp 1186, 1191 (W.D. Pa. 1992).

General jurisdiction exists when the claim does not arise from the defendant's contact with the forum state, but the defendant has nonetheless maintained "continuous and systematic" contacts with the forum state. <u>Helicopteros</u>, 466 U.S. at 414 n.9.  The type of contacts, which if continuous and systematic, may give rise to general jurisdiction are ownership of property in the forum state, **solicitation of business in the forum state**, **business activities in the forum state** or the sale of products to persons or entities within the forum state. <u>Litman v. Walt Disney World Co.</u>, 2002 U.S. Dist. LEXIS 5115, *18 (01-CV-3891) (E.D. Pa. 2002).  Those contacts must be "extensive and pervasive" to provide a basis for personal jurisdiction. <u>Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas</u> 675 F.2d 587 (3d Cir. 1982) (citing <u>Compagnie des Bauxites de Guinea v. Insurance Co. of North America</u>, 651 F.2d 877, 890 (3d Cir. 1981) (Gibbons, J., dissenting), *aff'd,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)).

For the above aforementioned reasons, this Court is the proper forum for this Case as to each Defendant and therefore, the case must not be dismissed for lack of personal jurisdiction or transferred to another forum.

### III. THIS COURT SHOULD NOT DETERMINE IF SEVERANCE IS WARRANTED AT THIS EARLY STAGE BEFORE DISCOVERY HAS BEEN CONDUCTED:

Determination of whether the claims or parties should be severed is more appropriately made when the Court can determine which issues will go to trial, Miller *v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 145 (E.D. Pa. 2001)  To address this issue now is simply premature because this action has not proceeded beyond the pleading stage, and the Court has yet to sort out the intricacies of the relationships among the Defendants', *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1154 (E.D. N.Y. 1992).  Indeed, although Plaintiffs strongly disagree, this case could possibly develop so that Plaintiffs cannot prove that Defendants acted in a common way; however, because the record is not fully developed, it is premature to foreclose Plaintiffs from pursuing that opportunity, *Foreman Indus., Inc. v. Gen. Motors Corp.*, 34 B.R. 712, 715 (S.D. Ohio 1983).

### IV. PLAINTIFFS' HAVE SATISFIED THE REQUIREMENTS OF RULE 20 FOR JOINT ACTION:

The purpose of Fed. R. Civ. P. 20 is to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co.*, 2009 U.S. Dist. LEXIS 71712 (D.N.J. Aug. 14, 2009); *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 6-7 (E.D. Pa. 1979)**)** *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974) (citation omitted).

Federal Rule of Civil Procedure 20(a) governs permissive joinder and provides in relevant part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction,

occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a) (emphasis added).

The purpose of Rule 20(a) is to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple law suits." *7 Charles Alan Wright, et al., Federal Practice and Procedure § 1652 at 395* (3d ed. 2001); see also *Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co.*, 2009 U.S. Dist. LEXIS 71712 (D.N.J. Aug. 14, 2009) citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974) (all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence).

At a minimum, Rule 20(a) requires that the central facts of each Plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances. See *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 6-7 (E.D. Pa. 1979).

Courts generally apply a case-by-case approach in determining whether a particular factual situation meets the same transaction or occurrence test. See 7 Charles Alan Wright, et al., Federal Practice and Procedure § 1653 at 409 (3d ed. 2001); *Blood v. Fed. Bureau of Prisons*, 2009 U.S. Dist. LEXIS 21529 (M.D. Pa. Mar. 17, 2009) citing *Mosley*, 497 F.2d at 1333. The test mirrors the one applied under Federal Rule of Civil Procedure 13(a), under which "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Mosley*, 497 F.2d at 1333 (emphasis added) (quoting Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750 (1926)); see also *In re University Med. Ctr.*, 973 F.2d 1065, 1086 (3d Cir. 1992) (recognizing logical relationship test under Rule

13(a)).  Identifying each event is not demanded.  See _Mosley_, 497 F.2d at 1333; _King v. Pepsi Cola Metro. Bottling Co._, 86 F.R.D. 4, at *6 (E.D. Pa. 1979).

Here, the Defendants' all joined forces with Taitz to destroy Berg and destroy his paralegal, Liberi and get rid of her and any other parties associated with Berg and Liberi.  All of the Defendants' went after the Plaintiffs, due to their association with Berg and his lawsuits and caused the Plaintiffs' to suffer injuries.

Furthermore, none of the Defendants have raised the issue, cited or established any legally cognizable prejudice as a result of hearing together all of the Plaintiffs' claims against all of them responsibly for Plaintiffs' injuries; however, there would be great prejudice to the Plaintiffs.  First, severance would be a tactical boon to all Defendants.  If the case is separated and tried in different locations, the Defendants' would then point to the other Defendants' not named in those particular actions if these claims were not tried together, leaving the jury wondering why a claim had not been brought against the other Defendants.  E.g., The case against Taitz and Sankey is separated and moved to California while the case against the Hale Defendants is moved to Texas.  First problem with this is all the Plaintiffs' would have to travel to three (3) different locations and Hale would blame Taitz for the actions, which would cause the jury to wonder why the Plaintiff failed to name Taitz.  The permutations of this prejudice are boundless.  The jury might give a compromise verdict, in which case Plaintiffs would not get the full value of their damages.  Next, there are many parties who are willing to be witnesses against the Defendants named herein.  Severance of these claims would cause each of the witnesses to have to be brought to Court three (3) or more times in different States to testify to a pattern of facts and opinions, where experts are concerned, which are common to all Defendants.  Not to

mention the fact, Plaintiffs' witnesses would have to be deposed three (3) times if the case is severed. This would triple all costs associated with Plaintiffs' witnesses.

Severance would cause inconvenience and prejudice to the parties, especially the Plaintiffs' and their witnesses. In addition, it would undermine Plaintiffs' ability to contest the Defense case. In light of the fact that this triplication would burden all the witnesses and jurors as well as waste judicial resources.

These are important reasons to try the case as a single, coherent whole, and Plaintiffs' urge the Court not to undermine that. Severance is an extraordinary procedure and cannot be justified unless it will substantially further the ends of judicial economy, prevention of delay and prejudice, and otherwise serve the ends of justice. This standard has not been met in this case and therefore, the case should not be severed.

### V.  THIS CASE SHOULD NOT BE TRANSFERRED TO TEXAS OR CALIFORNIA PURSUANT TO 28 U.S.C. §1404(a):

In considering whether to grant venue transfer under 28 USCS § 1404(a), courts engage in two-part test: (1) whether action might have been brought in proposed transferee forum; and (2) whether transfer promotes convenience and justice. *Excelsior Designs, Inc. v Sheres* 291 F Supp 2d 181 (E.D. NY 2003).

In a diversity action like this one, venue is proper "only in (1) a judicial district where any Defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any Defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. §1391(a).

Here neither Texas nor California is the proper Venue as all of the Defendants' reside in different States.  Thus, 28 U.S.C. §1391(a)(1) does not apply.  28 U.S.C. §1391(a)(2) does not apply as the actions of the Defendants occurred in California, Texas, and other States which Taitz was located during her travels wherein she posted on her website and/or conducted interviews over the telephone. Furthermore, the Defendants' wrongs involve the Internet that is conducted all over the World.  This only leaves 28 U.S.C. §1391(a)(3) as this Court has personal Jurisdiction over all the Defendants' even though the Court must only have personal Jurisdiction over one [1] of the Defendants'.  It is in the public and private interests that the Federal Laws be upheld pertaining to Venue and transfer of cases within the Federal Court systems. 28 U.S.C. §1404(a) only provides for the transfer of a case where both the original and the requested venue are proper.  _Jumara v. State Farm Ins. Co._, 55 F.3d 873, 878

The Court of Appeals has recognized that the right to defend suit in the appropriate venue is conferred for the personal benefit of the Defendants and may be waived by Defendant. See _Davis v. Smith_, 253 F.2d 286, 288 (3d Cir. 1958).  Taitz, DOFF and the Sankey Firm waived their right to raise any issues pertaining to Venue as they did not timely file their Motions for Transfer and the Hale Defendants, Sankey, Sankey Investigations and Belcher never requested the Case to be transferred pursuant to 28 U.S.C. §1404(a).

Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the Court has jurisdiction and that the case has been brought in the correct forum. _Lafferty v. Gito St. Riel_, 495 F.3d 72, 77 (3d Cir. Pa. 2007) citing _Jumara v. State Farm Ins. Co._, 55 F.3d 873, 878 (3d Cir. 1995).

As this Court is aware, in _Jumara v. State Farm Ins. Co._, 55 F.3d 873 the Court outlined the important issues to be taken into consideration when deciding whether or not to transfer a

case pursuant to 28 U.S.C. §1404(a). In fact, the Court stated in ruling on said Motions the Court should take into account three [3] enumerated factors, convenience of parties, convenience of witnesses or interests of justice, which also include public and private interests.

First and foremost, none of the Defendants have cited any type of hardships; inconvenience of the parties; inconvenience of any of their witnesses; financial hardships nor have they given any good reason for the transfer of the case. See _Breeden v Tricom Bus. Sys_. 244 F Supp 2d 5 (N.D. NY 2003) (Motion to transfer venue under 28 USCS § 1404(a) was denied, where defendant lessor failed to specifically identify witnesses). Defendants have not provided any evidence of a document or record that is unavailable in Pennsylvania. Therefore, this factor does not weigh in favor of transferring venue, _Visual Software Solutions, Inc. v. Managed Health Care Assocs._, 2000 U.S. Dist. LEXIS 10668 (E.D. Pa. Aug. 1, 2000).

To the contrary, Plaintiffs' in their oppositions to the Defendants' Motions have in fact pointed out that transferring the case to Texas or California would be very inconvenient and financially exhaustive for Plaintiffs' and Plaintiffs' witnesses. In fact, Plaintiffs' witnesses may not be able to afford the travel expenses and Plaintiffs' do not have the financial ability to pay for the travel expenses for all their witnesses. Plaintiffs' intend on calling Charlie Fendt, resident of New York; K. Strebel, resident of Utah; Al Alper, resident of Philadelphia, PA; Robert and Dianne Long, residence redacted due to safety; Matt Harris, residency redacted due to safety; Mark McGrew, residency redacted; and several other witnesses from the Eastern States. Purpose of 28 USCS § 1404 is to prevent waste of time, energy and money and to protect the litigant, witnesses and public against unnecessary inconvenience and expense, _Monihen v Oliver Machinery Co_., 502 F Supp 36 (E.D. Pa 1980); _Vista Medical Systems, Inc. v. Marquette Electronics, Inc._, 1988 U.S. Dist. LEXIS 6058 (E.D. Pa. June 23, 1988).

Moreover, all documents, all information pertaining to Berg's website, witnesses of the
Plaintiffs' which will testify they obtained the chat from Plains Radio wherein Belcher threatens
Berg and Liberi if they come to her "redneck" town, the problems created and caused by Belcher
while she was on Berg's website, Belcher's threats regarding Liberi's heart problems and Liberi
having a heart attack, Belcher's slanderous statements, libel postings, threats to all Plaintiffs, are
located within this Court's jurisdiction.  Berg would have to close down his law firm for several
days to travel to another state to litigate the within action.   Transferring venue would be
inconvenient to Plaintiffs' witnesses; cause a situation Plaintiffs witnesses would not be able to
testify as they would be unable to travel to another State's forum due to health and financial
reasons; Belcher has already threatened Berg and Liberi if they come to her "redneck" town they
would be forced out, maybe in pieces and therefore a transfer is **not** in the interest of justice.
Belcher did **not** cite any hardship; inconvenience to witnesses; any witnesses she may have;
nothing.  Therefore, "the interest of justice [would] is better served in this forum." _Jumara v.
State Farm Ins. Co_., 55 F.3d 879 (3d Cir. 1995).

In addition, this forum is more convenient and cost effective to the Plaintiffs', especially
Philip J. Berg, Esquire who runs a Law Practice in Pennsylvania and it would be extremely
expensive and a true hardship for him to shut down his law practice to travel to other states to
litigate issues which were directed to Pennsylvania and have caused damage to Pennsylvania.
Monihen _v Oliver Machinery Co_., 502 F Supp 36 (E.D. Pa 1980); _Walter v Walter_, 235 F Supp
146 (W.D. Pa 1964).  For these reasons, Plaintiffs' chose this Court's forum which is the proper
forum for this litigation, 28 USCS § 1404(a) was not intended to defeat Plaintiffs rights of
bringing their action in such forum as they deemed proper, and wherever possible, consideration
ought to be given to choice of his forum. _Walter v Walter_, 235 F Supp 146 (W.D. Pa 1964); _Vista_

_Medical Systems, Inc. v. Marquette Electronics, Inc_., 1988 U.S. Dist. LEXIS 6058 (E.D. Pa. June 23, 1988) (A Plaintiff's choice of forum normally receives great deference).

The Federal Courts in the Eastern District of Pennsylvania operate efficiently. There is little lag time between the filing of the Complaint, the conduction of discovery and the scheduling of trial. Undersigned counsel does not know the volume of litigation in Texas and/or California, but believes that it would dwarf the volume of the Eastern District of Pennsylvania. Likewise, the cost of proceeding in Eastern Pennsylvania would pale in comparison to those in Texas and California in terms of attorneys' fees, hotel accommodations and restaurant pricing.

All of these issues relate to the Public and Private interests that apply to the choice of forum and the Public and Private Interests weighs heavily in favor of maintaining this case in the Eastern District of Pennsylvania.

This case was filed May 4, 2009, over five (5) months ago. This Court is familiar with the lawsuit and the basis for said suit. For another Court to learn the Case would take additional time and cost the Plaintiffs' large amounts of money to travel to another state or states and force the Plaintiffs' to incur the travel expenses for all their witnesses. To transfer the case now would waste money, time and energy, which is clearly against the Public and Private interests. See _Glen Knit Industries, Ltd. v E. F. Timme & Son, Inc_., 384 F Supp 1176 (D.C. Pa 1974) (Purpose of 28 USCS § 1404(a) is to prevent waste of time, energy and money).

As stated herein all the Defendants targeted the Plaintiffs' located within this Court's jurisdiction. As stated in _Jumara v. State Farm Ins. Co_., 55 F.3d at 880 the Public interests include local interest in deciding local controversies at home.

## VI.    <u>CONCLUSION</u>:

For the above aforementioned reasons, this Court has personal jurisdiction over all the

Defendants; this case should not be severed; and this case should not be transferred.

Respectfully submitted,


Dated:  August 26, 2009                              s/ Philip J. Berg
                                           _____
                                           PHILIP J. BERG, ESQUIRE
                                           *Attorney for Plaintiffs'*

Law Offices of:
**Philip J. Berg, Esquire**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Identification No. 09867
(610) 825-3134                                          *Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT,

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA LIBERI, et al,                                  :
                                                     :
                        Plaintiffs,                  :
                                                     :
            vs.                                      :  Case No.: 09-cv-01898-ECR
                                                     :
ORLY TAITZ, et al,                                   :
                                                     :
                        Defendants.                  :
_____             :

## <u>CERTIFICATE OF SERVICE</u>

I, Philip J. Berg, Esquire, hereby certify that a copy of Plaintiffs' Response to this Court's

Rules to Show Cause was served this 26th day of August 2009 electronically upon the following:

Orly Taitz
Defend our Freedoms Foundation, Inc. (unrepresented)
26302 La Paz Ste 211
Mission Viejo, CA 92691
Email: dr_taitz@yahoo.com

Neil Sankey
The Sankey Firm, Inc. a/k/a The Sankey Firm (unrepresented)
Sankey Investigations, Inc.
2470 Stearns Street #162
Simi Valley, CA 93063
Email: nsankey@thesankeyfirm.com

Linda Sue Belcher
201 Paris
Castroville, Texas 78009

Email: Newwomensparty@aol.com and
Email: starrbuzz@sbcglobal.net


Ed Hale
Caren Hale
Plains Radio
KPRN
Bar H Farms
1401 Bowie Street
Wellington, Texas 79095
Email: plains.radio@yahoo.com; barhfarms@gmail.com;
ed@barhfarnet; and ed@plainsradio.com


s/ Philip J. Berg
PHILIP J. BERG, ESQUIRE