Philip J. Berg, Esquire
Email: philjberg@gmail.com
PA Identification No. 09867
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Ph: (610) 825-3134
Fx: (610) 834-7659

*Attorney for: Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
SOUTHERN DIVISION**

| | |
|---|---|
| LISA LIBERI<br>and<br>LISA M. OSTELLA,<br>and<br>GO EXCEL GLOBAL<br>and<br>PHILIP J. BERG, ESQUIRE<br>and<br>THE LAW OFFICES OF PHILIP J. BERG<br><br>     Plaintiffs,<br><br>  vs.<br><br>ORLY TAITZ a/k/a DR. ORLY TAITZ<br>and<br>LAW OFFICES OF ORLY TAITZ<br>and<br>ORLY TAITZ, INC.<br>and<br>DEFEND OUR FREEDOMS<br>FOUNDATIONS, INC.<br>and<br>NEIL SANKEY<br>and<br>SANKEY INVESTIGATIONS, INC.<br>and | CIVIL ACTION NO.<br>**8:11-cv-00485-AG (AJWx)**<br><br>JURY TRIAL DEMANDED<br><br>**PLAINTIFFS FIRST AMENDED COMPLAINT** |

---

1   TODD SANKEY

2   and
    THE SANKEY FIRM, INC.

3   and

4   REED ELSEVIER, INC.
    and

5   LEXISNEXIS GROUP, INC., a

6   Division of Reed Elsevier, Inc.
    and

7   LEXISNEXIS, INC., a Division of

8   Reed Elsevier, Inc.

9   and
    LEXISNEXIS RISK and

10   INFORMATION ANALYTICS

11   GROUP, INC.
    and

12   LEXISNEXIS SEISINT, INC. d/b/a

13   ACCURINT a Division of Reed
    Elsevier, Inc.

14   and

15   LEXISNEXIS CHOICEPOINT, INC. a

16   Division of Reed Elsevier, Inc.
    and

17   LEXISNEXIS RISK SOLUTIONS,

18   INC., a Division of Reed Elsevier, Inc.
    and

19   INTELIUS, INC.

20   and
    ORACLE CORPORATION

21   and

22   DAYLIGHT CHEMICAL
    INFORMATION SYSTEMS, INC.

23   and

24   YOSEF TAITZ, individually and as

25   Owner/CEO of Daylight Chemical
    Information Systems, Inc.

26   and

27   DOES 1 through 186 INCLUSIVE

28                  Defendants.

---

## PLAINTIFFS FIRST AMENDED COMPLAINT

### I.   NATURE OF ACTION

1.   This is an action for damages, including permanent injunctive relief against Defendants Orly Taitz a/k/a Dr. Orly Taitz, Orly Taitz, Inc., Law Offices of Orly Taitz Defend our Freedoms Foundations, Inc., Neil Sankey, Todd Sankey, Sankey Investigations, Inc. and The Sankey Firm, Inc. for illegal access to Plaintiffs private data; the publication of Plaintiffs private data; Invasion of Privacy; Invasion of Plaintiffs rights to Solitude; Placing Plaintiffs in a False Light; Disclosure of Private facts; Cyber-bullying; Cyber-stalking; Cyber-Harassment; Slander; Libel; Defamation; Malicious Prosecution; Abuse of Process; Intentional Infliction of Emotional Distress; and against Defendants, Reed Elsevier, Inc.; LexisNexis Group, Inc.; LexisNexis, Inc., LexisNexis Risk Solutions, Inc.; LexisNexis Risk & Information Analytics Group, Inc.; Seisint, Inc. d.b.a. Accurint; ChoicePoint, Inc.; Intelius, Inc.; Daylight Chemical Information Systems, Inc; Yosef Taitz; and Oracle Corporation seeking compensatory; statutory penalties; and punitive damages due to Defendants' systematic and willful violation of *inter alia*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.; the California Information Practices Act, California Civil Code §1798 et. Seq.; the California Investigative Consumer Reporting Agencies Act ("ICRAA"); California Civil Code §1786 et seq.; the California Consumer Reporting Agencies Act

---

("CCRAA"), California Civil Code §1785.11, §1785.14, §1785.19 and §1785.22; Unfair Business Practices in violation of California Business Code §17200 et seq; Negligence, California Civil Code §1714(a); Breach of Duty, California Civil Code §1714(a); Invasion of Privacy; Right to be Let Alone (Right to Privacy); Defamation; Libel; Slander; Res Ipsa Loquitor Negligence and Emotional Distress. This action also seeks to redress Defendants' unlawful invasion of the constitutional, common law and statutory privacy rights of the Plaintiffs under state and federal law; and seeks restitution and injunctive relief pursuant to the FCRA, CCRAA and California Business and Professions Code §17200 et seq. and to enjoin all the Defendants' unlawful conduct; recovery of actual damages; statutory damages; civil damages; punitive damages and other damages for Defendants' unlawful acts, disgorgement of all unjust gains and attorney fees and costs.

## II.    **JURISDICTION AND VENUE:**

2.    This Court has general jurisdiction of this action pursuant to the provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681p, Federal Question jurisdiction pursuant to 28 U.S.C. §1331 and diversity jurisdiction under 28 U.S.C. §1332. This Court also has supplemental jurisdiction to consider claims arising under California State Law pursuant to 28 U.S.C. §1367.

3.     Venue as to Defendants is proper in this judicial district pursuant to 15 U.S.C. §1681p and 28 U.S.C. §1391.  Defendants reside in this District within the meaning of 28 U.S.C. §1391(b) and (c), and they transact business, have agents, and otherwise have sufficient contacts within this District to subject them to personal jurisdiction herein.  Moreover, the events outlined herein occurred in the State of California.

### III.   PARTIES

4.     Plaintiff, Lisa Liberi [hereinafter "Liberi"] is an adult individual who resides in the State of New Mexico and has since early November 2002;

5.     Plaintiff, Go Excel Global, is owned and operated by Lisa Ostella, with a business address of 2227 US Highway 1, #245, North Brunswick, NJ 08902-4402;

6.      Plaintiff, Philip J. Berg, Esquire [hereinafter at times "Berg"] is an adult individual who resides in the State of Pennsylvania;

7.     Plaintiff, The Law Offices of Philip J. Berg is a law firm, with a staff, owned and operated by Plaintiff Philip J. Berg, with a business address of 555 Andorra Glen Court, Suite 12, Lafayette Hill, PA 19444-2531;

8.     Plaintiff, Lisa M. Ostella [hereinafter "Ostella"] is an adult individual who resides in the State of New Jersey;

9.     Defendant, Orly Taitz a/k/a Dr. Orly Taitz [hereinafter "Taitz"] is a licensed Attorney with a business addresses of 29839 S. Margarita Pkwy, Rancho Santa Margarita, CA 92688, and a home address of 31912 Monarch Crest, Laguna Niguel, CA 92677;

10.     Defendant, Law Offices of Orly Taitz is a business owned and operated by Orly Taitz with a business address of 29839 S. Margarita Pkwy, Rancho Santa Margarita, CA 92688;

11.     Defendant, Orly Taitz, Inc. is a business owned and operated by Orly Taitz and controls Defend our Freedoms Foundations, Inc.; and the Law Offices of Orly Taitz, with a business address of 29839 S. Margarita Pkwy, Rancho Santa Margarita, CA 92688; and 31912 Monarch Crest, Laguna Niguel, CA 92677.

12.     Defendant, Defend our Freedoms Foundation, Inc.   [hereinafter "DOFF"] is incorporated as a non-profit organization owned and operated by Defendants Orly Taitz, Inc. and  Orly Taitz a/k/a Dr. Orly Taitz with a business address of 29839 S. Margarita Pkwy, Rancho Santa Margarita, CA 92688;

13.     Defendant, The Sankey Firm, Inc. d/b/a The Sankey Firm [hereinafter "Sankey Firm"] is owned and operated by Todd Sankey and is a Private Investigation Company.  The Sankey Firm has a business address of 2470 Stearns Street, #162, Simi Valley, California, 93063;

14.     Defendant Todd Sankey is an adult individual and owner of The Sankey Firm, Inc.  with a business address of 2470 Stearns  Street, #162, Simi Valley, California 93063;

15.     Defendant Sankey Investigations, Inc. is incorporated in the State of California.  Sankey Investigations, Inc. is owned and operated by Neil Sankey and is a private investigation Company.  Sankey Investigations has a business address of 4230 Alamo Street, Simi Valley, CA 93063;

16.     Defendant, Neil Sankey [hereinafter "Sankey"] is an adult individual and owner of Sankey Investigations, Inc.  with an business address of 4230 Alamo Street, Simi Valley, CA 93063;

17.     Defendant Reed Elsevier, Inc. is a Massachusetts Corporation duly licensed, located and doing business in, the County of Los Angeles, State of California and throughout all fifty states as a data collector and disseminator.  At all relevant times, this Defendant has been a consumer credit reporting agency and an investigative Consumer Reporting Agency.

18.     Defendant LexisNexis Group, Inc. is a division of Reed Elsevier, Inc. and is a business entity believed to be a California Corporation, duly licensed, located and doing business in, but **not** limited to, the County of Los Angeles, State of California and other counties throughout the United States.  At all times relevant herein, this Defendant has been a Consumer Credit Reporting Agency and an

1 Investigative Consumer Reporting Agency in the business of collecting, selling and

2 distributing consumer information.

3

4   19. Defendant LexisNexis, Inc. is a division of Reed Elsevier, Inc. and a

5 business entity believed to be an Ohio Corporation, duly licensed, located and

6

7 doing business in, but **not** limited to, the County of Los Angeles, State of

8 California and other counties throughout the United States.  At all times relevant

9 herein, this Defendant has been a consumer Credit Reporting Agency and an

10

11 Investigative Consumer Reporting Agency in the business of collecting, selling and

12 distributing consumer information.

13

14   20. Defendant LexisNexis Risk & Information Analytics Group, Inc. is a

15 Florida Corporation, duly licensed, located and doing business in, but **not** limited

16

17 to, the County of Los Angeles, State of California and other counties throughout

18 the United States.  At all times relevant herein, this Defendant has been a consumer

19 Credit Reporting Agency and an Investigative Consumer Reporting Agency in the

20

21 business of collecting, selling and distributing consumer information.

22   21. Defendant LexisNexis Risk Solutions, Inc. is a Florida Corporation,

23 duly licensed, located and doing business in, but **not** limited to, the County of Los

24

25 Angeles, State of California and other counties throughout the United States.  At

26 all times relevant herein, this Defendant has been a consumer Credit Reporting

27

28

---

Agency and an Investigative Consumer Reporting Agency in the business of collecting, selling and distributing consumer information

22.   Defendant LexisNexis Seisint, Inc. d.b.a. Accurint is a division of Reed Elsevier, Inc. and is a Florida Corporation, duly licensed, located and doing business in, but **not** limited to, the County of Los Angeles, State of California and other counties throughout the United States.  At all times relevant herein, this Defendant has been a consumer Credit Reporting Agency and an Investigative Consumer Reporting Agency in the business of collecting, selling and distributing consumer information.

23.   Defendant LexisNexis ChoicePoint, Inc. is a division of Reed Elsevier, Inc. and is a Georgia Corporation, duly licensed, located and doing business in, but **not** limited to, the County of Los Angeles, State of California and other counties throughout the United States.  At all times relevant herein, this Defendant has been a consumer Credit Reporting Agency and an Investigative Consumer Reporting Agency in the business of collecting, selling and distributing consumer information.

24.   Defendant Intelius, Inc. is a Washington Corporation, duly licensed, located and doing business in, but **not** limited to, the County of Los Angeles, State of California and other counties throughout the United States.  At all times relevant herein, this Defendant has been a consumer Credit Reporting Agency and an

Investigative Consumer Reporting Agency in the business of collecting, selling and distributing consumer information.

25. Defendant Oracle Corporation is a California Corporation, duly licensed, located and doing business in, but **not** limited to, the County of Los Angeles, State of California and other counties throughout the United States.

26. Defendant Daylight Chemical Information Systems, Inc. is a California Corporation with a business address of 28202 Cabot Road, Suite 300, Laguna Niguel, CA 92677 duly licensed, located and doing business in, but **not** limited to, the County of Orange and Los Angeles, State of California and other counties through-out the United States.

27. Defendant Yosef Taitz is an individual who resides in Orange County, State of California at 31912 Monarch Crest, Laguna Niguel, CA 92677; Defendant Yosef Taitz operates and is the Owner, President and CEO of Daylight Chemical Information Systems, Inc., a business entity believed to be a Corporation, duly licensed, located and doing business in, but **not** limited to, the County of Orange and Los Angeles, State of California and other counties through-out the United States.

28. Does 1-186 are unidentified individuals and businesses that are unknown to Plaintiffs as of this date, but participated in the events causing

Plaintiffs Damages.  Plaintiffs are ignorant as to the names of these additional parties as of this date.

## IV.   THE NAMING OF "DOE" DEFENDANTS:

29.    Plaintiffs have learned the names of certain "DOE Defendants", since the filing of their original complaint, at which time they were ignorant of the actual names.  Therefore, Plaintiffs are replacing "DOE Defendants" with Todd Sankey, the owner of The Sankey Firm, Inc.; Law Offices of Orly Taitz; Orly Taitz, Inc; Yosef Taitz; Daylight Chemical Information Systems, Inc; Reed Elsevier, Inc.; LexisNexis Group, Inc.; LexisNexis, Inc.; LexisNexis Risk Solutions; LexisNexis Risk and Information Analytics Group, Inc.; Seisint, Inc. d/b/a Accurint; ChoicePoint, Inc.; Intelius, Inc.; Oracle Corporation;

## V.   FACTUAL ALLEGATIONS PERTAINING TO DEFENDANTS ORLY TAITZ, LAW OFFICES OF ORLY TAITZ, ORLY TAITZ, INC., DEFEND OUR FREEDOMS FOUNDATIONS, INC., NEIL SANKEY, TODD SANKEY, SANKEY INVESTIGATIONS AND THE SANKEY FIRM, INC.:

30.    At all times mentioned herein, all actions, including postings on the Internet by Orly Taitz were done as an Attorney and an Officer of the Court by and through the Law Offices of Orly Taitz and as the President of her corporations, Defendants Orly Taitz, Inc.; and DOFF.

31.    At all times mentioned herein, Defendant Neil Sankey acted on behalf of Sankey Investigations, Inc. and on behalf of and through his son, Todd Sankey

---

and his company, The Sankey Firm, Inc. [hereinafter "The Sankey Firm"] to conduct his acts which severely damaged the Plaintiffs.  In so doing, Sankey used Sankey Investigations, Inc., Todd Sankey and The Sankey Firm's accounts with the Reed Defendants and Defendant Intelius, Inc.; to seek Plaintiffs Ostella and Liberi's private data and credit reports, without any type of authorization from the Plaintiffs and/or a permissible purpose.  Further, at all times mentioned herein, Plaintiffs believed their data was private and expected the same.

32.    Plaintiff Lisa Liberi has never worked with; worked for; or associated with any of the Defendants.  Plaintiffs Liberi and Ostella came together and got to know each other, after the within lawsuit was filed in Pennsylvania.

33.    Taitz began calling Berg seeking help with her litigation.  Berg asked Liberi to return Orly Taitz's call.  Liberi returned Taitz's call at the end of November 2008; Taitz wanted help with a Writ of Cert, which Liberi declined. Taitz also wanted assistance in becoming licensed to practice in the U.S. Supreme Court.  Liberi explained to Taitz the procedure, the forms, etc. which needed to be followed.  Liberi even sent Taitz the forms.  Taitz wanted Berg to sponsor her in the U.S. Supreme Court for membership to practice law.  Liberi told Taitz that Berg would **not** and could **not** sponsor her as he had **not** known her the prerequisite year.  Taitz said people do it all the time.  Liberi explained to Taitz

that Berg would **not** lie to the Court.  Taitz was **not** happy with Liberi's refusal to help her.

34.     Shortly thereafter, Taitz put out all over the Internet that Berg's cases were really Lisa Liberi's cases and Liberi was the brains behind Berg.

35.     Taitz continued calling Berg's office.  Berg told Taitz due to her unethical and illegal tactics, misquoting Supreme Court Justices, chasing Judges around the Country, etc., that he would **not** have anything to do with her.

36.     As a result, Taitz put out all over the Internet that she was going to take Berg down and to do so, she was going to destroy his paralegal, Lisa Liberi, which she did.   Taitz in her filing appearing as Docket Entry No. 108 filed September 24, 2009 made a statement which Plaintiffs incorporate as an Admission to this threat.  See Taitz filing of September 24, 2009, Docket Entry No. 108 at page 2, ¶2, last sentence.

37.     At **no** time did Berg or Liberi ever work with Taitz.  In fact, Liberi had never even met Orly Taitz or seen her in person until December 20, 2010, during a Court proceeding in the within Action.

38.     Orly Taitz set up the business name of Defend our Freedoms Foundation, Inc. as a non-profit Organization with a Federal Tax Identification number of 26-4328440, according to Taitz.  **But,** when you attempt to verify the

Federal Tax Identification number it comes back invalid[1].  Ostella started setting up a PayPal for this entity in December 2008.

39.    Taitz started a blog-site called drorly.blogspot.com, in early fall of 2008.  Taitz was referred to Lisa Ostella by Markham Robinson of the American Independent Party.  Taitz started calling Ostella for help with her site and left Ostella several voicemails before Ostella followed up with her.  Ostella became an assistant webmaster.  Taitz had a website for her dental practice at drtaitz.com.  On or about December 22, 2008, Taitz sent an email to her head webmaster, Bob Stevens (**not** real name, but what he went by) and Ostella stating that 'Obama Thugs' took down her website, drtaitz.com.   Taitz wanted this posted on her drorly.blogspot.com.  Ostella wouldn't let Bob Stevens post this information until Ostella knew what happened.  Ostella started looking into what happened to Taitz's website, http://www.drtaitz.com.  Taitz domain was pointed away from the site.  Taitz said she told her webmaster of that site to add a traffic program and that must have been what happened to the site.  Taitz offered to give Ostella her (Taitz) business site accounts to handle.  Ostella looked up the site in Domain Tools whois history to see who Taitz webmaster was for drtaitz.com.  The site was created by her husband, Yosef Taitz.  Orly Taitz never transferred her business accounts to Ostella after Ostella learned this information.

[1] http://www.melissadata.com/lookups/np.asp?zip=26-4328440&submit1=Submit

40.     On December 24, 2008, Bob Stevens sent a program description of HaloScan's Js-Kit blog management system to Orly Taitz.  Taitz authorized the installation of this program on her website drorly.blogspot.com and had administrative access in the control panel of this program.  This JS-Kit had some nefarious functions and Taitz authorized those functions through the control panel. At this time, Ostella assumed it was because Taitz did **not** understand the internet. The JS-Kit was a third [3rd] party program that was added to drorly.blogspot.com. This program was collecting information from everyone who was visiting and posting at Taitz website (drorly.blogspot.com) and transferring the individuals' private data to an unknown server.  Taitz was well aware of these functions as she authorized them and had the head webmaster install the software on December 24, 2008.  Bob Stevens, Taitz Webmaster, emailed back and forth to Taitz regarding the "Haloscan" (JS Kit).  Plaintiff Ostella is unsure as to who all the emails went to as the header information was removed before being sent to Ostella.

41.     The data transfer took place via a java script program plus a **DOS command called 'put' that enables a file transfer protocol or FTP**. The java program is what caused trouble with people using Taitz's website located at drorly.blogspot.com.  Most computers are set up with security firewalls that do **not** allow easy data collection.  On January 8, 2009, Neil Sankey, a researcher that was working with Taitz since Fall 2008, emailed Ostella because Taitz authorized a

form submit to be added to drorly.blogspot.com for anonymous tips. These "tips" were to be submitted to Sankey for immediate investigation. Ostella contacted Sankey to tell him she couldn't have an anonymous form submit added unless and until Taitz allowed Ostella to have that JS-Kit removed from drorly.blogspot.com.

42.    Ostella    purchased    and    owned    the    defendourfreedoms.us, defendourfreedoms.com, defendourfreedoms.org, defendourfreedoms.net and defendourfreedoms.info websites and she maintained them on the server that she (Ostella) paid for in December 2008. Ostella brought Taitz over to use these websites, defendourfreedoms.us and defendourfreedoms.org at the end of January 2009 when drorly.blogspot.com started to redirect traffic to porn sites. Ostella was supporting Taitz because Taitz told her that Defend Our Freedoms was being set up to fight voter fraud. Ostella has always been involved with politics, campaigns and causes. So when Ostella saw the antics with the java script program on the other blog (drorly.blogspot.com) and it was never clear on how much Taitz realized was going on, Ostella took Taitz over to use Ostella's accounts at the end of January 2009. All of the DefendOurFreedoms domain names were and are on Ostella's web accounts.

43.    DefendOurFreedoms.org, owned by Lisa Ostella was hosted at Ostella's server. It was a stand-alone server on rack rental at HE.Net. Ostella had full access to this server and no other accounts were on this server but hers.

---

44.    As for DefendOurFreedoms.us, that was hosted at GoDaddy under Ostella's reseller account. This domain did **not** point to a website, it pointed to a blog. Specifically, it pointed to QuickBlogcast. This is very important to understand. A blog is **not** a website. The domain points to a database label.

45.    None of the DefendOurFreedoms websites were ever hacked or sabotaged, as Taitz claimed. Being unable to access a website due to network latency does **not** equal "hacking". Traffic, congestion, line repairs affect network flow and all can always be checked on the Internet Traffic Report[2].

46.    Another webmaster who goes by "creativeogre" and Ostella called Taitz and explained to Taitz her websites had never been hacked.

47.    On or about March 9, 2009 an issue arose with Taitz not receiving donations. (There was **no issue** with her PayPal account). Taitz's email on the blog site was changed from orly.taitz@gmail.com to orly.taitz@gmail.org. (Taitz's PayPal account **was never** changed) The PayPal donation scripting was located on the sidebar of the DefendOurFreedoms.us blogsite. There were a total of six [6] people at that time with access to the scripting of that blog. Some were moderators to the comments section, others had administrative access like Ostella and Taitz. All access levels had access to the blog sidebar. More than likely, the email was changed by accident with someone adding or deleting from the sidebar. Taitz

---

[2]  http://www.internettrafficreport.com

claimed sabotage and hacking.   That email being changed did **not** cause any monies to be **stolen** from Taitz.  There is **no** PayPal account with the email ID of orly.taitz@gmail.org.  Any donations sent to this email would have defaulted back to the sender unclaimed.  But Taitz included this incident in Dossier #5.

48.   Bob Stevens, Taitz's Head Webmaster created four [4] e-mail accounts for Taitz.  Taitz was supplied all her e-mail accounts which included, amongst others, dr.taitz@gmail.com.  Despite knowing this was her own e-mail address, Taitz sent a mass e-mailing out with the statement that her PayPal account had been "hacked" and she was accusing President Obama and his "thugs" and posted the statement on her website, and all over the Internet knowing it to be false.

49.   Despite the fact Taitz was well aware her websites and PayPal accounts had **never** been "hacked" or tampered with, on or about April 2, 2009, Taitz wrote to the U.S. Supreme Court Justices seeking help in an investigation regarding a criminal complaint she had filed with the Federal Bureau of Investigations regarding hacking into her websites and tampering of her PayPal accounts, and other things.  Taitz sent this same letter to the Secret Service and other Governmental Law Enforcement Agencies.  Taitz was aware the information she gave to the Federal Bureau of Investigations was false and she was well aware she was filing a false report.

50.    As a result of the false reports made by Orly Taitz to the Federal Government, Ostella informed Taitz that she must clear up the false reports or Ostella was removing Taitz from her websites and server.  Taitz refused to clear this matter up and refused to retract her falsified police reports.  When Taitz refused to clear up this report, Ostella told Taitz she had to move her sites.  Taitz asked Ostella to give her thirty [30] days so she would be able to find a new host.

51.    Instead of Taitz locating a new server, she gave an interview to World Net Daily on April 4th, 2009, which is posted on the Internet, elaborating on her scheme to mislead the public and law enforcement into believing her websites and PayPal accounts were "hacked" and "sabotaged".  Again, Taitz was well aware none of these events took place.

52.    Although Ostella continued informing and explaining to Taitz her websites had never been "hacked", Taitz continued to spread the falsified story. As a result, Ostella told Taitz she had to immediately move her sites.

53.    Taitz found a person by the name of Jesse Smith who was to be her new web host.  She authorized Ostella to transfer the domains to him.  Jesse Smith first contacted Ostella on April 9, 2009.  Ostella told him to initiate the transfer. Jesse Smith started the initiation on April 10, 2009 through Network Solutions. Ostella accepted the transfer request and the transfer process started.

54.     Defendourfreedoms.us was **not** a website.  It is a blog.  The domain pointed to a database label.  Normally, when a domain is transferred from a <u>website</u>, the domain just switches from the one site to the new site smoothly.  It will leave the old site still showing; but with the virtual host name.  In order to move a blog site, which is a database, the account would delete when the transfer activates.    To    protect    all    the    data,    Ostella    moved    the    account    onto DefendOurFreedoms.Net, then unlocked the domain, defendourfreedoms.us and authorized the transfer.  For whatever reason, this outraged Taitz and Taitz accused Ostella of being defiant.

55.     On April 12, 2009, Taitz went on the Evil Conservative radio, WVOX 1460 AM in NYC and told the audience that Ostella had threatened her and altered the focus of her story onto the PayPal account.  This interview is still available online.

56.     For protection purposes, Ostella locked the website access of all of her (Ostella's) websites.  Ostella changed the PayPal script in the donations button to reflect    her    own    account    on    **defendourfreedoms.net,**    **redirected** defendourfreedoms.us, the site Taitz was using, to point to a lawsuit by someone named Arnold Beverly and removed Taitz's accounts from the site.  Ostella placed notifications on all her webpages that the sites were **no** longer Taitz's Defend our Freedom Foundation, Inc. and Ostella posted **"Understanding the Internet 101"**

1
2
3
4

to ensure people understood Taitz's sites were never "hacked".  It is important to note, Ostella's PayPal account was never on the site Taitz was using, defendourfreedoms.us.

5
6
7
8
9
10
11
12

57.    Once Ostella posted "**Understanding the Internet 101**", she received a Cease [sic] and Desist from Taitz demanding that Ostella stop using the Defendourfreedoms websites, which at all times were owned by Ostella.  Taitz "Ceize [sic] and Desist was also posted by Orly Taitz all over the internet.  Taitz also sent this "Ceize" [sic] and Desist out in mass emailing.  Ostella at all times owned the domains and servers where the domains were located.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

58.    Taitz began changing her story to focus on "hacking" of her PayPal account, even though it never happened.  Taitz was literally telling people that her PayPal account was "hacked", knowing this to be false.  In fact, there is **no** way Taitz's PayPal account could have been hacked.  PayPal's servers that hold individuals' private data are **not** connected directly to the internet.  There are servers in between.  So the server an individual logs into in order to access their PayPal account, is **not** the same server that houses the information.  If someone was able to break into that system, PayPal would have had to notify all customers of a breach and shut all processes down to investigate.  Taitz literally had people thinking that her e-mail address was changed from within the PayPal account, again knowing this information to be false.

---

59.     It should be noted; Taitz **never** launched an investigation with PayPal in reference to her "hacking" allegations.  Instead, Taitz made blatant statements saying money was stolen out of her account.  Again, the entire time knowing this information was false.

60.     Because of Taitz false statements regarding her PayPal account being "hacked", Ostella posted "**Understanding the Internet 102 – PayPal Gate**".

61.     The change was in the e-mail address on the blogsite.  Originally, the PayPal donate code on the blogsite was in an encrypted script that PayPal makes available for copying and pasting into blogs and websites.  But GoDaddy made some updates in the design in **February 2009**.  The updates didn't function with the PayPal script encryption.

62.     On April 12, 2009, Ostella received an e-mail containing false and incomplete information further slandering Ostella.  This e-mail was sent to an unknown number of undisclosed recipients as well as carbon copied to Ostella and the Chicago FBI.

63.     On or about March 16, 2009, Neil Sankey by and through his son, Todd Sankey, The Sankey Firm and Sankey Investigations, Inc. began circulating an article which he had altered to say that Liberi had an extensive criminal record going back to the 1990, knowing this information to be false.  Liberi does **not** have

1   a criminal record going back to the 1990's.  It should also be noted, Neil Sankey

2   was also working under his son, Todd Sankey's Private Investigator's license.

3

4        64.    During this same time, Taitz began putting out a "supposed" criminal

5   rap sheet of Liberi.  Taitz was accusing Liberi of being a career document forger; a

6

7   thief; that Liberi had been convicted of numerous forgeries; and having a long rap

8   sheet and therefore, Liberi should **not** be working on any cases because it

9   discredits the litigation that a "career" document forger handled the documents.

10

11       65.    Taitz statements are far from the truth. **Liberi was not convicted of**

12  **forging documents or of forgery**.

13

14       66.    On or about April 8, 2009, Taitz contacted Neil Sankey, a private

15  investigator and owner of Sankey Investigations.  Sankey is "supposedly" a retired

16  Scotland Yard Officer/Detective.  Taitz by and through the Law Offices of Orly

17  Taitz hired Sankey, Sankey Investigations, Inc. and The Sankey Firm owned and

18  operated by Todd Sankey, to conduct background checks on Liberi and Ostella,

19

20  including credit reports, full Social Security numbers, date of birth's, place of

21  birth's, mother's maiden names, primary identification information, medical

22  information, sealed case information, including but **not** limited to adoption records,

23

24  paternity files and disciplinary documents, family names and addresses, maiden

25  names, friends names and addresses, financial records, credit reports, and other

26  private confidential information.  Without any type of a permissible purpose, legal

27

28

---

*Liberi, et al v. Taitz, et al*, Case No. 8:11-cv-00485 (AG), Plaintiffs First Amended Complaint       23

basis, and/or permission from Liberi and/or Ostella, Neil Sankey complied and took on the task for Orly Taitz and the Law Offices of Orly Taitz.

67.    Neil Sankey utilized his son, Todd Sankey and The Sankey Firm, Inc.'s accounts and services through Reed Elsevier, Inc., which included LexisNexis, Inc., LexisNexis Risk Solutions, Inc.; LexisNexis Group, Inc., LexisNexis Risk and Information Analytics Group, Inc., Seisint Inc. d/b/a Accurint; and ChoicePoint, Inc. [hereinafter at times "Reed Defendants"]; and Intelius, Inc. accounts to obtain all Plaintiff Liberi and Ostella's private data.

68.    Taitz was well aware of where Sankey was obtaining the information on Plaintiffs Liberi and Ostella.  In or about January 2009, Taitz posted on her website that the information she was obtaining came from "databases: LexisNexis and ChoicePoint.  LexisNexis is owned by Reed Elsevier that is headquartered in London and Amsterdam.  ChoicePoint was purchased by Reed Elsevier as well and was turned into Risk and Information Analysis Group."

69.    Neil Sankey then sent Orly Taitz an email with Liberi's full Social Security number, a partial of Liberi's old Social Security number (Liberi's Social Security number was changed in 2000 as a result of her and her son being victims of violent type crimes), Liberi's husband's name, date of birth, and partial Social Security number; a friend of Liberi's name, date of birth and partial Social Security number; Liberi's date of birth, maiden name, residence, and other private data.

1  Neil Sankey also sent this email to a reporter with World Net Daily.  Along with

2  this email of private data pertaining to Liberi, her husband and friends, Neil

3

4  Sankey included the altered article claiming Liberi had a criminal history going

5  back to 1990.  Along with Sankey's email and article was also a supposed "rap"

6

7  sheet of Liberi.  Neil Sankey was also working under his son, Todd Sankey's

8  Private Investigator's license and his son's company, The Sankey Firm, Inc.

9      70.    Defendant Orly Taitz already had Liberi and Ostella's private data

10

11  from the Reed Defendants and Defendant Intelius, Inc. as a result of her husband

12  Yosef Taitz, Daylight Chemical Information Systems, Inc. [hereinafter at times

13

14  "Daylight CIS"] and Oracle as better explained below.

15      71.    On or about April 12, 2009, Berg received an e-mail from Taitz by

16

17  and through the Law Offices of Orly Taitz stating he was to "Ceize and Desist"

18  [sic] from using Taitz's Quo Warranto, which Taitz claimed was sent to Berg

19  inadvertently.   In this same e-mail, Taitz made false allegations claiming his

20

21  (Berg's) Paralegal, Lisa Liberi had an extensive criminal record involving amongst

22  other things, identity theft.  Taitz continued that Liberi's husband was currently on

23  parole and he had set up two (2) accounts accepting credit cards on Berg's

24

25  "charitable foundation", again all of which was falsified and fabricated by Taitz.

26  Taitz in her e-mail stated as an Officer of the Court she was obligated to send the

27

28  information to the "FBI", Attorney General of California and San Bernardino