to use her name and/or to set-up email addresses and websites in her name. It was also discovered that Geoff Staples sent emails to everyone in Liberi's AOL address book as if it were Liberi sending them. All of the ownership information on this website as well as emails set-up in Liberi's name are on file with this Court. This fraudulent website is still on the internet as of today and has been updated.

122.   November 24, 2010, Liberi took all the information pertaining to this fraudulent website to her local police department. A fraud and forgery report was immediately taken and the officer forwarded the report to Orange County Sheriff's Department and the Dallas Police Department.

123.   Taitz, her followers, supporters and readers called and harassed the Santa Fe Probation Department, repeatedly filing false reports against Liberi, which were completely unfounded, unsubstantiated, and meritless, Taitz was threatening the employees of the Santa Fe Probation department to such an extent, they called in the New Mexico Attorney General and their local counsel to put a stop to Taitz and people on her behalf's harassment. Taitz would report each employee because they would **not** falsely arrest Liberi as demanded by Taitz.

124.   On February 28, 2011, Taitz as an attorney and an officer of the court by and through the Law Offices of Orly Taitz filed in the case of _Lincoln v Daylight, et al_, Case No. 8:10-cv-01573-AG -PLA, before this Court, confidential documents Taitz obtained by fraudulent means. Taitz contacted Marcee Sloan,

1   Coordinator of the PA Disciplinary Board.   Taitz told Ms. Sloan that she (Taitz)

2   was calling on behalf of Judge Guilford and the U.S. District Court, Central

3   District of California, Southern Division.   Taitz stated Judge Guilford wanted the

4   disciplinary documents against Berg.   Ms. Sloan believing Taitz was representing

5   the Judge and Court, supplied the confidential documents to Taitz.   In turn, on

6   March 1, 2011, Taitz filed these documents in the Federal Docketing System,

7   Docket No.'s 59 and 65, at 6:30 a.m. before a hearing before Judge Guilford in the

8   *Lincoln* matter.   The documents severely prejudiced Berg and Berg was denied *pro*

9   *hac vice* admission.   Berg had never been denied *pro hac vice* admission to any

10  court in the 40 years he has been practicing.

11          125.   When Taitz attempts with the Probation department failed and Taitz

12  did **not** get what she wanted, March 8, 2011, Orly Taitz as an Attorney and an

13  Officer of the Court, by and through the Law Offices of Orly Taitz filed in the San

14  Bernardino County Superior Court, Rancho Cucamonga Division in Case No.

15  FWV-028000 a Demand for an Emergency Revocation of Probation hearing, to

16  have Liberi's probation revoked.   Taitz failed to serve anyone; she did **not** even

17  bother to serve probation with her filing.   Out of courtesy since Taitz was an

18  attorney and filing this frivolous document through the Law Offices of Orly Taitz,

19  Judge Sabet granted Taitz a hearing on March 8, 2011, see the Certified copy of

20  the Court's Minute Order.   The hearing was set for March 11, 2011. Due to the

1   unavailability of Defense Counsel on March 11, 2011, the hearing was continued

2   to March 15, 2011.  Meanwhile, the Court ordered a Probation report.  Probation

3
    found out about this hearing at approximately 4:30 p.m. on the 8th of March.
4

5   Defense Counsel immediately contacted the Court and made his unavailability

6
    known.
7

8       126.   March 15, 2011, at 8:30 a.m. Judge Sabet called the Liberi case.

9   Before anyone had a chance to say anything, Judge Sabet stated Liberi was in
10
    compliance with all the terms of her probation, the Court will take **no** further
11

12  action, and closed the case.  Present at the hearings was Neil Sankey by and

13
    through Sankey Investigations, Inc. and The Sankey Firm; Orly Taitz by and
14

15  through the Law Offices of Orly Taitz; a heavy set woman believed to be Linda

16  Sue Belcher, a Defendant in the Texas Case and other Taitz supporters.
17

18      127.   The probation report provided to the Court stated that the Probation

19  Department was given a huge amount of documentation from Taitz and her

20
    supporters alleging violations against Liberi.  The report stated the San Bernardino
21

22  County Counsel, Probation and District Attorney as well as New Mexico reviewed

23  all the documentation and they all were in agreement that there was **not** any sound

24
    evidence that Liberi had done anything wrong.  The report stated Liberi had **never**
25

26  been in violation and all reports were very positive.  This of course outraged Taitz.

27
    Taitz, as an attorney and an officer of the court by and through the Law Offices of
28

Orly Taitz immediately went to the Probation Department demanding forms to complain against the probation officers.  Taitz then went to the San Bernardino County District Attorney's office and cooked up a story that the County has **not** done their job and demanded an immediate investigation.

128.  As stated, Taitz has been an attorney since 2002, she is well aware that "lay" people do **not** understand how Court processes work.  The "lay" person does **not** understand how a civil and/or criminal case is prosecuted, or what is proper and **not** proper.  Taitz depends on this to further incite against the Plaintiffs and continue placing them in a false light and to cause them severe damages.

129.  Plaintiffs Liberi and Ostella do **not** post on the Internet negatively about Taitz and never have.  In fact, Liberi is **not** a member of any forum, she is **not** a blogger, and she does **not** own any websites.  The only website Liberi has ever posted on is Mr. Berg's and that was only to post something that Berg asked her to or to answer a question.  Unfortunately, there is a lot more that Taitz has published about Ostella and Liberi.

130.  As of the date of filing of Plaintiffs within First Amended Complaint, Taitz is still publishing all over the internet false statements, allegations, stories, recitations, etc. about the Plaintiffs.  In fact, June 15, 2011, Taitz posted about Plaintiffs on her website and inferred Judge Guilford in this Court along with Judge Robreno in Pennsylvania and the Third Circuit Court of Appeals were

corrupt; and being influenced because her Anti-SLAPP Motion and Motions to dismiss were **not** granted. Taitz in this post falsely states Liberi had been convicted of 46 criminal counts and Liberi "is indeed a convicted document forger". Taitz even states "I know that since early sixties the court system was used to keep dissidents marred in bogus law suits, but there has to be an end to this". Taitz has absolutely no respect for the Plaintiffs; our Judiciary; our Judges; or our laws.

131. After this Court denied Defendants, Orly Taitz and DOFF's Anti-SLAPP Motion and Motions to Dismiss, the evening of June 15, 2011, Orly Taitz as an Attorney through the Law Offices of Orly Taitz posted on her website her letter filed on PACER seeking leave of Court to file an appeal of the Judge's Order. Taitz posted "*Unfortunately, I still have to deal with all the harassment by Berg, Kreep, Liberi, Ostella and the court system , which was known to be used as a tool of harassment of dissidents since early 60s Civil rights movement. Clearly, keeping me marred in this aids and abets Obama.*" This was also posted by Taitz on all her social network sites; sent through hundreds of RSS feeds; and posted all over the World Wide Web. The truth of the matter, it is Taitz as an attorney, an officer of the Court through the Law Offices of Orly Taitz's and as President of DOFF and Orly Taitz, Inc. who is harassing the Plaintiffs.

132. Liberi and Ostella have never been public individuals. Despite this, Taitz has continued repeatedly posting false tales; lies; Liberi's family photo;

---

Liberi's single photo; Ostella and Liberi's home addresses; telephone numbers; Liberi's full Social Security number and primary identification information repeatedly, privately tweeting the Plaintiffs, etc.

133.    Taitz distributed this information including Liberi's full Social Security number, date of birth, residency, etc. to in excess of a million [1,000,000] individuals and businesses, **including internationally**. Ostella's Social Security number showed up in full on SlaveHack.com, a gaming site that teaches people how to hack computers, other players and web servers.  Liberi and Ostella's Social Security number showed in Lexis as being used by multiple individuals.

134.    Defendant Neil Sankey is a licensed private investigator and owns and operates the Sankey Investigations, Inc. Sankey also works through his son, Todd Sankey's Company, The Sankey Firm, Inc. Neil Sankey is aware of the State and Federal laws pertaining to disclosure of third party information: the posting of Social Security numbers; the disclosure of Social Security numbers and personal identifying information; the permissible purpose requirement before disclosing any parties Social Security number, date of birth, where they reside or any personal information at all; the transmittal of Social Security numbers; State and Federal laws against endangering, harassing, threatening and attempting to destroy any person's life and/or reputation.

135.   Taitz hired Neil Sankey, The Sankey Firm, Todd Sankey and Sankey Investigations, Inc. to conduct the illegal searches of Plaintiffs Liberi and Ostella's private data.   Neil Sankey, Todd Sankey, The Sankey Firm, and Sankey Investigations had a duty to require by contract that Taitz and the Law Offices of Orly Taitz implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from use, disclosure and distribution.   See *Cal. Civ. Code* §1798.81.5(c). Unfortunately, Neil Sankey, Todd Sankey, The Sankey Firm, and Sankey Investigations, Inc. failed to comply with the laws.

136.   Since Orly Taitz as an Attorney and an Officer of the Court by and through the Law Offices of Orly Taitz and as President of Orly Taitz, Inc. and DOFF, hired and sought out the help of Neil Sankey, Todd Sankey, The Sankey Firm and Sankey Investigations, Inc., Defendants Orly Taitz, the Law Offices of Orly Taitz, Orly Taitz, Inc. and DOFF are equally liable and responsible, **not** only for all the torts listed against them (Orly Taitz, Law Offices of Orly Taitz, Orly Taitz, Inc. and DOFF), but also for all the torts cited against Neil Sankey, Sankey Investigations, Inc. Todd Sankey, and The Sankey Firm, see *Noble v. Sears, Roebuck & Co.*, 33 Cal. App.3d 654 (1973) Id at 663 (footnote omitted).

137.   Despite knowing these very laws, Sankey conspired with Taitz to destroy Liberi and Ostella, and in so doing violated every privacy protection law;

State and Federal laws for the illegal background checks; illegally accessing Plaintiffs credit reports; disclosure, posting, and transmitting a person's Social Security number and personal identifying information; and violated the permissible purpose rule. Taitz along with Neil Sankey maliciously attempted to have Liberi arrested through the Court (Malicious Prosecution), Liberi was cleared of all false allegations.

138.   Neil Sankey licensed as a private investigation violated the California Private Investigator Act ("PIA"), California Business and Profession Code §§ 7512-73. Further, the PIA which prohibits private investigators from committing "any act constituting dishonesty or fraud", see California Business and Professions Code §§ 7538(b) and 7561.4  *Wayne v. Bureau of Private Investigators and Adjusters*, 201 Cal. App. 2d 427 (1962) Id. at 437.

139.   Sankey through his investigation firm, Sankey Investigations, Inc., had a duty to abide by the California privacy laws. Because Sankey through his investigation firms, The Sankey Firm and Sankey Investigations, Inc., failed to ensure Taitz, the Law Offices of Orly Taitz, Orly Taitz, Inc. and DOFF had a permissible purpose, which they did **not** and the fact Sankey through The Sankey Firm owned by Todd Sankey obtained Plaintiffs Liberi and Ostella's private data, without a permissible purpose and/or legal basis also distributed Liberi's Social Security number and private personal identifying information through e-mail to a

1    Reporter and Taitz.  Further, since Neil Sankey, Todd Sankey, The Sankey Firm

2    and Sankey Investigations, Inc failed to issue a contract of confidentiality and

3
     ensure the confidentiality of Liberi and Ostella's Social Security number, date of
4

5    birth, and other private personal identifying information, Sankey, Sankey

6
     Investigations, Inc., Todd Sankey and The Sankey Firm are equally liable for
7

8    damages to the Plaintiffs for every violation, which is every individual and

9
     business Taitz and the Law Offices of Orly Taitz sent Plaintiffs Liberi and
10

11   Ostella's private data to.

12       140.  All of these Internet Postings, email exchanges, which were also

13
     posted on the Internet, all the false allegations, private identifying information
14

15   (primary identifying information), addresses, information as to Plaintiffs husbands

16   and children, etc. which were also filed in the Federal Docketing System by all
17

18   these Defendants will never go away.  Ten years from now, if someone "googles"

19   Liberi or Ostella's name, all this false information will resurface.  In fact, if Liberi

20   or Ostella's children's names are searched or "googled", all this false nasty
21

22   information posted by the Defendants will re-surface regarding Ostella, Liberi and

23   Berg.
24

25       141.  Furthermore, Liberi cannot fix the identity theft and use of her and her

26   husband's Social Security numbers.  Even if Liberi and her spouse apply for and

27   receive a new Social Security number, the World has all of their primary
28

_Liberi, et al v. Taitz, et al_, Case No. 8:11-cv-00485 (AG), Plaintiffs First Amended Complaint        59

1  identification information to obtain the new number(s).  The world, including

2  individuals living internationally, have all of Liberi's, Ostella's and their husbands

3

4  primary identification information to obtain their birth certificates, to apply for and

5  receive passports in their names, to obtain any type of personal confidential records

6

7  in their names, credit in their names, there is absolutely **NO** way to fix this.

8      142.   Taitz continues claiming she put all this information out about Liberi

9

10  because the public had a right to know, that Liberi was preparing documents for

11  Berg; handling Berg's fundraising; and handling donors' credit cards, all of which

12  is untrue.   Liberi went back to school and obtained her certification to be a

13

14  Paralegal.  Liberi researches the laws and drafts briefs for Berg.  Moreover, Taitz

15  employed several felons, Lucas Smith who was convicted of forgery, and Taitz

16  filed a forged document from Smith; Charles Edward Lincoln, III; Larry Sinclair;

17

18  and others, Taitz did **not** feel it necessary to disclose these individuals arrest and/or

19  conviction(s); and in fact, on radio shows lied about the individuals having felony

20  conviction(s).  It was **not** until after Taitz had disagreements with the individuals

21

22  she employed regarding their notification to the Court (Judge Carter) of Taitz

23  attempt to have them perjure testimony on her behalf, that Taitz began using their

24  pasts against them.  This completely defeats Taitz's claims regarding Liberi.

25

26      143.  Defendants DOES 1 through 186 are unknown individuals and

27  companies who provided Plaintiffs credit reports, sealed case information,

28

---

1   financial reports, background reports, Plaintiffs primary identification information,

2   including Social Security numbers, address information, places of birth, and

3

4   confidential information to the Defendants and furthered the dissemination of the

5   same.  Plaintiffs are ignorant to the names of the "DOE" Defendants as of this date.

6
7       **VI.   FACTUAL ALLEGATIONS PERTAINING TO DEFENDANTS
        REED     ELSEVIER,     INC.;    LEXISNEXIS     GROUP,     INC.;
8       LEXISNEXIS, INC.; LEXISNEXIS RISK SOLUTIONS, INC.;
        LEXISNEXIS RISK & INFORMATION ANALYTICS GROUP,
9       INC.; SEISINT, INC. d/b/a ACCURINT; CHOICEPOINT, INC.
10      (hereinafter at times "Reed Defendants"); AND INTELIUS:**

11

12      144.   Plaintiffs incorporate by reference the preceding paragraphs as if

13  fully set forth here at length.
14

15      145.   The Reed and Intelius Defendants are in the business of assembling,

16  evaluating, selling and distributing consumer credit information and other personal

17
18  and confidential consumer information obtained from Governmental, State and

19  other entities, distributing consumer credit reports and other private consumer

20  information to third parties and organizations for profit.
21

22      146.   Information contained on each individual by the Reed and Intelius

23  Defendants includes but is **not** limited to full Social Security Numbers; Family

24
25  names; Addresses; telephone numbers; Relatives names and Addresses; Places of

26  Birth; Mother's Maiden Names; Dates of Birth; Employers; Income; banking

27
28  information; Home prices and values; Marriage information; criminal records;

---

credit records including but **not** limited to loans with banks and other entities, Mortgages, credit cards, etc.; Insurance records; medical records; friends and associates names, addresses, telephone numbers, etc.; business contacts, civil and bankruptcy filing information; and many other instances of private data on individuals.

147.   The Reed and Intelius Defendants own, possess and maintain computer databases of consumer identity and credit information for use in generating and providing background and credit reports and in verifying information supplied by individuals and businesses as part of business transactions, such as credit, insurance, private investigation, employment and/or housing applications.   Defendants' databases include the credit activity and personal identifying data of millions of individuals in the United States, including Plaintiffs. The credit and personal identifying information contained on all individuals is also sold internationally and to domestic terrorists and extremists.   The Reed and Intelius Defendants obtain the information contained within their databases from other entities such State and Federal Government agencies; Mortgage Companies; Banks; and Consumer Credit Reporting Agencies.

148.   The Reed and Intelius Defendants sell consumer reports and other personal information to third parties. In so doing, communicate information relating to consumers creditworthiness, credit standing, credit capacity, character,

general reputation, personal characteristics, family ties and/or mode of living. The information is used or expected to be used by Defendants and third parties to serve as a factor in establishing consumers' eligibility for personal, family or household credit, insurance, housing or employment.

149.  The information and reports that the Reed and Intelius Defendants furnish and sell to third parties constitute "Consumer Reports" within the meaning of the FCRA, 15 U.S.C. §1681a(d), "Consumer Credit Reports" within the meaning of CCRAA, California Civil Code §1785.3(c) and "Investigative Consumer Reports" within the meaning of ICRAA, California Civil Code § 1786.2(c).

150.  The Reed and Intelius Defendants sell and furnish these consumer reports to their business customers, in interstate commerce, for monetary fees and dues.  Moreover, each of the Defendants are a "Consumer Reporting Agency" within the meaning of the FCRA, 15 U.S.C. §1681a(f), a "Consumer Credit Reporting Agency" within the meaning of the CCRAA, California Civil Code §1785.3(d) and an "Investigative Consumer Reporting Agency" within the meaning of the ICRAA, California Civil Code § 1786.2(d).

151.  As narrowly defined in the FCRA §1681b; CCRAA, California Civil Code §1785.11 and the ICRAA, California Civil Code §1786.12, the Reed and

---

Intelius Defendants may furnish and sell Consumer Reports and/or Files to any person or entity for limited purposes only.

152.   Moreover, the Reed Defendants sold and sell, without any type of verification process or permissible purpose Plaintiffs and millions of other individuals private data to third party companies such as Defendant Intelius, Inc. for resell who in turns sold and sells the private data of the Plaintiffs and the millions of other individuals to anyone with a credit card without any type of verification process and/or permissible purpose.   Furthermore, Intelius, Inc. sold and sells the private data of Plaintiffs and millions of other individuals without any type of authorization from the Plaintiffs and without Plaintiffs knowledge.

153.   In addition, all the Reed and Intelius Defendants were notified they maintained incorrect information on the Plaintiffs in their files.   Despite this, Defendants refused to investigate and/or correct the information contained in their databases pertaining to the Plaintiffs herein.  All of which was done in violation by the Defendants to 15 U.S.C. § 1681e(b).

154.   Plaintiffs had and have a strong expectation of privacy and privacy interest in their personal identifying information contained in all the reports sold, disclosed and/or distributed by the Reed and Intelius Defendants and other credit reporting agencies, upon which their eligibility for consumer credit is determined.

155.   The Reed and Intelius Defendants failed to establish reasonable security precautions or maintain reasonable administrative procedures to preclude the selling, disclosing and/or distribution of the Plaintiffs consumer reports and confidential information to the unauthorized third parties, including but **not** limited to Orly Taitz, Yosef Taitz, Daylight CIS, Oracle, Neil Sankey, Sankey Investigations, Inc., The Sankey Firm, Inc; Todd Sankey; and other private investigative entities and individuals, who in turn used the information to carry out their threats against the Plaintiffs; place the Plaintiffs and their families in dangerous situations; and to destroy the Plaintiffs and their credit data.

156.   During all times mentioned herein, the Reed and Intelius Defendants have, without authorization; consent; or a permissible purpose disclosed Plaintiffs consumer reports; financial information; family information; and personal identifying information to unauthorized third parties with **no** permissible purpose(s) for receiving and using such information. The Reed and Intelius Defendants released this information to Orly Taitz, Yosef Taitz, Daylight CIS, Oracle, Neil Sankey, Sankey Investigations, Inc., The Sankey Firm, Inc; Todd Sankey; and other private investigative entities and individuals in order for Orly Taitz to carry out her threats to harm and destroy the Plaintiffs, which she did. Moreover, Orly Taitz, wife of Defendant Yosef Taitz placed the Plaintiffs and their families in severe danger and it appears Orly Taitz may have attempted to hire a

party who resides close to Plaintiff Liberi and her family to have Plaintiffs Liberi, Ostella and their family's physically harmed and/or killed.  Defendants have thereby violated Federal and State Statutes as described herein and have further violated the privacy rights of the Plaintiffs, who have held and hold strong expectations that their credit information and personal identifying information would be at all times maintained in a secure and confidential manner.

157.  Defendant, Intelius, Inc. obtains parties private data directly from the Reed Defendants, without any type of permissible purpose, in order to sell to third parties.

158.  The information maintained and controlled by the Reed and Intelius Defendants contain incorrect information, including but **not** limited to names, Social Security numbers used, address information, credit information and many other forms of data and information which is inaccurate.

159.  Plaintiffs sought their reports from each of these Defendants. Plaintiff Ostella received an incomplete report from Lexis, nothing from Intelius or the other Defendants; Ostella's spouse did **not** receive a report from any of the Defendant; Plaintiff Liberi was **not** provided any of her reports from any of these Defendants, nor was her husband.

160.  Plaintiffs have been severely damaged and injured by the improper disclosure of their names, family names, dates of birth, full Social Security

---

*Liberi, et al v. Taitz, et al*, Case No. 8:11-cv-00485 (AG), Plaintiffs First Amended Complaint          66

numbers, mother's maiden names, residence, addresses, children's names, spouse's names, place of birth, financial records, credit reports and other private identifying information.   The Reed and Intelius Defendants have unlawfully sold, disclosed and/or distributed Plaintiffs information to unauthorized third parties in violation of, among other things, Plaintiffs privacy rights under the United States and California Constitutions, their common law and statutory rights of privacy, the FCRA, the CCRAA, the California Investigative Consumer Reporting Agencies Act (CCRAA) and the California Information Practices Act of 1977 ("IPA") as herein alleged.

161.   The Reed and Intelius Defendants knew or reasonably should have known that their consumer credit-based products and the information contained therein constitute consumer reports within the meaning of the FCRA, the CCRAA, ICRAA and the IPA, and that those reports were **not** being used by the third parties to which they were disclosed for permissible purposes under these statutes. Despite this, Defendants disclosed all this information in violation of the statutes and the privacy rights of the Plaintiffs.  Moreover, Defendants have acted willfully, recklessly and in conscious disregard of the Plaintiffs rights.   In so doing, Defendants have derived substantial income and profits from the unlawful disclosure of the Plaintiffs information.

162.   Furthermore, the Reed and Intelius Defendants failed to take protective actions with their partners and third-party vendors to protect the private confidential identifying information and credit reports of the Plaintiffs in violation of the California Information Practices Act, California Civil Code § 1798.81.5(c).

163.   The Reed and Intelius Defendants knowingly and intentionally disclosed the Plaintiffs Consumer Reports and private identifying information to unauthorized third parties, which persons and entities did **not** have permissible purpose for receiving and/or using Plaintiffs information.  Defendants knowing and intentional disclosure of Plaintiffs private data was done in a systematic manner to generate revenue and profits for the Reed and Intelius Defendants, at the expense of Plaintiffs, in conscious disregard of their rights.   The Reed and Intelius Defendants have been unjustly enriched as a result of their unlawful conduct.

164.   The Reed Defendants and Intelius also willfully, recklessly and/or in conscious disregard of the Plaintiffs rights, failed to notify Plaintiffs, whose credit reports and private identifying information was sold and disclosed to individuals and entities improperly and unlawfully.  Defendants were aware of the illegal and improper disclosure of Plaintiffs credit reports; family data; financial records; personal private identifying information; Plaintiffs children's information; Plaintiffs birth information, mother's maiden names, full social security numbers, dates of birth, spouses information, and other private confidential information of

Plaintiffs and failed to report the improper and illegal disclosure to any law enforcement agency.  Under the law, Defendants lack of notice and/or reporting to proper authorities is and was completely inadequate and incomplete.

165.   In fact, as plead in a lawsuit in Washington, D.C., Neil Sankey lost his subscription to the Reed Defendants services as a result of publishing President Barack H. Obama's Social Security number.  Although the Reed Defendants cancelled his subscription, they failed to notify Plaintiffs or any of the politicians whose data was also breached by the access of Neil Sankey through his corporation Sankey Investigations, Inc. and his son, Todd Sankey and Todd Sankey's Corporation, The Sankey Firm, Inc.

166.   In or about February 28, 2010, Counsel, Philip J. Berg, Esquire sent letters to the Reed Defendants and Intelius, Inc. informing Defendants of their breaches and the damages suffered by the Plaintiffs.  Moreover, the letter explained how Plaintiffs were victims of serious crimes as a result of the breach and therefore, Plaintiffs and their counsel demanded to have all their confidential information and their families' confidential information removed from the Reed and Intelius Defendants databases.  Linda Clark with LexisNexis Risk & Information Analytics Group, Inc.; and LexisNexis Risk Solutions, Inc. agreed to remove Plaintiffs private data from the front view only.  Defendant, Intelius, Inc.

refused to respond to the letter presented, and refused to take any type of protective measures to secure Plaintiffs private data.

167.   After Defendant LexisNexis Risk & Information Analytics Group, Inc.; and LexisNexis Risk Solutions, Inc., received Counsel's letter of February 28, 2010, Linda Clark, Director and Sr. Corporate Counsel of LexisNexis Risk & Information Analytics Group, Inc.; and LexisNexis Risk Solutions, Inc. called and set a telephone conference.  During this conference, Linda Clark stated they too were victims referring to the illegal acts of Neil Sankey, The Sankey Firm, Inc. and Sankey Investigations.  Linda Clark also asked what Counsel's clients wanted, that they would **not** pay a lot of money, but would pay something.  These statements were confirmed to Linda Clark when a draft copy of the FTC complaint was sent to her.  At **no** time did Linda Clark deny her statements.

168.   On or about April 28, 2010 the Reed Defendants were served with a subpoena by the Plaintiffs. The subpoena was seeking all searches conducted by the parties mentioned herein on Plaintiffs Lisa Liberi and Lisa Ostella.  Despite this, Counsel for the Plaintiffs, Philip J. Berg, Esquire received a letter from Jennifer L. Jung, Director and Sr. Counsel over the Information Technology Division of the Lexis Corporations located in Ohio, with a bunch of objections, which failed to pertain.  In particular, Jennifer L. Jung claimed attorney/client work product.  Plaintiffs are informed, believe and thereon allege, the truth of the matter

---

1  is the Defendants failed to maintain the search information conducted by Neil

2  Sankey; Sankey Investigations, Inc.; Todd Sankey; and The Sankey Firm Inc. a/k/a

3

4  The Sankey Firm as to the Plaintiffs.  This of course is in violation of Court Orders

5  obtained by the Federal Trade Commission.

6
7          169.  Another phone appointment was set by Linda Clark of Defendant

8  LexisNexis Risk & Information Analytics Group, Inc.; and LexisNexis Risk

9
10  Solutions, Inc. for May 18, 2010 with Jennifer L. Jung.  During this telephone

11  conversation with Plaintiffs' counsel, Philip J. Berg, Esquire, Mr. Berg asked Ms.

12  Clark and Ms. Jung about the broken links and the unencrypted log-in details.  Mr.

13
14  Berg stated the true reason for denying the subpoena was due to the fact that they

15  did **not** maintain their subscribers search criteria as they were Court Ordered to.

16  Linda Clark and Jennifer L. Jung stated the only way Mr. Berg would have known

17
18  this information is if he (Mr. Berg) had illegally accessed their Lexis database.  Mr.

19  Berg immediately notified Ms. Clark and Ms. Jung that Plaintiff Lisa Liberi in fact

20  had a Lexis account and had taken screen shots of the broken links and

21

22  unencrypted log-in details.

23          170.  Thereafter, the Reed Defendants through their Director and Sr.

24
25  Corporate Counsel in Ohio, Jennifer L. Jung, retaliated against Plaintiff Lisa Liberi

26  for filing complaints with their Corporations.  Plaintiff Liberi's Lexis account was

27  first shut down and the reason provided was that some unknown person accessed
28

---

*Liberi, et al v. Taitz, et al*, Case No. 8:11-cv-00485 (AG), Plaintiffs First Amended Complaint          71

Plaintiff Liberi's account without authorization.  Plaintiff Liberi asked Lexis to report this incident to law enforcement, but Lexis refused.  Reality was, the Reed Defendants cancelled Plaintiff Liberi's account to delete her search history, which showed the broken links and unencrypted log-in details.  Later, and after the May 18, 2010 telephone conference, Jennifer L. Jung again shut down Plaintiff Liberi's Lexis account and gave false information to Plaintiff Liberi's school claiming Plaintiff Liberi was using her Lexis account commercially.  Then, when Plaintiff Liberi attempted to renew her Lexis subscription to further her education, she was refused and therefore, had to cancel all her advanced and continuing educational courses.  The Reed Defendants knew this information was false, but did it to penalize Plaintiff Liberi and cause her severe damages for daring to file complaints against them.  Moreover, Ms. Jung wanted to ensure Plaintiff Liberi was without the ability to verify if the information contained on her had been removed as promised.  Unfortunately, the Reed Defendants were successful, as Plaintiff Liberi has been severely and seriously damaged.

171.  The Reed and Intelius Defendants were also notified of the breaches in their data as a result of using Yosef Taitz and Daylight CIS toolkit based architecture applications, including the remote toolkits with Oracle.  The Reed and Intelius Defendants were informed that Daylight CIS' toolkit based architecture applications and hardware are designed by Yosef Taitz through his Corporation,

Daylight CIS and his affiliates to illegally interface back to his or any designated servers all the information maintained on the databases, in which Daylight CIS toolkit based architecture applications, including Daylight CIS Remote toolkits, and Oracle products are implemented.    The Reed Defendants were told this included all the private personal data; credit reports; any and all information maintained on the Reed and Intelius Defendants databases and servers.    Once again, Plaintiffs were simply ignored.

332.    It is also important for this Court to be aware, The Reed Defendants are all bound under three (3) separate Federal Trade Commission (FTC) stipulated Court Orders to ensure the protection of parties private data, due to numerous other breaches in the security of individuals data.    See *U.S. v. ChoicePoint, Inc.*, Case No. 06-cv-0198, FTC File No. 052-3069; Court Order of February 15, 2006; *U.S. v. ChoicePoint, Inc.*, Case No. 06-cv-0198 Supplemental Court Order of October 14, 2009; and *In the Matter of Reed Elsevier, Inc. and Seisint, Inc. Corporations*, FTC File No. 052-3094, Docket No. C-4226 Court Order of July 29, 2008.

172.    Although it was pointed out to the Reed Defendants they were in clear violations of these three (3) Court Orders, Linda Clark, Director and Sr. Corporate Counsel of and LexisNexis Risk Solutions, Inc. and LexisNexis Risk & Information Analytics Group, Inc. stated to Plaintiffs' Counsel, Philip J. Berg, Esquire that those Orders were old and they (Defendants) simply agreed to them.

It is and was very apparent, the Reed Defendants had and have absolutely no regard for the privacy or security of Plaintiffs or any other individuals' private data and had and have absolutely **no** intent in complying with the FTC Orders against them at the cost of Plaintiffs and other individuals' privacy and security of their private data.

173.   The Reed and Intelius Defendants were well aware of the incorrect information contained in Plaintiffs and Plaintiffs spouses' files with each Defendant.   In fact, Plaintiffs Social Security numbers were flagged as "multiple people" using Plaintiffs Social Security numbers.   Defendants refused to take any corrective or investigative action.

174.   The Reed and Intelius Defendants had a duty to over-see their third party contractors and Partners, which include Defendants Oracle Corporation; Daylight CIS; and Yosef Taitz.

**VI.   FACTUAL ALLEGATIONS PERTAINING TO DEFENDANTS ORACLE, DAYLIGHT CIS and YOSEF TAITZ:**

175.   Plaintiffs incorporate the foregoing paragraphs as though fully set forth here at length.

176.   Oracle Corporation ("Oracle") is in the business of selling business software and hardware systems, including operating systems to more than three hundred and seventy thousand [370,000] customers, including the Reed and Intelius Defendants.   Oracle Corporation and Defendants Daylight CIS and Yosef

Taitz are partners as are Yosef Taitz; Daylight CIS and Elsevier MDL, which is part of the Reed Elsevier, Inc. Corporations. Defendant Taitz designed the Unix Server peripherals supplied to Oracle Corporation through their partnered company Sun Microsystems.

177. Oracle's Relational Database Software was designed based off the Daylight Web Development architecture.

178. Defendant Taitz through his Corporation Defendant Daylight CIS created and sells applications. Daylight CIS' Toolkits provide programming interface applications which are built into the design of Oracle. The design allows for remote applicational execution, cross site scripting, remote interface and injection attacks. It is on record with U.S. Homeland Security that Oracle was aware of these vulnerabilities for years.

179. Defendants Oracle Corporation, Daylight CIS and Yosef Taitz are engaged in providing software technologies; servers and operating systems to the Reed and Intelius Defendants. It was also discovered that Daylight CIS shared a mail server with Intelius, Inc. Daylight CIS and Yosef Taitz are partnered with Oracle Corporation and Reed Elsevier, Inc. under Elsevier MDL. Yosef Taitz through his Corporation, Daylight CIS developed and released "DayCart™, an application using the unique extensibility features of Oracle8i designed to fully integrate the molecular structures and reactions in an Oracle8i database server