Philip J. Berg, Esquire
Pennsylvania I.D. 9867
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone:  (610) 825-3134
E-mail: philjberg@gmail.com          *Attorney  for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
SOUTHERN DIVISION**

| | |
|---|---|
| LISA LIBERI, et al,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>MS. TAITZ, et al,<br><br>                    Defendants. | CIVIL ACTION NUMBER:<br><br>**8:11-cv-00485-AG (AJW)**<br><br>**PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT, YOSEF TAITZ, INDIVIDUALLY, MOTION TO DISMISS**<br><br>Date of Hearing:   August 29, 2011<br>Time of Hearing:  10:00 a.m.<br>Location:            Courtroom 10D |

## I.    FACTS:

1. Plaintiffs originally filed suit on May 4, 2009 in Pennsylvania against the Defendants, including Defendant Yosef Taitz ["Mr. Taitz"].  At the time suit was filed, Plaintiffs had reason to believe Taitz ran and had control of his wife's website/blog, http://drorly.blogspot.com as had set-up her dental practice website.

2.     In or about the beginning of 2010, Plaintiffs learned that Defendant Orly Taitz ["Ms. Taitz"] had obtained Plaintiffs private data from Defendants, Reed Elsevier, Inc.; LexisNexis, Inc.; LexisNexis Risk Solutions, Inc.; LexisNexis ChoicePoint, Inc.;

LexisNexis Seisint, Inc. d/b/a Accurint; LexisNexis Group, Inc.; LexisNexis Risk and Information Analytics Group, Inc. ["Reed Defendants"]; and Defendant Intelius, Inc. The private data obtained, without any type of permissible purpose, include but is **not** limited to Plaintiffs Social Security Numbers; dates of birth; place of birth; mother's maiden names; spouses names; Plaintiffs Lisa Liberi ["Liberi"] and Lisa Ostella ["Ostella"] maiden names; address information; credit data; credit reports; financial data and other private data ["Private Data"] that is maintained by State and Government entities. Defendant Ms. Taitz used the private data of the Plaintiffs to carry out her threat and destroy them.

3. During this same time, Plaintiffs also discovered that Mr. Taitz was partnered with Elsevier MDL, which is part of Reed Elsevier, Inc. owner and operator of all the Reed Defendants. It was also discovered that Mr. Taitz was partnered with Oracle.

4. Mr. Taitz started the company Defendant Daylight Chemical Information Systems, Inc. ["Daylight"], in or about 1986. Mr. Taitz is the "hands-on" CEO of Daylight. Mr. Taitz was involved with the design of Daylight's programs, software and hardware.

5. Mr. Taitz and Daylight's toolkits provide programming interface applications which are built into the design and used with Oracle. The design allows for remote application execution, cross site scripting, remote interface and injection attacks, which are vulnerabilities which Oracle, Daylight and Taitz were aware of.

6. Interestingly, Mr. Taitz states in his Motion to Dismiss ["MTD"] that these statements are confusing, tenuous, and unintelligible. Mr. Taitz then states, "what are

"interface applications" or "remote application execution", "cross site scripting", "remote interface" and "injection attacks"? ["Taitz MTD, pgs. 1-2, Para "B1 through B3"].  Mr. Taitz counsel must **not** have conferred with their client, Mr. Taitz, and/or does **not** understand the workings of databases and/or the Internet.  These statements, phrases and language were taken directly from Mr. Taitz's Manuals he prepared for Defendant Daylight's products, located on his website at daylight.com. *See* also Exhibits "141" through "144", Mr. Taitz's Manuals for Daylight filed with this Court on May 20, 2011 and appearing in this Court's Docket as Docket Entry No.'s ["Dkt no."] 190, 190-26 and 190-27.

7.     Mr. Taitz then attempts to confuse this Court with twisting what the Plaintiffs have outlined in their Complaint.  Mr. Taitz states *"... he through Daylight CIS has designed computer systems which other Defendants ...have allegedly used to violate plaintiffs' privacy rights...Plaintiffs do not allege that Moving defendant personally, has done anything violating their privacy rights but instead that his corporation, Daylight CIS" has designed and provided computer systems which others then allegedly used to invade Plaintiffs privacy..."* [Taitz MTD Para. I-B, sub paragraph 4, on pg. 3]  This is **not** what Plaintiffs stated at all.

8.     Plaintiffs stated on pages 75-76 of their FAC at paragraph 179, "The use of DayCart with the Oracle server, unlocks the access of existing Oracle applications and tools (such as dual program interface plug in applications)", which is Mr. Taitz's own wording in his Press Release pertaining to Daylight and Oracle, of July 13, 2000. *See* Declaration of Philip J. Berg.

9. Plaintiffs state on page 76 of their FAC, paragraph 179, "…Daylight's DayCart and toolkit based architecture applications and hardware are designed by Mr. Taitz…to illegally interface back to his or any designated servers all the information maintained on the databases…which Daylight's…toolkit based architecture applications, including Daylight's remote toolkits and Oracle products are implemented. The Reed Defendants all use Daylight's toolkit based architecture applications and Oracle on their databases…"

10. Plaintiffs on page 76 of their FAC at paragraph 181 state, "All of the Plaintiffs private data including…full Social Security numbers; names; addresses; phone numbers; family information; spouses information; medical information; financial records; credit data; and other private data that is contained on the Defendants Reed and Intelius databases were interfaced back to Mr. Taitz, Daylight and or their designated servers." And, on page 77, "Mr. Taitz through Daylight…shared the private information of Plaintiffs' with his wife, Ms. Taitz. Ms. Taitz placed Plaintiffs private data all over the Internet…The private data of Plaintiffs was shared with over a million individuals…"

11. Mr. Taitz does **not** deny what is plead in Plaintiffs FAC, instead he claims he **cannot** be held liable, that the liability falls on his Corporation, Daylight and the other Defendants, including Ms. Taitz, Oracle and specifically, the Reed Defendants and Intelius.

12. Plaintiffs have undoubtedly stated what Mr. Taitz has personally done.

//
//
//
//

II.   **THIS COURT'S REVIEW OF A MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE "*Fed. R. Civ. P.*" 12(b)(6)**

13.   Dismissal under *Fed. R. Civ. P.* 12(b)(6) is appropriate only where the Complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory**."** *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a Motion to Dismiss, the Plaintiff's allegations are taken as true, and the Court must construe the Complaint in the light most favorable to the Plaintiffs. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* (2009) 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Leave to Amend must be Granted unless it is clear that the Complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir.1995).

III.   **THE MAY 2009 STIPULATION DOES NOT PERTAIN TO THE ALLEGATIONS PLEAD AGAINST MR. TAITZ IN PLAINTIFFS FAC:**

14.   Mr. Taitz claims in his Motion that he should be Dismissed per a Stipulated Agreement of May 2009 [Taitz MTD, p. 5 ¶A].  The Stipulated Agreement of May 28, 2009 does **not** pertain to the allegations plead against Taitz in Plaintiffs FAC.

15.     Mr. Taitz was named in the May 4, 2009 Complaint and Plaintiffs Stipulated to Dismiss the May 4, 2009 Complaint against him.  Plaintiffs were required to Seek Leave to join Mr. Taitz back into the lawsuit **arising out of the allegations' in the Complaint filed May 4, 2009**, *See* Stipulation of May 28, 2009, pages 1-2, ¶ 2.  The allegations and cause of actions outlined in Plaintiffs FAC against Mr. Taitz are **not** "**arising out of the allegations in the Complaint filed May 4, 2009**".  Plaintiffs did **not** have knowledge of the events surrounding the allegations and/or causes of actions plead against Mr. Taitz in their FAC until early 2010, which is a year after the Stipulated Agreement was entered into.  The allegations' pending against Mr. Taitz in Plaintiffs FAC are newly discovered and had nothing to do with any of the allegations plead in Plaintiffs Complaint filed May 4, 2009.  Therefore, the requirements of the Stipulated Agreement of May 28, 2009 do **not** apply to Plaintiffs FAC.

## IV.     THE LAW OFFICES OF PHILIP J. BERG AND GO EXCEL GLOBAL:

16.     Plaintiffs agreed to the dismissal of Plaintiff, the Law Offices of Philip J. Berg and were awaiting the Stipulated Agreement from counsel for Defendants Orly and Mr. Taitz.  To date, the undersigned has never received the Stipulated Agreement.

17.     Go Excel Global was an existing company and still is without any customers or clients.

## V.     MR. TAITZ IS LIABLE AS A MATTER OF LAW FOR ALL DAMAGING ACTS CONDUCTED BY HIM THROUGH DAYLIGHT:

18.     Mr. Taitz moves to Dismiss Plaintiffs FAC against him claiming Plaintiffs failed to plead any actionable conduct of Mr. Taitz which Mr. Taitz personally engaged in.

Defendant tries to substantiate his claims by falsely stating that Plaintiffs plead that Daylight, Mr. Taitz's Corporation, "enabled other Defendants (Reed and Intelius) to allegedly invade Plaintiffs privacy rights and that Daylight enabled Ms. Taitz to allegedly defame Plaintiffs. [Taitz MTD, pgs 7-8, ¶D].  This is untrue and a false representation of Plaintiffs FAC.

19.  Plaintiffs incorporate by reference the preceding paragraphs and their FAC as if fully set forth here at length.

20.  All of the Plaintiffs private data contained and maintained by the Reed Defendants and Defendant Intelius databases were interfaced back to Mr. Taitz and Daylight on servers designated by them. *See* Plaintiffs FAC, pg. 76, ¶181.  Mr. Taitz provided Plaintiffs private data to Ms. Taitz.  Ms. Taitz placed Plaintiffs private data all over the Internet...and provided to over a million individuals, business and companies. *See* Plaintiffs FAC at pg. 77.

21.  The cases cited by Mr. Taitz do **not** pertain to the within action. *Capon v. Monopoly Game LLC*, (2011) 193 Cal. App. 4th 344 cited on Taitz's MTD, pg. 8 pertains to the "alter ego doctrine" and does **not** support Mr. Taitz's position, but instead the position of the Plaintiffs.  This case states the Court in *Communist Party v. 522 Valencia, Inc.*, (1995) 35 Cal.App.4th 980 [41 Cal. Rptr. 2d 618] explained the alter ego doctrine as follows:

"Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors. Under the alter ego doctrine, however, **where a corporation is used by an individual or individuals, or by another corporation, to**

---

**perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation**. [Citations.]" Id. at p. 993. [emphasis added]. "[A]lter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize its corporate status would defeat the rights and equities of third parties; it is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form." _Communist Party_, at p. 994; _See_ also _Brooklyn Navy Yard Cogeneration Partners v. Superior Court_, (1997) 60 Cal.App.4th 248, 257–258 [70 Cal. Rptr. 2d 419] [to justify application of the alter ego doctrine, it must be shown that " 'inequitable results will follow if the corporate separateness is respected' "]; _Opp v. St. Paul Fire & Marine Ins. Co_., (2007) 154 Cal.App.4th 71, 76 [64 Cal. Rptr. 3d 260]; _Aladdin Oil Corp. v. Perluss_, (1964) 230 Cal.App.2d 603, 614 [41 Cal. Rptr. 239] ["The _alter ego_ doctrine is applied to avoid inequitable results not to eliminate the consequences of corporate operations. [Citations.]"

22.     Mr. Taitz **cannot** hide behind his Corporation's liability.  The Plaintiffs have met their burden, Mr. Taitz's Motion to Dismiss must be Denied.

## VI.     PLAINTIFFS HAVE PROPERLY PLEAD THEIR INVASION OF PRIVACY CAUSES OF ACTIONS:

23.     Plaintiffs incorporate by reference the preceding paragraphs and their FAC as if fully set forth here at length.

24.     The privacy tort encompasses four (4) distinct types of invasion of privacy. These torts are: (a) intrusion upon the Plaintiffs seclusion or solitude or into their private affairs; (b) public disclosure of embarrassing private facts about the Plaintiffs; (c) publicity which places the Plaintiffs in a false light in the public's eyes; and (d) appropriation of the Plaintiffs name and likeness. _See Forsher v. Bugliosi_, (1980) 26 Cal. 3d 792 [163 Cal.

Rptr. 628]; _Hill v. National Collegiate Athletic Assn_., (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834].

25.     Legally recognized privacy interests are generally of two (2) classes.  The first is the interest in precluding the dissemination or misuse of sensitive and confidential information otherwise known as informational privacy. _Hill v. National Collegiate Athletic Assn_., (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834]; _Leibert v. Transworld Systems, Inc._, 32 Cal. App. 4th 1693 [39 Cal. Rptr. 2d 65] (1st Dist. 1995).  Informational privacy encompasses the right to be free from the wrongful publicizing of Plaintiffs private affairs and activities, which are outside of legitimate public concern. _Smith v. National Broadcasting Co._,  138 Cal. App. 2d 807   (2nd Dist. 1956).  It is the right for Plaintiffs to live their lives in seclusion, _Schwartz v. Thiele_, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966), without being subjected to unwarranted and undesired publicity. _Smith v. National Broadcasting Co._, 138 Cal. App. 2d 807807 (2nd Dist. 1956); _Schwartz v. Thiele_, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966).

A.     **Plaintiffs 1st Cause of Action –Willful and Intentional Intrusion upon Plaintiffs Solitude, Seclusion and Private Affairs - Invasion of Privacy…:**

26.     Plaintiffs incorporate by reference their FAC at pages 74-83, Heading VI and Plaintiffs First Cause of Action, ¶¶ 144-204 as if fully set forth here at length.

27.     Mr. Taitz claims that he did **not** personally invade Plaintiffs privacy, that instead it was his Corporation, Defendant Daylight.  And, Mr. Taitz **cannot** be held liable for "other Defendants alleged invasion of privacy".  Mr. Taitz states that Plaintiffs have failed to state anything personal that he has done to invade their privacy and he **cannot** be

held liable for Daylight's computer systems which other Defendants (Reed and Intelius) used to violated Plaintiffs Privacy [Taitz MTD, p. 9, ¶E, ll. 7-22.   This is **not** what Plaintiffs Complaint states.

28.     Plaintiffs plead on page 76 of their FAC, paragraph 179 "…Daylight's DayCart and toolkit based architecture applications and hardware are designed by Mr. Taitz…to illegally interface back to his or any designated servers all the information maintained on the databases…which Daylight's… and Oracle products are implemented. The Reed Defendants all use Daylight's toolkit based architecture applications and Oracle on their databases…"

29.     Plaintiffs on pg 76 of their FAC at ¶ 181 state, "All of the Plaintiffs private data including…full Social Security numbers; names; addresses; phone numbers; family information; spouses information; medical information; financial records; credit data; and other private data that is contained on the Reed and Intelius Defendants databases were interfaced back to Mr. Taitz, Daylight and their designated servers."  And, on page 77, "Mr. Taitz…shared the private information of Plaintiffs' with his wife, Ms. Taitz.  Ms. Taitz placed Plaintiffs private data all over the Internet…The private data of Plaintiffs was shared with over a million individuals…"

30.     Ms. Taitz in her MTD on behalf of Defend our Freedoms Foundations, Inc. filed July 11, 2008, appearing as Dkt No. 283 states all through her Motion that she obtained Plaintiffs private data, outlined above, directly from the Reed Defendants and Defendant Intelius.  This is and was impossible as Ms. Taitz did **not** and does **not** have accounts with these particular Defendants, nor did she know how to utilize and work with

them.  Ms. Taitz could have only obtained Plaintiffs private data from her husband, Mr.

Taitz.  This is also confirmed by Dr. Charles Edward Lincoln, III in his Declaration filed

July 25, 2011, Dkt. No. 313, see ¶6 at p. 3, ¶¶ 11-12 at p. 5, ¶¶ 14-15 at p. 6, and ¶¶ 17-19,

pgs. 7-9.

31.     Mr. Taitz states that Plaintiffs **cannot** sue him under the First and Fourteenth

Amendment of the U.S. Constitution, however, fails to cite to the common law Intrusion

upon Plaintiffs Solitude, Seclusion and Private Affairs and Invasion of Privacy, protections

afforded by the California Constitution.

### i.   **Plaintiffs U.S. Constitutional and California Constitutional Claims:**

32.     Mr. Taitz claims the U.S. Constitution does **not** recognize the right to sue a

private individual under the First and Fourteenth Amendments to the U.S. Constitution.

The United States Constitution, First Amendment states in pertinent part:

"**Invasion of Privacy. —** Governmental power to protect the privacy interests of its
citizens by penalizing publication or authorizing causes of action for publication
implicates directly First Amendment rights. Privacy is a concept composed of several
aspects. See, e.g., *William Prosser, Law of Torts 117* (4th ed. 1971); *Prosser, Privacy,
48 Calif. L. Rev.* 383 (1960); *J. Thomas McCarthy, The Rights of Publicity and Privacy*
(1987); *Thomas Emerson, The System of Freedom of Expression* 544–61 (1970). **It
should be noted that we do not have here the question of the protection of one's
privacy from governmental invasion**.  As a tort concept, it embraces at least four
branches of protected interests: protection from unreasonable intrusion upon one's
seclusion; from appropriation of one's name or likeness; from unreasonable publicity
given to one's private life; and from publicity which unreasonably places one in a false
light before the public. Restatement (Second), of Torts §§ 652A–652I (1977). These
four branches were originally propounded in *Prosser's* 1960 article (supra n.),

incorporated in the Restatement, and now "routinely accept[ed]." McCarthy, supra n.160, Sec. 5.8[A]." "The Constitution does not explicitly mention any right of privacy. But, in a line of decisions, going back perhaps as far as *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251 [11 S. Ct. 1000, 35 L. Ed. 734] (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, **does** exist under the Constitution."

ii.  **The Elements for Intrusion have been met by the Plaintiffs:**

33.  All through Plaintiffs Complaint, Plaintiffs clearly stated they had an expectation of privacy into their private affair and private data outlined in Plaintiffs Complaint, which were intruded on by Mr. Taitz; Mr. Taitz intentionally intruded into Plaintiffs private affairs without any knowledge or permission of the Plaintiffs, by improperly accessing the data maintained on the Reed Defendants and Defendant Intelius databases; the intrusion was highly offensive to a reasonable person, as it included among other things, the illegal obtaining of, disclosure and dissemination of Plaintiffs private data; Plaintiffs asserted how they were harmed, identity theft, hospitalizations, medical bills, harassment, etc.; and that the intrusion caused the damages. *See* Plaintiffs FAC, pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 78-83, ¶¶ 186-204.  Plaintiffs have met their burden.

**B.**  **Plaintiffs Second Cause of Action, Public Disclosure of Private Facts is Properly Plead against Defendant Yosef Taitz:**

34.  Mr. Taitz attempts to claim Plaintiffs failed to allege facts necessary to prevail on their 2nd Cause of Action. [Taitz MTD, pages 10-12, ¶F].  Mr. Taitz again twists what Plaintiffs Complaint actually states.

---

35.     Plaintiffs incorporate by reference as if fully set for here at length all the preceding paragraphs and their FAC, pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 83-85, ¶¶ 205-214.

36.     The elements of the tort of public disclosure of private facts are: (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate concern. *Taus v. Loftus*, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

37.     Mr. Taitz had access to Plaintiffs private data, which was maintained by the Reed Defendants and Defendant Intelius.  The information was "scripted" by Mr. Taitz to interface back to servers designated by Mr. Taitz's, including private server's, all of which are in his possession.  Mr. Taitz accessed Plaintiffs private data and gave it to his wife, Ms. Taitz, so she was able to carry out her threats against the Plaintiffs, including her threat to destroy Plaintiff Lisa Liberi. *See* the Declaration of Dr. Charles Edward Lincoln, filed July 25, 2011, appearing as Dkt No. 313, the Declaration of Liberi [Dkt No. 314] and Ostella [Dkt No. 312] filed July 25, 2011.

38.     Ms. Taitz **not** only repeatedly published Plaintiffs private information and details all over the Internet, she sent it by mass emailing, mass mailing, posted it on third party websites and blogs, sent it through her social networks, friends feed, before its news, posted it on all her Facebook accounts, tweeted it, sent it through hundreds of RSS feeds and sent it internationally, Plaintiffs private details was provided to millions of individuals and discussed in radio interviews, newspaper articles, etc., this element has been met. *Schwartz v. Thiele*, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966); *Timperley v.*

*Chase Collection Service*, 272 Cal. App. 2d 697 [77 Cal. Rptr. 782] (2d Dist. 1969);

*Kinsey v. Macur*, 107 Cal. App. 3d 264 [165 Cal. Rptr. 608].

39.     The second element is that the information disclosed must be private, this is satisfied by Taitz's disclosure of Plaintiffs date of birth, Social Security numbers, maiden names, spouses names, mother's maiden names, relatives names, place of birth, financial data, income, credit details, confidential court proceedings and information, etc., thus, this element has been met. *Forsher v. Bugliosi*, (1980) 27 Cal. 3d 792 [26 Cal. 3d 792]; *Sipple v. Chronicle Publishing Company*, 154 Cal. App. 3d 1040 [201 Cal. Rptr. 665 (1st Dist. 1984); *Wasser v, San Diego Union*, (1987) 191 Cal. App. 3d 1455, [236 Cal. Rptr. 772]; *Taus v.Loftus*, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

40.     The third element is it must be offensive to a reasonable person.  There is **no** question that the illegal obtaining and publication of Plaintiffs private data repeatedly would be objectionable and offensive to any normal person, thus this element has been met. *Forsher v. Bugliosi*, (1980) 27 Cal. 3d 792 [26 Cal. 3d 792]; *Sipple v. Chronicle Publishing Company*, 154 Cal. App. 3d 1040 [201 Cal. Rptr. 665 (1st Dist. 1984); *Wasser v, San Diego Union*, 191 Cal. App. 3d 1455, [236 Cal. Rptr. 772]; *Taus v. Loftus*, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

41.     The fourth element the facts disclosed was **not** of pubic importance or concern.  Plaintiffs Ostella and Liberi have never acceded to a position of public notoriety, Plaintiffs addresses, maiden names, Social Security numbers, dates of birth, spouses names, mother's maiden names, father's names, relative's names, financial information, income, places of birth, etc. ["private data"] are extremely intrusive and are **not** of public

concern. This type of private data clearly lack newsworthiness, thus, Plaintiffs have met their burden. _Shulman v. Group W. Productions, Inc._, (1998) 18 Cal. 4th 200 [74 Cal. Rptr. 2d 843]; _Morrow v. Los Angeles Unified School Dist._, 149 Cal. App. 4th 1424 [57 Cal. Rptr. 3d 885 (2d Dist. 2007).

42.  Plaintiffs have met their burden. Therefore, Mr. Taitz's Motion to Dismiss must be Denied.

### C.  **Plaintiffs Third Cause of Action – False Light Invasion of Privacy:**

43.  Mr. Taitz claims that Plaintiffs Third Cause of Action is "Superfluous" and should be dismissed because it is "reiterative of Plaintiffs Eighth Cause of Action for Defamation. Taitz further claims Plaintiffs failed to allege the five (5) elements and there was **no** indication that Taitz's false statements about Plaintiffs was ever made to the general public. Mr. Taitz further twists, as all through-out his Motion what Plaintiffs have plead in their FAC [Taitz MTD, pages 12-14, ¶G].

44.  Plaintiffs incorporate by reference the preceding paragraphs and their FAC at pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 85-90, ¶¶ 215-225 as if fully set forth here at length.

45.  The tort of invasion of privacy accord protection to a fundamentally different interest than that safeguarded by the law of defamation, although each interest may be invaded by the same publication in a particular case. _Warner v. Times Mirror Co_., 193 Cal. App. 2d 111 [14 Cal. Rptr. 208] (2nd Dist. 1961); over-turned on other grounds in _Kopellas v. Kofman_, (1969) 1 Cal. 3d 20 [81 Cal. Rptr. 360], _Operating Engineers Local 3 v. Johnson_, 110 Cal. App. 4th 180 [1 Ca. Rptr. 3d 552] (1st Dist. 2003).

46.     False Light – Invasion of Privacy, concerns one's piece of mind, while the right of freedom from defamation concerns primarily one's reputation. *Operating Engineers Local 3 v. Johnson*, 110 Cal. App. 4th 180 [1 Ca. Rptr. 3d 552] (1st Dist. 2003).

47.     Plaintiffs plead that the Reed Defendants and Defendant Intelius maintained incorrect information on the Plaintiffs.  Mr. Taitz accessed Plaintiffs private data on the Reed Defendants and Defendant Intelius' databases and in turn gave it to Ms. Taitz.  Ms. Taitz published it all over the Internet, by mass emailing, had delivery, mass mailing, social networks, tweeted it, etc. many false tales about the Plaintiffs as outlined in Plaintiffs FAC.

48.     Plaintiffs suffered damages, as plead in their Complaint, including but **not** limited to harassment, hospitalizations, damage to their reputation, loss of business, etc. and were exposed to hatred, contempt, ridicule, embarrassment, humiliation, and obloquy.

49.     All of the elements to Plaintiffs First, Second and Third Causes of Action in their FAC have been met and they have clearly stated a claim which relief can be granted. For this reason, Mr. Taitz's Motion must be Denied.

## VII.   PLAINTIFFS FIFTH CAUSE OF ACTION, WILLFUL VIOLATION OF THE CAL. INFORMATION PRIVACY ACT (IPA), *CAL. CIV. CODE* §1798.53:

50.     Mr. Taitz states that Plaintiffs cause of action fails because Plaintiffs "FAC does not contain allegations that the allegedly disclosed information was obtained from a Government Agency".  That Plaintiffs failed to allege that any Defendant "(including the moving Defendant) obtained any "information maintained by a state agency or from 'records' within a 'system of records'…maintained by a federal government agency…"

Defendant Mr. Taitz then twists what Plaintiffs FAC pleads and actually states. [Taitz MTD, pages 14-15, ¶H].

51.    Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 94 through 102, Fifth and Sixth Causes of Actions, ¶¶ 239-264.

52.    Mr. Taitz intentionally intruded into Plaintiffs private affairs without any knowledge or permission of the Plaintiffs, by improperly accessing the data maintained on the Reed Defendants and Defendant Intelius databases; the intrusion was highly offensive to a reasonable person, as it included among other things, the illegal obtaining of, disclosure and dissemination of Plaintiffs private data.

53.    Plaintiffs state on page 95, ¶ 243 "as alleged herein, Defendants violated Plaintiffs Liberi and Ostella's privacy rights and *Cal. Civ. Code* §1798.53 by intentionally illegally accessing, disclosing and distributing their privileged credit reports, financial data, primary identifying information and other confidential information outlined in the preceding paragraphs, which Defendants knew or reasonably should have known was obtained from personal information maintained by State and Federal agencies, to unauthorized third parties."  Plaintiffs all through their FAC outline their private data as their Social Security numbers, mother's maiden names, Plaintiffs maiden names, financial data, credit reports, father's names, address information, and other private data.  Plaintiffs plead all through their FAC that at all times mentioned, Plaintiffs believed their private data was secure and maintained private.  In each cause of action outlined in Plaintiffs FAC,

Plaintiffs re-alleged all their preceding paragraphs as if set forth in each cause of action at full length.

54.     In the unreported opinion of <u>*Witriol v. LexisNexis Group*</u>, 2006 WL 1128036 (N.D. Cal. Apr 27, 2006) Defendants Moved to Dismiss the case claiming these same as Mr. Taitz herein and right on point.  The Court found:

"… Plaintiff has pled that Defendants impermissibly disclosed *"privileged* financial, credit and other *confidential* information." "…the Court finds Plaintiff's allegations that the information was both confidential and privileged are sufficient to meet this element of his § 1798.53 claim. *See Jennifer M. v. Redwood Women's Health Ctr.,* 88 Cal.App. 4th 81, 89 (Cal.Ct.App.2001) ("Section 1798.53 sets out a civil action for damages for the intentional disclosure of *confidential* personal information[.]") (emphasis added). In the same vein, although Defendants contend that Plaintiff failed to allege that the information that Defendants' purportedly disclosed was obtained from information maintained by a state agency or from records within a system of records maintained by a federal agency, Defendants note that Plaintiff expressly alleged that the information "was obtained from personal information maintained by state and/or federal agencies[.]" Defendants' contention that such an allegation is insufficient to "establish" this element of Plaintiff's claim is misplaced. At the pleading stage, merely alleging the necessary element of a claim is sufficient to satisfy Rule 8 of the Federal Rule of Civil Procedure…In sum, the Court finds that Plaintiff has sufficiently pled that the information was not otherwise available to the public and was obtained from information maintained by a state agency or from federal agency records."

55.     Plaintiffs have met all elements of Cal. Civ. Code §1798.53, thus properly pleading this cause of action, therefore, Defendant Mr. Taitz's Motion must be Denied.

//
//
//

---

## VIII. **PLAINTIFFS DEFAMATION, SLANDER AND LIBEL CLAIMS AGAINST MR. TAITZ ARE PROPERLY PLEAD:**

56.    Mr. Taitz states in his MTD that Plaintiffs Defamation, Libel and Slander Causes of Action must be Dismissed because Plaintiffs failed to plead that Mr. Taitz published anything defamatory. [Taitz MTD, p.17, ¶ J].

57.    Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular, pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 111-118, ¶¶ 281-300.

58.    The Reed Defendants and Defendant Intelius maintained incorrect information on the Plaintiffs which included wrong Social Security numbers, so it appeared Plaintiffs were using more than one Social Security number, wrong dates of birth, wrong names and other incorrect data.  Mr. Taitz accessed Plaintiffs private data on the Reed Defendants and Defendant Intelius' databases and in turn gave it to his wife, Ms. Taitz.  Defendant Ms. Taitz published it all over the Internet, by mass emailing, had delivery, mass mailing, social networks, tweeted it, etc. many false stories, as outlined in Plaintiffs Complaint.

59.    Mr. Taitz provided Plaintiffs private data to Ms. Taitz as fact and **not** merely statements, thus he is liable. _Gertz v. Robert Welch, Inc._, 418 U.S. 323 (1974).  Publication of a false statement means communication to some third person, in this case to Ms. Taitz, who understood the defamatory meaning of the statement and its application to the person to whom reference was made. _Smith v. Los Angeles Bookbinders Union No. 63_, 133 Cal. App. 2d 486 [286 P.2d 194] (2d Dist. 1955); _Neary v. Regents of University of California_,

185 Cal. App. 3d 1136 [230 Cal. Rptr. 281] (1st Distr. 1986); 6A Cal. Jur. 3d, Assaults and Other Willful Torts §153 (2003).

60.     Plaintiffs have met their burden.  Therefore, Mr. Taitz's Motion to Dismiss must be Denied.

## IX.   <u>MR. TAITZ ACTIONS IN RETRIEVING PRIVATE DATA HE WAS NOT PRIVY TO AND SHARING IT WITH DEFENDANT MS. TAITZ TO HARM THE PLAINTIFFS CONSTITUTES "OUTRAGEOUS CONDUCT":</u>

61.     Mr. Taitz claims that Plaintiffs Ninth Cause of Action for Intentional Infliction of Emotional Distress fails because Plaintiffs have failed to plead that Mr. Taitz "personally, engaged in any actionable conduct" [Taitz MTD, pgs. 18-19, ¶ K].

62.     Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular, pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 118-122, ¶¶ 301-314.

63.     Mr. Taitz caused Plaintiffs Liberi and Ostella mental and emotional suffering and distress by intentionally disclosing Plaintiffs private and privileged data, obtained from the Reed Defendants and Defendant Intelius to Ms. Taitz to carry out her threats and harms against the Plaintiffs, which is intentional and outrageous conduct.  *Guillory v. Godfrey*, 134 Cal. App. 2d 628 [286 P.2d 414] (2d Dist. 1955); *Spackman v. Good*, (1966) 245 Cal. App. 2d 518 [54 Cal. Rptr. 78].  Mr. Taitz's actions were extreme and outrageous invasion of Plaintiffs mental and emotional tranquility and were beyond all bounds of decency. *State Rubbish Collectors Ass'n v. Siliznoff*, (1952) 38 Cal. 2d 330 [240 P. 2d 282], *Ochoa v. Superior Court*, (1985) 39 Cal. 3d 159 [216 Cal. Rptr. 661].

64.    Mr. Taitz's actions were intentional and reckless conduct with the intent to inflict injury and he engaged in the acts with the realization that injury would occur upon Plaintiffs.  As a result, Plaintiffs suffered severe emotional distress and Plaintiff Liberi also suffered medical complications due to the severe emotional distress.   Plaintiffs have fulfilled all the elements for recovery for Mr. Taitz's Intentional Emotional Distress and Mr. Taitz is liable to Plaintiffs. _Ross v. Creel Printing & Publishing Co._, 100 Cal. App. 4th 736 [122 Cal. Rptr. 2d 787] (1st Dist. 2002); _Hassoldt v. Patrick Media Group, Inc._, 84 Cal. App. 4th 153 [100 Cal. Rptr. 2d 662] (2d Dist. 2000); _Ess v. Eskaton Properties, Inc._, 97 Cal. App. 4th 120 [118 Cal. Rptr. 2d 240] (3d Dist. 2002); _Christensen v. Superior Court_, (1991) 54 Cal. 3d 868 [2 Cal. Rptr. 2d 79].

## X.    **MR. TAITZ IS LIABLE TO PLAINTIFFS FOR HIS UNFAIR BUSINESS PRACTICES:**

65.    Mr. Taitz moves to Dismiss Plaintiffs Eighteenth Cause of Action for his violations of unfair business practices in violation of _California Business and Professions Code_ §17200, et seq. against him claiming Plaintiffs have failed to state a claim against him. [Taitz MTD, pgs. 21-23, ¶N].

66.    Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 150-151, ¶¶ 390-397.

67.    Mr. Taitz claims that this cause of action is based on Plaintiffs alleged violations of the Fair Credit Reporting Act, California Reporting Agencies Act and California Investigative Consumer Reporting Agencies Act, which Taitz was never named. [Taitz MTD, pg. 22].

68.     Plaintiffs Eighteenth Cause of Action is based on Mr. Taitz's illegal access to Plaintiffs private data and the disclosure of such to other Defendants by his false and deceptive practices of having private data maintained on clientele's databases scripted to "interface" back to private servers which Mr. Taitz designates.  This includes private data in which Mr. Taitz is **not** supposed to be privy to or utilize for his personal gain. This cause of action is further based on Mr. Taitz's violation of the Information Privacy Act, *Cal. Civ. Code* §1798.53; Invasion of Privacy Torts, etc. and Plaintiffs have suffered injuries in fact and loss of money, as plead in Plaintiffs FAC, all of which are unfair Business practices.

69.     The Unfair Competition Law ["UCL"] prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." § 17200.   Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc*., (2002) 27 Cal.4th 939, 949 [119 Cal. Rptr. 2d 296, 45 P.3d 243]; *See Hall v. Time Inc.*, (2008) 158 Cal.App.4th 847, 852 [70 Cal. Rptr.3d 466].  In service of that purpose, the Legislature framed the UCL's substantive provisions in " 'broad, sweeping language' " *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., (1999) 20 Cal.4th 163, 181 [83 Cal. Rptr. 2d 548, 973 P.2d 527]; *See* also *Bank of the West v. Superior Court*, (1992) 2 Cal.4th 1254, 1266 [10 Cal. Rptr. 2d 538, 833 P.2d 545**]** ["The Legislature intended this 'sweeping language' to include ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' "] and provided "courts with broad equitable powers to remedy violations" *ABC Internat. Traders, Inc. v.*

*Matsushita Electric Corp.*, (1997) 14 Cal.4th 1247, 1270 [61 Cal. Rptr. 2d 112, 931 P.2d 290].

70.    Plaintiffs have satisfied the requirements of *Cal. Business and Professions Code* §17200, et seq. and the requirements outlined in <u>Schulz v. Neovi Data Corp.</u>, (2005) 129 Cal. App. 4th 1.

71.    For these reasons, Defendant Mr. Taitz's Motion to Dismiss must be Denied.

**XI.    PLAINTIFFS NINETEENTH CAUSE OF ACTION AGAINST MR. TAITZ FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS PROPERLY PLEAD**:

72.    Mr. Taitz Moves to Dismiss this particular claim against him claiming Plaintiffs have failed to state a claim against him. [Taitz MTD, pg. 23, ¶O].

73.    Plaintiffs incorporate the preceding paragraphs and their FAC at pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 152-158, ¶¶ 398-416 as if fully set forth here at length.

74.    Negligent conduct like that of Mr. Taitz's disclosure of Plaintiffs private data, taken from his customer's databases, including the Reed Defendants and Defendant Intelius, and providing it to Ms. Taitz warrants damages for Negligent Infliction of Emotional Distress. *See* <u>Ochoa v. Superior Court</u>, (1985) 39 Cal. 3d 159 [216 Cal. Rptr. 661].

**XII.    PLAINTIFFS HAVE PLEAD A SUFFICIENT CLAIM AGAINST MR. TAITZ FOR RES IPSA LOQUITOR:**

75.    Mr. Taitz Moves to Dismiss this claim against himself claiming Plaintiffs failed to state a claim against him; Res Ipsa Loquitor only applies to accidents; and

Plaintiffs failed to cite any duty of care that Mr. Taitz owed to them. [Taitz MTD pgs 23-24, ¶P].

76.    Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length. In particular pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 158-160, ¶¶ 417-423.

77.    Under the theory of Res Ipsa loquitur, Plaintiffs must show that: (1) the cause of the injury is of a kind that does **not** occur ordinarily in the absence of someone's negligence; (2) the injury was caused by an instrumentality within the exclusive control of the defendant or of a *third party for whose conduct the defendant is legally responsible;* and (3) that the injury was **not** due to any voluntary action or contribution on the part of appellants. *See Shahinian v. McCormick*, (1963) 59 Cal.2d 554, 559; see also *Levy-Zentner Co. v. Southern Pac. Transportation Co*., (1977) 74 Cal.App.3d 762, 777-780.

78.    Mr. Taitz owes a duty to all individuals, including Plaintiffs that any private data he has access to from his duties and jobs performed on third parties databases, remains confidential and secure at all times. Mr. Taitz failed to comply and instead accessed Plaintiffs private data, gave it to Ms. Taitz, who published it all over the world wide web, by mass emailing, mass mail, tweeted it, posted it on third party websites, and used the information to carry out her threats to harm and destroy the Plaintiffs.

79.    The Res Ipsa Loquitor rule provides an illustration. The doctrine shifts the burden of producing evidence so that Plaintiffs may bring tort claims even if they lack specific proof that their injury was caused by negligence of a particular Defendant. *See Ybarra v. Spangard*, (1944) 25 Cal.2d 486, 489 [154 P.2d 687]; *Byrne v. Boadle,* (1863)

159 Eng.Rep. 299, 300, as cited in *Brown v. Poway Unified School Dist.*, (1993) 4 Cal.4th 820, 825–826 [15 Cal. Rptr. 2d 679, 843 P.2d 624]. "In California, the doctrine of Res Ipsa Loquitor is defined by statute as 'a presumption affecting the burden of producing evidence.' *Evid. Code,* § 646, subd. (b.).)" (*Ibid.*; *See Ybarra v. Spangard*, supra, 25 Cal.2d 486, 489, quoting *Prosser* on Torts.) In order for Plaintiffs to prove all the negligence caused by Defendants including Mr. Taitz, Daylight and Oracle, it is imperative that Plaintiffs obtain and receive **all the source codes** utilized by Defendants Mr. Taitz, Daylight and Oracle from January 1, 2009 to current on **all** their products in use by Defendant Intelius and the Reed Defendants and extensive Electronic Discovery must take place.

## XIII. CONCLUSION:

80.    For The reasons outlined herein, Defendant Mr. Taitz's Motion to Dismiss must be Denied in its entirety. It the Court is inclined to Grant any part thereto, Plaintiffs respectfully Request that they be allowed to Amend their Complaint.

Respectfully submitted,


Dated:  August 4, 2011                          /s/ Philip J. Berg
                                                _____
                                                Philip J. Berg, Esquire
                                                Pennsylvania I.D. 9867
                                                **LAW OFFICES OF PHILIP J. BERG**
                                                555 Andorra Glen Court, Suite 12
                                                Lafayette Hill, PA 19444-2531
                                                Telephone:  (610) 825-3134
                                                E-mail: philjberg@gmail.com

                                                *Attorney for Plaintiffs*