Philip J. Berg, Esquire
Pennsylvania I.D. 9867
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone: (610) 825-3134
E-mail: philjberg@gmail.com          *Attorney in pro se and for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LISA LIBERI, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> MS. TAITZ, et al, <br><br> Defendants. | CIVIL ACTION NUMBER: <br><br> **8:11-cv-00485-AG (AJW)** <br><br> **PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT, ORACLE CORPORATION'S MOTION TO DISMISS** <br><br> Date of Hearing: September 12, 2011 <br> Time of Hearing: 10:00 a.m. <br> Location:  Courtroom 10D |

## I.    FACTS:

1.    Defendant Oracle Corporation ["Oracle"] spends the first four and a half [4 ½] pages in their Motion to Dismiss ["MTD"] claiming Plaintiffs' claims in their First Amended Complaint ["FAC"] are **not** cognizable and are implausible and must be dismissed. [Oracle's MTD pg. 1, ¶1].  Oracle states that Plaintiffs allegations against Oracle are based on "their theory that Orly Taitz…obtained their private data from various databases managed by other defendants using Oracle's relational database software…Plaintiffs speculate that Taitz' husband is able to access those databases

remotely…and that he used his access improperly to procure private information about plaintiffs. This is precisely the type of implausible invention that cannot survive a motion to dismiss" [Oracle MTD, pg. 1, ¶2]. Contrary to Oracle's claims, Plaintiffs' claims are as Oracle claims, however, Plaintiffs did plead that Defendants Yosef Taitz ["Mr. Taitz"] and Daylight Chemical Information Systems, Inc. ["Daylight'] could access the databases remotely and Defendants Mr. Taitz and Daylight never disputed or denied these facts. Instead, Mr. Taitz blamed Daylight, Defendant Intelius and the Reed Defendants for any and all access of private data. *See* Defendant Mr. Taitz's Motion to Dismiss filed July 19, 2011 Docket Entry No. ["Dkt. No."] and Dkt. No. 329 filed by Mr. Taitz August 1, 2011.

2.      Oracle contends that Plaintiffs "speculate" that Mr. Taitz and Daylight can access databases maintained by the "Reed and Intelius Defendants" and that Mr. Taitz used this access to obtain Plaintiffs private information [Oracle MTD, pg. 3, ¶2]. What Plaintiffs actually said was that Mr. Taitz and Daylight had access to the private data maintained on the Intelius and Reed Defendants databases with entry through Oracle as Mr. Taitz and Daylight had top end user and back-door entry access with their partner,, Oracle, again which Mr. Taitz never denied, instead he attempted to point the blame for the damages caused to Plaintiffs as a result thereof.

3.      In Oracle's footnote 2, Oracle claims "Plaintiffs speculate that version "8i" of Oracle's database software incorporated code authored by Daylight CIS…This implausible allegation is supported by **no** facts whatsoever". Again, **not** true and dishonest. What Plaintiffs stated in their FAC, on pages 75-76, ¶179 beginning with line 24 is "Yosef Taitz…Daylight CIS developed and released "DayCart[TM], an application

---

using the unique extensibility features of Oracle8i designed to fully integrate the molecular structures and reactions in an Oracle8i database server environment". The use of DayCart with the Oracle server, unlocks the access of existing Oracle applications and tools (such as dual program interface plug in applications) and footnotes Daylight's press release of July 13, 2000. And, to further elaborate, Daylight explains at http://www.daylight.com/meetings/emug00/Kappler/intro.html "**What is DayCart?** "**A:** tools for integration of Daylight into Oracle database server environment". "**DayCart** integration of Daylight into Oracle database server environment. Extend Oracle clients and servers with new chemistry capabilities". "**Can I integrate the Daylight system with Oracle?** Yes, In cooperation with Oracle, Daylight has created DayCart [TM]…" and at http://www.daylight.com/meetings/mug00/Delany/cartridge.html "Daylight Chemistry Cartridge". "The Daylight Chemistry cartridge is the result of several distinct collaborative development projects within Oracle… whitepaper/presentation will describe Oracle Cartridge technology, review the history of the internal and external projects which have contributed to this effort, describe the current Daylight Cartridge implementation, and provide a view of future direction for the cartridge…From Oracle's point of view…expand the capabilities of the Oracle database server in a modular, supportable fashion…Interest generated from Mug98 **resulted in an ongoing Daylight/Oracle project to generate requirements, develop a cartridge prototype, and refine its functionality.**" [emphasis added]. People involved in the Daylight/Oracle project "Johnny Peterson (Oracle CH)…Norah MacCuish (Daylight)… The paradigm for this version of the cartridge was the "dayblob". Dayblob is a complete set of chemical functions and a merlin-pool-like

implementation of chemical searching **embedded completely within Oracle**." [emphasis added].  "The Daylight toolkit interfaces with the Oracle server via callouts to the "extproc" utility.  This utility provides a RPC-like mechanism for performing C-language function calls.  Daylight toolkit code is wrapped inside this RPC layer for each of the defined cartridge functions."  As can be seen, Oracle's arguments to mislead this Court fail.  Plaintiffs pleading in their FAC against Oracle are far from "speculative or speculation" and Plaintiffs have plead sufficient facts to support their Causes of Action against Oracle.

4.     Oracle has failed to ensure their products are safe.  The tools that Oracle provides allow flexibilities which have exploits and make their software unstable.

5.     As noted, there is **<u>no</u>** question into Oracle knowing Mr. Taitz and Daylight were seeking and obtaining Plaintiffs data, as it is and was Oracle's responsibility to over-see their partners, contractors and products created by third-parties and their partners, including Mr. Taitz and Daylight, with the assistance of Oracle, and that Oracle has "embedded into their software technologies" used on their clientele's databases, including the Intelius and Reed Defendants.

## II.     <u>THIS COURT'S REVIEW OF A MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE "*Fed. R. Civ. P.*" 12(b)(6):</u>

6.     Dismissal under *Fed. R. Civ. P.* 12(b)(6) is appropriate only where the Complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory**."** <u>*Mendiondo v. Centinela Hosp. Med. Ctr.*</u>, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a Motion to Dismiss, the Plaintiff's allegations are taken as true, and the

Court must construe the Complaint in the light most favorable to the Plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, (2009) 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Leave to Amend must be Granted unless it is clear that the Complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr*., 66 F.3d 245, 248 (9th Cir.1995).

### III.    THE *TWOMBLY* AND *IQBAL* PLEADING STANDARDS:

7.    Oracle on pages 4-5 of their MTD, state Plaintiffs FAC is **not** plausible on its face because it fails to allege facts that rise above the level of mere speculation.   This simply is **not** the case.

8.    Plaintiffs incorporate by reference their FAC and the previous paragraphs as if fully set forth here at length.

9.    Under the notice pleading standard, a complaint will **not** be dismissed for failure to state a claim so long as it puts the Defendant on notice of the gravamen of the Plaintiff's Complaint and includes a "short and plain statement of the claim showing that the pleader is entitled to relief", Federal Rules of Civil Procedure ["*Fed. R. Civ. P.*"] 8.  In *Bell Atl. Corp. v. Twombly*, (2007) 550 U.S. 554, 570, 127 S. Ct. 1955, the Court held

"This "plausibility" standard, while not a "probability" standard, requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."

10. Plaintiffs pled and explained at pages 74-83 of their FAC that "Oracle…is in the business of selling business software…including operating systems to more than…370,000 customers, including the Reed and Intelius Defendants". *See* ¶176. "Oracle's Relational Database Software was designed based off the Daylight Web Development architecture". *See* ¶177 and Oracle's website at http://www.oracle.com/us/corporate/index.html. "Daylight CIS' Toolkits provide programming interface applications which are built into the design of Oracle. The design allows for remote applicational execution, cross site scripting, remote interface and injection attacks." *See* ¶178. As explained above, Oracle worked on the project with Daylight to establish Daylight's DayCart[TM]. *See* http://www.daylight.com/meetings/emug00/Kappler/intro.html; http://www.daylight.com/meetings/mug00/Delany/cartridge.html; Exhibits "141 through "144", Dkt No. 190 filed May 20, 2011 and the Declaration of Philip J. Berg.

11. Plaintiffs pled "Yosef Taitz through his Corporation, Daylight CIS developed and released "DayCart™, an application using the unique extensibility features of Oracle8i designed to fully integrate the molecular structures and reactions in an Oracle8i database server environment. The use of DayCart with the Oracle server, unlocks the access of existing Oracle applications and tools (such as dual program interface plug in applications.)". *See* Daylight Chemical Information Systems, Inc. (Daylight CIS) Press Release of July 13, 2000. "… Daylight CIS DayCart and toolkit based architecture

applications and hardware are designed …to illegally interface back to his or any designated servers all the information maintained on the databases, in which Daylight CIS toolkit based architecture applications, including Daylight CIS Remote toolkits, and Oracle products are implemented. The Reed Defendants all use Daylight CIS toolkit based architecture applications and Oracle on their databases". *See* Plaintiffs FAC at ¶179.

12.    Plaintiffs at ¶180 of their FAC explained how Yosef Taitz, using the vulnerabilities of Oracle and DayCart, accessed and obtained Plaintiffs private data off the Intelius and Reed Defendants databases, servers and computer systems. Oracle was well aware of the vulnerabilities as Homeland Securities United States Internet Readiness Team ("U.S. Cert") put out alerts regarding the vulnerabilities in Oracle's products which can be found on Homeland Securities website at http://search.us-cert.gov/search?q=oracle&btnG=Search&entqr=0&ud=1&sort=date%3AD%3AL%3Ad1&output=xml_no_dtd&oe=UTF-8&ie=UTF-8&client=default_frontend&proxystylesheet=default_frontend&site=default_collection.

13.    Plaintiffs' claims against Oracle are far from "speculation" or "conclusory statements", they are facts taken from their own writings; white papers; websites; and government notifications. Defendant Yosef Taitz did **not** deny the allegations plead, instead, he cast blame upon Daylight and Oracle. *See* Yosef Taitz's Motion to Dismiss filed July 19, 2011, Dkt. No. 296 and August 1, 2011, Dkt. No. 329.

14.    For the reasons outlined, Plaintiffs have met their burden and Oracle's MTD must be Denied.

//
//

**IV.   PLAINTIFFS HAVE PROPERLY PLEAD THEIR FIRST, SECOND AND THIRD CAUSES OF ACTION; ORACLE IS LIABLE FOR THE BREACH OF PLAINTIFFS PRIVACY RIGHTS AS ORACLE FAILED TO TAKE PROTECTIVE STEPS AND PROTECT THE PRIVATE DATA IN WHICH THEY HAD ACCESS:**

15.    Plaintiffs incorporate by reference the preceding paragraphs and their FAC as if fully set forth here at length.

16.    The privacy tort encompasses four (4) distinct types of invasion of privacy. These torts are: (a) intrusion upon the Plaintiffs seclusion or solitude or into their private affairs; (b) public disclosure of embarrassing private facts about the Plaintiffs; (c) publicity which places the Plaintiffs in a false light in the public's eyes; and (d) appropriation of the Plaintiffs name and likeness. *See* *Forsher v. Bugliosi*, (1980) 26 Cal. 3d 792 [163 Cal. Rptr. 628]; *Hill v. National Collegiate Athletic Assn*., (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834].

17.    Legally recognized privacy interests are generally of two (2) classes.  The first is the interest in precluding the dissemination or misuse of sensitive and confidential information otherwise known as informational privacy. *Hill v. National Collegiate Athletic Assn*., (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834]; *Leibert v. Transworld Systems, Inc.*, 32 Cal. App. 4th 1693 [39 Cal. Rptr. 2d 65] (1st Dist. 1995).  Informational privacy encompasses the right to be free from the wrongful publicizing of Plaintiffs private affairs and activities, which are outside of legitimate public concern. *Smith v. National Broadcasting Co.*, 138 Cal. App. 2d 807807 (2nd Dist. 1956.  It is the right for Plaintiffs to live their lives in seclusion, *Schwartz v. Thiele*, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966), without being subjected to unwarranted and undesired publicity. *Smith v.*

*National Broadcasting Co.*, 138 Cal. App. 2d 807807 (2nd Dist. 1956); *Schwartz v. Thiele*, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966).

### A. Plaintiffs 1st Cause of Action –Willful and Intentional Intrusion upon Plaintiffs Solitude, Seclusion and Private Affairs - Invasion of Privacy…:

18.    Plaintiffs incorporate by reference their FAC at pages 74-83, Heading VI and Plaintiffs First Cause of Action, ¶¶ 144-204, and the preceding paragraphs as if fully set forth here at length.

19.    Oracle claims Plaintiffs are seeking relief "for invasion of privacy by way of alleged violations of the U.S. and California Constitution…"these plaintiffs contend that all defendants intentionally intruded on their "solitude, seclusion and private affairs" in violation of "the Fourteenth Amendment due process right, recognized by the Supreme Court as protecting a general right of privacy within family, marriage and motherhood..." Oracle then claims they can't be held as they are a private actor. [Oracle MTD, pg. 5]. Oracle's recitation of Plaintiffs First Cause of Action is **not** correct and a manipulation of what and how it was plead.

20.    *Invasion of privacy*, a tort of "Invading one's Solitude, Seclusion and/or Private Affairs" is based in common law. *Forsher v. Bugliosi*, (1980) 26 Cal. 3d 792 [163 Cal. Rptr. 628]; *Hill v. National Collegiate Athletic Assn*., (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834].

21.    What Plaintiffs pled was "Willful and Intentional Intrusion upon Liberi, Berg and Ostella's Solitude, Seclusion and Private Affairs – Invasion of Privacy, including violations of the First and Fourteenth Amendments of the U.S. Constitution." And, **not** as

Oracle is attempting to have this Court believe that Plaintiffs Invasion of Privacy was based only on the First and Fourteenth Amendment.

22.     Oracle attempts to cloud the issues by stating Orly Taitz is who violated Plaintiffs Rights to Privacy and invaded Plaintiffs privacy.  Oracle is correct in part, but Oracle is failing to acknowledge that Orly Taitz could **not** have damaged the Plaintiffs had Defendants Yosef Taitz and Daylight through their back-doors in Oracle made Plaintiffs private information available to Defendant Orly Taitz.  Thus, Oracle is equally at fault for Plaintiffs damages just as the Intelius and Reed Defendants are.  Oracle had and has a duty to ensure the protection of all private data in which they, their contractors and partners have access to by way of their customer's, stays confidential and **not** used to harm others.

23.     Oracle can be held responsible for the invasions into Plaintiffs privacy as a private actor under the First and Fourteenth Amendment of the U.S. Constitution.

**"Invasion of Privacy. —** Governmental power to protect the privacy interests of its citizens by penalizing publication or authorizing causes of action for publication implicates directly First Amendment rights.  Privacy is a concept composed of several aspects. *See*, e.g., *William Prosser, Law of Torts 117* (4th ed. 1971); *Prosser, Privacy, 48 Calif. L. Rev.* 383 (1960); *J. Thomas McCarthy, The Rights of Publicity and Privacy* (1987); *Thomas Emerson, The System of Freedom of Expression* 544–61 (1970).  **It should be noted that we do not have here the question of the protection of one's privacy from governmental invasion**.  As a tort concept, it embraces at least four branches of protected interests: protection from unreasonable intrusion upon one's seclusion; from appropriation of one's name or likeness; from unreasonable publicity given to one's private life; and from publicity which unreasonably places one in a false light before the public.  Restatement (Second), of Torts §§ 652A–652I (1977). These four branches were

originally propounded in *Prosser's* 1960 article (supra n.), incorporated in the Restatement, and now "routinely accept[ed]." McCarthy, supra n.160, Sec. 5.8[A]." "The Constitution does not explicitly mention any right of privacy.  But, in a line of decisions, going back perhaps as far as <u>Union Pacific R. Co. v. Botsford,</u> 141 U.S. 250, 251 [11 S. Ct. 1000, 35 L. Ed. 734] (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, **does** exist under the Constitution."

24.    Plaintiffs have met their burden and therefore, Oracle's Motion to Dismiss must be Denied.

**B    <u>The Elements for Intrusion Have been Met by the Plaintiffs</u>:**

25.    All through Plaintiffs Complaint, Plaintiffs clearly stated they had an expectation of privacy in their private affairs and private data outlined in Plaintiffs Complaint, which were intruded on and allowed intrusion by Oracle's unstable software; Oracle's software flexibilities allowed for the intrusion into Plaintiffs private affairs without any knowledge or permission of the Plaintiffs, by improperly securing Plaintiffs private data maintained on the Intelius and Reed Defendants databases; the intrusion was highly offensive to a reasonable person, as it included among other things, the illegal obtaining of, disclosure and dissemination of Plaintiffs private data; Plaintiffs asserted how they were harmed, identity theft, hospitalizations, medical bills, harassment, etc.; and that the intrusion caused the damages. *See* Plaintiffs FAC, pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 78-83, ¶¶ 186-204.  Plaintiffs have met their burden.

//
//
//
//
//

//

### C.  Plaintiffs Second and Third Causes of Action, Public Disclosure of Private Facts and False Light Invasion of Privacy are Properly Plead against Oracle:

26.  Oracle claims Plaintiffs Second and Third Causes of Action are duplicative and fail because they too are deficient. [Oracle MTD, pages 7-8, ¶F]. Oracle again twists what Plaintiffs Complaint actually states.

27.  Plaintiffs incorporate by reference as if fully set forth here at length all the preceding paragraphs and their FAC, pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 83-90, ¶¶ 205-225.

28.  The elements of the tort of public disclosure of private facts are: (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate concern. _Taus v. Loftus_, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

29.  Oracle architecture built with daylight web development tools created accesses, Oracle failed to cure. Oracle was aware of and allowed the illegal access to Plaintiffs private data, which was maintained by the Intelius and Reed Defendants, Oracle's customers. Oracle allowed its partners, third party vendors and others illegal access into their customer's databases, servers and computer systems through its vulnerabilities. This includes the Intelius and Reed Defendants databases, servers and computer systems. In turn, their partner and third party vendor, Defendants Yosef Taitz and Daylight illegally accessed Plaintiffs private data maintained on the Intelius and Reed Defendants databases, servers and computer systems through Oracle. Defendant Yosef Taitz provided Plaintiffs private data illegally obtained to Defendant Orly Taitz ["Ms.

Taitz"] to carry out her threats against the Plaintiffs, including her threat to destroy Plaintiff Lisa Liberi. *See* the Declaration of Dr. Charles Edward Lincoln, filed July 25, 2011, appearing as Dkt No. 313; the Declaration of Liberi [Dkt No. 314]; and Ostella [Dkt No. 312] filed July 25, 2011.

30.     Ms. Taitz **not** only repeatedly published Plaintiffs private information and details all over the Internet, she sent it by mass emailing, mass mailing, posted it on third party websites and blogs, sent it through her social networks, friends feed, before its news, posted it on all her Facebook accounts, tweeted it, sent it through hundreds of RSS feeds and sent it internationally, Plaintiffs private details was provided to millions of individuals and discussed in radio interviews, newspaper articles, etc., this element has been met. *Schwartz v. Thiele*, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966); *Timperley v. Chase Collection*, Service, 272 Cal. App. 2d 697 [77 Cal. Rptr. 782] (2d Dist. 1969); *Kinsey v. Macur*, 107 Cal. App. 3d 264 [165 Cal. Rptr. 608].

31.     The second element is that the information disclosed must be private, this is satisfied by Taitz's disclosure of Plaintiffs date of birth, Social Security numbers, maiden names, spouses names, mother's maiden names, relatives names, place of birth, financial data, income, credit details, confidential court proceedings and information, etc., thus, this element has been met. *Forsher v. Bugliosi*, (1980) 27 Cal. 3d 792 [26 Cal. 3d 792]; *Sipple v. Chronicle Publishing Company*, 154 Cal. App. 3d 1040 [201Cal. Rptr. 665 (1st Dist. 1984); *Wasser v. San Diego Union*, 191 Cal. App. 3d 1455, [236 Cal. Rptr. 772]; *Taus v. Loftus*, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

32.     The third element is it must be offensive to a reasonable person.  There is **no** question that Oracle's allowance of their contractors and partners to the private data maintained on Oracle's customers, including Intelius and Reed Defendants databases, servers and computer systems through Oracle's vulnerabilities is offensive to any person. The repeated publication of Plaintiffs private data illegally obtained from the Intelius and Reed Defendants through Oracle's vulnerabilities  would be objectionable and offensive to any normal person, thus this element has been met. *Forsher v. Bugliosi*, (1980) 27 Cal. 3d 792 [26 Cal. 3d 792]; *Sipple v. Chronicle Publishing Company*, 154 Cal. App. 3d 1040 [201Cal. Rptr. 665 (1st Dist. 1984); *Wasser v, San Diego Union*, 191 Cal. App. 3d 1455, [236 Cal. Rptr. 772]; *Taus v. Loftus*, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

33.     The fourth element the facts disclosed were **not** of public importance or concern.  Plaintiffs Ostella and Liberi have never acceded to a position of public notoriety, Plaintiffs addresses, maiden names, Social Security numbers, dates of birth, spouses names, mother's maiden names, father's names, relative's names, financial information, income, places of birth, etc. ["private data"] are extremely intrusive and are **not** of public concern.  This type of private data clearly lack newsworthiness, thus, Plaintiffs have met their burden. *Shulman v. Group W. Productions, Inc.*, (1998) 18 Cal. 4th 200 [74 Cal. Rptr. 2d 843]; *Morrow v. Los Angeles Unified School Dist.*, 149 Cal. App. 4th 1424 [57 Cal. Rptr. 3d 885 (2d Dist. 2007).

34.     False Light – Invasion of Privacy, concerns one's piece of mind, while the right of freedom from defamation concerns primarily one's reputation. *Operating Engineers Local 3 v. Johnson*, 110 Cal. App. 4th 180 [1 Ca. Rptr. 3d 552] (1st Dist. 2003).

---

35.     Plaintiffs pled that the Intelius and Reed Defendants maintained incorrect information on the Plaintiffs, which Mr. Taitz illegally accessed and obtained through Oracle's vulnerabilities.  In turn, Mr. Taitz  provided it to Ms. Taitz.  Ms. Taitz published it all over the Internet, by mass emailing, hand delivery, mass mailing, social networks, tweeted it, etc. many false tales about the Plaintiffs as outlined in Plaintiffs FAC.

36.     Plaintiffs suffered damages, as plead in their Complaint, including but **not** limited to harassment, hospitalizations, damage to their reputation, loss of business, etc. and were exposed to hatred, contempt, ridicule, embarrassment, humiliation, and obloquy.

37.     All of the elements to Plaintiffs First, Second and Third Causes of Action in their FAC have been met and they have clearly stated a claim which relief can be granted. For this reason, Oracle's Motion must be Denied.

**V.     PLAINTIFFS FIFTH and SIXTH CAUSE OF ACTION, WILLFUL VIOLATION OF THE CAL. INFORMATION PRIVACY ACT (IPA), CAL. CIV. CODE §§1798.53 AND 1798.85:**

38.      Oracle claims that Plaintiffs cause of action fails because Plaintiffs  FAC does **not** contain allegations that Oracle violated the California Information Practices Act. [Oracle MTD pgs 8-9].  Oracle further elaborates that Plaintiffs failed to allege facts they (Oracle) ever possessed Plaintiffs Social Security numbers.

39.     Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 94 through 102, Fifth and Sixth Causes of Action, ¶¶ 239-264.

40.     Plaintiffs pled at ¶243 "…Defendants violated Plaintiffs Liberi and Ostella's privacy rights and *Cal. Civ. Code* §1798.53 by intentionally illegally accessing, disclosing and distributing their privileged credit reports, financial data, primary identifying information, and other confidential information, outlined in the preceding paragraphs, which Defendants knew or reasonably should have known was obtained from personal information maintained by State and Federal agencies, to unauthorized third parties." Defendants intentionally disclosed Plaintiffs Liberi and Ostella's personal information without their knowledge or consent.  The unauthorized access, disclosure and distribution of such private data and information are offensive and objectionable to a reasonable person of ordinary sensibilities.

41.     And at ¶ 251, "Defendants used their business practices of accessing private personal information, including but **not** limited to full Social Security numbers, dates of birth, place of birth, mother's maiden names, Plaintiffs maiden names, credit reports, driver's license information, financial data, sealed court case information, photograph's, primary identification information, husband's names, Social Security numbers and dates of birth, children's names and identity, and other private data outlined herein, without a permissible purpose, legal basis, authorization and/or consent."

42.     Oracle allowed the illegal access of Plaintiffs private data maintained on Oracle's clients, the Intelius and Reed Defendants, databases, servers and computer systems by their partner and vendor, Yosef Taitz.  The illegal access was utilized through the back-door configurations built into the web development tools collaborated with Oracle and Daylight. As a result and as plead in Plaintiffs FAC, Plaintiffs were injured and

severely damaged. Plaintiffs have met their burden. *Jennifer M. v. Redwood Women's Health Ctr.*, 88 Cal.App. 4th 81 (Cal. Ct. App. 2001). Oracle's Motion to Dismiss must be Denied.

## VI. PLAINTIFFS DEFAMATION, SLANDER AND LIBEL CLAIMS AGAINST ORACLE ARE PROPERLY PLED:

43. Oracle claims in its MTD that Plaintiffs Defamation, Libel and Slander Causes of Action must be dismissed because Plaintiffs failed to plead that Oracle published anything defamatory. [Oracle MTD, p.10].

44. Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length. In particular, pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 111-118, ¶¶ 281-300.

45. Plaintiffs pled that the Intelius and Reed Defendants maintained incorrect information on the Plaintiffs which included wrong Social Security numbers, so it appeared Plaintiffs were using more than one Social Security number, wrong dates of birth, wrong names and other incorrect data. Oracle failed to fix the vulnerabilities they were aware of, and failed to take protective measures to ensure their contractors and partners, including but **not** limited to Yosef Taitz and Daylight, could **not** and would **not** access and furnish Plaintiffs or anyone else's private data. In turn, Defendants Yosef Taitz and Daylight provided Plaintiffs private data to Ms. Taitz. Defendant Ms. Taitz published it all over the Internet, by mass emailing, hand delivery, mass mailing, social networks, tweeted it, etc. many false stories, as outlined in Plaintiffs Complaint.

46. Plaintiffs pled the private data of Plaintiffs maintained on Oracle's customer's the Intelius and Reed Defendants, databases, servers and computer systems,

contained incorrect information. Mr. Taitz illegally accessed Plaintiffs information from these databases through Oracle's vulnerabilities. Mr. Taitz provided Plaintiffs data to Ms. Taitz as genuine facts, thus Oracle is liable. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Publication of a false statement means communication to some third person, in this case to Mr. and Ms. Taitz, who understood the defamatory meaning of the statement and its application to the person to whom reference was made. *Smith v. Los Angeles Bookhinders Union No. 63*, 133 Cal. App. 2d 486 [286 P.2d 194] (2d Dist. 1955); *Neary v. Regents of University of California*, 185 Cal. App. 3d 1136 [230 Cal. Rptr. 281] (1st Distr. 1986); 6A Cal. Jur. 3d, Assaults and Other Willful Torts §153 (2003).

47. Plaintiffs have met their burden. Therefore, Oracle's Motion to Dismiss must be Denied.

**VII. ORACLE'S ALLOWANCE OF THEIR PARTNERS AND CONTRACTORS TO ILLEGALLY ACCESS AND OBTAIN DATA FROM ORACLE'S CLIENTS, INCLUDING THE INTELIUS AND REED DEFENDANTS, CONSTITUTES "OUTRAGEOUS CONDUCT":**

48. Oracle claims that Plaintiffs Ninth Cause of Action for Intentional Infliction of Emotional Distress fails because Plaintiffs have failed to plead that Oracle engaged in "Extreme and Outrageous Conduct" let alone "conduct that proximately caused plaintiffs harm" [Oracle MTD, pgs. 10-12].

49. Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length. In particular, pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 118-122, ¶¶ 301-314.

50.    Plaintiffs pled that Oracle was aware of Defendants Mr. Taitz and Daylight's access to and maintaining of private data taken from the Intelius and Reed Defendants servers, databases and computer systems through Oracle.  And, that Oracle did **not** take any type of steps to ensure the private data located on their clients, including the Intelius and Reed Defendants databases, servers and computer systems were maintained secure. *See* Plaintiffs FAC at ¶¶ 303, 305, and 306, which is extreme and outrageous conduct.

51.    Plaintiffs further plead that Defendants Mr. Taitz through Daylight accessed Plaintiffs private data through Oracle and provided it to his wife, Defendant Orly Taitz, who published it repeatedly all over the Internet, repeatedly sent it by mass emailing, including internationally and sent it through social networks to carry out her threats and harm the Plaintiffs.  See Plaintiffs FAC at ¶307.

52.    Oracle caused Plaintiffs Liberi and Ostella mental and emotional suffering and distress by allowing illegal access to Plaintiffs private and privileged data, by their partner, Yosef Taitz, obtained from their customers, the Intelius and Reed Defendants databases, servers and computer systems.  Mr. Taitz then disseminated plaintiffs private data through Daylight to Ms. Taitz to carry out her threats and harms against the Plaintiffs, which is intentional and outrageous conduct. *Guillory v. Godfrey*, 134 Cal. App. 2d 628 [286 P.2d 414] (2d Dist. 1955; *Spackman v. Good*, (1966) 245 Cal. App. 2d 518 [54 Cal. Rptr. 78].   Oracle's irresponsibility with their clients, Intelius and Reed Defendants, databases, servers and computer systems which housed Plaintiffs private data is and was extreme and outrageous invasion of Plaintiffs mental and emotional tranquility and were beyond all bounds of decency. *State Rubbish Collectors Ass'n v. Siliznoff*, (1952) 38 Cal.

2d 330 [240 P. 2d 282], *Ochon v. Superior Court*, (1985) 39 Cal. 3d 159 [216 Cal. Rp0tr. 661].

53.     Oracle's actions and allowance thereto were intentional and reckless conduct with the intent to inflict injury and they engaged in and allowed the acts with the realization that injury would occur upon Plaintiffs.  As a result, Plaintiffs suffered severe emotional distress and Plaintiff Liberi also suffered medical complications due to the severe emotional distress.  Plaintiffs have fulfilled all the elements for recovery for Oracle's Intentional Emotional Distress and is liable to Plaintiffs. *Ross v. Creel Printing & Publishing Co.*, 100 Cal. App. 4th 736 [122 Cal. Rptr. 2d 787] (1st Dist. 2002); *Hassoldt v. Patrick Media Group, Inc.*, 84 Cal. App. 4th 153 [100 Cal. Rptr. 2d 662] (2d Dist. 2000); *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120 [118 Cal. Rptr. 2d 240] (3d Dist. 2002); *Christensen v. Superior Court*, (1991) 54 Cal. 3d 868 [2 Cal. Rptr. 2d 79].

**VIII.   ORACLES ACTIONS OR LACK THEREOF CONSTITUTES UNFAIR COMPETITION WHICH HAS CAUSED PLAINTIFFS ECONOMIC AND FINANCIAL LOSS AS PROPERLY PLEAD IN PLAINTIFFS FAC**

54.     Oracle moves to Dismiss Plaintiffs Eighteenth Cause of Action for its violations of unfair business practices in violation of *California Business and Professions Code* §17200, et seq. claiming Plaintiffs have failed to state a claim against Oracle. [Oracle MTD, pgs. 15-16].

55.     Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 150-151, ¶¶ 390-397.

56.    Oracle also claims Plaintiffs Ostella and Liberi lack standing to pursue this claim because "only those private persons" 'who [have] suffered injury in fact and [have] lost money or property' may sue to enforce the unfair competition and false advertising laws and Plaintiffs FAC does **not** allege that either "Liberi or Ostella suffered economic injury as a result of Oracle's unfair competition" [Oracle MTD, pg. 15-16].

57.    Plaintiffs have clearly pleaded that they have suffered economic and financial injuries.  Plaintiffs pled that Liberi ended up in the hospital due to cardiac complications, had to obtain emergency medical assistance on numerous occasions, that Liberi and Ostella suffered identity theft, that Ostella took a loss on her property in order to move in a hurry to protect herself, children, husband and family, etc.  Plaintiffs pled these damages were a result of the distribution of Plaintiffs private data to Orly Taitz to carry out her threats against Plaintiffs.  Plaintiffs pled that Yosef Taitz accessed Plaintiffs private data through Oracle with Oracle's full knowledge.  Plaintiffs have plead economic damages caused by Oracle.

58.    The Unfair Competition Law ["UCL"] prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." § 17200.  Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." _Kasky v. Nike, Inc_., (2002) 27 Cal.4th 939, 949 [119 Cal. Rptr. 2d 296, 45 P.3d 243]; _See Hall v. Time Inc._, (2008) 158 Cal.App.4th 847, 852 [70 Cal. Rptr.3d 466].  In service of that purpose, the Legislature framed the UCL's substantive provisions in " 'broad, sweeping language' " _Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone_

*Co*., (1999) 20 Cal.4th 163, 181 [83 Cal. Rptr. 2d 548, 973 P.2d 527]; *See* also <u>*Bank of the*</u> <u>*West v. Superior Court*</u>, (1992) 2 Cal.4th 1254, 1266 [10 Cal. Rptr. 2d 538, 833 P.2d 545**]** ["The Legislature intended this 'sweeping language' to include '"anything that can properly be called a business practice and that at the same time is forbidden by law."' "] and provided "courts with broad equitable powers to remedy violations", <u>*ABC Internat.*</u> <u>*Traders, Inc. v. Matsushita Electric Corp.*</u>, (1997) 14 Cal.4th 1247, 1270 [61 Cal. Rptr. 2d 112, 931 P.2d 290].

59.     Plaintiffs have satisfied the requirements of *Cal. Business and Professions Code* §17200, et seq. and the requirements outlined in <u>*Schulz v. Neovi Data Corp*</u>., (2005) 129 Cal. App. 4th 1.

60.     For these reasons, Oracle's MTD must be Denied.

## IX.     PLAINTIFFS NINETEENTH CAUSE OF ACTION AGAINST ORACLE FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS PROPERLY PLED:

61.      Oracle moves to Dismiss this particular claim claiming Plaintiffs have failed to state a claim and have failed to properly plead the existence of a cognizable duty and they fail to allege proximate causation. [Oracle MTD, pgs. 16-20].

62.     Plaintiffs incorporate the preceding paragraphs and their FAC at pages 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 152-158, ¶¶ 398-416 as if fully set forth here at length.

63.      Negligent conduct includes that of Oracle's knowledge and allowance of the illegal access of Plaintiffs private data maintained on their clients, Intelius and the Reed Defendants, databases, servers and computer systems by their partners and

contractors, Yosef Taitz and Daylight. Oracle failed to secure its clients private data and information, including the Intelius and Reed Defendants data; allowing third party access and access by their contractors and partners of their (Oracle's) client's private data; and the open disclosure thereto. Oracle had a duty to all persons who their customer's databases, servers and computer systems maintained confidential information to ensure that the information was maintained secure and private. Mr. Taitz through Daylight's access and distribution of Plaintiffs' private data to Ms. Taitz to carry out her threats and Oracle's failure to take steps to prevent it and/or stop it warrants damages for Negligent Infliction of Emotional Distress. Oracle was well aware of the flexibilities which have exploits and make their software unstable and insecure allowing the illegal access and damages caused to Plaintiffs as a result thereto. *See Ochoa v. Superior Court*, (1985) 39 Cal. 3d 159 [216 Cal. Rptr. 703.

## X.     PLAINTIFFS HAVE PLED A SUFFICIENT CLAIM AGAINST ORACLE FOR RES IPSA LOQUITOR:

64.     Oracle moves to Dismiss Plaintiffs Twentieth Cause of Action claiming Plaintiffs failed to allege the applicability of Res Ipsa Loquitor. [Oracle MTD pgs 20-21].

65.     Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length. In particular pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 158-160, ¶¶ 417-423.

66.     Under the theory of Res Ipsa loquitur, Plaintiffs must show that: (1) the cause of the injury is of a kind that does **not** occur ordinarily in the absence of someone's negligence; (2) the injury was caused by an instrumentality within the exclusive control of the defendant or of a *third party for whose conduct the defendant is legally responsible;*

and (3) that the injury was **not** due to any voluntary action or contribution on the part of appellants. *See Shahinian v. McCormick*, (1963) 59 Cal.2d 554, 559; see also *Levy-Zentner Co. v. Southern Pac. Transportation Co*., (1977) 74 Cal.App.3d 762, 777-780.

67.     Oracle owes a duty to all individuals, including Plaintiffs that any private data maintained on their clients' databases, servers and/or computer systems is maintained secure and confidential.   Oracle should have never allowed their contractors, partners and/or third parties access to their clients, including the Intelius and Reed Defendants databases, servers and/or computer systems.   Instead of insuring security, and correcting the flexibilities causing the exploits, Oracle allowed Mr. Taitz to access Plaintiffs private data located on the Intelius and Reed Defendants databases, servers and computer systems, gave it to Ms. Taitz, who published it all over the world wide web, by mass emailing, mass mail, tweeted it, posted it on third party websites, and used the information to carry out her threats to harm and destroy the Plaintiffs.

68.     The Res Ipsa Loquitor rule provides an illustration.   The doctrine shifts the burden of producing evidence so that Plaintiffs may bring tort claims even if they lack specific proof that their injury was caused by negligence of a particular Defendant. *See Ybarra v. Spangard*, (1944) 25 Cal.2d 486, 489 [154 P.2d 687]; *Byrne v. Boadle*, (1863) 159 Eng.Rep. 299, 300, as cited in *Brown v. Poway Unified School Dist*., (1993) 4 Cal.4th 820, 825–826 [15 Cal. Rptr. 2d 679, 843 P.2d 624].   "In California, the doctrine of Res Ipsa Loquitor is defined by statute as 'a presumption affecting the burden of producing evidence.' *Evid. Code*, § 646, subd. (b).)" (*Ibid.*; *See Ybarra v. Spangard*, supra, 25 Cal.2d 486, 489, quoting *Prosser* on Torts.)   In order for Plaintiffs to prove all the negligence

caused by Defendants including Mr. Taitz, Daylight and Oracle, it is imperative that Plaintiffs obtain and receive **all the source codes** utilized by Defendants Mr. Taitz, Daylight and Oracle from January 1, 2009 to current on **all** their products in use by Defendant Intelius and the Reed Defendants and **extensive Electronic Discovery** must take place.

## XI. CONCLUSION:

69.     For The reasons outlined herein, Defendant Mr. Taitz's Motion to Dismiss must be Denied in its entirety.  It the Court is inclined to Grant any part thereto, Plaintiffs respectfully Request that they be Allowed to Amend their Complaint.

Respectfully submitted,

Dated:  August 18, 2011

 /s/ Philip J. Berg
Philip J. Berg, Esquire
Pennsylvania I.D. 9867
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone:  (610) 825-3134
E-mail: philjberg@gmail.com

*Attorney for Plaintiffs*