1   John A. Vogt (State Bar No. 198677)
2   javogt@jonesday.com
    Edward S. Chang (State Bar No. 241682)
3   echang@jonesday.com
4   JONES DAY
    3161 Michelson Drive, Suite 800
5   Irvine, California  92612
6   Telephone:   (949) 851-3939
    Facsimile:    (949) 553-7539
7

8   Attorneys for Defendant
    INTELIUS INC.
9

10               UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    SOUTHERN DIVISION

13

14   LISA LIBERI, et al.,                 Case No. 8:11-CV-00485-AG (AJWx)

15                 Plaintiffs,            Assigned for all purposes to
                                          Honorable  Andrew J. Guilford
16         v.
                                          **MEMORANDUM OF POINTS AND**
17   ORLY TAITZ, et al.,                  **AUTHORITIES IN SUPPORT OF**
                                          **INTELIUS INC.'S MOTION**
18                 Defendants.            **TO DISMISS**

19
                                          Date:     October 17, 2011
20                                        Time:     10:0 a.m.
21                                        Dept:     10D

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... - 1 -

STATEMENT OF FACTS .................................................................................. - 2 -

I.     THE PLAINTIFFS ................................................................................. - 2 -

II.    INTELIUS ............................................................................................ - 2 -

III.   PLAINTIFFS' ALLEGATIONS CONCERNING INTELIUS ................. - 3 -

IV.  THE MATERIALS INCORPORATED INTO THE COMPLAINT ........ - 4 -

      A.    GO EXCEL GLOBAL & THE LAW OFFICES OF PHILIP J. BERG ........................................................................................ - 4 -

      B.    PHILIP J. BERG ......................................................................... - 4 -

      C.    LISA OSTELLA ......................................................................... - 5 -

      D.    LISA LIBERI ............................................................................. - 5 -

V.    INTELIUS DID NOT FURNISH A "CONSUMER REPORT" ON ANY PLAINTIFF IN THIS CASE ...................................................... - 6 -

LEGAL ARGUMENT ...................................................................................... - 8 -

I.     INTELIUS IS IMMUNE UNDER THE CDA ...................................... - 10 -

II.    THE TWELFTH THROUGH SIXTEENTH CAUSES OF ACTION FAIL ................................................................................................. - 12 -

      A.    INTELIUS IS NOT A CONSUMER REPORTING AGENCY ... - 12 -

      B.    INTELIUS HAS NOT FURNISHED "CONSUMER REPORTS" TO "THIRD PARTIES" ABOUT ANY PLAINTIFF IN THIS ACTION ............................................... - 17 -

      C.    INTELIUS HAD NO DUTY TO REINVESTIGATE ................. - 18 -

III.   PLAINTIFFS' NON-FCRA CLAIMS ARE PREEMPTED ................... - 19 -

IV.  THE FIRST, SECOND AND THIRD CAUSES OF ACTION FAIL ..... - 20 -

V.    THE FIFTH, SIXTH AND SEVENTEENTH CAUSES OF ACTION FAIL ................................................................................................. - 21 -

VI.  THE EIGHTH CAUSE OF ACTION FAILS ....................................... - 22 -

VII.  THE NINTH AND NINETEENTH CAUSES OF ACTION FAIL ........ - 23 -

VIII. THE TWENTIETH CAUSE OF ACTION FAILS ............................... - 24 -

IX.   THE EIGHTEENTH CAUSE OF ACTION FAILS .............................. - 24 -

CONCLUSION............................................................................................... - 25 -

# TABLE OF AUTHORITIES

**Page**

CASES

Aklagi v. Nationscredit Financial,
    196 F.Supp.2d 1186 (D.Kan. 2002) ...................................................... 19

Ashcroft v. Iqbal,
    556 U.S. ___, 129 S. Ct. 1937 (2009) ..........................................passim

Batzel v. Smith,
    333 F.3d 1018 (9th Cir. 2003) (Gould, J., concurring in part and
    dissenting in part) ........................................................................... 11

Baxter v. Intelius,
    2010 WL 3791487 (C.D. Cal. September 16, 2010) .................................3, 9, 21

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ......................................................................... 8

Ben Ezra, Weinstein, & Co., Inc. v. Am. Online, Inc.,
    206 F.3d 980 (10th Cir. 2000) ........................................................... 11

Berryman v. Merit Property Management, Inc.,
    152 Cal.App.4th 1544 (2007) ............................................................ 25

Burgess v. Superior Court,
    2 Cal. 4th 1064 (1992) ..................................................................... 24

Cain v. Trans Union LLC,
    2006 WL 328409 (W.D. Wash. 2006) ................................................... 19

Californians For Disability Rights v. Mervyn's, LLC,
    39 Cal.4th 223 (2006) ...................................................................... 25

Carafano v. Metrosplash.com, Inc.,
    339 F.3d 1119 (9th Cir. 2003) ........................................................... 11

Carvalho v. Equifax Information Services,
    629 F.3d 876 (9th Cir. 2010) ............................................................. 12

Cavaliere v. Burke,
    50 F.3d 1033, 1995 WL 136229 (5th Cir. 1995) ...................................... 16

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
  20 Cal.4th 163 (1999) ........................................................................... 25

Chaconas v. JP Morgan Chase Bank,
  713 F. Supp. 2d 1180 (S.D. Cal. 2010) ................................................. 23

Cochran v. Cochran,
  65 Cal. App. 4th 488 (1998) .................................................................. 23

Comeaux v. Brown & Williamson Tobacco Co.,
  915 F.2d 1264 (9th Cir. 1990) .............................................................. 14

Davis v. Cole,
  999 F. Supp. 809 (E.D. Va. 1998) ........................................................ 10

Deandrade v. Trans Union LLC,
  523 F.3d 61 (1st Cir. 2008) ................................................................... 19

Dennis v. BEH-1, LLC,
  520 F.3d 1066 (9th Cir. 2008) .............................................................. 19

Domingo v. Equifax Credit Information Services, Inc.,
  1994 WL 519035 (D.Or. 1994) ............................................................. 19

Durrell v. Sharp Healthcare,
  183 Cal.App.4th 1350 (2010) ................................................................ 25

Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,
  521 F.3d 1157 (9th Cir. 2008) .............................................................. 10

Federal Deposit Insurance Corporation v. Hulsey,
  22 F.3d 1472 (10th Cir. 1994) ......................................................... 1, 23

Fiscella v. Intelius, Inc.,
  2010 WL 2405650 (E.D.Va. June 10, 2010) ................................... 13, 18

Forrest v. Secured Funding, Inc.,
  2007 WL 81878 (E.D. Wis. Jan. 8, 2007) ............................................. 16

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

Fractional Villas, Inc. v. Tahoe Clubhouse,
2009 WL 465997 (S.D. Cal. Feb. 25, 2009) ...................................................... 15

Garcia v. UnionBancal Corp.,
2006 WL 2619330 (N.D. Cal. Sept. 12, 2006) .................................................... 17

Gicking v. Kimberlin,
170 Cal. App. 3d 73 (1985) .............................................................................. 24

Goddard v. Google, Inc.,
640 F. Supp. 2d 1193 ....................................................................................... 11

Gregory v. Albertson's, Inc.,
10 Cal.App.4th 845 (2002) ............................................................................... 25

Haskell v. Time,
857 F. Supp. 1392 (E.D. Cal. 1994) ................................................................... 9

Heath v. Credit Bureau of Sheridan,
618 F.2d 693 (10th Cir. 1980) .......................................................................... 14

Hill v. Nat'l Collegiate Athletic Assn.,
7 Cal. 4th 1 (1994) ........................................................................................... 20

Howard v. Am. Online,
208 F.3d 741 (9th Cir. 2000) ............................................................................ 20

HQM, Ltd. v. Hatfield,
71 F. Supp. 2d 500 (D. Md. 1999) ...................................................................... 9

Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty,
129 Cal. App. 4th 1228 (2005) ............................................................... 1, 20, 23

Intri-Plex Techs., Inc. v. Crest Group, Inc.,
499 F.3d 1048 (9th Cir. 2007) ............................................................................ 9

Ippolito v. WNS, Inc.
864 F.2d 440, 449-50 (7th Cir. 1988) ............................................................... 16

Jacobson v. Schwarzenegger,
357 F. Supp. 2d 1198 (C.D. Cal. 2004) ............................................................. 22

iv

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

Jennifer M. v. Redwood Women's Health Center,
  88 Cal. App. 4th 81 (2001)......................................................................21

Kassa v. BP West Coast Products, LLC,
  2008 WL 3494677 (N.D. Cal. Aug. 12, 2008)........................................23

Keuhling v. Trans Union LLC,
  137 Fed. Appx. 904 (7th Cir. 2005) .......................................................19

Kinsey v. Macur,
  107 Cal. App. 3d 265 (1980)...................................................................20

Knievel v. ESPN,
  393 F.3d 1068 (9th Cir. 2005)...................................................................9

Knisely v. Network Associates, Inc.,
  312 F.3d 1123 (9th Cir. 2002).................................................................13

KOVR–TV, Inc. v. Superior Court,
  31 Cal. App. 4th 1023 (1995)..................................................................23

Lazy Y Ranch Ltd. v. Behrens,
  546 F.3d 580 (9th Cir. 2008).....................................................................9

Lewis v. Casey,
  518 U.S. 343 (1996) ................................................................................13

Maguca v. Aurora Loan Services,
  2009 WL 3467750 (C.D. Cal. Oct. 28, 2009) .........................................24

Matise v. Trans Union Corp.,
  1998 WL 872511 (N.D. Tex. Dec. 1, 1998).............................................17

Mende v. Dun & Bradstreet, Inc.,
  670 F.2d 129 (9th Cir. 1982).............................................................15, 16

Moreno v. Sayre,
  162 Cal. App. 3d 116 (1984)...................................................................24

Pinson v. Equifax,
  2008 WL 2329137 (N.D. Okla. June 2, 2008) ........................................18

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

Potter v. Firestone Tire & Rubber Co.,
    6 Cal. 4th 965 (1993)..................................................................................23, 24

Poulin v. The Thomas Agency,
    708 F.Supp.2d 87 (D.Me. 2010)........................................................................19

Prickett v. infoUSA, Inc.,
    561 F. Supp. 2d 646 (E.D. Tex. 2006) ..............................................................10

Pulver v. Avco Financ. Servs.,
    182 Cal.App.3d 622 (1986)...............................................................................12

Renninger v. Chexsystems,
    1998 WL 295497 (N.D. Ill. May 22, 1998) .................................................17, 18

Ruffin-Thompkins v. Experian Info. Solutions,
    422 F.3d 603 (7th Cir. 2005).............................................................................19

Safeco Ins. Co. v. J & D Painting,
    17 Cal. App. 4th 1199 (1993)............................................................................24

Scott v. Performance Contractors, Inc.,
    166 F.R.D. 372 (M.D. La.), aff'd, 95 F.3d 55 (5th Cir. 1996)...........................10

Shulman v. Group W Productions, Inc.,
    18 Cal. 4th 200 (1998)......................................................................................21

Silicon Knights, Inc. v. Crystal Dynamics, Inc.,
    983 F. Supp. 1303 (N.D. Cal. 1997)..................................................................23

Socorro v. IMI Data Search, Inc.,
    2003 WL 1964269 (N.D. Ill. 2003)....................................................................19

Solano v. Playgirl, Inc.,
    292 F.3d 1078 (9th Cir. 2002)...........................................................................21

Starr v. Baca,
    — F.3d —, 2011 WL 2988827 (9th Cir. July 25, 2011)......................................9

Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,
    17 Cal.4th 553 (1998)........................................................................................25

# <u>TABLE OF AUTHORITIES</u>
## (CONTINUED)

**Page**

<u>Thomas v. Trans Union</u>,
   197 F. Supp. 2d 1233 (D. Ore. 2002) .................................................... 19

<u>Towe Antique Ford Foundation v. IRS</u>,
   53 F.3d 340, 1995 WL 242328 (9th Cir. 1995)............................... 1, 20

<u>United States v. Drew</u>,
   259 F.R.D. 449 (C.D. Cal. 2009) ......................................................... 15

<u>Wantz v. Experian Info. Solutions</u>,
   386 F.3d 829 (7th Cir. 2004) ............................................................... 17

<u>Wyatt v. Terhune</u>,
   280 F.3d 1238 (9th Cir. 2002) ............................................................. 10

**STATUTES**

15 U.S.C. § 1681a(d)(1) ........................................................................ 13

15 U.S.C. § 1681a(f) ........................................................................ 12, 16

15 U.S.C. § 1681b........................................................................ 12, 13, 15

15 U.S.C. §§ 1681e and 1681i ............................................................... 18

15 U.S.C. § 1681e(b) ....................................................................... 12, 18

15 U.S.C. § 1681h(e) .............................................................................. 19

15 U.S.C. § 1681i ....................................................................... 12, 18, 19

15 U.S.C. § 1681i(a)(3) .......................................................................... 18

47 U.S.C. § 230(c) .................................................................................. 10

47 U.S.C. § 230(f)(2) .............................................................................. 11

Cal. Civ. Code § 1798.53 ....................................................................... 21

Cal. Civ. Code § 1798.80(c) .................................................................. 22

Cal. Civ. Code § 1798.81.5(a) ............................................................... 22

# <u>TABLE OF AUTHORITIES</u>
## (CONTINUED)

**Page**

Cal. Civ. Code § 1798.84(b) ..................................................................................... 22

California Civil Code, § 1798.85(a)(1) ................................................................... 22

Civil Code, § 1798.81.5 ............................................................................................ 22

Civil Code, § 1798.83 ............................................................................................... 22

Communications Decency Act, 47 U.S.C. § 230, <u>et seq</u>. ....................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY STATEMENT

None of the sixteen causes of action that plaintiffs attempt to allege against Intelius state a claim upon which relief can be granted.   Most do not satisfy Rule 11.

•      Go Excel Global and The Law Offices of Philip J. Berg sued Intelius for "Intentional Infliction of Emotional Distress" (see Ninth Cause of Action), even though business organizations—i.e., non-human beings—cannot suffer emotional and mental distress.  See, e.g., Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty, 129 Cal. App. 4th 1228, 1260 (2005); Federal Deposit Insurance Corporation v. Hulsey, 22 F.3d 1472, 1489 (10th Cir. 1994) ("Since a corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress.").

•      These same plaintiffs sued Intelius for "Invasion of Privacy" (see Third Cause of Action), even though business organizations may *not* sue for Invasion of Privacy, either:   "California courts have rejected the notion that a corporation has a common law right to privacy.  Accordingly, a corporation cannot maintain a tort action under California law for the invasion of privacy." Towe Antique Ford Foundation v. IRS, 53 F.3d 340, 1995 WL 242328 at *3 (9th Cir. 1995) (internal citations omitted); Huntingdon Life Sciences, 129 Cal. App. 4th at 1260 (same; holding that plaintiff, as a business entity, lacked standing to pursue an invasion of privacy claim).

•      More broadly, however, the sixteen causes of action plaintiffs attempt to allege against Intelius are grounded upon the fiction that Intelius violates the law when it provides on-line users of its website with the ability to conduct "people searches" on other individuals via public records.  Intelius is no more in violation of law than are Google, Yahoo, Bing, Spokeo or Redfin—which allow on-line users to do the exact same thing. Paragraph 97 of plaintiffs' complaint unwittingly concedes the point—admitting that the *plaintiffs themselves* conducted a "background check" search on the name "Ruben Nieto" through Internet search engine Spokeo—a search that allegedly yielded, among other things,  Mr. Nieto's state of residence, address, and the websites he owns.  (FAC, ¶ 97.) [Mr. Neito allegedly is the person that Orly Taitz hired to "carry out" "threats" of harm on

- 1 -

plaintiffs.]  It reeks of hypocrisy for plaintiffs to sue Intelius for the very same activities that the plaintiffs themselves admittedly engage in.

This suit against Intelius is baseless, and should be dismissed with prejudice.

## STATEMENT OF FACTS

The facts giving rise to this motion are derived from the complaint, materials necessarily incorporated into the complaint, and matters subject to judicial notice.

### I.   THE PLAINTIFFS

The plaintiffs in this action are: (i) Lisa Liberi; (ii) Lisa Ostella; (iii) Philip Berg; (iv) The Law Offices of Philip J. Berg; and (v) Go Excel Global.  The plaintiffs attempt to allege sixteen causes of action against Intelius.  Liberi and Ostella are parties to all sixteen claims.  Berg is a party to five of them.  The Law Offices of Philip J. Berg and Go Excel Global are parties to three of them.

### II.   INTELIUS

Intelius owns and operates an interactive website—www.intelius.com—that allows users to obtain, over the Internet, various public records on individuals, such as addresses, phone numbers, and court records.  (Declaration of Benjamin Nelson ("Nelson Decl."), ¶ 2; www.intelius.com.)  Intelius' business is separated into two divisions:  The Consumer Division and the Enterprise Division.  (Id.; www.intelius.com/corp/products.)  The two divisions offer different products and services.  (Id.)

The Consumer Division serves users seeking public records information for reasons other than employment screening, tenant screening, or other purposes covered by the Fair Credit Reporting Act. (Nelson Decl., ¶ 3; www.intelius.com/corp/consumer.)  One of the services that Intelius offers users through its Consumer Division is a "background check" search (Nelson Decl., ¶ 3)—the same type of search that the plaintiffs ran on the name "Ruben Nieto" through Spokeo.  The Enterprise Division, by contrast, serves users seeking employment or tenant screening products—services that are designed to be fully compliant with the Fair Credit Reporting Act. (Id., ¶ 4; www.intelius.com/corp/enterprise.)  The services Intelius offers through its Enterprise

1   Division are provided through its subsidiary, Talent Wise. (Id.; www.talentwise.com.)

2   **III.   <u>PLAINTIFFS' ALLEGATIONS CONCERNING INTELIUS</u>**

3       Plaintiffs' claims against Intelius are grounded upon the following allegations.

4       <u>First</u>, plaintiffs allege that, on or about April 8, 2009, the Sankey Defendants

5   conducted searches through Intelius' website on Liberi and Ostella, and allegedly

6   obtained "confidential" information about them (such as their social security numbers and

7   financial information).   (FAC, ¶¶ 31, 66-69.)   These are the *only* searches plaintiffs

8   identify in the complaint as having been performed on any of the plaintiffs through

9   Intelius.  Plaintiffs do not allege what type of searches the Sankey Defendants supposedly

10   performed on either Liberi or Ostella.  [As discussed below, the Sankey Defendants *never*

11   performed *any* searches on Liberi or Ostella through Intelius or any of its affiliates.]

12       <u>Second</u>, plaintiffs allege that Intelius published "false" information about the

13   plaintiffs.  (FAC, ¶¶ 222, 293.)   But the complaint does not allege: (i) what "false"

14   information Intelius supposedly published about any of the plaintiffs; (ii) when Intelius

15   published it; (iii) to whom it was published; and (iv) the means through which it was

16   published.  Plaintiffs allege that Intelius was notified that it "maintained incorrect

17   information on the Plaintiffs in [its] files," but allegedly did nothing to correct this

18   information. (See FAC, ¶ 153.)  The complaint, however, does not attach copies of any of

19   this correspondence.    [Intelius, through the accompanying Nelson Declaration, has

20   provided the Court with copies of that correspondence, which prove differently.]

21       <u>Third</u>, plaintiffs allege that: (i) Yosef Taitz created "Daylight Toolkit" using

22   Oracle's software for the purpose of "illegally" hacking into Intelius' servers (FAC,

23   ¶¶175-186); (ii) Oracle somehow was complicit in this scheme (id.); (iii) Yosef Taitz did,

24   in fact, "hack" into Intelius' servers and "illegally" acquire private information about the

25   plaintiffs (id.); and (iv) Yosef Taitz then provided his wife (Orly Taitz) with the ill-gotten

26   information who, in turn, published it to the world.  Plaintiffs do not allege any facts

27   establishing that *Intelius*—as opposed to someone else—*intentionally* published private or

28   false information about the plaintiffs.  At best, plaintiffs complaint alleges that someone

1  "illegally" acquired such information from Intelius, and then published it without Intelius'
2  knowledge or participation.

3  **IV.   THE MATERIALS INCORPORATED INTO THE COMPLAINT**

4       The materials plaintiffs have incorporated into their complaint undermine
5  plaintiffs' allegations regarding Intelius.

6       **A.   GO EXCEL GLOBAL & THE LAW OFFICES OF PHILIP J. BERG**

7       Plaintiffs have incorporated Intelius' website into their complaint. (See, e.g., FAC,
8  ¶¶ 31, 66-70, 147, 166 & 383; see also Nelson Decl., Ex. 5 [Berg's letter to Intelius].)
9  As stated on Intelius' website, Intelius does _not_ provide users with the ability to search for
10 information on business organizations, such as Go Excel Global and The Law Offices of
11 Philip J. Berg:  "[W]e do not provide business information searches." (Nelson Decl., ¶ 18;
12 www.intelius.com/search-faq.php#3 [Frequently Asked Question No. 19].) Regardless,
13 Intelius has _never_ provided any information, much less "false" information, on Go Excel
14 Global or The Law Offices of Philip J. Berg to anyone.  (Id.)  The complaint does not
15 allege differently.   Plaintiffs' conclusory allegation that "Defendants" (including,
16 presumably, Intelius) published false information about "Plaintiffs" (including,
17 presumably, Go Excel Global and The Law Offices of Philip J. Berg) (see, e.g., FAC,
18 ¶¶ 222, 293) is not plausible as to Intelius, and should not be accepted as true in ruling on
19 this motion.  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949-50 (2009).

20      **B.   PHILIP J. BERG**

21      Intelius retains the search history of names that are searched on the websites of
22 Intelius and its affiliates. (See Nelson Decl., ¶ 5.)  The searches that were run on plaintiffs
23 through Intelius have been incorporated into the complaint.  (See, e.g., FAC, ¶¶ 31, 66-70,
24 147, 166 & 383; see also Nelson Decl., Ex. 5.)   The name "Philip Berg" was _never_
25 searched through Intelius or any of its affiliates (see Nelson Decl., ¶ 17); the complaint
26 does not allege differently.  Intelius has _never_ provided any information, much less "false"
27 information, to anyone regarding plaintiff Philip Berg. (Id.) Plaintiffs' conclusory
28 allegation that "Defendants" (including, presumably, Intelius) published false information

about "Plaintiffs" (including, presumably, Berg) (see, e.g., FAC, ¶¶ 222, 293) is not plausible as to Intelius, and should not be accepted as true.  Iqbal, 129 S. Ct. at 1949-50.

## C.    LISA OSTELLA

Like Berg, the name "Lisa Ostella" was _never_ searched by anyone through Intelius or any of its affiliates.  (Nelson Decl., ¶ 15.)  Intelius has _never_ provided any information, much less "false" information, to anyone regarding plaintiff Lisa Ostella.  (Id.)  Plaintiffs' conclusory allegations to the contrary (see, e.g., FAC, ¶¶ 222, 293) are not plausible, and should not be accepted as true in ruling on this motion.  Iqbal, 129 S. Ct. at 1949-50.

On October 29, 2010, Ostella wrote a letter to Intelius requesting the names of any person that had done a search on her through Intelius' website.  (Nelson Decl., ¶ 16 and Ex. 6.)  Plaintiffs have incorporated this letter into their complaint.  (FAC, ¶¶ 153, 159 & 166.)  Intelius responded to this letter by informing Ostella that, absent a subpoena or court order, Intelius' terms and conditions prohibit the disclosure of such information. (See FAC, ¶ 153; Nelson Decl., ¶ 16 and Ex. 6.)  Ostella did not pursue this inquiry any further with Intelius.  (Nelson Decl., ¶ 16.)

## D.    LISA LIBERI

As to Lisa Liberi, she ran multiple searches through Intelius and its affiliates. On April 10, 2010, Liberi ran a public records "background check" on her _own name_, "Lisa Liberi," through Intelius; that same day, she ran a FCRA search on _herself_ through Talent Wise.  (See Nelson Decl., ¶ 6 and Exs. 2 & 3.)  On April 12, 2010, Liberi ran a second FCRA search on _herself_ through Talent Wise.  (See Nelson Decl., ¶ 6 and Ex. 3.)

Two days later, Liberi's attorney and co-plaintiff, Berg, sent a letter to the founder of Intelius, Naveen Jain, regarding Liberi, which has been incorporated into the complaint. (FAC, ¶ 166; Nelson Decl., ¶ 14 and Ex. 5.)  In his letter, Berg claims that the Talent Wise report Liberi had purchased on herself contained inaccurate information:  (i) names that Liberi had not used; and (ii) six social security numbers that did not belong to Liberi.  (Id.) But Berg's letter does _not_ identify any of the names or any of the social security numbers appearing in Liberi's Talent Wise report that are inaccurate (such that Intelius could

1   investigate of Berg's accusations).

2          Besides Liberi herself, the only other party to have ever run a search on the name

3   "Lisa Liberi" through Intelius (or any of its affiliates) is Orly Taitz.  On April 12, 2009,

4   Taitz purchased a public records "background check" search on the name "Lisa Liberi"

5   through Intelius. (Nelson Decl., ¶ 5 and Ex. 1.) This search was not confined to

6   "Lisa Liberi," the plaintiff in this lawsuit; instead, it captured *public* information about

7   other individuals who have the same name.  (Id.)  Notwithstanding plaintiffs' conclusory

8   allegations to the contrary (see FAC, ¶¶ 66-69), the search results Taitz obtained on the

9   name "Lisa Liberi" did *not* contain any non-public information on plaintiff, Lisa Liberi,

10  such as her social security number, financial information, or credit information.  (Nelson

11  Decl., ¶ 11 and Ex. 1.)   As the Court can see, the search results Taitz obtained did not

12  contain any non-public information on anyone named "Lisa Liberi."  (Id.)

13  **V.     INTELIUS DID NOT FURNISH A "CONSUMER REPORT" ON ANY**

14  **        PLAINTIFF IN THIS CASE**

15         Plaintiffs' allegation that Intelius has furnished "consumer reports" about them

16  (FAC, ¶ 338) is conclusory (and false) and should not be accepted as true in ruling on this

17  motion.  Iqbal, 129 S. Ct. at 1949-50.  As the documents plaintiffs have incorporated into

18  their complaint conclusively demonstrate, the *only* information that Intelius has ever

19  furnished regarding any of the plaintiffs in this action is a generic "background check" on

20  the name "Lisa Liberi." (See Nelson Decl., ¶ 5 and Ex. 1.)  Those search results are not a

21  "consumer report" under the Fair Credit Reporting Act.

22         A "background check" search through Intelius—just like a search run on an

23  individual through Google, Yahoo or Spokeo—provides users with only *public*

24  information from *public* sources about the *potential* person the user is searching for (such

25  as name, address, phone numbers). (Id., ¶ 9 and Ex. 1.)  In order to locate public records

26  over the Intelius website via a "background check" search, a user enters three search

27  terms:  the first and last name of the person they are searching for, and their state of

28  residence.  (Id., ¶ 9.)  The website then performs a search that accesses public records

1   databases, and identifies all records that contain those search terms.  (Id.)  The website

2   retrieves the matching records, and displays them to the user.  (Id.)  Because there are

3   many people that share the same or very similar names, a search will return public records

4   for different individuals with the same or similar name—just as a phonebook has multiple

5   listings for different people with the same name.  (Id.)

6        The search result information originates from publicly available records.  (See

7   Nelson Decl., ¶¶ 9-11, 18;  see also  http://www.intelius.com/search-faq.php#13.)

8   A "background check" search does _not_ contain any non-public information; nor does it

9   contain any original content created by Intelius.  (Id.)  A "background check" search does

10  _not_ even generate a report about a _particular_ individual; instead, as noted, it generates

11  "search results" about the _potential identity_ of the person the user was searching for based

12  upon the search criteria provided to Intelius by the user.  (Id.)  This is made clear in the

13  search results, which advise the user that they contain "current and historical people

14  search records that share the same name and state as your search subject."  (Id., ¶ 5,  and

15  Ex. 1.)  In other words, the search result that Taitz obtained on the name "Lisa Liberi" is a

16  generic report containing public information about the name "Lisa Liberi" _generally_, and

17  is not a specific report as to the _plaintiff_, "Lisa Liberi," in particular.

18       Further, _before_ anyone can run a "background check" search on Intelius' website,

19  they must agree to Intelius' "Terms and Conditions,"[1] which read, in part, as follows:

20       **1.     Access to Intelius.**   Upon registration, Intelius grants you a

21              nontransferable, nonexclusive license to access our databases and the

22              information contained in the databases, solely for the purpose of

23              performing data verification, person, property and address location

24              and related searches for qualified individual non-commercial use

---

25       [1]  The "Terms and Conditions are accessible via hyperlink on the order

26  confirmation screen. (http://www.intelius.com/useragreement.php; Nelson Decl., ¶ 8.)
    The confirmation screen requires users to confirm their purchase, and to affirm:  "I accept

27  the Terms and Conditions."  (Id.)  The user must then click a button on the screen titled,

28  "Complete the Purchase and Show my Report," to finalize the purchase.  (Id.)

1    only.  Intelius may authorize broader enterprise business use through

2    its <u>enterprise services program</u>.

3                              *        *        *

4    **4.**      **FCRA Restrictions.**  Intelius is not a consumer reporting agency as

5            defined in the Fair Credit Reporting Act ("FCRA"), and the

6            information in the Intelius databases has not been collected in whole

7            or in part for the purpose of furnishing consumer reports, as defined

8            in the FCRA. You shall not use any of our information as a factor in

9            (1) establishing an individual's eligibility for personal credit or

10           insurance or assessing risks associated with existing consumer credit

11           obligations, (2) evaluating an individual for employment, promotion,

12           reassignment or retention (including employment of household

13           workers such as babysitters, cleaning personnel, nannies,

14           contractors, and other individuals), or (3) any other personal

15           business transaction with another individual (including, but not

16           limited to, leasing an apartment).

17   (<u>Id</u>., ¶ 8 and Ex. 4.)  Thus, before Liberi and Taitz were permitted to proceed with their

18   "background check" searches on the name "Lisa Liberi," they affirmed their commitment

19   to be bound by each of the "Terms and Conditions" set forth above including, most

20   importantly, that the search result information Intelius provided them is not authorized or

21   intended to be used for any purpose under the FCRA.  (<u>Id</u>.)

22                              **<u>LEGAL ARGUMENT</u>**

23       To survive a motion to dismiss, a complaint must contain sufficient factual matter,

24   accepted as true, to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v.</u>

25   <u>Twombly</u>, 550 U.S. 544, 570 (2007). This standard mandates that a plaintiff adduce *<u>facts</u>*

26   that establish each element of each claim in the complaint. <u>Iqbal</u>, 129 S. Ct. at 1949-50.

27   "[A]llegations in a complaint or counterclaim may not simply recite the elements of a

28   cause of action, but must contain sufficient allegations of underlying facts to give fair

1    notice and to enable the opposing party to defend itself effectively . . . [and] plausibly
2    suggest an entitlement to relief, such that it is not unfair to require the opposing party to be
3    subjected to the expense of discovery and continued litigation." Starr v. Baca, — F.3d —,
4    2011 WL 2988827, at *14 (9th Cir. July 25, 2011).

5          As this Court has held, while, in general, "a court must restrict itself to considering
6    pleadings and attachments in a motion to dismiss[,] . . . when certain documents are
7    central to the claims and are referred to by the plaintiffs in the pleadings, they can be
8    deemed part of the pleadings. Baxter v. Intelius, 2010 WL 3791487 at *2 (C.D. Cal.
9    September 16, 2010) citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498
10   (5th Cir. 2000) ) ("Documents that a defendant attaches to a motion to dismiss are [also]
11   considered part of the pleadings if they are referred to in the plaintiff's complaint and are
12   central to her claim."). This Court further explained that "[j]udicial notice may be
13   necessary to '[p]revent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately
14   omitting . . . documents upon which their claims are based.'" Baxter, 2010 WL 3791487
15   at *1, citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

16         By alleging that Intelius has improperly furnished information about the plaintiffs
17   through searches on its website (see., e.g., FAC, ¶¶ 66-67), plaintiffs necessarily have
18   incorporated Intelius' website into the complaint, as well as:  (i) the searches that were run
19   on the plaintiffs through Intelius' website; (ii) the search results that were obtained; and
20   (iii) the "Terms & Conditions" attached to those searches. Lazy Y Ranch Ltd. v. Behrens,
21   546 F.3d 580, 588 (9th Cir. 2008) (in ruling on a motion to dismiss under Rule 12(b)(6), a
22   district court may consider items referred to in a complaint—such as Internet web pages
23   and searches); Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir.
24   2007) (same); Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (same); Haskell v.
25   Time, 857 F. Supp. 1392, 1397 (E.D. Cal. 1994).  In accord HQM, Ltd. v. Hatfield, 71 F.
26   Supp. 2d 500, 502 (D. Md. 1999) (in ruling on a motion to dismiss, district courts may
27   consider "documents referred to in the complaint and relied upon by the plaintiff in
28   bringing the civil action"), citing New Beckley Mining Corp. v. International Union, 18

- 9 -

1   F.3d 1161, 1164 (4th Cir. 1994)).  And, where, as here, incorporated documents contradict

2   the allegations in the complaint, the "document controls and dismissal is appropriate."

3   Scott v. Performance Contractors, Inc., 166 F.R.D. 372, 374 (M.D. La.), aff'd, 95 F.3d 55

4   (5th Cir. 1996); see also Davis v. Cole, 999 F. Supp. 809, 812 (E.D. Va. 1998).

5        As demonstrated below, dismissal with prejudice is appropriate because plaintiffs

6   have not stated a claim against Intelius upon which relief can be granted.

7   **I.      INTELIUS IS IMMUNE UNDER THE CDA**

8        Every cause of action alleged against Intelius fails as a matter of law, and cannot be

9   cured by amendment, because Intelius is absolutely immune under the Communications

10  Decency Act, 47 U.S.C. § 230, et seq.  Although immunity under Section 230 of the CDA

11  generally is considered an affirmative defense, the Ninth Circuit has held that a district

12  court may consider it on a motion to dismiss under Rule 12 where, as here, there are "no

13  disputed issues of fact."  Wyatt v. Terhune, 280 F.3d 1238, 1245 (9th Cir. 2002).

14       Under the CDA, "[n]o provider . . . of an interactive computer service shall be

15  treated as the publisher or speaker of any information provided by another information

16  content provider." 47 U.S.C. § 230(c).  As construed by the Ninth Circuit, "Section 230 of

17  the CDA immunizes providers of interactive computer services against liability arising

18  from content created by third parties." Fair Hous. Council of San Fernando Valley v.

19  Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008).  Where a website "displays

20  content that is created entirely by third parties, then it is only a service provider with

21  respect to that content," and will enjoy immunity for that content from liability that would

22  otherwise attach under state or federal law.  Id.; Prickett v. infoUSA, Inc., 561 F. Supp. 2d

23  646, 649, 652 (E.D. Tex. 2006) (defendant, who compiles, disseminates, and distributes

24  databases containing information about businesses and consumer households through the

25  internet, is immune under the CDA because the information it publishes is obtained from

26  third parties and transferred unaltered into its database).

27       There are three elements to establish CDA immunity:   (i) Intelius must be a

28  provider of an "interactive computer service"; (ii) plaintiffs' claims must treat Intelius as a

1    publisher or speaker of information; and (iii) the challenged communications must be

2    "information provided by another information content provider." Batzel v. Smith, 333

3    F.3d 1018, 1037 (9th Cir. 2003) (Gould, J., concurring in part and dissenting in part).

4    Intelius satisfies each element.

5           **First**, an "interactive computer service" is defined as "any information service,

6    system, or access software provider that provides or enables computer access by multiple

7    users to a computer server." 47 U.S.C. § 230(f)(2). Through the allegations in the

8    complaint and the materials it incorporates, plaintiffs admit that Intelius is an "interactive

9    computer service." (See, e.g., Cmpt., ¶ 152 (admitting that Intelius is accessed by millions

10   of users).) **Second**, plaintiffs allege that Intelius is a publisher or speaker of information.

11   (See, e.g., FAC, ¶¶ 145-152 (admitting same).) **Third**, Intelius simply publishes

12   information contained in records maintained by third parties. (See, e.g., FAC, ¶ 145-152

13   (admitting that Intelius obtains its content from others).) Reorganizing information it

14   obtains from other content providers does not compromise Intelius's CDA immunity.

15   Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1124 (9th Cir. 2003) (defendant that

16   classifies information provided by third party users into discrete categories and collects

17   responses to questions does not transform defendant into a "developer" of the

18   information); Goddard v. Google, Inc., 640 F. Supp. 2d 1193, 1196 ("[A] website

19   operator does not become liable as an 'information content provider' merely by

20   'augmenting the content [of online material] generally.'") (alteration in original) (quoting

21   Roommates.com, 521 F.3d at 1167-68).

22          In the Ninth Circuit, websites, like Intelus, only lose CDA immunity if they

23   "materially contribut[e]" content; it is not enough if the site merely augments the content.

24   Id., at 1162-64, 1167-68 (emphasis added); see also Ben Ezra, Weinstein, & Co., Inc. v.

25   Am. Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) (Internet service provider not liable

26   for mistaken stock information it obtained and published on its website that originated

27   from independent third party organizations). Here, nowhere in plaintiffs' 172 page

28   complaint do they allege that Intelius created content; and, even if plaintiffs had, such

allegation would be refuted by the materials the complaint incorporates by reference, which establish that Intelius, in its search results, merely report public information maintained by third parties. (Nelson Decl., ¶ 5 and Ex. 1.) Intelius is absolutely immune under the CDA, and this action should be dismissed with prejudice.

## II.   THE TWELFTH THROUGH SIXTEENTH CAUSES OF ACTION FAIL

The Twelfth through Sixteenth Causes of Action against Intelius fail because: (i) Intelius is not a "consumer reporting agency" under the FCRA or its California equivalents (the California Credit Reporting Agencies Act (CCRAA) and Investigative Consumer Reporting Agencies Act (ICRAA)); (ii) Intelius has not furnished "consumer reports" to "third parties" about any plaintiff; and (iii) plaintiffs have not taken appropriate steps to trigger a reinvestigation under the FCRA.[2]

### A.   INTELIUS IS NOT A CONSUMER REPORTING AGENCY

The FCRA defines "consumer reporting agency" as any person that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing *consumer reports* to *third parties*[.] 15 U.S.C. § 1681a(f) (emphasis added).[3] "Consumer Report," in turn, is defined as any "communication of any information by a *consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity,

---

[2] The Twelfth Cause of Action attempts to assert a violation of 15 U.S.C. § 1681e(b) (the FCRA's "accuracy" prong) and 15 U.SC. § 1681i (the FCRA's "reinvestigation" prong). The Thirteenth Cause of Action attempts to allege an intentional violation of the "permissible purpose" prong of the FCRA. 15 U.S.C. § 1681b. The Fourteenth Cause of Action attempts to allege a negligent violation of the FCRA's "permissible purpose" prong. The Fifteenth and Sixteenth Causes of Action attempt to allege intentional violations of the CCRAA's and ICRAA's "permissible purpose" prong.

[3] The CCRAA and ICRAA "define[] 'consumer credit reporting agency' in virtually identical terms." See Pulver v. Avco Financ. Servs., 182 Cal.App.3d 622, 633 n.5 (1986); Carvalho v. Equifax Information Services, 629 F.3d 876, 889 (9th Cir. 2010) ("because the CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions'").

character, general reputation, personal characteristics, or mode of living which is *used or expected to be used or collected in whole or in part* for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1) (emphasis added).  Intelius does *not* meet the definition of consumer reporting agency under the FCRA (or CCRAA and ICRAA). The Twelfth through Sixteenth Causes of Action fail.

**First**, with regard to Ostella, she does not have standing to assert any of these causes of action because Intelius has not furnished *any* information—let alone a "consumer report"—to anyone regarding her.  See Knisely v. Network Associates, Inc., 312 F.3d 1123, 1127 (9th Cir. 2002) (a plaintiff must demonstrate standing separately for each claim and form of relief sought), quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000) ("[Defendant] is right to insist that a plaintiff must demonstrate standing separately for each form of relief sought."); Lewis v. Casey, 518 U.S. 343, 358, n.6 (1996) ("standing is not dispensed in gross").

**Second**, with regard to Liberi, the *only* search results that Intelius provided to any "third party" concerning the name "Lisa Liberi" were through a generic "background check" search.  Those search results were not a "consumer report" (or any report) on any *specific* person named "Lisa Liberi" (such that Intelius could even reasonably expect those results to be used to evaluate a *particular individual's* "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living").  Instead, Intelius provides search results of the *potential* identity of the person the on-line user was searching for based upon the search inputs entered by that user to conduct that particular search—precisely what the search results themselves make clear. (See Nelson Decl., ¶ 5 and Ex. 1.) A generic report containing public information about multiple individuals named "Lisa Liberi" is not a "consumer report" under the FCRA (or CCRAA and ICRAA).  See Fiscella v. Intelius, Inc., 2010 WL 2405650 (E.D.Va. June 10, 2010) (holding that a person search on the name, "Edward Fiscella," in Virginia

1  through Intelius was *not* a consumer report or consumer file under the FCRA).

2  **Third**, this conclusion is reinforced by Intelius' "Terms and Conditions."  As the

3  Ninth Circuit has instructed, information furnished to a "third party" will be construed as a

4  "consumer report" *only if* the furnisher—here, Intelius—"*expects* the user to use the report

5  for a purpose permissible under the FCRA, without regard to the ultimate purpose to

6  which the report is actually put."  Comeaux v. Brown & Williamson Tobacco Co., 915

7  F.2d 1264, 1273-74 (9th Cir. 1990) (italics in original).  Accordingly, in the Ninth Circuit

8  (and elsewhere), the inquiry on whether information furnished to a "third party"

9  constitutes a "consumer report" turns on the expectations of the *furnisher* of

10  the information:

11            We believe a critical phrase in the definition of consumer

12            report is the second requirement:  the relevant information

13            must be "used or expected to be used or collected in whole or

14            in part for the purpose of serving as a factor" with regard to

15            enumerated transactions. *This phrase clearly requires judicial*

16            *inquiry into the motives of the credit reporting agency*, for

17            only it "collects" the information.

18  Heath v. Credit Bureau of Sheridan, 618 F.2d 693, 696 (10th Cir. 1980) (emphasis

19  added), cited with approval in Comeaux, 915 F.2d at 1273-74.   The Federal Trade

20  Commission's commentary on the FCRA is in accord.  According to the FTC, where the

21  furnisher of information establishes procedures

22            such that it neither knows of nor should reasonably anticipate

23            such use [under the FCRA], the report is not a consumer

24            report.  If [the entity] has taken reasonable steps to ensure that

25            such report is not used for such a purpose, and if it neither

26            knows of, nor can reasonably anticipate such use, the report

27            should not be deemed a consumer report, and the [entity] not

28            a consumer reporting agency, by virtue of uses beyond the

[entity's] control.

See 16 CFR pt. 600, App., at § 603(d)-5-D.  In that same commentary, the FTC declares that "[a] reporting party might establish that it does not reasonably anticipate such use of the report by *requiring the recipient to certify that the report will not be used for one of the purposes listed in section 604* [15 U.S.C. § 1681b]." Id. (emphasis added).[4]

This is precisely what Intelius has done.  Every on-line user of Intelius' webpage seeking to conduct a "background check" search—*before* they were permitted to run that search—certified that the information they were being provided was not intended to be used, and cannot be used, for any purpose under the FCRA.[5]  Not only has the FTC found that a report containing such disclosure "should not be deemed a consumer report," so has the Ninth Circuit.  In Mende v. Dun & Bradstreet, Inc., 670 F.2d 129 (9th Cir. 1982), the court held that the CCRAA was not violated because Dun & Bradstreet "require[d] that its subscribers sign an agreement that they will use reports on businesses only as a basis for credit to businesses in their capacities as such."  670 F.2d at 132.  Although Mende was decided under California law—i.e., the basis of plaintiffs' Fifteenth and Sixteenth Causes of Action in this action—its reasoning has been applied under the FCRA, too.

---

[4] With the passage of the Consumer Financial Protection Act, authority to issue interpretive guidance under the FCRA transferred from the FTC to the Consumer Financial Protection Bureau.  Accordingly, on July 26, 2011—about one month after this suit was filed—the FTC rescinded all of its commentary.  The CFPB has yet to issue commentary under the FCRA.  Regardless, the FTC's prior commentary relevant to this action is entirely consistent with the law in the Ninth Circuit and elsewhere.

[5] "[T]he vast majority of the courts (that have considered the issue) have held that a website's terms of service/use can define what is (and/or is not) authorized access vis-à-vis that website."  United States v. Drew, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009); see id. at 461-62 (holding that a "visitor" to the website at issue was bound by the website's "notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service").  See also Fractional Villas, Inc. v. Tahoe Clubhouse, 2009 WL 465997, at *3 (S.D. Cal. Feb. 25, 2009) ("Courts have held that a party's use of a website may be sufficient to give rise to an inference of assent to the Terms of Use contained therein (so called 'browsewrap contracts').") (citing cases).

1    In <u>Forrest v. Secured Funding, Inc.</u>, 2007 WL 81878, at *2 (E.D. Wis. Jan. 8,

2  2007), for example, the district court ruled the report at issue was not covered by the

3  FCRA because there was a term in the contract between the defendant and the company

4  that provided the defendant with the data in the report.  <u>Forrest</u>, at *2.  The written

5  agreement, similar to the one here, provided the data in the report was "not collected for

6  credit purposes, and is not intended to be indicative of any consumer's credit worthiness,

7  credit standing, credit capacity, or other characteristics listed in Section 603(d) of the Fair

8  Credit Reporting Act."  <u>Id</u>.  The district court found that this provision demonstrated that

9  defendant did not intend for the report to be a consumer report covered by the FCRA, and

10  dismissed the FCRA claim.  <u>Id</u>.  The Seventh Circuit ruled the same way in <u>Ippolito v.</u>

11  <u>WNS</u>, Inc., 864 F.2d 440, 449-50 (7th Cir. 1988).[6]

12    **<u>Fourth</u>**, to the extent plaintiffs' claims are based upon Yosef Taitz' alleged

13  "illegal" hacking into Intelius' servers, those allegations, even if true, do not state a claim

14  against Intelius.  Again, whether information constitutes a "consumer report" will depend

15  upon the ***<u>intent of the furnisher</u>***.  Intelius had no intention of allowing anyone to "hack"

16  into its servers to "illegally" obtain personal information about any of the plaintiffs.

17  The complaint does not allege otherwise.  Because the alleged acquisition of personal

18  information by "illegal" means cannot constitute a "consumer report," Intelius did not act

19  as a "consumer reporting agency" over the acquisition of such information (because, by

20  definition, in order to be deemed a "consumer reporting agency," there must have been a

21  "consumer report" furnished to a "third party").  <u>See</u> 15 U.S.C. § 1681a(f).

22    In sum, plaintiffs' allegation that Intelius has acted as a "Credit Reporting Agency"

23  ───────────────────

24    [6] Indeed, even if one were to assume that the public information furnished by

25  Intelius *could* be used for one of the seven enumerated purposes under the FCRA, it still
does not mean that Intelius is a "consumer reporting agency" under the Act:  "We do not
believe that the mere fact that a report *could* be used as a consumer report is enough to

26  make it one."  <u>Mende</u>, 670 F.2d at 133 (emphasis added); <u>see also</u> <u>Cavaliere v. Burke</u>,

27  50 F.3d 1033, 1995 WL 136229 at *3 (5th Cir. 1995) (the "relevant question in
determining whether a credit report is a consumer report falling within the scope of the

28  FCRA is whether the report was prepared for an enumerated FCRA purpose").

1    as to these plaintiffs (<u>see</u> FAC, ¶ 24) is not "plausible," and need not be accepted as true

2    by this Court in ruling on this motion.   <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.   Not only is it

3    irreconcilable with how users run "background check" searches through Intelius and the

4    search results they obtain, but it also collides with the plain and explicit terms of Intelius'

5    "Terms and Conditions."   Intelius is not a "consumer reporting agency," and plaintiffs'

6    Twelfth through Sixteenth Causes of Action, which necessarily depend upon such a

7    factual showing, should be dismissed with prejudice.

8            **B.**    <u>**INTELIUS HAS NOT FURNISHED "CONSUMER REPORTS" TO**</u>

9              <u>**"THIRD PARTIES" ABOUT ANY PLAINTIFF IN THIS ACTION**</u>

10         Independently, the Twelfth through Sixteenth Causes of Action fail because

11   Intelius has not:  (i) disclosed a "consumer report" (ii) to a "third party" (iii) who has acted

12   upon such information for a purpose under the FCRA, CCRAA or ICRAA—a necessary

13   element for each of these claims.   <u>See</u> <u>Wantz v. Experian Info. Solutions</u>, 386 F.3d 829,

14   833-34 (7th Cir. 2004) ("where there is no evidence of disclosure to a third party, the

15   plaintiff cannot establish the existence of a consumer report.  Without such a report, there

16   could be no duty to follow reasonable procedures regarding the report, nor could damages

17   flow from a breach of that duty"); <u>Renninger v. Chexsystems</u>, 1998 WL 295497 at *6

18   (N.D. Ill. May 22, 1998) (emphasis added) ("Underpinning this conclusion is the fact that

19   a consumer is not injured by an inaccurate credit report unless that false information is

20   communicated to <u>*and*</u> acted upon by a third-party user."); <u>Garcia v. UnionBancal Corp.</u>,

21   2006 WL 2619330 at *2 (N.D. Cal. Sept. 12, 2006) (same); <u>Matise v. Trans Union Corp.</u>,

22   1998 WL 872511 (N.D. Tex. Dec. 1, 1998) (same).

23         Here, as to Ostella, no one has ever run a search on the name "Lisa Ostella"

24   through Intelius; thus, her claims fail because Intelius has not furnished any report, much

25   less a "consumer report," to a "third party" about Ostella.  With regard to Liberi, the only

26   information that Intelius has ever generated to a "third party" concerning the name,

27   "Lisa Liberi," were generic search results on the name "Lisa Liberi" generally.  Not only

28   do those search results state that they may not be used for any purpose under the FCRA

1    (i.e., they are not a "consumer report" under the FCRA), they also provide that they are

2    *not* a specific report about any "Lisa Liberi" (but instead are public records of several

3    individuals with the same or similar name as 'Lisa Liberi"). Such a "report" cannot raise

4    liability under the FCRA. See Fiscella, 2010 WL 2405650 at *3-4. Finally, plaintiffs do

5    not allege that Intelius ever provided a report to a third party about any plaintiff who, in

6    turn, has "acted upon" such information for a purpose under the FCRA—an independent

7    ground to dismiss plaintiffs' Twelfth through Sixteenth Causes of Action. See Renninger,

8    1998 WL 295497 at * 6.[7]

9            C.      **INTELIUS HAD NO DUTY TO REINVESTIGATE**

10           Even assuming, *arguendo*, that Intelius: (i) is a "consumer reporting agency"; and

11   (ii) furnished "consumer reports" to third parties, plaintiffs' Twelfth Cause of Action—an

12   alleged failure to conduct a reinvestigation under the FCRA—still fails as a matter of law.

13   To maintain a cause of action under 15 U.S.C. § 1681i, Ostella and Liberi must show that

14   they brought inaccurate information in their consumer "file" to the attention of Intelius.

15   They cannot make such as showing.

16           Ostella never even tried.  (See Nelson Decl., Ex. 6 (Ostella's letter to Intelius,

17   which does not mention anything about inaccuracies in her "file").)  And, although Liberi,

18   through a letter from Berg, claimed that her "file" contained inaccuracies, that letter

19   utterly fails to identify any specific inaccuracies, such that Intelius could even begin to

20   conduct a reinvestigation under the FCRA.  Merely stating, as Berg's letter does, that a

21   "file" contains inaccurate social security numbers and names—without ever specifying

22   what social security numbers and names are inaccurate—does not suffice to trigger a

23   reinvestigation  under the FCRA.  See, 15 U.S.C. § 1681i(a)(3) ("a consumer reporting

24   agency may terminate a reinvestigation of information disputed by a consumer… *by*

25   ───────────────
26           [7] That Liberi may have purchased an allegedly inaccurate report about *herself* is
     insufficient to state a claim under 15 U.S.C. §§ 1681e and 1681i; Pinson v. Equifax, 2008
27   WL 2329137 (N.D. Okla. June 2, 2008) ("To maintain a cause of action under 15 USC §§
     1681e(b) or 1681i, a plaintiff must establish that the consumer reporting agency published
28   a credit report that contained inaccurate information about an individual to a third party").

1  _reason of a [consumer's] failure to provide sufficient information to investigate the_
2  _disputed information_ (emphasis added)"); Ruffin-Thompkins v. Experian Info. Solutions,
3  422 F.3d 603, 609 (7th Cir. 2005) (insufficient information provided in dispute letter does
4  not trigger 1681i duty to reinvestigate); Deandrade v. Trans Union LLC, 523 F.3d 61, 67
5  (1st Cir. 2008) ("without a showing that the reported information was in fact inaccurate, a
6  claim brought under Section 1681i must fail"); Cain v. Trans Union LLC, 2006 WL
7  328409 at *5 (W.D. Wash. 2006) (vague complaint of inaccuracies or "fraud" insufficient
8  to trigger a duty to reinvestigate); Thomas v. Trans Union, 197 F. Supp. 2d 1233, 1236
9  (D. Ore. 2002) (same);  Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008)
10  (same); Keuhling v. Trans Union LLC, 137 Fed. Appx. 904, 908 (7th Cir. 2005) (same).

11  **III.   PLAINTIFFS' NON-FCRA CLAIMS ARE PREEMPTED**

12      In addition to being barred by the CDA, plaintiffs' non-FCRA claims are
13  preempted by the FCRA.  Indeed, Section 1681h(e) of the FCRA expressly declares that
14  causes of action "in the nature of" "defamation" and "invasion of privacy" as preempted.[8]
15  15 U.S.C. § 1681h(e); Poulin v. The Thomas Agency, 708 F.Supp.2d 87, 90 (D.Me.
16  2010) ("With respect to Plaintiff's invasion of privacy claim, the analysis is simple.
17  Section 1681h(e) provides 'no consumer may bring any action or proceeding in the nature
18  of . . . invasion of privacy . . . with respect to the reporting of information against
19  any . . . person who furnishes information to a consumer reporting agency.'"); Aklagi v.
20  Nationscredit Financial, 196 F.Supp.2d 1186, 1195 (D.Kan. 2002) (same).

21      In order to escape preemption, plaintiffs must plead _facts_ demonstrating that
22  Intelius acted with malice or willful intent to injure.  While plaintiffs allege, in conclusory
23  fashion, that Intelius acted willfully, such conclusory allegations are insufficient.  In Iqbal,

24  _____

25      [8] While Section 1681h(e) does not specifically mention claims for intentional
26  infliction of emotional distress as being preempted, courts have extended the preemption
    to claims for emotional distress. See, e.g., Domingo v. Equifax Credit Information
27  Services, Inc., 1994 WL 519035 (D.Or. 1994); Socorro v. IMI Data Search, Inc., 2003
    WL 1964269 (N.D. Ill. 2003) ("Socorro's NIED [negligent infliction of emotional
28  distress] claim is barred by the FCRA's preemption provision…").

1   for example, the Court held that bare allegations that the defendant "knew of" and

2   "condoned" the wrongful conduct, and acted "willfully and maliciously," were

3   insufficient to plead the plaintiff's claims.  "It is the conclusory nature of respondent's

4   allegations, rather than their extravagantly fanciful nature, that disentitles them to the

5   presumption of truth." Iqbal, 129 S. Ct. at 1951. The same is true here:  Plaintiffs'

6   conclusory allegation that "Defendants' unlawful conduct as alleged herein was

7   intentional, oppressive and malicious" (see FAC, ¶ 203), are unsupported by any *facts*

8   establishing that Intelius's conduct was intentional, oppressive and malicious. Thus,

9   plaintiffs' allegations are insufficient to avoid the preemptive effect of the FCRA.

10  **IV.  THE FIRST, SECOND AND THIRD CAUSES OF ACTION FAIL**

11          In addition to the foregoing, the first three causes of action—collectively, plaintiffs'

12  "invasion of privacy" claims—independently fail to state a claim against Intelius for the

13  reasons discussed below and in this Court's ruling on Oracle's motion to dismiss.

14          •       **First**, Go Excel Global and The Law Offices of Philip J. Berg may *not* sue

15  for Invasion of Privacy because "California courts have rejected the notion that a

16  corporation has a common law right to privacy."  Towe, 1995 WL 242328 at *3;

17  Huntingdon Life Sciences, 129 Cal. App. 4th at 1260 (same).

18          •       **Second**, as to Berg, Ostella and Liberi, to the extent their invasion of

19  privacy claims are grounded upon the United States Constitution, they fail because

20  Intelius is a private party, not a state actor.  See Howard v. Am. Online, 208 F.3d 741, 754

21  (9th Cir. 2000).  These same plaintiffs may not sue Intelius for invasion of privacy under

22  the California constitution because Intelius did not engage in any conduct constituting any

23  invasion, much less a "serious invasion," of their privacy.  See Hill v. Nat'l Collegiate

24  Athletic Assn., 7 Cal. 4th 1, 39-40 (1994).  Intelius did not publish any information about

25  Berg or Ostella (see Nelson Decl., ¶¶ 15, 17), and their claims fail.  See, e.g., Kinsey v.

26  Macur, 107 Cal. App. 3d 265, 270, 165 (1980) (the tort of public disclosure of private

27  facts "must be accompanied by publicity in the sense of communication to the public").

28  And, the only information Intelius furnished regarding the name "Lisa Liberi" was *public*

information about the name "Lisa Liberi" _generally_ (Nelson Decl., ¶ 11 and Ex. 1), which is not actionable either as:  (i) "public disclosure of private facts – invasion of privacy" (Shulman v. Group W Productions, Inc., 18 Cal. 4th 200, 214 (1998)); or (ii) "false light – invasion of privacy" (Solano v. Playgirl, Inc., 292 F.3d 1078, 1082 (9th Cir. 2002)). Indeed, plaintiffs do not allege _any_ information that Intelius published to _anyone_ regarding _any_ plaintiff that is false—a necessary element of these claims.  Id.

     •     **Third**, to the extent that these causes of action are grounded upon plaintiffs' implausible theory that Yosef Taitz, with the assistance of Oracle, "illegally" hacked into Intelius' servers, wrongfully acquired private information about the plaintiffs, and then had his wife publish such information on the Internet (FAC, ¶¶175-186), plaintiffs still have not stated a claim for "invasion of privacy" against _Intelius_.  That is, even if the Court were to accept this far-fetched theory as fact, plaintiffs do not allege any facts establishing that _Intelius_ (as opposed to someone else) _intentionally_ published private or false information about the plaintiffs.  At best, plaintiffs complaint alleges that someone "illegally" acquired such information from Intelius, and then published it to the world without Intelius' knowledge or participation.

## V.     THE FIFTH, SIXTH AND SEVENTEENTH CAUSES OF ACTION FAIL

     Plaintiffs' Fifth, Sixth and Seventeenth Causes of Action—Liberi and Ostella's claims under California's Information Privacy Act (IPA)—fail as a matter of law for the following additional reasons.

     •     **First**, Intelius did _not_ "intentionally disclose[] information, not otherwise public [regarding Liberi or Ostella], which [Intelius] kn[e]w or should [have] reasonably know[n] was obtained from personal information maintained by a state agency or from 'records' within a 'system of records' … maintained by a federal government agency…." Cal. Civ. Code § 1798.53; see also Jennifer M. v. Redwood Women's Health Center, 88 Cal. App. 4th 81, 89 (2001) ("[o]n its face, the Information Practices Act is aimed at barring or limiting the dissemination of confidential personal information—and preventing the misuse of such information—by government agencies"). Indeed, with

regard to Ostella, Intelius did not disclose any information—public or private—to anyone; and the only information Intelius has ever furnished about the name "Lisa Liberi" consisted of *public* information about "Lisa Liberi" *generally* (not "Lisa Liberi" plaintiff). The Fifth Cause of Action should be dismissed with prejudice.

• **Second**, plaintiffs are not entitled to "3,000,000,000.00" against Intelius, under California Civil Code, section 1798.85(a)(1), because Intelius did not disclose to "unauthorized third parties" any "privileged financial, credit, and other confidential information" about Ostella or Liberi. (See FAC ¶¶ 248-64.) Indeed, the complaint alleges that only Orly Taitz did so. (See, e.g., FAC ¶¶ 63-70.) The Sixth Cause of Action should be dismissed with prejudice.

• **Third**, plaintiffs' claim under California Civil Code, section 1798.81.5 is similarly defective: That statute applies *only* to California residents (see Cal. Civ. Code § 1798.81.5(a)), which Liberi and Ostella are not. (FAC ¶¶ 4 and 8.) Plaintiffs also do not allege any facts establishing that Intelius violated Civil Code, section 1798.83, which regulates the disclosure of consumer information to third-party direct marketing agencies.[9] The Seventeenth Cause of Action should be dismissed with prejudice.

## VI. THE EIGHTH CAUSE OF ACTION FAILS

In addition to the reasons set forth above, the Eighth Cause of Action for "Defamation" fails for the following additional reasons. Go Excel Global and The Law Offices of Philip J. Berg have not been defamed by Intelius as it has not published *anything*, let alone "false" information, about either of these organizations. (See Nelson Decl., ¶ 18 and Ex. 8.) The same is true for Berg, Ostella, and Liberi. (Id., ¶¶ 5, 15, 17.) And, despite a 172 page complaint, these plaintiffs do not allege differently. See Jacobson

---

[9] And, even if they had tried, plaintiffs' claim still would be barred because they lack standing under section 1798.84(b), which grants a private right of action under Section 1798.83 only to a "customer"—which is defined as someone who previously provided "personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." See Cal. Civ. Code §§ 1798.80(c) and 1798.84(b). Ostella and Liberi do not allege that they were "customers" of Intelius; or that Intelius improperly published their confidential "customer" information.

1   v. Schwarzenegger, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) ("Under California law,

2   although a plaintiff need not plead the allegedly defamatory statement verbatim, the

3   allegedly defamatory statement must be specifically identified, and the plaintiff must

4   plead the substance of the statement .... Even under liberal federal pleading standards,

5   'general allegations of the defamatory statements' which do not identify the substance of

6   what was said are insufficient") (citations omitted); see also Silicon Knights, Inc. v.

7   Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) ("The words

8   constituting a libel or slander must be specifically identified, if not plead verbatim . . .

9   While the exact words or circumstances of the slander need not be alleged to state a claim

10  for defamation, the substance of the defamatory statement must be alleged.")

11  **VII.   THE NINTH AND NINETEENTH CAUSES OF ACTION FAIL**

12          The Ninth and Nineteenth Causes of Action—for Intentional and Negligent

13  Infliction of Emotional Distress, respectively—likewise fail.

14          •       **First**, Go Excel Global and The Law Offices of Philip J. Berg cannot suffer

15  emotional and mental distress.   See, e.g., Hulsey, 22 F.3d at 1489; Huntingdon Life

16  Sciences, 129 Cal.App.4th at 1260 (same); Kassa v. BP West Coast Products, LLC, 2008

17  WL 3494677 (N.D. Cal. Aug. 12, 2008) (same).

18          •       **Second**, as to Berg, Ostella and Liberi, the complaint fails to allege facts

19  demonstrating that Intelius engaged in "extreme and outrageous" conduct, much less did

20  so with the intention of causing them harm.   Cochran v. Cochran, 65 Cal. App. 4th 488,

21  494 (1998); KOVR–TV, Inc. v. Superior Court, 31 Cal. App. 4th 1023, 1028 (1995) (for

22  conduct to be outrageous, it "'must be so extreme as to exceed all bounds of that usually

23  tolerated in a civilized community.'") (quoting Cervantez v. J.C. Penney Co., 24 Cal. 3d

24  579, 593 (1979)); see also Chaconas v. JP Morgan Chase Bank, 713 F. Supp. 2d 1180,

25  1187-88 (S.D. Cal. 2010).   Indeed, to be actionable, "'[i]t is not enough that the conduct

26  be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the

27  presence of a plaintiff of whom the defendant is aware.'"   Potter v. Firestone Tire &

28  Rubber Co., 6 Cal. 4th 965, 1001 (1993) (quoting Christensen v. Super. Ct., 54 Cal. 3d

868, 903 (1991)).  Plaintiffs do not allege that Intelius committed actionable misconduct "directed" at any plaintiff with the intention of causing them emotional distress.

•   **Third**, the "negligent" infliction of emotional distress claim is no better. Plaintiffs do not allege any facts to support such a claim against Intelius under a "bystander" theory, which seeks damages for serious emotional distress suffered as a result of an injury to a close family member. Burgess v. Superior Court, 2 Cal. 4th 1064, 1071 (1992).   With respect to the "direct victim" theory, "there is no independent tort of negligent infliction of emotional distress." Potter, 6 Cal. 4th at 984.  Regardless, Intelius has not been negligent as to any of these plaintiffs to warrant the recovery of emotional distress as damages. To state a negligence cause of action, plaintiffs must plead, among other elements, proximate causation. The complaint makes clear that it was Orly Taitz' publication of information about the plaintiffs that proximately caused their alleged harm (see FAC, ¶ 403), which is a "superseding cause" and a "bar to recovery." Safeco Ins. Co. v. J & D Painting, 17 Cal. App. 4th 1199, 1204 (1993).

## VIII.  <u>THE TWENTIETH CAUSE OF ACTION FAILS</u>

The claim for "res ipsa loquitor [sic] negligence" (FAC ¶¶ 417-423) is frivolous. To state a claim, plaintiffs must show that the "accident" must be of a kind which "ordinarily does not occur in the absence of someone's negligence." Moreno v. Sayre, 162 Cal. App. 3d 116, 123-24 (1984); Gicking v. Kimberlin, 170 Cal. App. 3d 73, 75 (1985). But according to the complaint, the alleged publication of plaintiffs' confidential information did not occur by "accident"; instead, it was allegedly done by Taitz as part of a plot to "destroy" (FAC , ¶ 137) plaintiffs—the antithesis of an "accident."

## IX.   <u>THE EIGHTEENTH CAUSE OF ACTION FAILS</u>

Plaintiffs' claims under Section 17200 are defective.  There is no "unlawful" prong violation because each of the causes of action forming the basis of the UCL claim fail as a matter of law. Maguca v. Aurora Loan Services, 2009 WL 3467750, * 4 (C.D. Cal. Oct. 28, 2009) (granting motion to dismiss UCL claim predicated on other dismissed claims).  There is no "unfairness" and "fraudulent" prong violations, either, because plaintiffs fail to make

specific allegations with respect to these theories under the UCL.  That is, they do not allege, with specificity, any "fraudulent" conduct; nor do they allege any conduct that could be "'tethered' to [a] specific constitutional, statutory or regulatory provision[]." Gregory v. Albertson's, Inc., 10 Cal.App.4th 845, 854 (2002); citing Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163 (1999); Berryman v. Merit Property Management, Inc., 152 Cal.App.4th 1544, 1555 (2007) ("[t]he burden is on the plaintiffs to show why [defendant] was not permitted to" act as it did); Durrell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1366 (2010) (affirming dismissal where complaint "does not allege the conduct is tethered to any underlying constitutional, statutory, or regulatory provision").[10]

## CONCLUSION

Intelius is a complete stranger to this longstanding dispute between once allies in the "birther" movement to oust President Barack Obama from office.  This suit against *Intelius* is entirely baseless, and should be dismissed with prejudice.


Dated:   September 16, 2011                 Respectfully submitted,

                                           JONES DAY


                                           By: */s/ John A. Vogt*
                                                John A. Vogt

                                           ATTORNEYS FOR INTELIUS INC.

---

[10] And, even if the Court found otherwise, it is well settled that "a plaintiff may not bring an action under the unfair competition law if some other provision bars it." Cel-Tech, 20 Cal.4th at 184 (1999).  Plaintiff's attempt to brand practices "unfair" or "fraudulent" for which Intelius enjoys absolute immunity is without merit.  Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal.4th 553, 566 (1998)  ("the UCL cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law"); superseded by statute on other grounds as stated in Californians For Disability Rights v. Mervyn's, LLC, 39 Cal.4th 223 (2006).