Philip J. Berg, Esquire
Pennsylvania I.D. 9867
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone:   (610) 825-3134
E-mail: philjberg@gmail.com                *Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA,
## SOUTHERN DIVISION

| | |
|---|---|
| LISA LIBERI, et al, | |
| Plaintiffs, | CIVIL ACTION NUMBER: |
| | **8:11-cv-00485-AG (AJW)** |
| vs. | |
| | **PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES** |
| MS. TAITZ, et al, | |
| Defendants. | Date of Hearing:   December 19, 2011 |
| | Time of Hearing:  10:00 a.m. |
| | Location:          Courtroom 10D |

### I.    FACTS:

1.     Defendant Daylight Chemical Information Systems, Inc. ["DCIS"] claims this action "springs from an 'intra-Birther Movement' feud between Philip J. Berg and Orly Taitz which has nothing to do with DCIS" and that Plaintiffs attempted to "cast their net as widely as possible…to bring Yosef Taitz back into this politically motivated skirmish" and that Plaintiffs ignored the spirit and letter of the 2009 Order by naming Yosef Taitz ["Mr. Taitz"] without first seeking Leave of Court to join him.  DCIS claims that Plaintiffs are attempting to make "an end run around" the stipulated dismissal of Mr. Taitz in his individual capacity in 2009, by dragging in Mr. Taitz's Corporation, DCIS, without any good faith basis. [DCIS MTD, pg. 1, lines 3-27].

2.   This case is **not** about any type of "intra-Birther Movement feud", nor is it a "politically motivated skirmish"; Plaintiffs Lisa Liberi ["Liberi"] and Lisa Ostella ["Ostella"] are **not** "Birthers" and simply performed their jobs on behalf of two (2) separate attorney's, e.g. Liberi for Plaintiff Philip J. Berg, Esquire and Ostella for Defendant Orly Taitz.

3.   In or about the beginning of 2010, Plaintiffs learned that Defendant Orly Taitz ["Ms. Taitz"] had obtained Plaintiffs private data from the Reed and Intelius Defendants. The private data obtained, without any type of permissible purpose, included but is **not** limited to Plaintiffs Social Security numbers; dates of birth; place of birth; mother's maiden names; spouses names; Plaintiffs Liberi and Ostella's maiden names; address information; credit data; credit reports; financial data; medical reports and other private data [hereinafter referred to "Private Data"] that is maintained by State and Government entities.  Ms. Taitz used the private data of the Plaintiffs to carry out her threats and destroy them.

4.   Shortly thereafter, Plaintiffs discovered Mr. Taitz through DCIS was partnered with Elsevier MDL, which is part of Reed Elsevier, Inc.  It was also discovered that Mr. Taitz was partnered with Oracle.

5.   Mr. Taitz started DCIS in or about 1986.  Mr. Taitz is the "hands-on" CEO and President of DCIS.

6.   DCIS' toolkits provide programming interface applications which are built into the design and used with Oracle.  The design allows for remote application execution, cross-site scripting, remote interface and injection attacks, which are vulnerabilities that DCIS and Mr. Taitz were and are aware of.  DCIS and Mr. Taitz have their tools scripted to

interface any and all data maintained on their clientele's databases to designated private servers in control of Mr. Taitz by and through DCIS.

7.      Mr. Taitz utilized his position with DCIS and DCIS' tools provided by DCIS, to access Plaintiffs private data, which he provided to his wife, Ms. Taitz, to carry out the threats against Plaintiffs.  DCIS is its own legal entity responsible for the actions of its employees.

8.      DCIS claims Plaintiffs failed to support their allegations with "evidence". Plaintiffs filed Exhibits pertaining to DCIS with their proposed FAC. *See* DN 190; and Exhibits "141" through "144" appearing as DN 190-26 and 190-27.

9.      DCIS repeats Plaintiffs allegations that Ms. Taitz obtained Plaintiffs private data from the Sankey Defendants and from Mr. Taitz by and through DCIS. [DCIS MTD, pg. 3, ll. 3-28 and pg. 4, ll. 1-18].  Mr. and Ms. Taitz needed the Sankey Defendants to conduct a search on Plaintiffs Liberi and Ostella in order to create a compilation link. Mr. Taitz by and through DCIS utilized DCIS' tools and used compilation link created by the Sankey Defendants to obtain Plaintiffs private data from the Reed Defendants "back-end" resources.  The Reed Defendants have two [2] views of information which they provide.  A front view, which the Sankey Defendants had access to, e.g. Social Security numbers, dates of birth, names, addresses, relative information, etc.  And, a back-end view, which DCIS and their employee, Yosef Taitz had that gives more detailed information on the subject being searched in the Reed Defendants databases, e.g. medical information, credit information, financial information, business associates, employment histories, mother's maiden names, places of birth, etc. *See* Plaintiffs FAC at pgs. 61-78, ¶¶144-186; *the*

Declarations of Lisa Ostella filed July 25, 2011, DN 312; and Dr. Charles Edward Lincoln, III filed July 25, 2011, DN 313.

10.     Defendant Orly Taitz confirmed this information when she admitted she obtained Plaintiffs Liberi and Ostella's private data from the Sankey Defendants and directly from the Reed and Intelius Defendants.  Ms. Taitz's **never** had accounts with LexisNexis, Reed, ChoicePoint, Inc., Accurint; or any other data broker.  The only way Ms. Taitz could have obtained Plaintiffs Liberi and Ostella's private data, and that of their spouses, directly from the Reed Defendants was through her husband, Mr. Taitz, with his access through DCIS. *See* Defend our Freedoms Foundations, Inc. ["DOFF"] MTD filed July 11, 2011, DN 283; Orly Taitz's MTD filed July 11, 2011, DN 280; and the Law Offices of Orly Taitz's ["L.O.O.T."] MTD filed September 14, 2011, DN 376 and their Amended MTD filed September 16, 2011, DN 377. *See* also the Declarations of Lisa Ostella filed July 25, 2011, DN 312; Dr. Charles Edward Lincoln, III filed July 25, 2011, DN 313 and Plaintiffs FAC at pgs. 72-73, ¶171.

11.     Plaintiffs pled the Reed and Intelius Defendants maintained incorrect information on the Plaintiffs.  Mr. Taitz through DCIS provided Plaintiffs private data to Orly Taitz as fact and **not** merely statements, thus DCIS is liable. *Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974).

12.     The information Plaintiffs pled against DCIS and explained were taken from DCIS' own scripting, websites, white papers, press releases and government notifications. *See*  http://daylight.com;   http://www.daylight.com/meetings/emug00/Kappler/intro.html;

http://www.daylight.com/meetings/mug00/Delany/cartridge.html;

http://www.daylight.com/dayhtml/doc/theory/theory.finger.html; and

http://www.daylight.com/cheminformatics/casestudies/syrrx.html.  In fact, the scripting and manuals are filed with this Court. *See* Exhibits "141" (DCIS Cartridge); "142" (DCIS' fingerprinting); "143" (DCIS Dual Purpose Manual); and "144" (DCIS DayCart) appearing in DN's 190-26 and 190-27, which Plaintiffs were precluded from filing with their FAC. *See* this Court's Order of June 14, 2011, DN 227, Granting Plaintiffs Leave to file their FAC, but without Exhibits and/or any reference thereto.

13.     Plaintiffs explain in their FAC at pgs. 74-78, ¶¶176-186; how DCIS products are incorporated into Oracle; and that the Reed and Intelius Defendants utilize the products. *See*     https://reedelsevier.taleo.net/careersection/50/jobdetail.ftl?lang=en&job=LEX003Q5     and Intelius' admissions in their MTD filed September 16, 2011, DN 380.

14.     DCIS claims that it is based on chemical information.  Oracle is bundled with DCIS' portfolio of tools.  These tools are used to manage data from the Server level down indexing information and they are presented and sold under the guise of scientific management, which includes chemical, when the tools actually manage and index **all** data. All computer programing is scientific and based on scientific programming language, the internet itself is scientific. *See* Plaintiffs FAC at pgs.  74-78, ¶¶ 175-186.

15.     For the reasons outlined herein, DCIS has **not** met its burden.  Plaintiffs have sufficiently pled their claims against DCIS and DCIS is legally responsible.  Thus, DCIS' Motion to Dismiss must be Denied.  In the alternative, Plaintiffs Request Leave to Amend their Complaint.

# ARGUMENT

## II.   STANDARD OF REVIEW:

16.   Dismissal under *Fed. R. Civ. P.* 12(b)(6) is appropriate only where the Complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a Motion to Dismiss ["MTD"], the Plaintiff's allegations are taken as true, and the Court must construe the Complaint in the light most favorable to the Plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Leave to Amend must be Granted unless it is clear that the Complaint's deficiencies cannot be cured by Amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir.1995).

## III.   PLAINTIFFS CLAIMS ARE SUFFICIENTLY PLED:

17.   Plaintiffs incorporate by reference the previous paragraphs as if fully set forth here at length.  Plaintiffs also incorporate by reference their FAC at pgs. 74-90, ¶¶ 175-225; pgs. 94-102, ¶¶239-264; pgs. 111-122, ¶¶281-314; pg. 131, ¶343; pgs. 136-137, ¶358, ¶¶360-361, 363; pg. 141, ¶376; pgs. 142-146, ¶¶382-391; and pgs. 150-160, ¶¶392-423.  As can be seen, every cause of action in Plaintiffs FAC incorporate by reference the preceding

paragraphs as if fully set forth there at length; this was to avoid repeating the allegations pled against DCIS and the other Defendants.

18.     DCIS claims Plaintiffs Complaint fails to inform them of what they have done wrong, even though they recite the allegations against them, that the FAC is **not** a plain statement; that the FAC is convoluted and they can't figure which claims are against them, the claims against them in the FAC are **not** simple, concise and direct; and the allegations against them are vague, and its substance is verbose [DCIS MTD at pgs. 6-8].

19.     Plaintiffs explain in detail how DCIS tools are incorporated into Oracle; how DCIS and Oracle interface; how Mr. Taitz through DCIS accessed and obtained Plaintiffs private data from the Reed and Intelius Defendants; what the private data constituted; that Mr. Taitz gave the information obtained through DCIS to his wife, Ms. Taitz, etc.; clearly showing what DCIS did wrong; how it pertained to DCIS; and how DCIS's actions, or lack thereof, damaged the Plaintiffs.

A.     **Plaintiffs have Complied with the *Fed. R. Civ. P.* 8 Pleading Requirements**

20.     *Fed. R. Civ. P.* 8 requires "(a) Claim for Relief. A pleading that states a claim for relief must contain: (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]"   "The Theory of Rule 8(a) and of the Federal Rules…is notice pleading".   "…under the federal rules a complaint is required only to give the notice of the claim…The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts." *Starr v. Baca*, ____ F.3d ____ (July 25, 2011), 2011 WL 2988827 at *9-*10.

21.     DCIS claims Plaintiffs have **not** provided enough information as to what DCIS is being sued for; Plaintiffs FAC uses "technical jargon"; and Plaintiffs FAC "attempts to lay blame upon a group of unrelated 'Defendants' for single acts."

22.     Each Defendant in this case, as outlined in Plaintiffs FAC, committed wrongs against the Plaintiffs in different ways, for which they are being sued.

23.     Plaintiffs pled DCIS and Mr. Taitz are partnered with Oracle and the Reed Defendants; Oracle's Relational Database Software was designed based off the DCIS Web Development architecture; DCIS toolkits provide programming interface applications that are built into the design of Oracle.  The design allows for remote applicational execution, cross-site scripting, remote interface and injection attacks; Mr. Taitz through DCIS and DCIS are engaged in providing software technologies, servers and operating systems to the Reed and Intelius Defendants; DCIS shares a mail server with Intelius, Inc.; DCIS and Mr. Taitz developed and released "DayCart", an application using the unique extensibility features of Oracle in an Oracle database server environment.  The use of DayCart with the Oracle server, unlocks the access of existing Oracle applications and tools, such as dual program interface plug in applications; As a result of the design of Oracle and DCIS' toolkit based architecture applications, DCIS has top user access to any computer, server, and/or database in which Oracle and DCIS products are located.  And, Mr. Taitz, through DCIS accessed the Reed and Intelius Defendants databases, which utilize Oracle and DCIS tools.  Mr. Taitz through DCIS gained access to Plaintiffs private data, from a back-end view by utilizing the compilation link created by the Sankey Defendants.  Mr. Taitz through DCIS shared Plaintiffs private data with his wife, Ms. Taitz, in order for Ms. Taitz to carry out her

threats against Plaintiffs; that Ms. Taitz published the private data obtained through DCIS and Mr. Taitz all over the internet and sent it out by mass emailing repeatedly, including internationally.

24.     Plaintiffs have complied with the *Fed. R. Civ. P.* 8 pleading requirements and have undoubtedly placed DCIS on notice as to what they and their employee has done which caused Plaintiffs damages.

25.     As explained by the Ninth Circuit in *Starr,* "To be entitled to the presumption of truth, allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  As Plaintiffs have done, Plaintiffs outlined in paragraphs what each Defendant has done wrong, including DCIS. *See* pgs. 74-78, number IV, ¶¶175-186, all of which was incorporated in by reference to each Cause of Action.  And, in some Causes of Actions, Plaintiffs even gave more details, which were not required.

26.     Plaintiffs have complied with the *Fed. R. Civ. P.* 8 pleading requirements and therefore, DCIS' MTD must be Denied.

**B.     *Twombly* and *Iqbal* Pleading Standards:**

27.     Plaintiffs incorporate by reference their FAC and the previous paragraphs as if fully set forth here at length.

28.     Under the notice pleading standard, a complaint will **not** be dismissed for failure to state a claim so long as it puts the Defendant on notice of the gravamen of the Plaintiff's Complaint and includes a "short and plain statement of the claim showing that the

pleader is entitled to relief", *Fed. R. Civ. P.* 8.  In *Bell Atl. Corp. v. Twombly*, (2007) 550 U.S. 554, 570, 127 S. Ct. 1955, the Court held, "This 'plausibility' standard, while not a "probability" standard, requires 'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'"

29.    Plaintiffs' claims against DCIS are far from "speculation" or "conclusory statements"; they are **facts** taken from DCIS' own writings; white papers; websites; and government notifications.   Mr. Taitz did **not** deny the allegations pled, instead, he cast blame upon DCIS. *See* Yosef Taitz's MTD filed July 19, 2011, Dkt. No. 296 and August 1, 2011, Dkt. No. 329.

30.    For the reasons outlined, Plaintiffs have met their burden and DCIS' MTD must be Denied.

**IV.    PLAINTIFFS 1st, 2nd and 3rd CAUSE OF ACTIONS**

31.    Plaintiffs incorporate by reference the preceding paragraphs and their FAC at pgs. 74-90, ¶¶ 175-225 as if fully set forth here at length.

32.    Legally recognized privacy interests are generally of two (2) classes.  The first is the interest in precluding the dissemination or misuse of sensitive and confidential information otherwise known as informational privacy. *Hill v. National Collegiate Athletic Assn.*, (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834]; *Leibert v. Transworld Systems, Inc.*, 32 Cal. App. 4th 1693 [39 Cal. Rptr. 2d 65] (1st Dist. 1995).   Informational privacy encompasses the right to be free from the wrongful publicizing of Plaintiffs private affairs and activities, which are outside of legitimate public concern. *Smith v. National Broadcasting Co.*, 138 Cal. App. 2d 807807 (2nd Dist. 1956).  It is the right for Plaintiffs to

live their lives in seclusion, _Schwartz v. Thiele_, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966), without being subjected to unwarranted and undesired publicity. _Smith v. National Broadcasting Co._, 138 Cal. App. 2d 807807 (2nd Dist. 1956); _Schwartz v. Thiele_, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966).

### A.   **Plaintiffs 1st Cause of Action – Willful and Intentional Intrusion upon Plaintiffs Solitude, Seclusion and Private Affairs - Invasion of Privacy…:**

33.   Plaintiffs incorporate by reference the preceding paragraphs and their FAC at pgs. 74-83, ¶¶ 175-204 as if fully set forth here at length.

34.   DCIS claims Plaintiffs fail to adequately set forth facts in their cause of actions that DCIS committed a serious invasion of their Privacy; DCIS refers the Court to Plaintiffs FAC at ¶¶ 187-204.  DCIS fails to make any reference to Plaintiffs FAC at pgs. 74-78, ¶¶ 175-186 which outlines all specifics as to what DCIS and Mr. Taitz did that damaged Plaintiffs and how it was a serious invasion of Plaintiffs privacy.  And, that pgs. 74-78, ¶¶ 175-186 of Plaintiffs FAC are incorporated in by reference to Plaintiffs First Cause of Action as if it was fully set forth there at length.

35.   _Invasion of privacy_, a tort of "Invading one's Solitude, Seclusion and/or Private Affairs" is based in common law. _See Forsher v. Bugliosi_, (1980) 26 Cal. 3d 792 [163 Cal. Rptr. 628]; _Hill v. National Collegiate Athletic Assn._, (1994) 7 Cal. 4th 1, [26 Cal. Rptr. 2d 834].

36.   DCIS attempts to cloud the issues by stating Orly Taitz is who violated Plaintiffs Rights to Privacy and invaded Plaintiffs privacy.  DCIS is correct in part, but fails to acknowledge Mr. Taitz through DCIS assisted Ms. Taitz.  Mr. Taitz utilized his position with DCIS, and used DCIS' equipment, tools, etc. to gain access to the Reed and Intelius

Defendants databases and retrieved Plaintiffs private data outlined in Plaintiffs FAC, to give to his wife, Ms. Taitz, to carry out her threats and destroy Plaintiffs.   Mr. Taitz accessed Plaintiffs private data through the work Mr. Taitz's conducts on behalf of DCIS.   A corporation can only act through its employees and agents.   DCIS is responsible for its employee, Mr. Taitz's actions and damages caused to Plaintiffs as a result thereof. *See PMC v. Kadisha*, (2000) 78 Cal. App. 4th 1368, 1378, 1381; *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296-98, 907 P.2d 358, 360-62, 48 Cal. Rptr. 2d 510, 512-14 (1995); *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1461, 232 Cal. Rptr. 685, 690 (1986); *See also Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.*, 12 Cal. App. 4th 74, 93, 15 Cal. Rptr. 2d 585, 595 (1993).

37.   Plaintiffs pled they had and have an expectation of privacy in their private affairs and private data outlined in Plaintiffs FAC, which were intruded on and allowed intrusion by DCIS and DCIS' employee, Mr. Taitz.   Mr. Taitz through DCIS obtained, disclosed and disseminated Plaintiffs private data; Plaintiffs asserted how they were harmed, identity theft, harassment, hospitalizations, medical bills, harassment, mental anguish, etc.; and that the intrusion caused the damages. *See* Plaintiffs FAC, pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 78-83, ¶¶ 186-204.   Plaintiffs have met their burden.

**B.   Plaintiffs 2nd and 3rd Causes of Action, Public Disclosure of Private Facts and False Light Invasion of Privacy are Properly Pled against DCIS:**

38.   Plaintiffs incorporate by reference the preceding paragraphs and their FAC at pgs. 74-90, ¶¶ 175-225 as if fully set forth here at length.

39.   DCIS claims in their MTD at pgs. 11-12, ¶¶ B and C that Plaintiffs don't' make reference to DCIS in their Second and Third Causes of Action.   DCIS refers this Court

to ¶¶187-204 and 216-225 and fails to mention the preceding paragraphs, Plaintiffs FAC at pgs. 74-83, ¶¶ 175-204 all of which is incorporated in by reference to Plaintiffs Second and Third Causes of Actions as if fully pled there at length.

40.    The elements of the tort of public disclosure of private facts are: (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate concern. *Taus v. Loftus*, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

41.    DCIS had access and allowed Mr. Taitz, their employee, access to Plaintiffs private data, which was maintained by and on the Intelius and Reed Defendants databases. Mr. Taitz utilized his position with DCIS by and through DCIS, to access Plaintiffs private data and gave it to Ms. Taitz to carry out her threats against the Plaintiffs.

42.    Ms. Taitz repeatedly published Plaintiffs private data obtained from DCIS by way of Mr. Taitz and others all over the Internet and by other means outlined herein and in Plaintiffs FAC.   Plaintiffs' private data was provided to millions of individuals and discussed in radio interviews, newspaper articles, etc., this element has been met. *Schwartz v. Thiele*, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966); *Timperley v. Chase Collection*, Service, 272 Cal. App. 2d 697 [77 Cal. Rptr. 782] (2d Dist. 1969); *Kinsey v. Macur*, 107 Cal. App. 3d 264 [165 Cal. Rptr. 608].

43.    The information pertaining to Plaintiffs supplied by and through DCIS to Orly Taitz was private and confidential.  Ms. Taitz published the private data obtained through DCIS worldwide.  The 2nd element has been met. *Sipple v. Chronicle Publishing Company*, 154 Cal. App. 3d 1040 [201 Cal. Rptr. 665 (1st Dist. 1984).

44.    DCIS' allowance of their employee, Mr. Taitz, to misuse DCIS' tools, and gain access to the private data maintained by the Reed and Intelius Defendants on their databases, servers and computer systems and publication of Plaintiffs private data would be objectionable and offensive to any normal person.  The 3rd element has been met. _Forsher v. Bugliosi_, (1980) 27 Cal. 3d 792 [26 Cal. 3d 792]; _Sipple v. Chronicle Publishing Company_, 154 Cal. App. 3d 1040 [201Cal. Rptr. 665 (1st Dist. 1984); _Wasser v, San Diego Union_, 191 Cal. App. 3d 1455, [236 Cal. Rptr. 772] (1987); _Taus v. Loftus_, (2007) 40 Cal. 4th 683 [54 Cal. Rptr. 3d 775].

45.    Plaintiffs Ostella and Liberi never acceded to a position of public notoriety. Mr. Taitz access and distribution of Plaintiffs Private data by and through DCIS and the publication thereof, was extremely intrusive and Plaintiffs private data was **not** of public concern.  This type of private data clearly lacks newsworthiness.  Plaintiffs have met their burden. _Shulman v. Group W. Productions, Inc._, (1998) 18 Cal. 4th 200 [74 Cal. Rptr. 2d 843]; _Morrow v. Los Angeles Unified School Dist._, 149 Cal. App. 4th 1424 [57 Cal. Rptr. 3d 885 (2d Dist. 2007).

46.    False Light – Invasion of Privacy, concerns one's piece of mind, while the right of freedom from defamation concerns primarily one's reputation. _Operating Engineers Local 3 v. Johnson_, 110 Cal. App. 4th 180 [1 Ca. Rptr. 3d 552] (1st Dist. 2003).  These are **not** duplicate causes of actions.

47.    Plaintiffs pled that the Reed and Intelius Defendants maintained incorrect information on the Plaintiffs.  Mr. Taitz by and through DCIS accessed Plaintiffs private data on the Intelius and Reed Defendants databases and gave it to Ms. Taitz as fact.  Ms.

Taitz published the information on Ostella and Liberi all over the Internet and by other means as outlined herein and in Plaintiffs FAC, as fact.  Third parties, who obtained the information from Ms. Taitz and from the Internet, understood the information pertained to Plaintiffs Liberi and Ostella and believed it to be fact.

48.     Publication of false information, which includes inaccuracies in credit reports, consumer reports, background checks, etc., means communication to some third person, in this case Orly Taitz and all of Ms. Taitz's supporters, followers, and readers, who understood the meaning of the information and its application to the person to who reference was made. _Smith v. Los Angeles Bookbinders Union No. 63_, 133 Cal. App. 2d 486 [286 P.2d 194] (2d Dist. 1955); _Neary v. Regents of University of California_, 185 Cal. App. 3d 1136 [230 Cal. Rptr. 281] (1st Distr. 1986); 6A Cal. Jur. 3d, Assaults and Other Willful Torts §153 (2003).

49.     Plaintiffs are **not** public figures, they are private individuals.  The malice standard only applies to public figures. _See Eastwood v. Superior Court of Los Angeles County_, 149 Cal. App.3d 409, (Cal. Ct. App. 1983); _Schwartz v. Thiele_, 242 Cal. App. 2d 799 [51 Cal. Rptr. 767] (2d Dist. 1966); _Timperley v. Chase Collection_, Service, 272 Cal. App. 2d 697 [77 Cal. Rptr. 782] (2d Dist. 1969); _Kinsey v. Macur_, 107 Cal. App. 3d 264 [165 Cal. Rptr. 608]. _See Harte-Hanks Communications, Inc. v. Connaughton_, 491 U.S. 657, 686, (1989) 109 S.Ct. 2678, 105 L.Ed.2d 562 (quoting _Bose Corp. v. Consumers Union of United States, Inc._, (1984) 466 U.S. 485, 511, 104 S.Ct. 1949, 80 L.Ed.2d 502); _Aisenson v. Am. Broad. Co., Inc._, (1990) 220 Cal.App.3d 146, 269 Cal.Rptr. 379, 382-383.

50.     Plaintiffs outlined all the incorrect data which constitutes publication of false information. *See* Plaintiffs FAC at pgs.61-74, ¶¶144-174; pgs. 85-87, ¶¶ 215-217; pgs. 111-118, ¶¶281-300; pgs. 128-129, ¶¶339-342; pg. 135, ¶ 357; pg. 139, ¶ 370.  The information provided by and through DCIS by Mr. Taitz was **not** accurate information.   The wrong information includes but is **not** limited to address information; additional Social Security numbers; additional birth years and dates, etc., none of which belonged to or was used by Plaintiffs.

51.     All of the elements to Plaintiffs First, Second and Third Causes of Action in their FAC have been met, therefore DCIS' MTD must be Denied.

## V.     PLAINTIFFS 5th, 6th and 17th CAUSE OF ACTIONS, WILLFUL VIOLATION OF THE CAL. INFORMATION PRIVACY ACT (IPA), *CAL. CIV. CODE* §§1798, et seq., 1798.53 and 1798.85:

52.     DCIS on pages 14-15 of their MTD claim they did **not** disclose anything pertaining to Plaintiffs Liberi and Ostella.  DCIS mis-states that the private information came from Plaintiff Liberi's credit report, which is **not** maintained by Governmental Agencies.

53.     Plaintiffs incorporate by reference the preceding paragraphs and their FAC at pgs. 11-61, ¶¶ 30-143; 74-78, ¶¶ 175-186; 94-102, ¶¶ 239-264; and pgs. 142-149, ¶¶ 381-389 as if fully set forth here at length.

54.     Plaintiffs pled at ¶243 Defendants, including DCIS violated Liberi and Ostella's privacy rights and *Cal. Civ. Code* §1798.53 by intentionally accessing, disclosing and distributing Liberi and Ostella's private data, including their full Social Security numbers, outlined in the preceding paragraphs, which Defendants knew or reasonably

should have known was obtained from personal information maintained by State and Federal agencies, to unauthorized third parties.  Mr. Taitz using DCIS' tools, his experience and position with DCIS intentionally obtained and disclosed Liberi and Ostella's personal data without their knowledge or consent.  The unauthorized access, disclosure and distribution of such private data and information are offensive and objectionable to a reasonable person of ordinary sensibilities.

55.    And at ¶ 251, Defendants, including DCIS, used their business practices of accessing private personal information, including but **not** limited to full Social Security numbers, dates of birth, place of birth, mother's maiden names, credit reports, driver's license information, financial data, photograph's, primary identification information, and other private data outlined herein, without a permissible purpose, legal basis, authorization and/or consent.

56.    Publication means communication to some third person, in this case to Ms. Taitz. _Smith v. Los Angeles Bookhinders Union No. 63_, 133 Cal. App. 2d 486 [286 P.2d 194] (2d Dist. 1955); _Neary v. Regents of University of California_, 185 Cal. App. 3d 1136 [230 Cal. Rptr. 281] (1st Distr. 1986); 6A Cal. Jur. 3d, Assaults and Other Willful Torts §153 (2003).

57.    _Cal. Civ. Code_ § 1798.53 sets out a civil action for damages for the intentional disclosure of confidential personal information. _Jennifer M. v. Redwood Women's Health Ctr.,_ 88 Cal. App. 4th 81, 89 (Cal.Ct.App.2001) _Id_ at 550.  In a whole line of cases, the Courts have held that Section 1798.53 pertains to "any person . . . who intentionally discloses information, not otherwise public."  DCIS statements that they cannot be held

liable under the IPA because they did **not** publicly post the information fails. *See* the unreported opinion of *Witriol v. LexisNexis Group*, 2006 WL 1128036 (N.D.Cal., Apr 27, 2006) quoting *Jennifer M. v. Redwood Women's Health Ctr.,* 88 Cal.App. 4th 81, 89 (Cal.Ct.App.2001), *Anti-Defamation League of B'nai B'rith v. Superior Court*, (1998) 67 Cal.App.4th 1072, 1078-1079, 79 Cal. Rptr.2d 597; *Nicholson v. McClatchy Newspapers*, (1986) 177 Cal.App.3d 509, 514, fn. 2, 223 Cal.Rptr. 58, *Fahizah Alim v. Superior Court of Sacramento County*, 185 Cal. App. 3d 144 (1986).

58.     Plaintiffs have met all elements of *Cal. Civ. Code* §§ 1798, et seq., 1798.53 and 1798.85, DCIS' MTD must be Denied.

## VI.   PLAINTIFFS 8th CAUSE OF ACTION:

59.     DCIS claims in its MTD that Plaintiffs Defamation, Libel and Slander Causes of Action must be Dismissed because Plaintiffs failed to plead that DCIS published anything defamatory. [DCIS MTD, p.16, ¶E].

60.     Plaintiffs incorporate by reference the preceding paragraphs and their FAC at pges. 11-61, ¶¶ 30-143; 74-78, ¶¶ 175-186; and 94-102, ¶¶ 239-264; and pgs. 111-118, ¶¶ 281-300, as if fully set forth here at length.

61.     Plaintiffs pled that the Intelius and Reed Defendants maintained incorrect information on the Plaintiffs which included wrong Social Security numbers, so it appeared Plaintiffs were using more than one Social Security number, wrong dates of birth, wrong names and other incorrect data fraudulently.  Mr. Taitz by and through DCIS obtained Plaintiffs private data from the Intelius and Reed Defendants and provided it as fact to Ms. Taitz.  The incorrect data maintained in the Intelius and Reed Defendants databases on the

Plaintiffs portrayed Ostella and Liberi as using multiple identities.  Ms. Taitz then published Plaintiffs private data all over the Internet and by other means repeatedly, accusing Plaintiffs Liberi and Ostella of using multiple identities, being the same person, and of other criminal acts, based on the incorrect information received from the Reed and Intelius Defendants, as outlined herein and in Plaintiffs FAC.   *See* Plaintiffs FAC at pgs. 112-114, ¶¶285-287 and pgs. 115-116, ¶¶ 290-291.

62.   The private data of Plaintiffs were accessed and provided by Mr. Taitz by and through DCIS, to Ms. Taitz as fact and **not** merely statements, thus they are liable. *Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974).

63.   Plaintiffs have met their burden, DCIS' MTD must be Denied.

**VII.   PLAINTIFFS 9th CAUSE OF ACTION:**

64.   DCIS claims that Plaintiffs Ninth Cause of Action for Intentional Infliction of Emotional Distress fails because Plaintiffs have failed to plead that it engaged in "Extreme and Outrageous Conduct" let alone "conduct that proximately caused Plaintiffs illness" [DCIS MTD, pgs. 17-18, ¶G].

65.   Plaintiffs incorporate the preceding paragraphs and their FAC at pgs. 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 118-122, ¶¶ 301-314. as if fully set forth here at length.

66.   Plaintiffs pled Mr. Taitz utilized his position with DCIS and his skills used in his employment with DCIS to access Plaintiffs Liberi and Ostella's private data off of the Intelius and Reed Defendants databases.  Mr. Taitz through DCIS provided Plaintiffs private data to Ms. Taitz to carry out her threats against the Plaintiffs.  Mr. Taitz and DCIS knew or

reasonable should have known these acts were an abuse of their relationship with their clients and of Mr. Taitz's position with the company, intentional and unreasonable and due to the sensitivity of the information, they had to recognize the acts were likely to result an illness through mental distress, which it did.  The elements for this Cause of action as outlined in _Chaconas v. JP Morgan Chase Bank_, 713 F. Supp 2d 1180, 1187-88 (S.D. Cal. 2010), as used in DCIS' MTD, have been met.

67.     The acts by and through DCIS by their employee, Yosef Taitz caused Plaintiffs Liberi and Ostella mental and emotional suffering and distress and the damages they suffered as a result thereof.  DCIS is liable to Plaintiffs for their injuries and damages. _See Guillory v. Godfrey_, 134 Cal. App. 2d 628 [286 P.2d 414] (2d Dist. 1955; and _Spackman v. Good_, (1966) 245 Cal. App. 2d 518 [54 Cal. Rptr. 78].  Mr. Taitz and DCIS' actions and inactions were extreme and outrageous invasion of Plaintiffs mental and emotional tranquility and were beyond all bounds of decency. _State Rubbish Collectors Ass'n v. Siliznoff_, (1952) 38 Cal. 2d 330 [240 P. 2d 282], _Ochoa v. Superior Court_, (1985) 39 Cal. 3d 159 [216 Cal. Rptr. 661].

68.     DCIS' actions of their employee and inactions to insure these types of damages did **not** occur were intentional and reckless conduct with the intent to inflict injury and they engaged in and allowed the acts with the realization that injury would occur upon Plaintiffs.  As a result, Plaintiffs suffered severe emotional distress and actual damages. Plaintiffs have met the elements for recovery from DCIS' Intentional Emotional Distress inflicted upon Plaintiffs by DCIS and their employee. _Ross v. Creel Printing & Publishing Co._, 100 Cal. App. 4th 736 [122 Cal. Rptr. 2d 787] (1st Dist. 2002); _Hassoldt v. Patrick_

*Media Group, Inc.*, 84 Cal. App. 4th 153 [100 Cal. Rptr. 2d 662] (2d Dist. 2000); *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120 [118 Cal. Rptr. 2d 240] (3d Dist. 2002); *Christensen v. Superior Court*, (1991) 54 Cal. 3d 868 [2 Cal. Rptr. 2d 79].

## VIII.   PLAINTIFFS 18th CAUSE OF ACTION:

69.   DCIS moves to Dismiss Plaintiffs Eighteenth Cause of Action for its violations of unfair business practices in violation of *California Business and Professions Code* §17200, et seq. claiming Plaintiffs failed to allege any unfair, unlawful, or fraudulent practice by DCIS.

70.   Plaintiffs incorporate the preceding paragraphs and their FAC at pgs. 11-61, ¶¶ 30-143; ¶¶ 74-78, ¶¶ 175-186 and pages 150-151, ¶¶ 390-397 as if fully set forth here at length.

71.   Plaintiffs pled that DCIS unfair, unlawful and fraudulent practices are obtaining and accessing data off of databases in which their products and tools are housed and for which DCIS was entrusted to ensure would **not** be accessed or utilized by DCIS and/or their employees.  Plaintiffs pled that the information obtained was their private data that DCIS and Mr. Taitz, their employee, abused their position and trust to access. Plaintiffs' private data accessed by and through DCIS and their employee was furnished to their employee's wife, Ms. Taitz, to carry out her threats against the Plaintiffs.  Plaintiffs pled as a result thereto, they suffered and continue suffering economic injuries.  Plaintiffs pled they were harassed; Liberi ended up in the hospital due to cardiac complications; had to obtain emergency medical assistance on numerous occasions; Liberi and Ostella suffered identity theft; and Ostella took a loss on her property in order to move in a hurry to protect

herself, and family, etc.  Plaintiffs pled these damages were a result of the distribution of Plaintiffs private data to Orly Taitz to carry out her threats against Plaintiffs.

72.     The Unfair Competition Law ["UCL"] prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." § 17200.   Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *See* <u>Kasky v. Nike, Inc</u>., (2002) 27 Cal.4th 939, 949 [119 Cal. Rptr. 2d 296, 45 P.3d 243]; <u>Hall v. Time Inc.</u>, (2008) 158 Cal.App.4th 847, 852 [70 Cal. Rptr.3d 466].  In service of that purpose, the Legislature framed the UCL's substantive provisions in, " 'broad, sweeping language' " <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co</u>., (1999) 20 Cal.4th 163, 181 [83 Cal. Rptr. 2d 548, 973 P.2d 527]; *See* also <u>Bank of the West v. Superior Court</u>, (1992) 2 Cal.4th 1254, 1266 [10 Cal. Rptr. 2d 538, 833 P.2d 545**]** ["The Legislature intended this 'sweeping language' to include '"anything that can properly be called a business practice and that at the same time is forbidden by law."' "] and provided "courts with broad equitable powers to remedy violations", <u>ABC Internat. Traders, Inc. v. Matsushita Electric Corp.</u>, (1997) 14 Cal.4th 1247, 1270 [61 Cal. Rptr. 2d 112, 931 P.2d 290].

73.     Plaintiffs have satisfied the requirements of *Cal. Business and Professions Code* §17200, et seq. and the requirements outlined in <u>Schulz v. Neovi Data Corp</u>., (2005) 129 Cal. App. 4th 1.

## IX.   PLAINTIFFS NINETEENTH CAUSE OF ACTION:

74.     DCIS moves to Dismiss claiming they did **not** owe a duty to Plaintiffs and Plaintiffs failed to plead any duty owed to them, breach of that duty, causation and/or damages. [DCIS MTD, pgs. 21-22 ¶K].

75.     Plaintiffs incorporate the preceding paragraphs and their FAC at pages 11-61, ¶¶ 30-143; 74-78, ¶¶ 175-186 and pgs. 152-158, ¶¶ 398-416 as if fully set forth here at length.

76.     Negligent conduct includes that of DCIS' failure to ensure private data they have access to is **not** abused by their employees.  DCIS had and has a duty to all persons, including Plaintiffs to ensure that any private data they have access to by way of being entrusted with information contained on their clients databases, including the Reed and Intelius Defendants, and/or accessible with use of DCIS' tools, would **not** be abused or used for personal gain.  DCIS' failure to take steps to prevent it and/or stop Mr. Taitz's abuses, warrants damages for Negligent Infliction of Emotional Distress. *See Ochoa v. Superior Court*, (1985) 39 Cal. 3d 159 [216 Cal. Rptr. 703].

## X.   PLAINTIFFS 20th CAUSE OF ACTION – RES IPSA LOQUITOR:

77.     Plaintiffs incorporate the preceding paragraphs and their First Amended Complaint as if fully set forth here at length.  In particular pages 11-61, ¶¶ 30-143; pages 74-78, ¶¶ 175-186 and pages 158-160, ¶¶ 417-423.

78.     Under the theory of Res Ipsa loquitur, Plaintiffs must show that: (1) the cause of the injury is of a kind that does **not** occur ordinarily in the absence of someone's negligence; (2) the injury was caused by an instrumentality within the exclusive control of

the defendant or of a *third party for whose conduct the defendant is legally responsible;* and (3) that the injury was **not** due to any voluntary action or contribution on the part of appellants. *See Shahinian v. McCormick*, (1963) 59 Cal.2d 554, 559; *See* also *Levy-Zentner Co. v. Southern Pac. Transportation Co*., (1977) 74 Cal.App.3d 762, 777-780.

79.    DCIS was negligent by failing to ensure the data and information entrusted to them through their clients' databases were maintained secure and **not** accessed, abused and/or used for personal gain by their employees.   Employees of a company do **not** normally access and/or abuse their position with their Companies to seek information for which they are **not** privy and use it for their personal gain, or the personal gain of their wife. Mr. Taitz used his employer, DCIS' tools, which were in the control of DCIS and DCIS was responsible for, to assist his wife in harming the Plaintiffs.  DCIS is responsible for the acts of their employee, Yosef Taitz.

80.    The Res Ipsa Loquitor rule provides an illustration.  The doctrine shifts the burden of producing evidence so that Plaintiffs may bring tort claims even if they lack specific proof that their injury was caused by negligence of a particular Defendant. *See Ybarra v. Spangard*, (1944) 25 Cal.2d 486, 489 [154 P.2d 687]; *Byrne v. Boadle,* (1863) 159 Eng.Rep. 299, 300, as cited in *Brown v. Poway Unified School Dist*., (1993) 4 Cal.4th 820, 825–826 [15 Cal. Rptr. 2d 679, 843 P.2d 624].   "In California, the doctrine of Res Ipsa Loquitor is defined by statute as 'a presumption affecting the burden of producing evidence.' *Evid. Code,* § 646, subd. (b).)" (*Ibid.*; *See Ybarra v. Spangard*, supra, 25 Cal.2d 486, 489, quoting *Prosser* on Torts.)   In order for Plaintiffs to prove all the negligence caused by DCIS, it is imperative that Plaintiffs obtain and receive **all the source codes**

utilized by DCIS from January 1, 2009 to current on **all** their products in use by the Intelius and Reed Defendants and **extensive Electronic Discovery** must take place.

## XI.   DCIS IS BOUND BY THE FAIR CREDIT REPORTING ACT (FCRA)

81.   DCIS claims the Fair Credit Reporting Act ["FCRA"] does **not** apply to them as they are **not** a credit reporting agency.   The FCRA pertains and has rules regarding companies and individuals who obtain Consumer Reports. *See* 15 U.S.C. §§ 1681d, 1681e(a) and 1681q.   Mr. Taitz obtained Plaintiffs consumer and credit reports through his position with DCIS and was bound by federal Law to have a permissible purpose for obtaining Plaintiffs reports and to maintain Plaintiffs reports confidential, which DCIS violated when they allowed their employee, Mr. Taitz, to provide Plaintiffs confidential reports to his wife, Defendant Ms. Taitz.

## XII.   CONCLUSION:

81.   For The reasons outlined herein, Defendant DCIS's Motion to Dismiss must be Denied in its entirety.   If the Court is inclined to Grant any part thereto, Plaintiffs respectfully Request that they be Allowed to Amend their Complaint.

Respectfully submitted,


Dated:  November 23, 2011              /s/ Philip J. Berg
Philip J. Berg, Esquire
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone:   (610) 825-3134
E-mail: philjberg@gmail.com

*Attorney for Plaintiffs*