Philip J. Berg, Esquire (PA I.D. 9867)
E-mail: philjberg@gmail.com
**LAW OFFICES OF PHILIP J. BERG**
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone:  (610) 825-3134 Fax: (610) 834-7659
*Attorney in pro se and for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA,**
**SOUTHERN DIVISION**

| | |
|---|---|
| LISA LIBERI, et al, | CIVIL ACTION NUMBER: |
| Plaintiffs, | **8:11-cv-00485-AG (AJW)** |
| vs. | **DECLARATION OF PHILIP J. BERG, ESQUIRE** |
| ORLY TAITZ, et al, | Date of Hearing: December 19, 2011 |
| Defendants. | Time of Hearing: 10:00 a.m. |
| | Location:          Courtroom 10D |

## **DECLARATION OF PHILIP J. BERG, ESQUIRE**

I, Philip J. Berg, Esquire, am over the age of 18 and am a party to the within action.  I have personal knowledge of the facts herein, and if called to do, I could and would competently testify.  I am making this Declaration under the penalty of perjury of the Laws of the United States pursuant to 28 U.S.C. §1746.

1.    I am an Attorney in good standing, licensed to practice law in the Commonwealth of Pennsylvania.  I am licensed to practice in the U.S. District

Declaration of Philip J. Berg, Esquire                                                                                          1

Courts, Middle and Eastern District of Pennsylvania; Third Circuit Court of Appeals; the Pennsylvania Supreme Court; and the U.S. Supreme Court.

2. Defendant Orly Taitz threatened to take me down and to do so she was going to destroy my Paralegal, Plaintiff Lisa Liberi and get rid of her. Defendant Orly Taitz was successful in destroying Plaintiff Lisa Liberi.

3. Defendant Orly Taitz also set out to destroy Plaintiff Lisa Ostella because Plaintiff Lisa Ostella refused to lie and falsify information in order to substantiate Defendant Orly Taitz's false statements, false claims and lies pertaining to "hacking", "cracking", and theft of donated money and of her (Taitz's) website.

4. This case is **not** about any type of "intra-Birther Movement feud", nor is it a "politically motivated skirmish". This case is about Defendant Orly Taitz's threats against me and the Plaintiffs Lisa Liberi ["Liberi"] and Lisa Ostella ["Ostella"]. The case against Daylight Chemical Information Systems, Inc. and Yosef Taitz is due to their assistance to Defendant Orly Taitz in access to and gaining of Plaintiffs private data, without the knowledge and/or permission of the Plaintiffs, in carrying out her threats against the Plaintiffs.

5. Private data includes but is **not** limited to full Social Security numbers, dates of births, spouses private data, places of birth, maiden names, mother's maiden names, financial records, credit reports, consumer reports, background checks, medical information, sealed court case information, adoption

Declaration of Philip J. Berg, Esquire 2

records, Plaintiffs children's information, etc., including all of Plaintiffs primary identification information.

6. Daylight Chemical Information Systems, Inc. ["Daylight"] brings forth in their Motion to Dismiss ["MTD"] that Daylight's products are for the "chemical" purpose. As pled in Plaintiffs First Amended Complaint ["FAC"] Daylight is a **software development company**, **Not a chemical company**. Their scripts are **not** indigenous to the pharmaceutical industry. Anything can be inserted into the 'quotes', but displaying their scripts with chemical equations ensures their applications will appear more complicated to hide the true functionality of their programs.

7. As explained in Plaintiffs FAC, Daylight's applications are in the architecture of Oracle and reach further with other software components developed under Daylight, Twilight LLC, MetaMorphics LLC, ChemoInformatics and other affiliates. This gave Daylight back door access to the Intelius and Reed Defendants databases. This is especially true with systems that are partners; such as, Oracle, Sun Microsystems, MDL Elsevier, universities, pharmaceutical companies, the Reed Defendants and more.

8. Contrary to Daylight's statements in their MTD, Daylight has always been well aware of the dual purpose of their software and scripts. Their shared tool server and libraries are scripted for **Global Access**:

Declaration of Philip J. Berg, Esquire 3

1  $DY_ROOT/lib

2  $DY_ROOT/bin

3

4  9. As shown in Daylight's scripting and manuals, filed with this Court as Exhibits "141" (DCIS Cartridge); "142" (DCIS' fingerprinting); "143" (DCIS Dual Purpose Manual); and "144" (DCIS DayCart) appearing in Docket Entry Numbers 190-26 and 190-27, and as pled in Plaintiffs FAC, the Dollar sign in their code scripting indicates **Global Access**. The dollar sign is called Sigil in programming. Understanding a program with Global Access requires knowledge about the context and hidden abilities. Understanding the access creates a pipeline into a program from the root that allows registry access and editing. Daylight is well aware of these hidden abilities in their programs. Understanding the use of Sigil Variables entails understanding a large portion of the software program. Daylight held 'hacker classes' with their 'krewe' monthly, for years.

10. Daylight's access to database servers, running programs internally could alert remote access to IT personnel of unauthorized access and functions, if the proper security is in place. But, having Neil Sankey and The Sankey Firm run information requests created a hard link to compiled information that was easier to take from the Reed and Intelius Defendants systems.

---

Declaration of Philip J. Berg, Esquire                                              4

11. Information on the tools that make these functions possible for Daylight, and that are embedded within the architecture of servers like Oracle are located in their manuals on their website at http://www.daylight.com/products/toolserver.html.

12. The Remote Toolkit consists of a server that locally processes all Daylight Toolkit functions for a remote client. For the cost of network overhead, toolkit clients share the toolkit server's resources, e.g., CPU power, shared programs, databases, etc. In general, hardware and operating systems supplied with PC's and Macintoshes cannot efficiently handle the high-performance methodology of Daylight algorithms. A low-cost Macintosh or PC client may be connected to a remote toolkit server on a more powerful Unix workstation. As an example, a SMILES might be entered into a Macintosh which would send it to a Unix machine to be interpreted; the Macintosh might then request database searching and depiction generation via the Unix machine for display on the Macintosh.

13. The programming environment is identical to local toolkit programming with the addition of two functions to connect to and disconnect from the toolkit server.

14. Programs written with the Remote Toolkit will **not** operate in a stand-alone environment (a Remote Toolkit Server must be accessible over an IP network).

15. All Daylight Toolkit functions are supported by the 4.5 Remote Toolkit. The Remote Toolkit server (daytoolserver) is available on all supported Unix platforms. Only the client side of the remote toolkit exists on personal computers, available for Macintosh (via MacTCP) and PC/Windows (via WinSockets).

16. Also in the Toolkit is The Conversion Toolkit which is aimed at facilitating migration of data into and out of Daylight software.

17. Defendants Yosef Taitz by and through Daylight used Daylight's tools outlined herein to access Plaintiffs private data from the Reed and Intelius Defendants databases, computers and servers. Yosef Taitz utilized his skills, access, and job functions that he uses in his line of employment with Daylight.

18. All the information herein is pled in Plaintiffs FAC and explained in Exhibits "141" through "144" appearing as Docket Entry Numbers 190-26 and 190-27. This is how Yosef Taitz through DCIS was able to access Plaintiffs private data, that Mr. Taitz through his Corporation, Daylight provided to Defendant Orly Taitz. With the private data of Plaintiffs, Defendant Orly Taitz carried out her threats of harm towards the Plaintiffs. As a result, Plaintiffs suffered severe damages.

19. Defendant Orly Taitz published all the private data of Plaintiffs that she received from the Sankey Defendants, her husband, Yosef Taitz by and through and with the use of Defendant Daylights tools, the Reed and Intelius Defendants through the Internet, mass emailing, postal mailings, RSS feeds, repeatedly, including sending it internationally. All of which caused Plaintiffs severe serious damages. Defendant Orly Taitz could **not** have completed her goal in destroying the Plaintiffs had the Defendants **not** made Plaintiffs private data available, accessible, and provided the information to her. This includes Daylight.

I declare under the penalty of perjury of the Laws of the United States and California that the foregoing is true and correct.

Executed this 23rd day of November, 2011 in the Commonwealth of Pennsylvania, County of Montgomery.

                                                 /s/ Philip J. Berg
                                                Philip J. Berg, Esquire, Declarant