Michael J. Niborski (State Bar No. 192111)
e-mail: mniborski@pryorcashman.com
PRYOR CASHMAN LLP
1801 Century Park East, 24th Floor
Los Angeles, California 90067-2302
Tel:  (310) 556-9608
Fax: (310) 556-9670

Tom J. Ferber (*pro hac vice* admission pending)
e-mail: tferber@pryorcashman.com
Ross M. Bagley (*pro hac vice* admission pending)
e-mail: rbagley@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569
Tel:  (212) 326-0188
Fax: (212) 798-6382

*Attorneys for Defendant*
Daylight Chemical Information Systems, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISON

| | |
|---|---|
| LISA LIBERI, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ORLY TAITZ, et al.,<br><br>Defendants. | Case No. CV 11-00485 AG (AJWx)<br><br>**DEFENDANT DCIS'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS ALL CLAIMS ASSERTED AGAINST IT IN THE FIRST AMENDED COMPLAINT**<br><br>Date:   December 19, 2011<br>Time:  10:00 a.m.<br>Judge: Hon. Andrew J. Guilford<br>Place:  Courtroom 10D |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

I.   INTRODUCTION ................................................................................. 1

II.  PLAINTIFFS' CLAIMS AGAINST DCIS ALL FAIL BECAUSE
     THEY DO NOT ALLEGE THAT FORMER DEFENDANT YOSEF
     TAITZ'S ALLEGED INTERVENING CONDUCT WAS WITHIN
     THE SCOPE OF HIS EMPLOYMENT AT DCIS OR WAS
     FORESEEABLE BY DCIS .................................................................... 1

     A.  Plaintiffs Do Not Allege Vicarious Claims Against DCIS ...................... 1

     B.  Plaintiffs Do Not State A Claim Against DCIS For Negligence ............. 7

III. EACH OF PLAINTIFFS' CLAIMS AGAINST DCIS IS DEFICIENT
     AND WARRANTS DISMISSAL WITHOUT LEAVE TO AMEND .......... 10

     A.  Plaintiffs' Fail To State A Claim For Intrusion Into Seclusion
         Or Violation Of The California Constitution ...................................... 10

     B.  Plaintiff's Second Claim, for Public Disclosure Of Private Facts,
         And Sixth Claim, Pursuant To   § 1798.85(a)(1), Both Fail
         Because Plaintiffs Concede That There Is No Allegation Of
         Publication In The FAC ................................................................ 11

     C.  Plaintiffs' Third Claim, For False Light, And Eighth Claim,
         For Defamation, Are Duplicative And Suffer From
         The Same Fatal Infirmities ........................................................... 13

     D.  Plaintiffs' Fifth Claim, Pursuant To Cal. Civ. Code § 1798.53, Must Be
         Dismissed Because There Is No Allegation That DCIS Obtained
         Any Information From A Government Agency ................................... 16

     E.  Plaintiffs Ninth Claim, For Intentional Infliction Of
         Emotional Distress, Is Insufficient ................................................ 18

1

## <u>TABLE OF CONTENTS, (Cont'd)</u>

2

F.  Plaintiffs' Fourteenth Claim, For Negligent Non-Compliance
    With the Fair Credit Reporting Act, 15 U.S.C. § 1681b, 1681o,
    Fails To Allege That DCIS Obtained A Consumer Report ................... 18

G.  Plaintiffs' Have Waived Their Seventeenth Claim ................................ 21

H.  Plaintiffs' Eighteenth Claim, For Violation of California
    Business & Professions Code Section 17200, Is Irrevocably
    Deficient And Therefore Should Be Dismissed With Prejudice ........... 21

IV. CONCLUSION ................................................................................. 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

1

## TABLE OF AUTHORITIES

2

**CASES**                                                      **PAGE(s)**

3

4

Alma W. v. Oakland Unified School District,

5
      123 Cal. App. 3d 133 (1981) ................................................................. 3, 5

6

Barge v. Apple Computer, Inc.,

7
      164 F.3d 617 (2d Cir. 1998)......................................................... 19

8

Booker v. GTE.net LLC,

9
      214 F. Supp. 2d 746 (E.D. Ky. 2002),

10
      aff'd, 350 F.3d 515 (6th Cir. 2003)............................................. 3

11

Borg-Warner Protective Services Corp. v. Superior Court,

12
      75 Cal. App. 4th 1203 (1999) ..................................................... 5

13

Brooks v. Physicians Clinical Laboratory, Inc.,

14
      No. CIV. S-99-2155 WBS DAD, 2000 U.S. Dist. LEXIS 13063

15
      (E.D. Cal. Mar. 20, 2000)............................................................ 13

16

Cochran v. Cochran,

17
      65 Cal. App. 4th 488 (1998) ...................................................... 18

18

Delfino v. Agilent Technologies, Inc,

19
      145 Cal. App. 4th 790 (2006) .......................................... *passim*

20

Diaz v. Oakland Tribune, Inc.,

21
      139 Cal. App. 3d 118 (1983) .................................................... 12

22

Dickison v. Wal-Mart Stores, Inc.,

23
      06-108-AA, 2006 U.S. Dist. LEXIS (D. Or. May 16, 2006).................... 19

24

Dotzler v. Perot,

25
      914 F. Supp. 328 (E.D. Mo. 1996), aff'd without opinion,

26
      124 F.3d 207 (8th Cir. 1997) ..................................................... 20

27

Eisenberg v. Alameda Newspapers, Inc.,

28
      74 Cal. App. 4th 1359 ................................................................. 13

1

## CASES                                                                    PAGE(s)

2

3

Farmers Insurance Group v. County of Santa Clara,
  11 Cal. 4th 992 (1995) ................................................................. 5

4

5

Federico v. Superior Court,
  59 Cal. App. 4th 1207 (1997) ...................................................... 9

6

7

Fellows v. National Enquirer, Inc.,
  42 Cal. 3d 234 (1986) ................................................................. 14

8

9

Felton v. Schaeffer,
  229 Cal. App. 3d 229 (1991) ................................................. 8, 16

10

11

Foster v. Wheelock,
  3:00CV0005, 2000 U.S. Dist. LEXIS 15251
  (W.D. Va. Oct. 11, 2000) ....................................................... 19, 20

12

13

Garcia v. UnionBanCal Corp.,
  C-06-3762 CRB, 2006 U.S. Dist. LEXIS 31912
  (N.D. Cal. Sept. 12, 2006)............................................................ 20

14

15

16

Gilbert v. Sykes,
  147 Cal. App. 4th 13 (2007) ....................................................... 15

17

18

Gill v. Curtis Publishing Co.,
  38 Cal. 2d 273 (1952) ................................................................. 14

19

20

Grimes v. Carter,
  241 Cal. App. 2d 694 (1966) ...................................................... 13

21

22

Hill v. National Collegiate Athletic Association,
  7 Cal. 4th 1 (1994) ..................................................................... 10

23

24

Hoblitzell v. City of Ione,
  110 Cal. App. 4th 675 (2003) ....................................................... 5

25

26

Ippolito v. WNS, Inc.,
  864 F.2d 440 (7th Cir. Ill. 1988)................................................. 19

27

28

**CASES**                                                                  **PAGE(s)**

Jennifer M. v. Redwood Women's Health Ctr.,
        88 Cal. App. 4th 81 (2001) ........................................................ 17

Johnson v. Univ. of San Diego,
        10 CV 0504-LAB (NLS), 2011 U.S. Dist. LEXIS 104962
        (S.D. Cal. Sept. 15, 2011) ........................................................ 10

Korea Supply Corp. v. Lockheed Martin Corp.,
        29 Cal. 4th 1134 (2003) ..................................................... 22, 23

Lisa M. v. Hneh Mayo Newhall Mem'l Hospital,
        12 Cal. 4th 291 (1995) ............................................................. 4

Malik v. AT&T Mobility, LLC,
        1:08-cv-234, 2009 U.S. Dist. LEXIS 4871
        (W.D. Mich. Jan. 23, 2009) ...................................................... 19

Maria D. v. Westec Residential Security, Inc.,
        85 Cal. App. 4th 125 (2000) ...................................................... 5

McClatchy Newspapers, Inc. v. Superior Court,
        189 Cal. App. 3d 961 (1987) .................................................... 13

Operating Engineers Local 3 v. Johnson,
        68 Cal. Comp. Cas 1135 (2003) ................................................ 13

Pacific Telephone & Telegraph Co. v. City of Lodi,
        58 Cal. App. 2d 888 (1943) ....................................................... 8

In re Paxil Litigation,
        218 F.R.D. 242 (C.D. Cal. 2003) .............................................. 22

Porten v. University of San Francisco,
        64 Cal. App. 3d 825 (1964) ..................................................... 11

Potter v. Firestone Tire & Rubber Co.,
        6 Cal. 4th 965 (1993) .............................................................. 8

1

**CASES** <div style="float:right">**PAGE(s)**</div>

2

3

Price v. Stossel,
   620 F.3d 992 (9th Cir. 2010) ................................................................. 15

4

5

Raigoza v. Aramark Unif. Servs.,
   02:04-cv-1208-GEB-KJM, 2005 U.S. Dist. LEXIS 39881

6

   (E.D. Cal. Dec. 21, 2005)........................................................................ 11

7

8

Reader's Digest Association v. Superior Court,
   37 Cal. 3d 244 (1984) ............................................................................. 16

9

10

Reynolds v. LeMay Buick-Pontiac-GMC-Cadillac, Inc.,
   06-C-292, 2007 U.S. Dist. LEXIS 55641 (E.D. Wis. July 30, 2007)........ 19

11

12

Smith v. Puentes,
   1:08-cv-01792-LJO-SMS PC, 2009 U.S. Dist. LEXIS 95675

13

   (E.D. Cal. Oct. 14, 2009) ........................................................................ 10

14

15

Shulman v. Group W Productions, Inc.,
   18 Cal. 4th 200 (1998) ............................................................................ 10

16

17

Solano v. Playgirl, Inc.,
   292 F.3d 1078 (9th Cir. 2002) ................................................................. 15

18

19

In re Sony PS3 Other OS Litigation,
   C 10-1811 RS, 2011 U.S. Dist. LEXIS 16024

20

   (N.D. Cal. Feb. 17, 2011)......................................................................... 22

21

22

Witriol v. LEXISNexis Group,
   C05-02392 MJJ, 2006 U.S. Dist. LEXIS 26652

23

   (N.D. Cal. Apr. 26, 2006).......................................................................... 17

24

25

Wright v. Zabarkes,
   07 Civ. 7913  2008 U.S. Dist. LEXIS 28997 (S.D.N.Y. Apr. 2, 2008) .... 20

26

27

28

## STATUTES

Cal. Bus. & Prof. Code §17200 *et seq* ................................................................ 22

Cal. Civ. Code § 1798 ........................................................................................ 21

Cal. Civ. Code § 1798.3(a) ................................................................................. 16

Cal. Civ. Code § 1798.53 ............................................................................... 16, 17

Cal. Civ. Code § 1798.80(c) ............................................................................... 21

Cal Civ. Code § 1798.81 ..................................................................................... 21

Cal Civ. Code § 1798.85(a)(1) ....................................................................... 11, 12

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 4, 10

15 U.S.C. § 1681a(d) .......................................................................................... 18

15 U.S.C. § 1681a(d)(1) ...................................................................................... 20

15 U.S.C. § 1681b ...................................................................................... 18, 19, 20

15 U.S.C. § 1681o .............................................................................................. 18

## TREATISE

29 Cal. Jur Employer and Employee § 130 (3d ed.) ............................................ 2

## I.  __INTRODUCTION__

Plaintiffs urge the Court to disregard DCIS's argument that their claims against it represent an improper attempt to make an end run around the dismissal of their claims against former defendant Yosef Taitz.  Their arguments in opposition to DCIS's motion, however, repeatedly *emphasize* that Plaintiffs' claims against DCIS are based entirely on Yosef Taitz's status as DCIS's "employee."  Plaintiffs assert, time and again, that Yosef Taitz allegedly used his position as a DCIS "employee" to commit certain acts – acts which they are now precluded from asserting directly against Yosef Taitz as the basis for their claims. Thus, Plaintiffs now argue that "DCIS is responsible for its employee, Mr. Taitz's actions ..." (Opposition, ¶ 36 at 12: 5-6), because DCIS supposedly "allowed" its "employee" to engage in certain acts.  (See, e.g.,  Opposition at ¶¶ 41, 44, 67, 68, 71, 76, 79.)  In addition to each of Plaintiffs' claims being legally insufficient for the particular reasons addressed in DCIS's moving papers and below, *all* of Plaintiffs' claims – whether based on theories of intentional or negligent conduct – fail because Plaintiffs may not hold DCIS vicariously liable for the alleged acts of its "employee," former defendant Yosef Taitz, under either the doctrine of *respondeat superior* or a theory of negligent hiring or supervision.

## II.  **PLAINTIFFS' CLAIMS AGAINST DCIS ALL FAIL BECAUSE THEY DO NOT ALLEGE THAT FORMER DEFENDANT YOSEF TAITZ'S ALLEGED INTERVENING CONDUCT WAS WITHIN THE SCOPE OF HIS EMPLOYMENT AT DCIS OR WAS FORESEEABLE BY DCIS**

### A.  __Plaintiffs Do Not Allege Vicarious Claims Against DCIS__

Every claim asserted against DCIS in the FAC is based upon an allegation that former defendant Yosef Taitz surreptitiously programmed into DCIS's products, for his own personal gain, a trojan horse which allegedly provided him

1

access to Plaintiffs' identifying information (both accurate and inaccurate), and that Yosef Taitz shared that information with Orly Taitz, who broadcast it to the world.[1] See FAC ¶¶ 183, 399, 408) ("Yosef Taitz shared all of Plaintiffs [*sic*] private data mentioned herein with his wife, Orly Taitz in order for his wife, Orly Taitz to carry out her threats against Plaintiffs…").  Because there is no allegation that DCIS, as opposed to *former defendant* Yosef Taitz, harvested this information and provided it to Orly Taitz, the claims against DCIS apparently rely on an implicit theory of vicarious liability under the doctrine of *respondeat superior*.[2] See Plaintiffs' Memorandum of Points and Authorities in support of its Opposition [Docket No. 440-2] ("Opposition") at ¶ 36 ("Mr. Taitz utilized his position with DCIS … and retrieved Plaintiffs [*sic*] private data … to give to his wife …. DCIS is responsible for its employee, Mr. Taitz's actions and damages caused to Plaintiffs as a result thereof.").

Under California law, claims cannot be asserted against an employer under a theory of vicarious liability unless the employee's torts were committed within the scope of their employment relationship.  29 CAL JUR EMPLOYER AND

---

[1] As argued in DCIS's moving brief, these claims are completely baseless, and are not entitled to a presumption of truth by this Court because they are wildly implausible, in addition to being scandalous, frivolous and sanctionable.

[2] Without allegations supporting the Court's application of *respondeat superior* liability, the FAC cannot state intentional tort claims against DCIS (including the First Claim for Intrusion and Invasion of Privacy under California's Constitution, the Second Claim for Public Disclosure of Private Facts, the Third Claim for False Light, the Fifth, Sixth and Seventeenth Claims pursuant to the California Information Privacy Act, the Ninth Claim for Intentional Infliction of Emotional Distress, and Eighteenth Claim pursuant to UCL § 17200), nor can it state negligence claims (including the Fourteenth Claim for negligent non-compliance with the Fair Credit Reporting Act and Nineteenth and Twentieth Claims for Negligence).

EMPLOYEE § 130 (3d ed.).  A plaintiff must allege a nexus between the employee's tort and the employment to state a cognizable claim against the employer.  Id.  As the California Court of Appeal stated in <u>Delfino v. Agilent Technologies, Inc.</u>:

> An employer will not be held vicariously liable for an employee's *malicious* or tortious conduct if the employee substantially deviates from the employment duties for *personal purposes*.  Thus, if the employee 'inflicts an injury out of *personal malice*, not engendered by the employment' or acts out of '*personal malice* unconnected with the employment,' or if the misconduct is not an 'outgrowth' of the employment, the employee is not acting within the scope of employment.  Stated another way, if an employee's tort is *personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.*  In such cases, the losses do not *foreseeably* result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business.

145 Cal. App. 4th 790, 812-813 (2006) (emphasis added).

Where, as here, the complaint itself alleges that an employees' tortious conduct was taken individually and outside of the scope of his employment, those claims must be dismissed pursuant to Rule 12(b)(6).  <u>See e.g.</u>, <u>Booker v. GTE.net LLC</u>, 214 F. Supp. 2d 746, 750 (E.D. Ky. 2002), <u>aff'd</u>, 350 F.3d 515 (6th Cir. 2003) (granting motion to dismiss tort claims against employer based on conduct which was outside the scope of  employment, "was most certainly not [] in furtherance of [the employer's] business," and was not a tort that was expected in light of the employees' duties.); <u>Alma W. v. Oakland Unified School Dist.</u>, 123 Cal. App. 3d 133, 138 (1981) (affirming dismissal of complaint for failure to state claim due to insufficient *respondeat superior* allegations and writing that "the facts, seen in the light most favorable to appellant, present no grounds upon which

a trial court might base a finding that [the employee] acted within the scope of his employment"); <u>Delfino</u>, 145 Cal. App. 4th at 814 (whether conduct was within scope of employment may be decided as "matter of law") citing <u>Lisa M. v. Hneh Mayo Newhall Mem'l Hosp.</u>, 12 Cal. 4th 291, 299 (1995).

In the present case, Plaintiffs specifically allege that this conduct by Yosef Taitz was "malicious" (<u>see</u> FAC ¶¶ 185, 198, 422), and for his own personal gain. <u>See</u> Opposition ¶ 79 ("Employees of a company do not normally access and/or abuse their position with their Companies to seek information for which they are not privy and use it for their *personal gain*, or the *personal gain of their wife*.") (emphasis added). Plaintiffs allege that Yosef Taitz used DCIS facilities to assist his wife in her vendetta against them. <u>See</u> FAC ¶ 186. Plaintiffs allege that it was Orly Taitz's broadcast of their identifying information which caused their injuries.

Notably, Plaintiffs do not (nor could they, in good faith) allege that this conduct by former defendant Yosef Taitz was done to further DCIS's business. To the contrary, by alleging that Yosef Taitz engaged in certain acts for personal purposes, substantially deviating from any professional duties at DCIS, Plaintiffs have acknowledged that the alleged acts were not made on behalf of DCIS. Hence, Plaintiffs do not state cognizable vicarious liability claims against DCIS because, quite to the contrary of what would be required for *respondeat superior*, Plaintiffs aver that Mr. Taitz's alleged conduct was "malicious" and *outside the scope* of his employment with DCIS.

Indeed, California courts have found that, with respect to the doctrine of *respondeat superior*, foreseeability and thus "[a] risk [of liability] arises out of [] employment when in the context of the particular enterprise an employee's conduct is <u>*not*</u> so *unusual* or *startling* that it would seem unfair to include the loss resulting from it among other costs of the employer's business. In other words, where the question is one of vicarious liability, the inquiry should be whether the

1  risk was one that may fairly be regarded as *typical of* or *broadly incidental* to the

2  enterprise undertaken by the employer."  Delfino, 145 Cal. App. 4th at 812

3  (internal citations and quotations omitted) (emphasis added ).  Plaintiffs

4  acknowledge that former defendant Yosef Taitz's alleged acts were ***not***

5  foreseeable and are inconsistent with this standard.  Indeed, Plaintiffs specifically

6  state that "[e]mployees of a company ***do not normally*** access and/or abuse their

7  position … [for] the personal gain of their wife," (Opposition ¶ 79), the actions of

8  which they accuse Yosef Taitz.

9      Plaintiffs allege that DCIS "sells applications" and is "engaged in providing

10  software technologies; servers and operating systems" to its clients.  See FAC ¶¶

11  178-79.  Plaintiffs' allegations that former defendant Yosef Taitz provided Orly

12  Taitz with Plaintiffs' personal identifying information harvested from Reed and

13  Intelius servers is manifestly so "unusual," "startling," and uncharacteristic of the

14  duties of a software company employee that such alleged conduct could not be

15  deemed "foreseeable" by DCIS.  See Alma W., 123 Cal. App. 3d at 144

16  (foreseeable torts are those certain to occur in defendant's business); Farmers Ins.

17  Group v. County of Santa Clara, 11 Cal. 4th 992, 1012-1013 (1995) (deputy

18  sheriff's sexual harassment of subordinates not foreseeable); Hoblitzell v. City of

19  Ione, 110 Cal. App. 4th 675, 682–686 (2003)  (city building inspector's

20  harassment of builder, done as favor to inspector's friend not foreseeable); Maria

21  D. v. Westec Residential Security, Inc., 85 Cal. App. 4th 125 (2000)  (security

22  guard's sexual assault not foreseeable); Borg-Warner Protective Servs. Corp. v.

23  Superior Court, 75 Cal. App. 4th 1203, 1207-1212 (1999) (security guard's arson

24  not foreseeable).

25      In Delfino – a case which is remarkably on point, given Plaintiffs' theory of

26  liability against DCIS – the Court of Appeal found that the defendant's

27  employee's conduct in sending threatening e-mails and postings through the

28

5

1   Internet from work were plainly outside the scope of his employment with his

2   technology company, reasoning that:

> Even assuming that Moore [the employee] used Agilent's [the
> employer] computer system in accessing the Internet to send one
> or more of these messages, the injury he inflicted was "out of
> personal malice, not engendered by the employment." []
> Likewise, Moore's messages of hate were not an "outgrowth" of
> his Agilent employment. (Id. at p. 657.) Using Agilent's
> computer system to log on to a private Internet account to send
> messages—threatening or otherwise—was never part of Moore's
> job duties. Indeed, plaintiffs did not dispute this point.
> Furthermore, the fact that Moore may have been present at the
> workplace and may have been performing regular employment
> functions before or after transmitting one or more of the
> threatening messages does not transform his personal conduct into
> actions for which Agilent may be held vicariously liable. (Alma
> W. v. Oakland Unified School Dist., 123 Cal. App. 3d 133, 140
> (1981); see also 2 Dobbs, The Law of Torts (2001) § 335, pp.
> 912–913 ["employees may depart from employment without
> leaving the situs of their work … [¶] … [or] by engaging in purely
> personal acts during working hours"].) As the Supreme Court said
> in Lisa M., supra, 12 Cal. 4th at page 306, the employer 'may have
> set the stage for [its employee's] misconduct, but the script was
> entirely of [the employee's] own, independent invention.'
> Therefore, we conclude that Agilent as a matter of law could not
> be held vicariously liable for Moore's cyberthreats, because he
> "substantially deviate[d] from the employment duties for personal
> purposes." (Farmers Ins. Group, supra, 11 Cal. 4th at 1005.).

***

We unhesitatingly conclude based upon the circumstances before
us—i.e., an employee allegedly using his employer's computer to
access his personal Internet account to send anonymous
cyberthreats that are unrelated to his employment—that Moore's
conduct was not a risk that Agilent bore as part of its enterprise.
Agilent thus cannot be held liable for Moore's actions under

6

respondeat superior. (See Booker v. GTE.net LLC 214 F. Supp. 2d 746 (E.D.Ky. 2002) [rejecting claim against employer under respondeat superior for employees' creation of fake e-mail address and transmission of e-mail derogatory toward the plaintiff].).

Delfino, 145 Cal. App. 4th at 813-14.

Here, even assuming *arguendo* the truth of the allegations that former defendant Yosef Taitz had used DCIS technology to access Plaintiffs' personal information, by the terms of the FAC, the alleged injury would have been inflicted out of personal malice and not pursuant to his employment.

Plaintiffs' utterly baseless and wildly conjectural allegations that Yosef Taitz used DCIS technology for personal reasons outside the scope of his regular employment functions are at odds with their vicarious liability claims against DCIS and require the dismissal of all claims as a matter of law.

## B. Plaintiffs Do Not State A Claim Against DCIS For Negligence

As a preliminary matter, Plaintiffs' scattershot complaint makes only conclusory negligence allegations against DCIS, and a cursory review reveals that there is no allegation of any duty owed by DCIS to Plaintiffs or any breach thereof, and as a result it is self-evident that the FAC does not allege a viable negligence claim against DCIS.  See, e.g., FAC ¶ 406 ("Defendants knew or should have known that their illegal acts… as outlined herein by disclosing all Plaintiffs [*sic*] private data to individuals who had threatened the Plaintiffs and their families and omissions to act and protect the Plaintiffs by reporting the egregious violations are clear breaches in the Defendants [*sic*] duty to ensure Plaintiffs and the general public's privacy rights, safety and to ensure all private data in possession of Defendants is maintained securely and privately."). Plaintiffs' Nineteenth Claim for negligent infliction of emotional distress and

Twentieth Claim for *res ipsa loquitor*[3] should be dismissed for this independent reason.

Notwithstanding the facial insufficiency of the FAC, Plaintiffs' opposition asserts that DCIS was negligent[4] because it did not closely supervise former defendant Yosef Taitz. Seе Opposition ¶ 76 ("DCIS' failure to take steps to prevent it and/or stop Mr. Taitz's abuses, warrants damages for Negligent Infliction of Emotional Distress); Id. at ¶ 79 ("DCIS was negligent by failing to ensure that the data and information entrusted to them through their clients' databases were maintained secure and not accessed, abused and/or used for personal gain by their employees"). Without allegations supporting this assertion of DCIS's liability for Yosef Taitz's alleged conduct, each and every one of the FAC's purported claims must be dismissed.

Under California law, "[a]n employer may be liable to a third person for the employer's negligence in *hiring* or *retaining* an employee who is incompetent or unfit. Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes …. Liability for negligent supervision and/or

---

[3] To the extent that Plaintiffs' negligence claim is based on the same facts as their claim for defamation, it is duplicative and should be dismissed. See Felton v. Schaeffer, 229 Cal. App. 3d 229, 239 (1991) ("If plaintiffs… were permitted to sue in negligence, we perceive plaintiffs would seek to evade the strictures of libel law and avoid the applicable defenses by framing all libel actions as negligence causes of action, merely by pleading the defendant was negligent.").

[4] Because under California law there is no independent claim for negligent infliction of emotional distress, see Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993), or *res ipsa loquitor*, see Pacific Tel. & Tel. Co. v. City of Lodi, 58 Cal. App. 2d 888, 895 (1943), DCIS will respond as if Plaintiffs' Nineteenth and Twentieth claims were claims for negligence.

8

1   retention of an employee is one of direct liability for negligence, not vicarious

2   liability.") <u>Delfino</u>, 145 Cal. App. 4th at 815 (citation omitted).

3       Even were the Court to consider Plaintiffs' Opposition's new theory of

4   liability for DCIS, Plaintiffs have failed to allege that DCIS owed them a duty, that

5   DCIS breached that duty, or that DCIS's breach of such duty caused them injury.

6   Plaintiffs do not allege that DCIS knew that former defendant Yosef Taitz was

7   supposedly going to provide Orly Taitz with their personal information, or that

8   anyone at DCIS other than Yosef Taitz knew that he was supposedly

9   surreptitiously gathering information from Lexis and Intelius through Oracle

10  servers.  Indeed, the only duty Plaintiffs argue DCIS owed to anyone was to its

11  clients, not Plaintiffs.  <u>See</u> Opposition ¶ 79.[5]  This is insufficient to state a

12  negligence claim against DCIS.  <u>Delfino</u>, 145 Cal. App. 4th at 816 ("[i]t would be

13  a dubious proposition indeed to suggest that a party, simply by virtue of engaging

14  in business, owes a duty to the world for all acts taken by its employee,

15  irrespective of whether those actions were connected with the enterprise in which

16  the business was engaged.").

17      Second, even if the FAC alleged a duty, there is no allegation that this duty

18  was breached by the employment of Yosef Taitz because, as stated above, there is

19  no plausible allegation that DCIS knew or should have known of Yosef Taitz's

20  alleged conduct.  <u>Federico v. Superior Court</u>, 59 Cal. App. 4th 1207, 1214 (1997)

21  ("an employer's duty, as defined by California authority and the Restatement, is

22  breached only when the employer knows, or should know, facts which would warn

23  a reasonable person that the employee presents an undue risk of harm to third

24  persons in light of the particular work to be performed.").

25

26  _____

27  [5] ("DCIS was negligent by failing to ensure the data and information entrusted to
    them through ***their clients'*** databases were maintained secure and not accessed,
    abused and/or used for personal gain by their employees.") (emphasis supplied).

28

9

Finally, no causation has been plausibly stated.  Even if DCIS had somehow been negligent in employing Yosef Taitz, it would not have been foreseeable that he would allegedly program DCIS products with a secret back-door which he would use to gather personal information to provide to Orly Taitz for dissemination which would result in medical or other injuries to Plaintiffs.  Johnson v. Univ. of San Diego, 10 CV 0504-LAB(NLS), 2011 U.S. Dist. LEXIS 104962, at *35 (S.D. Cal. Sept. 15, 2011) (granting 12(b)(6) motion and dismissing negligent supervision claim with prejudice); Smith v. Puentes, 1:08-cv-01792-LJO-SMS PC, 2009 U.S. Dist. LEXIS 95675, at *17 (E.D. Cal. Oct. 14, 2009) (granting 12(b)(6) motion and dismissing "threadbare," "conclusory" and "unsupported" negligent supervision claim).

Plaintiffs' attempt to state claims against DCIS premised on the "startling," "unusual," unforeseeable (not to mention totally implausible) and alleged malicious conduct of former defendant Yosef Taitz for his own personal gain must fail under California law.  Plaintiffs simply have not alleged that Taitz's actions were within the scope of his employment, or that DCIS has breached any duty owed to them.

**III.   EACH OF PLAINTIFFS' CLAIMS AGAINST DCIS IS DEFICIENT AND WARRANTS DISMISSAL WITH PREJUDICE**

**A.   Plaintiffs Fail To State A Claim For Intrusion Into <u>Seclusion Or Violation Of The California Constitution</u>**

Plaintiffs' opposition fails to explain how DCIS's alleged conduct caused their medical issues and hospitalizations, or how DCIS's employee allegedly merely repeating incorrect identifying information to one person could be highly offensive to a reasonable person or a serious invasion of privacy.  See Shulman v. Group W Prods., Inc., 18 Cal. 4th 200, 232 (1998) (intrusion claim requires allegations of (1) intrusion into a private space, conversation or matter, (2) in a

manner highly offensive to a reasonable person); <u>Hill v. National Collegiate</u>
<u>Athletic Ass'n</u>, 7 Cal. 4th 1, 39-40 (1994) (invasion of privacy claim under
California Constitution requires plaintiff to allege (1) a legally protected privacy
interest; (2) a reasonable expectation of privacy under the circumstances; and (3)
conduct by defendant constituting a serious invasion of privacy).

This claim also fails because it is based upon the alleged conduct of former
defendant Yosef Taitz as an employee of DCIS[6] and there are no facts alleged
from which the Court could conclude DCIS should be vicariously liable.  <u>See</u>
Section II, <u>supra</u>.

**B.    Plaintiff's Second Claim, for Public Disclosure**
**Of Private Facts, And Sixth Claim, Pursuant To**
**§ 1798.85(a)(1), Both Fail Because Plaintiffs Concede**
**<u>That There Is No Allegation Of Publication In The FAC</u>**

Plaintiffs fail to meet the requirements for their Second Claim for public
disclosure of private facts, which require that a plaintiff allege a public disclosure
"in the sense of communication to the ***public in general*** or to a ***large number*** of
persons, as distinguished from one individual or a few."  <u>Porten v. University of</u>
<u>San Francisco</u>, 64 Cal. App. 3d 825, 828 (1964) (citation omitted; emphases
supplied); <u>Raigoza v. Aramark Unif. Servs.</u>, 02:04-cv-1208-GEB-KJM, 2005 U.S.
Dist. LEXIS 39881 (E.D. Cal. Dec. 21, 2005) (communication to six individuals is
not "public disclosure").  Plaintiffs fail to properly allege their Sixth Claim,
pursuant to California Civil Code § 1798.85(a)(1), for similar reasons, because
such a claim requires that a plaintiff allege that a defendant "intentionally
communicate or otherwise make available [social security numbers] to the ***general***
***public***." (emphasis added).

---

[6]  Plaintiffs specifically allege that DCIS should be "responsible for its employees
[*sic*] actions."  (Opposition at ¶ 36, p. 12:5-6).

11

1    Plaintiffs' opposition confirms that there is no allegation of a publication by
2    DCIS to support their the Second or Sixth Claims.  Specifically, Plaintiffs allege
3    that "Mr. Taitz by and through DCIS obtained Plaintiffs private data from the
4    Intelius and Reed Defendants and provided it as fact to Ms. Taitz" and that "Ms.
5    Taitz then published Plaintiffs [*sic*] private data all over the Internet and by other
6    means…"  (Opposition, ¶¶ 61).[7]

7    Plaintiffs' Second and Sixth Claims are both insufficient as a matter of law
8    because the assertion that Yosef Taitz[8] communicated their identifying
9    information "through" DCIS to a single person, Orly Taitz, is not the requisite
10   alleged disclosure to the public.  Diaz v. Oakland Tribune, Inc., 139 Cal. App. 3d
11   118, 131 (1983).  Finally both of these claims must be dismissed because they are
12   based on the alleged conduct of former defendant Yosef Taitz, not DCIS.  See
13   Section II, supra.[9]

---

[7]  Plaintiffs' assertion that their false light claim requires only that they allege communication of false information that implies something highly offensive to "some third person, in this case Orly Taitz" (Opposition, ¶ 48) is yet another admission that the only person to whom former defendant Yosef Taitz is alleged to have communicated identifying information to was Orly Taitz.  No other communication is alleged and thus Plaintiffs' claims for public disclosure of private facts and pursuant to § 1798.85(a)(1) must both fail.

[8]  The Sixth Claim actually conspicuously omits any reference to DCIS (or Yosef Taitz), even though it specifically identifies other defendants.  See FAC ¶ 257.

[9]  Plaintiffs repeatedly argue that former defendant Yosef Taitz was able to do these acts by reason of his status as a DCIS "employee."  (Opposition at ¶¶ 36, 37, 41, 44, 67, 68, 71, 76, 79 and 81).  There can be no vicarious liability/*respondeat superior* liability for the reasons discussed above.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.     Plaintiffs' Third Claim, For False Light, And Eighth Claim, For Defamation, Are <u>Duplicative And Suffer From The Same Fatal Infirmities</u>

As a preliminary matter, Plaintiffs' Third Claim must be dismissed because, under California law, there can be no viable claim for false light invasion of privacy when a claim for defamation is alleged.  In <u>McClatchy Newspapers, Inc. v. Superior Court</u>, 189 Cal. App. 3d 961, 965 (1987), the court dismissed the plaintiff's false light claim as surplusage because a libel claim was also pleaded. <u>Eisenberg v. Alameda Newspapers, Inc.</u>, 74 Cal. App. 4th 1359, 1385, fn. 13 (1999) ("When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action.").

Plaintiffs erroneously rely on <u>Operating Engineers Local 3 v. Johnson</u>, 68 Cal. Comp. Cas 1135, 1149 (2003), for the proposition that their Third Claim for false light, and their Eighth Claim, for defamation, are not duplicative.   <u>Operating Engineers</u> was a workers compensation case where the court merely found that a claim for invasion of privacy is precluded by workers compensation while a claim for defamation is not.  Under California law, false light claims are duplicative of defamation claims when they are based upon the alleged disclosure of identical information.  <u>Brooks v. Physicians Clinical Lab., Inc.</u>, No. CIV. S-99-2155 WBS DAD, 2000 U.S. Dist. LEXIS 13063, at *12-13 (E.D. Cal. Mar. 20, 2000).  Here, Plaintiffs do not allege that the disclosure of *separate* information caused *separate* injury, and thus the false light claim must be dismissed as duplicative.  <u>See, e.g.</u>, <u>Grimes v. Carter</u>, 241 Cal. App. 2d 694, 699-702 (1966) (holding that an independent cause of action cannot be based upon the same speech that is the basis for a defamation claim).

1    Furthermore, both the false light claim and the defamation claim suffer from

2    the same fatal infirmities: (i) the FAC does not allege that the information

3    allegedly disclosed was defamatory; and (ii) it does not allege that DCIS itself

4    disclosed anything.  Indeed, while the relevant paragraphs of the FAC list

5    numerous defendants, they conspicuously omit any reference to DCIS.[10]  See FAC,

6    ¶¶ 216, 218-220, 285-288).

7    Plaintiffs argue that DCIS's "allowance" of its "employee" former

8    defendant Yosef Taitz, to allegedly obtain their personal information was

9    objectionable.[11]  (Opposition, ¶ 44.)  However, the false light analysis asks

10   whether the nature of the allegedly incorrect information, not defendant's conduct,

11   is "highly offensive," and, similarly, Plaintiffs have also failed to allege that

12   reasonable persons would have found incorrect identifying information to state or

13   imply something so "highly offensive" that it goes "beyond the limits of decency."

14   Gill v. Curtis Publ'g Co., 38 Cal. 2d 273, 280 (1952); Fellows v. National

15   Enquirer, Inc., 42 Cal. 3d 234, 238 (1986) ("[i]n order to be actionable, the false

16   light in which the plaintiff is placed must be highly offensive to a reasonable

17   person."); Oracle Decision, Dkt. 405 at p. 6 ("Plaintiffs fail to allege that the

18   accessed information – even if incorrect – was highly offensive").  Pursuant to the

19   Court's Oracle Decision, these claims should be dismissed for that reason.

20   Likewise, the Eighth Claim is legally insufficient because the allegedly

21   "incorrect" information is not defamatory.  In their opposition, Plaintiffs argue that

22

23   [10]  Paragraph 290 mentions DCIS only as an alleged recipient of information
     "furnished" by "the Reed and Intelius Defendants," *not* as one of the defendants
24   who published it.

25   [11]  These claims must also be dismissed because there are no allegations
26   supporting a finding of *respondeat superior* by dint of acts allegedly committed by
     an "employee" that were neither within the scope of his employment, nor
27   foreseeble.  See Section II, supra.

28

they have "pled that the Intelius and Reed Defendants maintained incorrect information on the Plaintiffs which included wrong social security numbers … wrong dates of birth, wrong names and other incorrect data fraudulently" that this "incorrect data … portrayed Ostella and Liberi as using multiple identities." (Opposition, ¶ 61.)  Plaintiffs are in reality asking this Court to recognize a "libel by implication claim" which cannot withstand scrutiny under the applicable law. To state a claim for libel by implication under California law, the alleged defamatory statement ***must reasonably be understood as implying the defamatory content***.  See Price v. Stossel, 620 F.3d 992, 1004 (9th Cir. 2010) ("ABC's broadcast in this case did not discuss any identifiable crime . . . [Plaintiff] cannot meet his burden to show probable success in proving the report fairly implied criminal conduct under California law, and the district court therefore correctly dismissed that implied defamation claim.").  Here, Plaintiffs' allegation that a defamatory meaning (i.e., that Plaintiffs are committing crimes by using multiple identities) would be reasonably inferred from the maintenance of incorrect biographical information is simply not plausible.  Because it does not adequately plead the element of defamatory meaning, Plaintiffs' defamation claim should be dismissed.

Moreover, to withstand a motion to dismiss, both a defamation claim and a false light claim must allege that false information was published by the defendant to some third person.[12]  Gilbert v. Sykes, 147 Cal. App. 4th 13, 27 (2007) (defamation elements); Solano v. Playgirl, Inc., 292 F.3d 1078, 1082 (9th Cir. 2002).  Plaintiffs allege that former defendant Yosef Taitz, not DCIS, provided the allegedly false information to Orly Taitz, and thus DCIS may not be held liable on this claim for this independent reason.

---

[12]  Publication under these claims thus differs from the public disclosure requirement of Plaintiffs' Second and Sixth Claims.

15

Finally, both false light and the defamation claims require that a plaintiff allege at least negligence with regard to the information disclosed.  See Felton v. Schaeffer, 229 Cal. App. 3d 229, 239 (1991).  Here, both claims must be dismissed because Plaintiffs fail to identify any allegation in FAC that DCIS was negligent with regard to the truth or falsity of the information which former defendant Yosef Taitz allegedly provided Orly Taitz.  Reader's Digest Ass'n v. Superior Court, 37 Cal. 3d 244, 253, 265 (1984).

**D.**      **Plaintiffs' Fifth Claim, Pursuant To Cal. Civ. Code § 1798.53, Must Be Dismissed Because There Is No Allegation That <u>DCIS Obtained Any Information From A Government Agency</u>**

Plaintiffs fail to state a claim under Cal. Civ. Code section 1798.53 because their allegations do not satisfy the elements of the statute, which requires that a defendant intentionally disclose information obtain from a government agency.  Section 1798.53 provides in pertinent part that:

> Any person ... who ***intentionally*** discloses information, not otherwise public, which they know or should reasonably know ***was obtained from personal information maintained by a state agency*** or from "records" within a "system of records" ... maintained by a federal government agency, shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains.

Cal. Civ. Code § 1798.53 (emphases added).[13]  Plaintiffs fail to satisfy these statutory requirements in at least three ways.

---

[13] Pursuant to 1798.3(a), "personal information" includes "any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or

16

First, Plaintiffs have failed to allege that DCIS itself, as opposed to its employee former defendant Yosef Taitz, disclosed any information to anyone.  See Section II, supra.

Second, Plaintiffs' claim that DCIS is liable for Yosef Taitz's alleged disclosure is premised on a negligence theory and the statute requires that the disclosure be "intentional."  See Cal. Civ. Code § 1798.53.

Third, Plaintiffs have failed to allege that DCIS obtained any information from a state agency.  See e.g., Jennifer M. v. Redwood Women's Health Ctr., 88 Cal. App. 4th 81, 91 (2001) ("[n]either is section 1798.53 helpful to Jennifer's case …. As seen, [defendant] is not itself a government agency or an arm thereof, nor does section 1798.19 make it one.  There is no evidence the information at issue was 'maintained by' either a state or a federal government agency, *or was 'obtained' by Redwood from any such agency-maintained source of information*.  Indeed, this case involves no state or federal agency at all, much less the contents of any agency files.") (emphasis added).  Here, Plaintiffs *specifically allege that DCIS obtained their information from Reed and Intelius*, which are not, and are not alleged to be, government agencies.

Plaintiffs' claim thus fails because there is no allegation that DCIS disclosed nonpublic information obtained by it from a government agency to anyone.  Cf. Witriol v. LexisNexis Group, C05-02392 MJJ, 2006 U.S. Dist. LEXIS 26652, at *7-8 (N.D. Cal. Apr. 26, 2006) (a case cited by Plaintiffs where "[p]laintiff expressly alleged that the information 'was obtained from personal information maintained by state and/or federal agencies[.]'").  Finally, these claims must also be dismissed because there are no allegations to support a finding of *respondeat superior*.  See Section II, supra.

---

employment history.  It includes statements made by, or attributed to, the individual."  Cal. Civ. Code § 1798.3(a).

17

### E.     Plaintiffs Ninth Claim, For Intentional
### Infliction Of Emotional Distress, Is Insufficient

Even if the Court were to agree that DCIS's alleged act of failing to prevent an employee from obtaining individuals' private information to disclose it to one unauthorized person was extreme and outrageous, there is no allegation that DCIS allowed this to happen with the intention or reckless disregard of the risk of harming Plaintiffs.  There is no fact alleged supporting a conclusion that DCIS recognized potential harm or wished to harm Plaintiffs in any way.

Moreover, Orly Taitz's alleged dissemination of that information is the alleged cause of Plaintiffs' injury, not DCIS's alleged failure to prevent former defendant Yosef Taitz from accessing the information and allegedly providing it to Orly Taitz.  Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998).  This claim also collapses without allegations of *respondeat superior*.  See Section II, supra.

### F.     Plaintiffs' Fourteenth Claim, For Negligent Non-Compliance
### With the Fair Credit Reporting Act, 15 U.S.C. § 1681b, 1681o,
### Fails To Allege That DCIS Obtained A Consumer Report

Plaintiffs' conspicuously fail to cite a single case or refer to a single allegation in the FAC in their opposition regarding the fourteenth claim, which is out of order at the end of their brief.  Initially, as the Court previously noted, Plaintiffs' Fourteenth Claim, under FRCA 15 U.S.C. sections 1681b, 1681o, is "only applicable to consumer reporting agencies" (see Docket No. 405 at p. 9), and DCIS is not alleged to be a consumer reporting agency.  In any event, even if the FRCA were applicable to DCIS, the FAC does not allege that DCIS obtained a "consumer report"[14] within the meaning of the FRCA.  See FAC ¶ 358.  The FAC

---

[14]  The statutory definition of "consumer report" is complex.  Section 1681a(d) defines a consumer report as (1) any written, oral, or other communication of information (2) by a consumer reporting agency (3) bearing on a consumer's credit-worthiness, credit standing, credit capacity, character, general reputation,

alleges only that Yosef Taitz and DCIS illegally obtained "private data" and does not allege that this information was intended by Reed and Intelius or DCIS to be used[15] in a manner that would bring it within the definition of "consumer report." See Barge v. Apple Computer, Inc., 164 F.3d 617 (2d Cir. 1998) (denying leave to amend because defendant's procurement of personal information that plaintiff submitted to court in unsealed documents did not constitute obtaining "consumer report" from "consumer reporting agency"); Dickison v. Wal-Mart Stores, Inc., 06-108-AA, 2006 U.S. Dist. LEXIS (D. Or. May 16, 2006) (plaintiff failed to state claim pursuant to FRCA because insurance claim report not consumer report as matter of law); Malik v. AT&T Mobility, LLC, 1:08-cv-234, 2009 U.S. Dist.

---

personal characteristics, or mode of living (4) which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purposes authorized under section 1681b. Section 1681b in turn lists five major purposes, two of which have many subparts.

[15] Courts have held that "[p]ursuant to the 'used or expected to be used' language in the statute, a credit report is a 'consumer report' under the FCRA if: (1) the person who requests the report actually uses the report for one of the 'consumer purposes' set forth in the FCRA; (2) the consumer reporting agency which prepares the report 'expects' the report to be used for one of the 'consumer purposes' set forth in the FCRA; or (3) the consumer reporting agency which prepared the report originally collected the information contained in the report expecting it to be used for one of the 'consumer purposes' set forth in the FCRA." Reynolds v. LeMay Buick-Pontiac-GMC-Cadillac, Inc., 06-C-292, 2007 U.S. Dist. LEXIS 55641, at *6-7 (E.D. Wis. July 30, 2007) citing Ippolito v. WNS, Inc., 864 F.2d 440, 449 (7th Cir. Ill. 1988); see also Foster v. Wheelock, 3:00CV0005, 2000 U.S. Dist. LEXIS 15251, at *6-7 (W.D. Va. Oct. 11, 2000) ("in addition to being a communication bearing on the consumer's credit, such communication must be used or expected to be used for specific purposes, such as establishing the consumer's eligibility for insurance or employment, in order to be deemed a consumer report.").

19

1    LEXIS 4871 (W.D. Mich. Jan. 23, 2009) (finding "as a matter of law" that

2    information AT&T obtained from Experian, including social security numbers, did

3    not constitute "consumer report" under the FRCA); Dotzler v. Perot, 914 F. Supp.

4    328, 330 (E.D. Mo. 1996), aff'd without opinion, 124 F.3d 207 (8th Cir. 1997)

5    ([a]n address update with plaintiffs' names, addresses, and Social Security

6    information was not a "consumer report" for purposes of the FCRA, as it did not

7    bear on the plaintiffs' credit or general character and was not used for any purpose

8    listed in the Act.); Foster v. Wheelock, 3:00CV0005, 2000 U.S. Dist. LEXIS

9    15251, at *7-8 (W.D. Va. Oct. 11, 2000) ("In order to be a consumer reporting

10   agency under the FCRA, the defendant must assemble information for the

11   purposes of furnishing consumer reports to third parties. Because the defendant's

12   credit communications alleged in this case do not fall under the statutory

13   definition of consumer report, the defendant is not subject to the Fair Credit

14   Reporting Act.").

15           Because there is no allegation that the information allegedly obtained from

16   the Reed and Intelius defendants was a "consumer report" – and indeed was not a

17   consumer report as a matter of law – Plaintiffs have failed to allege a claim under

18   the FRCA against DCIS.  See Garcia v. UnionBanCal Corp., C-06-3762 CRB,

19   2006 U.S. Dist. LEXIS 31912, at *6-7 (N.D. Cal. Sept. 12, 2006) (dismissing

20   FRCA claim based upon theft of briefcase allegedly "containing names, addresses,

21   telephone numbers, account numbers, types of accounts, account opening dates,

22   account balances, social security numbers and [] interest rates" because

23   "[p]laintiffs' conclusory assertions that the briefcase contained 'consumer reports'

24   are insufficient."); Wright v. Zabarkes, 07 Civ. 7913 (DC), 2008 U.S. Dist. LEXIS

25   28997, at *5-7 (S.D.N.Y. Apr. 2, 2008) (dismissing *sua sponte* complaint which

26   did not allege that the demand letter or the validation notice sent by the defendants

27   were used for any of the purposes listed in 15 U.S.C.A. §§ 1681a(d)(1) or 1681b

28

20

that would qualify the correspondence as a "consumer report.").  The FAC also

may not state an FRCA claim against DCIS based on the alleged conduct of

former defendant Yosef Taitz.  See Section II, supra.

### G.   Plaintiffs' Have Waived Their Seventeenth Claim

Plaintiffs do not address DCIS's arguments to dismiss their Seventeenth

Claim for invasion of privacy under Cal. Civ. Code section 1798 et seq., and thus

the claim(s) should be deemed waived.  See Docket No. 405 at p. 19 ("Plaintiffs

chose not to reply and thus waived this claim.").  Plaintiffs likely decline to

respond because the FAC alleges that Liberi is a resident of New Mexico and

Ostella is a resident of New Jersey, not California, and thus neither may bring a

claim under section 1798.81.  See FAC ¶¶ 4, 8, 385; Docket No. 414 at p. 13

(noting that any claims based upon Cal Civ. Code 1798.81 must fail because

Plaintiffs are not residents of California).

Second, to the extent Plaintiffs may be attempting to plead a claim under

section 1798.82, such a claim must also fail because there is no allegation that

DCIS ever owned, licensed or maintained computerized data containing Plaintiffs'

personal information or that there was ever a breach of DCIS's security system.

Finally, Plaintiffs may not plead a claim under sections 1798.81 or 1798.83

because they only apply to a defendant's customers and there is no allegation that

Liberi or Ostella were DCIS customers.  Cal. Civ. Code §1798.80(c).[16]

### H.   Plaintiffs' Eighteenth Claim, For Violation of California Business & Professions Code Section 17200, Is Irremediably Deficient And Therefore Should Be Dismissed With Prejudice

Plaintiffs do not identify any fraudulent or unfair business act or practice in

their FAC (or in their Opposition) that satisfies the fundamental threshold element

---

[16] These claims must also be dismissed because there are no allegations support a finding of *respondeat superior*.  See Section II, supra.

of a claim under California Business & Professions Code Section 17200 <u>et seq.</u> ("the UCL").   A threadbare statement that the Legislature intended the language of the UCL to be "sweeping" (Opposition, p. 22) is no substitute for properly pleading the claim.  The murky allegations contained in paragraph 392 of the FAC – the only allegations in the FAC that could plausibly be interpreted as an attempt to allege this element – do not satisfy the pleading requirement under the UCL. This claim should be dismissed for the reasons stated in DCIS's moving memorandum of points and authorities, and for the reasons stated in Section II, <u>supra</u>.

Significantly, Plaintiffs' UCL claim suffers from an ***additional*** fundamental flaw.  California law is clear that while private individuals as well as public prosecutors may bring suit under the UCL, "the remedies provided are limited … ***it is well established that individuals may not recover damages***."  <u>Korea Supply Corp. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1150 (2003) (emphasis added). <u>See</u> <u>also</u> <u>In re Paxil Litig.</u>, 218 F.R.D. 242, 245 (C.D. Cal. 2003) ("Damages are not available under Section 17200."); <u>In re Sony PS3 Other OS Litig.</u>, C 10-1811 RS, 2011 U.S. Dist. LEXIS 16024, at *17 (N.D. Cal. Feb. 17, 2011) (dismissing on Rule 12 motion and holding, "Plaintiffs seek 'restitution' under California's UCL, Cal Bus. & Prof. Code §§17200 *et seq*.  As with their claim for 'unjust enrichment,' plaintiffs have failed to allege sufficient facts showing sums paid by them to Sony that should be refunded.")

While private plaintiffs may seek ***restitution*** in a UCL claim, Plaintiffs here have not pleaded or even hinted at a single component of loss for which damages would be restitutionary in any nature.  The extent of Plaintiffs pleading of restitution damages is the bare inclusion of the word "restitution" in the FAC – nothing more.  <u>See</u> FAC, ¶394  ("And [Plaintiffs] are also entitled to restitution of all Defendants [*sic*] unjust enrichment . . .").  Indeed if there was any doubt that

22

Plaintiffs' claims are in reality for damages, one need only look at paragraphs 396-397 of the FAC, wherein Plaintiffs claim entitlement to "civil penalties, punitive, actual, exemplary damages . . . and all damages, of any nature, resulting from the violations outline herein."  FAC, ¶¶ 396-397.  This reads like a tort claim.  If such damages were available under the UCL, "[t]he result could be that the UCL would be used as an all-purpose substitute for a tort or contract action, something the Legislature never intended."  <u>Korea Supply</u>, 29 Cal. 4th at 1151.  Instead, the act provides an equitable means through which private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices.

Like many UCL cases in which the plaintiff stretches the scope of the law to fit what is in essence a tort or contract claim, the plaintiff in <u>Korea Supply</u> tried to characterize its damages as something other than the required restitution damages, "[i]n an attempt to fit its claim within the statutory authorization for relief…" 29 Cal. 4th at 1148-51 ("[t]he monetary relief requested by [plaintiff] does not represent a *quantifiable sum owed by defendants to plaintiff*") (emphasis added).  The court did not countenance this circumvention of the required pleading requirements and dismissed the UCL claim accordingly.  Similarly, the Court here should dismiss with prejudice Plaintiffs' deficient UCL claim.

1

## IV.   CONCLUSION

2          Defendant DCIS respectfully requests that the Court dismiss, with prejudice

3   and without leave to amend, all of Plaintiffs' claims against DCIS in the First

4   Amended Complaint.

5

6                                        **PRYOR CASHMAN LLP**

7

8   Dated:  December 5, 2011     By:    */s/ Michael J. Niborski*

9                                        Michael J. Niborski
                                         Tom J. Ferber
10                                       Ross M. Bagley

11
                                         *Attorneys for Defendant*
12                                       Daylight Chemical Information Systems, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24