1 | Orly Taitz, Esq., State Bar #223433
**LAW OFFICES OF ORLY TAITZ**

2 | 29839 Santa Margarita Pkwy, Ste 100
Rancho Santa Margarita, CA 92688

3 | Telephone (949) 683-5411
Email: orly.taitz@hushmail.com

4 |

5 | Marc Steven Colen, Esq., State Bar #108275
**THE LAW FIRM OF MARC STEVEN COLEN**

6 | 3610 Central Ave., Ste 400 -102
Riverside, CA 92506-5907

7 | Telephone (951) 394-8265

8 | Attorneys for Counterclaimants and Third Party Complaint Plaintiffs, ORLY TAITZ and DEFEND OUR FREEDOMS FOUNDATION, INC.

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11 | LISA M. OSTELLA,

12 | Plaintiff,

13 | v.

14 | ORLY TAITZ,

15 | Defendant.

16 |

17 | ORLY TAITZ and DEFEND OUR FREEDOMS FOUNDATION, INC.,

18 | Counterclaimants,

19 | v.

20 | LISA M. OSTELLA and PHILIP BERG,

21 | Counterclaim Defendants.

22 |

23 | ORLY TAITZ and DEFEND OUR FREEDOMS FOUNDATION, INC.,

24 | Third Party Complaint Plaintiffs,

25 | v.

26 | SHIRLEY WADDELL, DONNA ANDERS, MATHEW TILGHMAN and ROES 1-10,

27 | Third Party Complaint Defendants.

28 |

Case No. 8:11-CV-00485-AG (AJW)
Hon. Andrew Guilford
Courtroom 10D

**COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.**

Trial Date: March 27, 2018

1

**TO THE COURT, ALL PARTIES, AND/OR THEIR ATTORNEYS OF RECORD:**

**COME NOW** Defendants, Counterclaimants, and Third Party Complaint Plaintiffs ORLY TAITZ ("Taitz") and Defend Our Freedoms Foundation, Inc. ("DOFF") and hereby submit the following Counterclaim and Third Party Complaint against Counterclaim Defendants, PHILIP J. BERG ("Berg"), LISA M. OSTELLA ("Ostella") as well as Third Party Counterclaim Defendants SHIRLEY WADDELL ("Waddell"), DONNA ANDERS ("Anders"), MATTHEW TILGHMAN ("Tilghman") and Third Party Roes 1-10.

## COUNTERCLAIMS AGAINST LISA OSTELLA AND PHILIP BERG

### I. JURISDICTION AND VENUE

1.      These are compulsory counterclaims arising out of the same alleged events, transactions and occurrences that are set forth in Plaintiffs' various Complaints. Counterclaimants file this Countercomplaint with the reservation of rights and do not waive their opposition to jurisdiction of the Plaintiffs' complaint. Counterclaimants assert that the plaintiffs' original complaint was filed improperly in the federal court. The plaintiffs filed their complaint in federal court under the diversity of citizenship. There was no diversity, as plaintiff Liberi and defendants Taitz, DOFF and Sankey defendants are all citizens of California. Plaintiff Ostella and defendants Rock Salt Publishing and James Sundquist are all citizens of New Jersey. Diversity had to exist at the time the original complaint was filed.  Diversity cannot appear years later after certain parties dismiss or settle their complaints. Taitz and DOFF seek to preserve the issue of lack of jurisdiction of the Plaintiffs' complaint for possible appeal based on the judicial error by the presiding court.

### II. GENERAL ALLEGATIONS

2.      Taitz is an individual who has resided, at all times referred to herein, and continues

to reside, in Orange County, California, and who has maintained and continues to maintain her principal place of business in Rancho Santa Margarita, California. Taitz, at all times mentioned herein and presently, has been and is an attorney duly licensed by the State of California. Taitz is and has been active, at all times mentioned herein, in the political dissident movement dedicated to promotion of Constitutional freedoms of the citizens of the United States and related political causes.

3.      Taitz is and has been at all times referred to herein the president of DOFF, a California corporation in good standing with the State of California. At all times mentioned herein, and presently, DOFF is a California foundation dedicated to promotion of Constitutional freedoms of the citizens of the United States and related political causes.

4.      Taitz is a licensed dentist. Taitz is and has been, at all times referred to herein, the President of former Defendant, ORLY TAITZ, INC. ("OTI"), a California corporation in good standing with the State of California. OTI is Taitz's dental practice, which has no connection to Plaintiffs' claims herein, and which was named as a Defendant herein with no legitimate purpose.

5.      Taitz is informed and believes, and on that basis alleges, that Berg is, and has been at all times referred to herein, an individual residing and who has resided, and who has maintained a principal place of business, in the Commonwealth of Pennsylvania.

6.      Taitz is informed and believes and on that basis alleges that Berg, at various times referred to herein, was an attorney licensed by the Commonwealth of Pennsylvania who did business via the practice of law under the fictitious business name "Law Offices of Philip Berg." There is not, and has never been at any time referred to herein, any independent legal entity under the name "Law Offices of Philip Berg." Berg's license to practice law was suspended by the Supreme Court of Pennsylvania for two years, beginning in June 2013 and Berg was permanently disbarred in 2015.

7.      Taitz is informed and believes and on that basis alleges that Ostella is, and has been at all times referred to herein, an individual residing and who has resided, and who has conducted business, in the State of New Jersey. Taitz is further informed and believes and based thereon alleges that Ostella was an officer, director and/or owner of Go Excel Global Incorporated, which

3

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

1   is believed to have been formed in the State of New Jersey beginning in June 2002 but which had

2   its corporate status revoked by the New Jersey Secretary of State in January 2012.

3      8.      Orly Taitz is both a licensed Attorney and a licensed Doctor of Dental Surgery. In

4   2008 Taitz brought several legal actions dealing with constitutional freedoms. In one of these

5   actions Taitz represented Dr. Alan Keyes, a prominent African-American political leader and

6   former US representative to the United Nations economic commission. Because of her

7   representation of Keyes, Taitz became well known and many people were interested in her work.

8   On November 19, 2008 a supporter and webmaster, Bob Stevens, suggested to Taitz to create a

9   website for her, from which she could update the public about her work and legal challenges. On

10  the same day, he created a website for her under her first name DrOrly.blogspot.com. Taitz posted

11  there her articles and updates on various legal challenges and her work. Taitz spent a lot of time

12  travelling to 34 states and Washington, D.C., meeting with state and US representatives,

13  government officials, judges and justices of the Supreme Court and law enforcement officials,

14  promoting elections integrity and constitutional freedoms of the US citizens.

15     9.      In and around the same time Taitz was contacted by Lisa Ostella, who represented

16  herself, as a supporter as well. She volunteered to help Bob Stevens to run Taitz's site

17  drorly.blogspot.com. Taitz incurred heavy expenses for her pro bono work, as she had to pay high

18  travel costs and the cost of legal challenges. Many supporters suggested to Taitz that she would

19  need a foundation to get donations to help pay for her work.

20     10.     On December 17, 2008, Ostella suggested to Taitz that Taitz create a PayPal

21  account to get donations from the public to help Taitz pay for expenses of her pro bono work. On

22  December 17, 2008 Ostella sent an e-mail to Taitz: "Do you want me to make you a PayPal

23  account with your account?  I'll need a tax ID and I can set it up. Or wait until the foundation/ tax

24  shelter/fictious (sic) name thing is worked out? Lisa Ostella".

25     11.     On the next day, December 18, 2008, Taitz wrote to Ostella: "Lisa, I thought of a

26  name for the foundation. Defend Our Freedoms Foundation. What do you think?"  Within half an

27  hour Ostella responded: "Defend Our Freedoms sounds good." Immediately after this conversation

28  Ostella, as a web master, through her company GoExcelGlobal, registered the web addresses for

4

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

1   Taitz under the name "Defend Our Freedoms" which was chosen by Taitz for her foundation.

2         12.      Within hours of Taitz giving Ostella the name she chose for the foundation, Ostella

3   wrote to Taitz: "Your website is up and the domain secured. It can take up to 3 days for this to be

4   viewable live.http://www.defendourfreedoms.org. I am also working on your youtube

5   channel:http://www.youtube.com/user/drOrlyTV." Ostella clearly represented to Taitz that this

6   was Taitz's website and Taitz's web addresses.  Ostella advised Taitz that she got a block of web

7   addresses defendourfreedoms.com, .us, .net, .org for the Defend Our Freedoms Foundation and the

8   PayPal account on the website will be linked to the account for the foundation. Ostella specifically

9   advised Taitz that she needed to register all of those web addresses for the foundation so that

10   "squatters" will not divert traffic and donations from the foundation.  The subsequent account for

11   Pay Pal was under the name DefendOurFreedoms with the primary e-mail address being

12   orly.taitz@gmail.com and the primary contact being Orly Taitz.  Only a few months later Ostella

13   ended up being the "squatter".

14         13.      Based on Ostella's representations to Taitz, and acting in justifiable reliance on

15   them, Taitz allowed Ostella to assist her to create an online blog and web site connected to web

16   addresses defendourfreedoms.net, defendourfreedoms.com, defendourfreedoms.us, and

17   defendourfreedoms.org. Ostella had control of the blog and the website and Taitz was not aware

18   that some web masters use their position as web masters to draw personal benefit from the

19   websites they created for others.

20         14.      From mid-December 2008 until end of January 2009 Taitz's articles and updates

21   were posted on Dr.Orly.Blogspot.com and copied on Defend Our Freedoms website. In late

22   January through early February 2009, the Dr.Orly.blogspot.com website started crashing.   Ostella

23   blamed Bob Stevens, as a web master, and suggested to Taitz that she should use only Defend Our

24   Freedoms website with Ostella as the only webmaster to control the site to avoid any possible

25   hacking or crashing of the site.

26         15.      Taitz, at the time Ostella was making the above-referenced representations, had no

27   experience in creating or operating blogs or websites, and had been informed by Ostella that she

28   had prior experience in such activities for other politicians and non-profit organizations, including

**COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.**

for Congressman Duncan Hunter, Sr.

16.     Taitz accordingly and justifiably relied on the above-referenced representations of Ostella, and her described expertise in computer and online technologies, to allow Ostella to create and operate a blog and website for Taitz by herself.

17.     Ostella advised Taitz, in her capacity as webmaster for Taitz's blog and website, to open a PayPal account so that it would be easier for Taitz's supporters to donate to her via PayPal. Ostella relatedly volunteered to set up the PayPal link on the website. Taitz had not previously had any operation or business whereby donors or customers would donate or pay via Pay Pal and was thus unfamiliar with its operation or processes.

18.     Taitz accordingly and justifiably relied on the above-delineated representations of Ostella, and her described expertise in computer and online technologies including experience with PayPal, to allow Ostella to create and operate a PayPal account for Taitz and her blog and website. Because of Ostella's creation and operation of such PayPal account, she received reports and contact information for donors to Taitz, including but not limited to donors' email addresses. Ostella was listed as a contact on the PayPal account.

19.     Ostella asked Taitz to inform her when she had decided on a name for her foundation, so that Ostella, in her capacity as webmaster for Taitz's blog and website, could register the Internet domain name for the related blog and website. In December 2009, Taitz decided that she would name her foundation "Defend Our Freedoms Foundations," so informed Ostella, and relatedly on December 18, 2008 submitted a registration request with the California Secretary of State for Defend Our Freedoms California Corporation.

20.     In December 2008, Taitz, justifiably relying on Ostella's above-referenced representations and her described expertise in computer and online technologies, provided Ostella with information necessary to register the Internet domain name for Defend Our Freedoms Foundations.

21.     Ostella subsequently registered the Internet domain name for Defend Our Freedoms Foundations, DefendOurFreedoms.us, as well as the similar domain names "DefendOurFreedoms.com," "DefendOurFreedoms.net," and "DefendOur Freedoms.org." Ostella

1 represented to Taitz it that was necessary for her to register such additional domain names so that

2 others would not create blogs or websites with similar names and take away supporters of and

3 donors to Taitz and DOFF.

4      22.     Taitz, at this time, offered to pay Ostella for registration of the above-referenced

5 Internet domain names, but Ostella refused, stating that the related fees amounted to

6 approximately $50.00 and that this was her donation to Taitz. At a time Taitz was not aware of

7 cases where web masters used their position to make large profits of their control of company

8 websites.

9      23.     Once the above-referenced Internet domain names had been registered, Taitz asked

10 Ostella to give her control of them and the related blogs and websites, but Ostella refused and

11 explained that it was necessary that she, as webmaster for Taitz, have exclusive control over them

12 to avoid any technical problems or crashing of the related website. Taitz justifiably relied on such

13 representations by Ostella, and her described expertise in computer and online technologies

14 including experience with PayPal, to allow Ostella to maintain control over those domains and

15 related blogs and websites.

16      24.     Ostella served as Taitz's webmaster for approximately four months, until in or

17 around March 2009 when Taitz began to experience problems with Ostella's management of

18 Taitz's blog and website. (Exhibit 11) Ostella at or about this time began selling merchandise such

19 as T-shirts on DOFF's website and informed Taitz that DOFF benefitted from such sales.(Exhibit

20 9) Taitz demanded that Ostella provide her with the contracts relating to sales of such merchandise

21 and full accounting of how money was received through the sale of such merchandise. Ostella

22 refused to provide such contracts and accounting to Taitz. Taitz does not know the full amount of

23 profits made by Ostella through selling merchandise on the website for DOFF. Taitz instructed

24 Ostella to remove the merchandise sales page from her website.

25      25.     Also in or around March 2009, Taitz and Ostella had a similar disagreement,

26 arising out of Ostella charging persons for signing petitions on Taitz's and DOFF's blog and

27 website. Donors to Taitz and DOFF complained about this practice of Ostella. When confronted

28 by Taitz regarding this, Ostella claimed that monies charged for signing such petitions were

received by Taitz's Foundation, DOFF. However, despite Taitz's demand for proof of Ostella's contention, Ostella refused to provide her with any such proof. Taitz subsequently instructed Ostella to cease her practice of charging persons for signing petitions on the blog and website.

26.     In or about March 2009, donors to Taitz's Foundation DOFF complained to her that there was problem with the PayPal button or function on the DOFF's blog and website. (Exhibit 11) Donors were not able to donate to DOFF, as the e-mail address on the website related to PayPal donations had been changed. Taitz is informed and believes and thereupon alleges the email address connected to the PayPal button had been changed by Ostella, such that donations intended for Taitz were diverted away from her and DOFF.

27.     When Taitz confronted Ostella regarding the problem with the PayPal button, Ostella claimed that another volunteer to Taitz had made that change.(Exhibit 11)  Taitz advised Ostella that, since donations to her Foundation DOFF were being made across State lines and the full amount of lost donations was unknown, that Taitz would need to file a report with the Federal Bureau of Investigation for it to investigate same. Ostella then threatened Taitz that if she filed such a report, Ostella would refuse to continue to serve as Taitz's webmaster. Taitz informed Ostella that the report to the Federal Bureau of Investigation was truthful and proper and would not be withdrawn, and advised Ostella that she would transfer management of her blog and website to another webmaster.

28.     Also in or about March 2009, Taitz demanded of Ostella that she transfer control over the above-referenced Internet domains to Taitz herself. Ostella refused to do so. Further, Ostella locked Taitz out of the website for DOFF, which prevented Taitz from being able to log on to the website, and that despite Taitz being the President of DOFF and that Ostella no longer had any connection to DOFF.

29.     Ostella subsequently, and without consent of Taitz, continued to operate the website for DOFF and used a domain name (DefendOurFreedoms.net), one of the URLs that she originally obtained for Taitz's DOFF. Thus, when supporters of Taitz entered the name "Defend Our Freedoms" in the search area of their computers, this would direct them to Ostella's website, despite that Ostella no longer had any affiliation with Taitz or her Foundation DOFF.

30.     Ostella fraudulently featured on her website the insignia of DOFF as well as a picture of Taitz, thus giving donors to Taitz and DOFF the false and misleading impression that they were donating to Taitz and DOFF. Ostella also replaced Taitz's PayPal with her own.(Exhibit 2)  Ostella substituted Taitz's e-mail connected to the PayPal button with her own e-mail address, so that all donations from that point forward went to Ostella and not to Taitz.  Additionally, Ostella and Berg colluded, where Ostella used the web site and web addresses for DOFF to advertise Berg and direct traffic to his site, where Berg was seeking donations. (Exhibit 3) Similarly, Ostella advertised Berg's local co-counsel, Gary Kreep, and was diverting traffic of donors to both Berg and Kreep, while both Berg and Kreep were suing Taitz in this case.

31.     Further, Ostella, after she no longer had any affiliation with Taitz or her Foundation DOFF, sent emails to supporters and donors of Taitz under the name "Defend Our Freedoms," thus fraudulently soliciting and obtaining donations intended for Taitz and her foundation. Ostella not only sought donations for herself, she sought donations for Berg. Among such e-mails, on and around March 10, 2009 Ostella sent a mass e-mails named "Happy Mothers Day" to donors of Taitz and DOFF. The e-mail had the name and insignia of DOFF on top  of the e-mail and a large article from Berg, where Berg was seeking support for himself, as well as a link to his web site, where donors could donate to Berg. (Exhibit 3) Taitz wrote Cease and Desist letters to Ostella, Berg and Kreep demanding they stop using the name and web addresses of the Defend Our Freedoms Foundation to which they had no connection and demanded that they stop diverting donations from DOFF. Ostella, Berg and Kreep ignored the letter and continued misappropriation of the name, web addresses and web site of DOFF and continued diverting donations.

32.     After April 2009, none of the donations intended for Taitz and DOFF via use of the PayPal function on Taitz's old website DefendOurFreedoms or via email and mail solicitations by Ostella were received by Taitz or DOFF. Taitz is informed and believes and based thereon alleges that Ostella by these improper practices redirected Internet traffic and related donations intended for Taitz and DOFF to Ostella's website, and to Berg in connection with his nationwide fundraising activities, thus receiving and converting monies intended for and belonging to Taitz and DOFF.

33.     Ostella also used the DOFF website to promote Berg and others without the consent of Taitz. Further, Ostella used the e-mail addresses of DOFF donors, which she obtained while acting as DOFF webmaster, and she sent solicitations to those donors for donations to Berg.

### III. COUNTER-DEFENDANT BERG'S INVOLVEMENT
### IN THE POLITICAL DISSIDENT MOVEMENT

34.     From 2007 until the suspension of his license to practice law in 2013 (disbarment took place in 2015), Berg used Liberi as his paralegal, including to draft and file pleadings with various Courts an individual who was previously convicted of forgery. Berg was involved in the political dissident movement including to file cases challenging Presidents George W. Bush and Obama.  Berg used Liberi as his paralegal in several cases involving the political dissident movement. Berg and Liberi appeared on multiple radio programs where Berg introduced Liberi as his paralegal who drafted a law suit against Barack Obama, which Berg filed.

35.     Evidence that Berg was using a convicted felon including for forgery, as his paralegal was detrimental to Berg in connection with the political dissident movement and called into question the authenticity of documents submitted by Berg to various Courts. This revelation would jeopardize support for Berg and related donations to Berg. Berg, ran a nationwide fund raising campaign and evidence that an individual convicted of grand theft working as his paralegal and having access to Berg's donors' financial information would be detrimental to Berg.

36.     In and around early April 2009, Taitz contacted Berg and advised him that she had similar cases dealing with President Obama's eligibility. She advised him that she included in her cases by reference a number of documents which originated in Berg's office and were originally filed in a number of courts by Berg. These documents purported to show President Obama to be born in Kenya, not US, and therefore not eligible for the US presidency. Taitz advised Berg that in light of Berg's paralegal's convictions of "offer of altered/forged documents to file and grand theft," those documents needed to be reviewed by experts and authenticated. Berg refused to do any authentication and instead, together with Liberi and Ostella, filed this frivolous law suit in the

District Court in Pennsylvania in order to silence Taitz, claiming that they were defamed, that Berg's paralegal Liberi is not a person convicted in California, but a different "Lisa Liberi" from Pennsylvania, and that Taitz had defamed them.

37.    At all times referred to herein, including in 2009, Liberi and Berg knew that Liberi is indeed "Lisa Liberi," who was convicted on ten felony counts in San Bernardino County Superior Case No. FWV028000.

38.    In the Spring of 2009, the Disciplinary Board of the Supreme Court of Pennsylvania initiated its investigation of Berg for attorney misconduct, including fraud, against his subject client, Diane McCracken, including that he failed to respond to a Motion to Dismiss in her case and that her case was dismissed due to his misconduct. The file of the Disciplinary Board of the Supreme Court of Pennsylvania reflects that Berg, for over a year, was defrauding his client Ms. McCracken and telling her that her case was ongoing and active, while in fact it was dismissed.

39.    The file of the Disciplinary Board of the Supreme Court of Pennsylvania also reflects that Berg used his paralegal, Liberi, who had a record of conviction of offering altered/forged documents to submit to the Disciplinary Board a sworn declaration and attached backdated "recreated" (fabricated) letters to client Ms. McCracken, allegedly advising her that her case was dismissed.

40.    Revelations by Taitz about the fact that Berg was using as his paralegal a convicted felon, including for forgery, who was on probation and not allowed to live in Pennsylvania, were dangerous to Berg and Liberi and could have led to Berg's suspension from practice of law. For these additional reasons, Berg, together with Liberi and Ostella, filed this frivolous law suit in the District Court in Pennsylvania in order to silence Taitz.

## IV. COUNTERCLAIM DEFENDANTS' FILING AND MALICIOUS PROSECUTION OF LIBERI V. TAITZ, ET AL.

41.    On or about May 4, 2009, Berg, Liberi, Ostella, Go Excel Global, The Law Offices

of Philip J. Berg, and Evelyn Adams a/k/a Momma E, as Plaintiffs (collectively "Plaintiffs"), filed their verified Complaint in the case captioned above, in the United States District Court for the Eastern District of Pennsylvania.

42.     On or about June 3, 2010, the case was ordered to be severed, with a portion of it ordered to be transferred to the United States District Court for the Central District of California.

43.     On or about June 14, 2011, Berg, Liberi, Ostella, Go Excel Global, and The Law Offices of Philip J. Berg filed their First Amended Complaint in the case captioned above.

44.     Berg represented himself, Liberi, Ostella, Go Excel Global, and The Law Offices of Philip J. Berg in the case captioned above until in or about June 2013, when he withdrew from representing Liberi, Ostella, and Go Excel Global in connection with the suspension of his license to practice law in the Commonwealth of Pennsylvania. In June of 2015 Berg was permanently disbarred.

45.     From June 2013 to the present, Berg represented and continues to represent himself, as well as The Law Offices of Philip J. Berg, in the case captioned above.

46.     Plaintiffs wrongfully, maliciously and without probable cause filed, have prosecuted, and continue to prosecute, the case captioned above including but not limited based on the following:

a.     Plaintiffs falsely alleged that The Law Offices of Philip J. Berg was a business entity when, in fact, it is not, and has never been, a business entity of any kind. It was merely a fictitious business name used by Berg for his law practice in Pennsylvania, without any existence as a business entity. Berg has represented, and continues to represent, The Law Offices of Philip J. Berg herein, although it is not an actual business entity.

b.     Plaintiffs falsely alleged that diversity jurisdiction exists herein based in part on Liberi having a business address in Lafayette Hill, Pennsylvania. In fact, Liberi is not, and has not been at any time referred to herein, a resident of Pennsylvania. Thus, there is not and has never been any basis for diversity jurisdiction in this matter.

c.     On August 7, 2009, the District Court in Pennsylvania (Hon. Eduardo Robreno, Judge) conducted a hearing regarding diversity jurisdiction, and ordered Liberi and Berg

1   (who then represented Liberi) to produce to the Court proof of her alleged Pennsylvania

2   citizenship. Liberi and Berg failed and refused, and continue to fail and refuse, to comply with that

3   Order.  Plaintiffs falsely contend that they complied with the August 7, 2009 Order, and that the

4   District Court conducted a prohibited ex parte hearing without notice to and outside the presence

5   of Taitz, and at which it received evidence of Liberi's State citizenship. There is no notation in the

6   docket of the case of any examination of documents of Liberi. Moreover, the transcript of August

7   7, 2009 reveals that Liberi only had in her possession her Social Security Card, not her driver's

8   license, which is a proper picture ID and she was told by the court to file her IDs with the court at

9   a later time. There is no mention anywhere in the transcript or docket  of examination of Liberi's

10  IDs. As such plaintiffs are in contempt of court for six (6) years and never established the court's

11  jurisdiction over the case.

12          d.       As alleged above, the corporate status of Go Excel Global was revoked by

13  the New Jersey Secretary of State in January 2012. From the time of such revocation until 2017

14  Ostella, as an officer, director and/or owner of Go Excel Global, has prosecuted claims in this

15  matter for such defunct and non-existent entity. Further, from the time of such revocation until in

16  or about June 2013, Berg represented and prosecuted claims for the defunct and non-existent

17  entity.

18          e.       Plaintiffs' claims made in their Complaint and First Amended Complaint are

19  based on false allegations and forged or altered documents including but not limited to the

20  following: Plaintiffs, have submitted falsified documents in this matter to the District Court and

21  Court of Appeals. One example of this involves various Deposition Subpoena(s) for Production of

22  Business Records which Plaintiffs contend were executed by Taitz, but which in fact were forged

23  by Plaintiffs (specifically, Ostella). Taitz's signature was cut and pasted by Ostella, without her

24  authorization, onto these Subpoenas three months after Taitz signed the original subpoenas.

25  Plaintiffs (specifically, Ostella) cut and pasted Taitz's signature from a document signed in March

26  2009 (two months after the Subpoenas were dated in January 2009), as to which they claimed

27  Taitz allowed Ostella to sign by cutting and pasting Taitz's signature. Taitz did not authorize or

28  allow Ostella to sign such subpoenas by any means, including but not limited to by cutting and

pasting Taitz's signature.  Taitz is informed and believes, and based thereon alleges, that Plaintiffs'

false allegations regarding her purportedly allowing Ostella to forge her signature were concocted

by Plaintiffs to cover up their diversion of funds from DOFF and Ms. Taitz, and relatedly

fabricating bogus receipts for donations purportedly on behalf of her and DOFF.

47.     Plaintiffs have misrepresented the contents of documents on which they rely in this

case. One example of this includes their false allegations regarding an interview of Taitz in June

2011 by The Post & Email (Sharon Rondeau). Plaintiffs allege in Para. 90 of their First Amended

Complaint in part that:

48.     "On or about June 12, 2011, Taitz conducted an interview with the post and email.

The interview is posted on the interviewer's website. Defendant Taitz falsified numerous stories

about Plaintiffs Lisa Ostella and Lisa Liberi. Taitz falsely states that Liberi was convicted of

burglary; of 27 criminal counts; of multiple forgery crimes; is a career document forger; that

Liberi worked for Taitz; that Liberi and Ostella replaced the PayPal account on Taitz website with

theirs (Lisa Liberi and Lisa Ostella's); that Liberi and Ostella stole from her; Taitz admits to using

LexisNexis and ChoicePoint; Taitz admits to knowing Liberi had and has cardiac complications;

etc."

49.     Ms. Rondeau and The Post & Email in their June 20, 2011 note and corrections

provided that Taitz did not inform The Post & Email that "Liberi was convicted of burglary," that

she had been convicted "of 27 criminal counts," nor that Taitz informed Ms. Rondeau that "Liberi

worked for Taitz." As stated in Ms. Rondeau's note and corrections, Plaintiffs' allegations in this

regard are false.

50.     Plaintiffs make false and defamatory allegations against Taitz, including but not

limited to their outrageous allegations that Taitz attempted to hire a "hitman" to kill Liberi and

Ostella and kidnap Ostella's children.

### V. The First Amended Complaint

51.     In May and June 2011, Plaintiffs brought a Motion for leave to file a First

1  Amended Complaint ("FAC"), claiming that California substantive law controls and it was

2  necessary for them to allege claims in an amended complaint based on California law. Plaintiffs'

3  Motion was granted, and the case was subsequently litigated under California law for

4  approximately four years, to the present.

5        52.    However, Plaintiffs, in August 2014 contended for the first time in connection with

6  appeals by Taitz and DOFF that Pennsylvania substantive law controls and, if the case is

7  remanded to the District Court, that it may be necessary for them to seek leave to bring a further

8  amended complaint based on Pennsylvania substantive law. Plaintiffs make these new contentions

9  for the purpose of prolonging this litigation and making it as difficult and expensive for Taitz and

10  DOFF to defend against. Additionally, it shows that plaintiff's request to file their First Amended

11  Complaint under the California law was made for the purpose of harassment only.

12        53.    Plaintiffs filed approximately 1,000 pages of proposed exhibits with their proposed

13  FAC. The District Court on June 14, 2011 granted Plaintiffs' Motion for leave to file the FAC

14  (Doc 227), but prohibited them from filing it with the proposed exhibits or with any reference to

15  exhibits. Plaintiffs were informed that if they filed the FAC with exhibits, that the Court could

16  strike their FAC.

17        54.    In August 2014, in connection with appeals by Taitz and DOFF, Liberi, Ostella and

18  Go Excel Global, as Appellees in said appeals through their counsel (Gittler & Bradford, Randy

19  Berg, Esq. and Stephen M. Marcus, Esq.), filed voluminous Supplemental Excerpts of Record

20  containing, in part, approximately 1,000 pages of documents constituting the proposed exhibits to

21  the proposed FAC. Liberi, Ostella and Go Excel Global, in violation of the District Court's Order

22  did so for the purpose of defrauding the Court of Appeals to believe that such documents were

23  exhibits to the FAC and properly part of the record on appeal.

24        55.    Orly Taitz, Inc. ("OTI") is a California corporation through which Taitz practices

25  dentistry.  OTI has no connection to Plaintiffs' claims herein. They named OTI with no legitimate

26  purpose and solely to harass Taitz and make it as difficult and expensive for Taitz and DOFF to

27  defend this litigation.

28        56.    As alleged herein, Taitz and Berg knowingly and willfully conspired and agreed

1  among themselves and Third Party Complaint Defendants to harm and damage Taitz and DOFF

2  by the tortuous and wrongful scheme as set above in above paragraphs.

3      57.    With the help of Ostella, Berg wrote and published a book "Obamascare", where he

4  viciously defamed Taitz with the purpose of lowering her standing in the community and stop

5  donations to Taitz and DOFF, where Taitz is the president.

6      58.    Berg continued promoting this defamatory garbage and has sent multiple e-mails to

7  the public promoting it. Taitz is informed and believes and based thereon alleges that the last overt

8  act in pursuance of the above-described conspiracy occurred in or about August 27, 2017, when

9  Berg sent a mass e-mail to the public promoting it. (Exhibit 9)

10     59.    As a proximate result of the formation and operation of the conspiracy identified

11 herein, and the wrongful acts herein alleged, Taitz has been generally damaged in an amount

12 within the jurisdiction of this Court and exceeding $75,000.00 and estimated to be over

13 $10,000,000.

14

15                    **VI. FIRST COUNTERCLAIM**

16      **FRAUD - INTENTIONAL MISREPRESENTATION AGAINST OSTELLA**

17                    **(Taitz and DOFF against Ostella)**

18

19     60.    Taitz and DOFF incorporate the allegations in all prior paragraphs, inclusive, of

20 these counterclaims by this reference as though fully set forth herein.

21     61.    As alleged above, Ostella represented to Taitz that Ostella was a webmaster with

22 expertise in computer and online technologies, and a supporter of Taitz and her related political

23 activities. Ostella further represented that Ostella would create a blog and website for Taitz, in

24 furtherance of Taitz and her political activities.

25     62.    The representations of Ostella were false.

26     63.    Ostella knew that such representations were false when they made them, or made

27 the representations recklessly and without regard for their truth.

28     64.    Ostella intended that Taitz rely on their representations.

65.     Taitz reasonably relied on the representations of Ostella in that Taitz allowed Ostella to assist her to create a blog and related website, including but not limited to allowing Ostella to create a PayPal link by which, among other methods, Ostella then diverted donations intended by donors to be received by Taitz and DOFF away from them, and to allow Ostella to convert such donations and other monies belonging to Taitz and DOFF for her own use.

66.     As alleged herein, Taitz was harmed in reasonable reliance on the representations of Ostella including but not limited to arising out of Ostella's diversion of donations intended by donors to be received by Taitz and DOFF away from them, and to allow Ostella to convert such donations and other monies belonging to Taitz and DOFF for her own use.

67.     As alleged above, Taitz's reliance on the representations of Ostella was a substantial factor in causing her harm resulting damages.

68.     The conduct of Ostella was an intentional misrepresentation, deceit, or concealment of a material fact known to Counterclaim Defendants with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, justifying an award of exemplary and punitive damages.

## VII. SECOND COUNTERCLAIM

## FRAUD - NEGLIGENT MISREPRESENTATION AGAINST OSTELLA

### (Taitz and DOFF against Ostella)

69.     Taitz incorporates the allegations in all prior paragraphs, inclusive, of these counterclaims by this reference as though fully set forth herein.

70.     As alleged above, Ostella represented to Taitz that Ostella was a webmaster with expertise in computer and online technologies, and a supporter of Taitz and her related political activities. Ostella further represented that Ostella would create a blog and website for Taitz, in furtherance of Taitz and her political activities.

71.     The representations of Ostella were untrue in the respects alleged herein, including

1    but not limited to that Ostella would not act in the best interests or in furtherance of Taitz and her

2    political activities.

3        72.    Ostella had no reasonable grounds for believing that her representations were true

4    when they made them to Taitz.

5        73.    Ostella intended that Taitz rely on her  representations.

6        74.    Taitz reasonably relied on the representations of Ostella in that Taitz allowed

7    Ostella to assist her to create a blog and related website, including but not limited to allowing

8    Ostella to create a PayPal link by which, among other methods, Ostella then diverted donations

9    intended by donors to be received by Taitz and DOFF away from them, and to allow Ostella to

10   convert such donations and other monies belonging to Taitz and DOFF for her own use.

11       75.    As alleged herein, Taitz was harmed in reasonable reliance on the representations

12   of Ostella including but not limited to arising out of Ostella's diversion of donations intended by

13   donors to be received by Taitz and DOFF away from them, and to allow Ostella to convert such

14   donations and other monies belonging to Taitz and DOFF for her own use.

15       76.    As alleged above, Taitz's reliance on the representations of Ostella was a

16   substantial factor in causing her harm.

17

18                              **VII. THIRD COUNTERCLAIM**

19              **FRAUD - PROMISE MADE WITHOUT INTENT TO PERFORM**

20                          **(Taitz and DOFF against Ostella)**

21

22       77.    Taitz incorporates the allegations of paragraphs 1 through 76, inclusive, of these

23   counterclaims by this reference as though fully set forth herein.

24       78.    As alleged above, Ostella promised to Taitz that if she allowed Ostella to create a

25   blog and related website for Taitz, that Ostella would act in the best interests of Taitz, while

26   employing her claimed skills as a webmaster with expertise in computer and online technologies

27   for Taitz, and in furtherance of Taitz and her political activities.

28       79.    At the time Ostella made such promises to Taitz, she had no intention of

1    performing them.

2        80.    The promises made by Ostella were made with the intent to induce Taitz to allow

3    Ostella to assist her to create a blog and related website, including but not limited to allowing

4    Ostella to create a PayPal link for Taitz and DOFF.

5        81.    Taitz, at the time these promises were made by Ostella and at the time Taitz took

6    the actions alleged herein, was ignorant of Counterclaim Defendants' secret intentions not to

7    perform their promises and could not, in the exercise of reasonable diligence, have discovered

8    Counterclaim Defendants' secret intentions.

9        82.    In reasonable reliance on the promises of Counterclaim Defendants, Taitz allowed

10   Ostella to assist her to create a blog and related website, including but not limited to allowing

11   Ostella to open a PayPal account by which, among other methods, Ostella then diverted donations

12   intended by donors to be received by Taitz and DOFF away from them, and to allow Ostella to

13   convert such donations and other monies belonging to Taitz and DOFF for her own use. If Taitz

14   had known of the actual intentions of Counterclaim Defendants, she would not have taken such

15   action.

16       83.    Counterclaim Defendants failed to abide by their promises including but not limited

17   to Ostella's diversion of donations intended by donors to be received by Taitz and DOFF away

18   from them, and conversion of such donations and other monies belonging to Taitz and DOFF for

19   her own use.

20       84.    Taitz was harmed in reasonable reliance on the promises of Ostella including but

21   not limited to arising out of Ostella's diversion of donations intended by donors to be received by

22   Taitz and DOFF away from them, and to allow Ostella to convert such donations and other monies

23   belonging to Taitz and DOFF for her own use.

24       85.    The aforementioned conduct of Ostella was intentional misrepresentation, deceit, or

25   concealment of material facts known to Counterclaim Defendants with the intention on their part

26   of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was

27   despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her

28   rights, so as to justify an award of exemplary and punitive damages.

# VIII. FOURTH COUNTERCLAIM

## CONVERSION

### (Taitz and DOFF against Berg and Ostella)

86. Taitz incorporates the allegations of all of the proceeding, of these counterclaims by this reference as though fully set forth herein.

87. At all times herein mentioned, Taitz was, and still is, the President and owner of DOFF, and was, and still is, entitled to own, possess and control all property and property rights belonging to DOFF, including but not limited to donations intended by donors to be received by Taitz and DOFF as well as all other revenue or other monies generated by DOFF in any manner.

88. Beginning in or about April 2009, and continuing through to the present, the property and property rights belonging to DOFF, including donations intended by donors to be received by Taitz and DOFF as well as all other revenue or other monies generated by DOFF, had a fair market value within the jurisdiction of this Court and exceeding $75,000.00.

89. As alleged above, beginning in or about April 2009, and continuing to the present, Ostella and Berg intentionally and substantially, and without the consent of Taitz, interfered and continue to interfere with Taitz's property and property rights by, among other methods, diverting donations intended by donors to be received by Taitz and DOFF away from them, and converting such donations and other monies belonging to Taitz and DOFF for Counterclaim Defendants' own use.

90. As a proximate result of Counterclaim Defendants' conversion, Taitz has suffered monetary losses in an amount to be proven at trial and in excess of $75,000.00, which are the natural, reasonable, and proximate results of Counterclaim Defendants' conversion alleged herein.

91. Between the time of Counterclaim Defendants' conversion of the above-mentioned property to their own use and the filing of this action, Taitz has reasonably and properly expended considerable time and money in pursuit of the converted property, all to Taitz's further damage in the sum to be proven at trial and exceeding $75,000.00.

92.     The aforementioned conduct of Ostella and Berg was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages. Taitz is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins these Counterclaim Defendants from any use of any website incorporating the name phrase "defend our freedoms," Taitz is further entitled to seek reimbursement from Ostella and Berg for any usage whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring that these Counterclaim Defendants transfer all rights to any website rights or other rights to "defend our freedoms," "defend our freedoms foundation," or "DOFF"; and requires that these Counterclaim Defendants relinquish (1) all claim to any of the Marks or Websites and (2) all funds obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly the lawful property of Taitz.

## IX. FIFTH COUNTERCLAIM

### Violation of RICO

### (Taitz and DOFF against Berg and Ostella)

93.     Taitz incorporates all of the allegations of the prior paragraphs herein, inclusive, of these counterclaims by this reference as though fully set forth herein.

### A. First Predicate Action: Mail and Wire Fraud

94.     Berg ran a nationwide fund raising campaign in connection with the political dissident movement, involving donations by hundreds of persons being made across State lines via the mails and interstate wire transfers. Simultaneously, Taitz, individually and through DOFF, also ran a nationwide fund raising campaign in connection with the political dissident movement, involving donations by hundreds of persons being made across State lines via the mails and

1  interstate wire transfers.

2      95.     Ostella and Berg were involved in an enterprise engaged in interstate commerce,

3  engaged in a pattern of fraudulent conduct and racketeering, and each of said Counterclaim

4  Defendants was associated with or employed by the enterprise.

5      96.     Ostella and Berg beginning in or about April 2009 and continuing to the present,

6  and pursuant to and in furtherance of the conspiracy alleged herein, engaged in systematic acts by

7  which they interfered and continue to interfere with Taitz's property and property rights by, among

8  other methods, diverting donations intended by donors to be received by Taitz and DOFF away

9  from them, and converting such donations and other monies belonging to Taitz and DOFF for

10 Counterclaim Defendants' own use. Taitz is informed and believes and based thereon alleges that

11 Ostella by such improper practices redirected Internet traffic and related donations intended for

12 Taitz and DOFF to Ostella's website, and to Berg in connection with their nationwide fundraising

13 activities, thus receiving and converting monies intended for and belonging to Taitz and DOFF.

14     97.     The actions of Ostella and Berg involved repeated and systematic use of the mails,

15 interstate wire communications and donations and related solicitations by and to hundreds of

16 persons.

17     98.     The aforementioned acts of Ostella and Berg constitute an ongoing enterprise

18 knowingly engaged in a pattern of racketeering activities consisting of more than two acts of mail

19 fraud, wire fraud and engaging in monetary transactions in property derived from specified

20 unlawful activities. Such acts are in violation of 18 U.S.C.A. § 1341 (mail fraud) and § 1343 (wire

21 fraud), all of which constitutes "racketeering" as defined under 18 U.S.C.A. § 1961. As alleged

22 herein, Ostella and Berg knowingly engaged in a scheme to defraud Taitz, DOFF and as well as

23 persons believing that they were donating to Taitz and DOFF, by use of the mail or wires in

24 furtherance of that scheme.

25

26              **B. Second Predicate Action: Forgery**

27

28     99.     Ostella forged Taitz's signature by cutting her signature and pasting it on different

1    documents which were transmitted by mail and/or wire.

2         100.    Ostella and Berg used a document, which was signed by Taitz in March of 2009

3    and cut and pasted Taitz signatures on subpoenas dated January 2009, which was 2 months earlier.

4    Ostella and Berg submitted to court those forged documents with copied and pasted signature of

5    Taitz. If Taitz were to allow Ostella to cut and paste her signature, it would come from a document

6    that existed before the date of the forged document, not after.

7

8              **C. Third Predicate Action: Forgery and Alteration**

9                        **of an Official Document**

10

11   101.    A court hearing was held in this case in Philadelphia on December 20, 2010.  Court

12   reporter Anders removed from the court transcript 14 pages, total pages of cross- examination of

13   Ostella, where Ostella stated that she knew that defamatory statements about Taitz, that Taitz tried

14   to hire a hit-man to kidnap children of Ostella,  were concocted, that she knew that Taitz traveled

15   to New Jersey to file a police report about diversion of funds from DOFF, she knew that Taitz did

16   not travel to New Jersey to kill her or kidnap her children. This testimony was extremely

17   damaging for Berg and Ostella, as Berg was already tried by Pennsylvania bar and used his

18   paralegal as his alibi, when this paralegal was serving three years probation on her eight year

19   suspended sentence conviction of ten felony counts of grand theft, forgery and offer to file forged

20   documents.   This cross-examination was detrimental to Ostella as she admitted that she knew that

21   allegations of stalking were fabricated, yet she proceeded to sue Taitz for stalking based on

22   fabricated allegations. Additionally, in the cross examination, Ostella admitted that she indeed

23   diverted funds from DOFF, as she blocked Taitz, the president of DOFF, from the website, took

24   over the website and replaced the DOFF PayPal account with her personal PayPal account, so

25   from April 11, 2009 all the donations that were given through DOFF website managed by Ostella,

26   did not go to DOFF, but went to Ostella. Memorandum order by Hon. Eduardo Robreno, who

27   presided over this case in 2010, states:  "On cross examination, Ostella conceded that she

28   locked Taitz out of the web site www.DefendOurFreedomsFoundation.org and her

associated paypal accounts." DKT 160 Liberi v Taitz 11-485 CACD.  (emphasis added)

102.     After Taitz threatened to report Anders to FBI for forgery of an official transcript, which was transmitted by mail and wire, Anders added missing 14 pages of the official transcript, which included Ostella's cross-examination and she put back in the Table of Contents a notation about cross-examination of Ostella.

103.     On information and belief, Taitz alleges that ANDERS acted in concert with Berg and Ostella giving her incentive to commit egregious forgery of official court records in order to aid Counterclaim Defendants.

## D. Fourth Predicate Action: Forgery and Alteration
## of an Income Tax Return

104.     In violation of 18 USC § 1028 and CA Penal Code 530.5 ROES 1-10, persons believed to be connected to and/or agents of Berg and Ostella stole Taitz's Social Security number and filed with the IRS a bogus tax return and a bogus request for refund to be forwarded to one or more of their bank account numbers.

105.     Taitz was notified by the IRS that her identity was stolen, however IRS representative refused to provide Taitz with the name and other identifying information of the thief without a court order or a court subpoena. Such an order will be requested during the discovery phase of this litigation.

106.     The aforementioned conduct of Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages in addition to the treble damages authorized by the RICO Statutes.

## E. Fifth Predicate Action: Fraud

107.     In 2009 Pennsylvania bar started prosecution of Berg, which ultimately led to his permanent disbarment. Part of the case was fraud perpetrated by Berg on the bar and his client, Diana McCracken.  For two years Berg told McCracken that her case was going on, while in fact it was dismissed in 2007 due to Berg's failure to file an opposition to motion to dismiss.

108.     Berg was defrauding the Pennsylvania bar in their allegation that Berg's paralegal sent letter to McCracken, advising her that her case was dismissed. Berg accused McCracken on fraud on the Bar. Later Berg admitted that he committed fraud and no letters were sent to McCracken.

109.     While the disbarment case was going on, Berg was pretending that his paralegal worked in Berg's office in Pennsylvania. Revelation by Taitz of the fact that Berg's paralegal was convicted in 2008 in California of 10 counts which included grand theft and offer to file altered/forged documents and was not allowed to live in Pennsylvania during her probation, put into question alleged declarations by Berg's paralegal and assertions by Berg made to the Pennsylvania bar and could lead to Berg's disbarment.

110.     In order to cover up an ongoing fraud, Berg colluded with Ostella and filed a frivolous legal actions against Taitz, where they accused Taitz of defamation alleging that Berg's paralegal was an innocent woman in Pennsylvania, not a felon, convicted of forgery and theft from California, As a result of this scheme Taitz suffered serious damages  expected to exceed $75,000 and she suffered severe emotional distress.

111.     Berg and Ostella conspired to file a frivolous law suit, where they accused Taitz of defamation and claimed that Berg's paralegal was a different person, not a convicted felon from California, who was also convicted in 2008 for forgery and grand theft, but a different person by the same name, who resided in Pennsylvania,

112.     As a proximate result of the actions of Counterclaim Defendants, Taitz has been damaged generally and in an amount within the jurisdiction of this Court, in excess of $75,000.00.

113.     The aforementioned conduct of Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

1  injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

2  disregard of her rights, so as to justify an award of exemplary and punitive damages in addition to

3  the treble damages authorized by the RICO Statutes.

4

5                              **X. SIXTH CLAIM**

6                          **ABUSE OF PROCESS**

7                  **(Taitz and DOFF against Berg and Ostella)**

8

9        114.    Taitz incorporates the allegations of all prior paragraphs, inclusive, of these

10  counter-claims by this reference as though fully set forth herein.

11       115.    As alleged herein, Counterclaim Defendants have misused the process of this and

12  other courts in a manner not authorized in the regular course of the involved legal proceedings,

13  specifically in the manners set forth above.

14       116.    As alleged herein, Counterclaim Defendants had an ulterior purpose and motivation

15  in so misusing the processes of the Courts in the above-described manners to obtain a collateral

16  advantage over Taitz, including but not limited to their attempts to silence and intimidate her

17  regarding Berg's use of a convicted felon, as his paralegal and Counterclaim Defendants'

18  usurpation and conversion of donations intended by persons for Taitz and DOFF in connection

19  with their political activities.

20       117.    As a proximate result of the actions of Counterclaim Defendants, Taitz has been

21  damaged generally and in an amount within the jurisdiction of this Court, in excess of $75,000.00.

22       118.    The aforementioned conduct of Counterclaim Defendants was done with the

23  intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

24  injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

25  disregard of her rights, so as to justify an award of exemplary and punitive damages.

26

27                             **XI. SEVENTH CLAIM**

28        **DEFAMATION OF CHARACTER OF TAITZ. DEFAMATION PER SE**

**(Taitz against Berg and Ostella)**

119.     Plaintiffs Taitz and DOFF incorporate by reference all prior paragraphs as if fully pled herein.

### A. The Hit-Man

120.     Counterclaim Defendants used Liberi's mother, Shirley Waddell (a Third Party Complaint Defendant) to send e-mails to Taitz supporters and donors and disperse defamatory libelous statements about Taitz.

121.     WADDELL sent e-mails to donors stating that Taitz attempted to hire a hit-man to kill Lisa Liberi and kidnap Ostella's children.

122.     Taitz never attempted to hire anyone to kill Liberi nor kidnap Ostella's children.

123.     These defamatory/libelous allegation lowered Taitz standing in the community. Taitz is a licensed attorney. Allegation of crime allegedly committed by Taitz represented Defamation Per Se. Damages in defamation per se are presumed without proof of specific damages. Not withstanding that, Taitz suffered estimated over $75,000 in damages due to loss of income and donations. The aforementioned conduct of these Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

### B. Forgery of Signature

124.     Counterclaim defendants accused Taitz of allowing Ostella to forge her signature.

125.     Taitz never allowed Ostella to forge her signature.

126.     These accusations represent a defamation per se, as it represents a defamation of attorney and accusation of attorney committing a criminal act, aiding and abetting forgery by

1  Ostella.

2      127.    Counterclaim defendants are using Liberi's mother, Waddell to disseminate this

3  defamatory information. Additionally, Ostella used the old website for DOFF to make

4  aforementioned defamatory statements about Taitz. Recently, Ostella engaged in spoliation of

5  evidence and completely deleted from the Internet, destroyed the old DOFF website to destroy all

6  evidence of defamation.

7

8                              **C. "Obamascare"**

9

10     128.    In May of 2015 Berg published his book "Obamascare" (the "Book").  He

11  advertised the Book extensively on his website ObamaCrimes and through direct advertising.

12     129.    On information and belief, Ostella and Lisa Liberi drafted substantial portions of

13  the Book as Berg is in his 70s and needed assistance in drafting and typing.

14     130.     In the Book, Berg  accuses Taitz of being paid by Barack Obama to intentionally

15  fail her own clients who challenged Barack Obama. On page 150 Berg wrote: "I believe that Orly

16  Taitz has been … and is on someone's Obama support payroll or benefit list. It could even be

17  Obama himself, George Soros, or some other individual."

18     131.    Taitz never received any money from Obama, Soros or anyone connected to

19  Obama. Without a scintilla of evidence Berg accused Taitz of unethical and illegal behavior,

20  which is inconsistent with Taitz work as an attorney, which is a defamation per se.

21     132.    This was an outrageous/defamatory/slanderous statement concocted by these

22  Counterclaim Defendants and spread by them and lowered Taitz standing in the community.

23     133.    Taitz is a licensed attorney. Allegations of crime allegedly committed by Taitz

24  represented Defamation Per Se. Damages in defamation per se are presumed without proof of

25  specific damages.

26     134.    The aforementioned conduct of these Counterclaim Defendants was done with the

27  intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

28  injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

1    disregard of her rights, so as to justify an award of exemplary and punitive damages.

2       135.    Counterclaim Defendants also misrepresented what Taitz submitted to other

3    courts, misrepresented pleadings and documents. As an example, in one of her pleadings Taitz

4    sought letters rogatory, meaning a letter from the court to the government of Kenya in order to

5    either authenticate or disprove Obama's Kenyan birth certificate, which was provided to Taitz by

6    an investigator Neil Sankey. In her pleadings Taitz never stated that this birth certificate was

7    already authenticated, she only sought discovery and letters rogatory in order to either authenticate

8    or disprove the document. The document in question was not verified one way or another as the

9    case was not heard on the merits yet.

10       136.    Berg was angry about dismissal of his case Hollister v Soetoro 08-cv-02254 by

11   USDC Judge James Robertson and by the fact that the ruling of Judge Robertson was confirmed

12   by the court of Appeals. Berg was angry by what the presiding judge wrote about him. So, in his

13   book ObamaScare, Berg defamed Taitz, who had absolutely nothing to do with that case in order

14   to whitewash his own behavior and his own loss of the case in both District court and the Court of

15   Appeals. In his book Berg admits that Lisa Liberi, whom he calls Ms. X in the book, wrote the

16   pleadings for him. ("Ms. X drafted a motion" and "It did not matter what argument Mr. Hollister's

17   counsel and Ms. X came up with…" p134)

18       137.    Berg was angry with the judge and the opinion. In Judge James Robertson's ruling

19   he called me and the other out –of state Attorney "Agent Provocateurs" p134, "that I in essence

20   was using my client, Mr Hollister, to carry on my own lawsuit", "Judge Robertson even went on

21   the attack of Ms. X(Lisa Liberi)", "Judge Robertson also issued an order to show cause why the

22   local attorney, John D. Hemenway, Esquire, should not be sanctioned" p135. Taitz had nothing to

23   do with the District court case and there was never any mention of Taitz in either pleadings or

24   ruling of the District Court in this case. So, the local attorney and the client continued in the Court

25   of Appeals without Berg and the Court of Appeals confirmed the decision by the District Judge.

26   So, Berg made up a story in his book that because the Appellant's counsel filed in the Court of

27   Appeals something he saw in Taitz case, it somehow failed his case and he defamed Taitz by

28   claiming that she filed in her case a forged birth certificate and garbage.

138.    Berg and other Counterclaim–defendants accused Taitz of knowingly filing forged documents and presenting those as genuine. Berg wrote of his former co-counsel Washington DC Attorney Hemenway: " Mr. Hemenway acknowledged the fact that Mr. Joyce's attorney in writing, however, not a few hours later, filed a motion Requesting Judicial notice of a Forged Kenyan Birth Certificate and other garbage which had been filed in several of Orly Taitz, Esquire's cases. These documents completely discredited Mr. Hollister's appeal. Despite this, Mr. Hemenway filed it on behalf of himself and on behalf of Mr. Hollister. The only way Mr. Hemenway could have obtained the word files of Ms. Taitz garbage, was from Ms. Taitz. Not to mention the fact, that PDF file that Mr. Hemenway had was authorized by Ms. Taitz legal team."

139.    Berg was angry with the fact that the judge in his case, USDC for the District of Columbia Judge, James Robertson, denied Berg's application for pro hac vice and wrote derogatory statements about Berg and his paralegal Lisa Liberi, so Berg and  Liberi fabricated a whole defamatory story about Attorney Taitz filing "forged documents and garbage" and blamed Taitz for losing the case, which was handled in Washington DC by Attorneys Hemenway and Joyce, and where Berg sought to be an out of state co-counsel on pro hac vice. Berg published these defamatory statements in his book and committed defamation per se of Attorney Taitz.` Ostella has been working with Berg since April 11 2009. It is Taitz's informed belief that Ostella aided Berg in drafting and typing aforementioned book with all defamatory allegations.

140.    This defamatory/libelous allegation lowered Taitz standing in the community. Taitz is a licensed attorney. Allegation of crime allegedly committed by Taitz represented Defamation Per Se. Damages in defamation per se are presumed without proof of specific damages. Not withstanding that, Taitz suffered estimated over $75,000 in damages due to loss of income and donations.

**D. Throwing Cases**

141.    In the Book, Berg and Liberi wrote: "Ms. Taitz was literally chasing two (2) United States Supreme Court Justices…throwing brief cases full at documents at them." (Ostella was

1   working with Berg since April 11, 2009 and aided and abetted him in defaming Taitz and

2   promoting Berg, including, but not limited to drafting and typing.)  This is an untrue, highly

3   defamatory statement, meant to claim that Taitz acted in an unethical manner and make her look

4   crazy, as someone who throws brief cases full of documents at Supreme Court Justices, which

5   never happened. This was an outrageous libelous/defamatory/slanderous statement concocted by

6   these Counterclaim Defendants and spread by them.

7        142.   Taitz is a licensed attorney. Allegation of crime allegedly committed by Taitz

8   represented Defamation Per Se. Damages in defamation per se are presumed without proof of

9   specific damages. Further, Taitz suffered damages due to loss of income and donations.  This is a

10   defamation per se and was also made to lower Taitz's standing in the legal and general community

11   and to cause damages.

12        143.   The aforementioned conduct of these Counterclaim Defendants was done with the

13   intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

14   injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

15   disregard of her rights, so as to justify an award of exemplary and punitive damages.

16        144. Berg made multiple statements in his book Obamascare accusing Taitz of making

17   statements that are untrue or Taitz trying to take down Berg and Liberi. Berg wrote: "Ms Taitz

18   spread all over the World Wide Web  derogatory remarks about Ms. X (Liberi) and me."  In fact

19   Taitz was writing true and correct statements that Berg's paralegal, Lisa Liberi, was convicted in

20   2008 in 10 felony counts of grand theft and forgery and it undermined the veracity of pleadings of

21   Attorney Philip Berg and endangers his nationwide fundraising.

22        145. Berg wrote "When Ms. Taitz efforts pertaining to Ms X (Liberi) and me failed, Orly

23   Taitz, Esquire threatened to take me down and to do so she was going to destroy Ms. X." In fact,

24   Taitz has never threatened to take down Berg and she never threatened to destroy Ms. X. (Liberi).

25   In fact Liberi destroyed her credibility by committing crimes for which she got eight (8) year

26   prison term, which was stayed and Berg destroyed his credibility by using a person convicted of

27   forgery and theft as his paralegal.

28        146. Berg continued defaming Taitz in his book, completely misrepresenting Taitz's work,

31

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

1   pleadings and cases. Such actions were contemplated to lower Taitz standing in the community

2   and cause financial damage. Ostella worked with Berg since April 11, 2009 and aided and abetted

3   him in defaming Taitz and promoting Berg.

4

5                                   **E. Obamacrimes.com**

6

7          147.    In or around 2008 Philip Berg set up his website ObamaCrimes.com. He claims

8   that the site was among top 10 websites on the net. Multiple individuals read Berg's website.

9   Berg's assistant and paralegal, Liberi has been assisting Berg in managing the site and posting on

10  the site. From April 2009 Lisa Ostella aided Berg and Liberi as a web master assisted Berg and

11  Liberi as well.

12         148.    Prior to filing this case in May of 2009 Counter defendants posted on their site:

13  "Orly Taitz needs to be disbarred." They further wrote that Taitz attacked Berg's assistant, Liberi.

14         149.    Since this was a website of an attorney, Berg, the public got an impression that

15  Attorney Orly Taitz engaged in some illegal behavior for which she should be disbarred. They

16  further believed that Taitz attacked Liberi.int. In reality, it was Berg who was disbarred after being

17  suspended for two years and then permanently disbarred in 2015.  Taitz did not do anything that

18  would warrant disciplinary action and her license was and is in good standing since passing the

19  bar in 2002.

20         150.    A statement which claims that an attorney is unfit for profession is a defamation

21  per se and does not require proof of any specific damages.

22         151.    Taitz is a licensed attorney. Such an allegation represents Defamation Per Se.

23  Damages in defamation per se are presumed without proof of specific damages. Further, Taitz

24  suffered damages due to loss of income and donations.

25

26                                   **F. Spyware**

27

28         152.     Counterclaim defendants fabricated totally untrue and defamatory allegations,

---

32

**COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.**

1    accusing Taitz and her husband of writing computer software to spy on people and that they

2    indeed spied on people and caused damages through such spying. Ostella signed under penalty of

3    perjury her original complaint attesting to such outrageous defamatory allegations.

4         153.    Counterclaim defendants sued not only Taitz, but also her husband and her

5    husband's company. Liberi's mother, Shirley Waddell, was used by the Counterclaim defendants

6    to send e-mails with these defamatory statements. As a result Mr. Taitz was unable to re-insure his

7    business and he also lost clients.

8         154.    Neither Taitz, nor her husband, nor his company ever spied on anybody. Supporters

9    of Ostella and Berg continued sending defamatory letters to the public including clients and

10   associates of Mr. Taitz.

11        155.    The aforementioned conduct of these counter-Counterclaim Defendants was done

12   with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise

13   causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in

14   conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

15   Taitz is seeking actual, exemplary and punitive damages against the defendants for Defamation

16   per se.

17

18                              **XII. EIGHTH CLAIM**

19        **FRAUD IN SUING ON BEHALF OF NONEXISTENT CORPORATIONS**

20                       **(Taitz and DOFF against Berg and Ostella)**

21

22        156.    Counterclaim Defendants sued Counter-Plaintiffs on behalf of GoExcel Global, a

23   defunct corporation, which licensed was revoked by January 2012 due to non-payment of state

24   corporate fees from 2009 and on behalf of Counter Counterclaim Defendants Ostella, Berg by and

25   through their attorney Philip Berg filed a law suit against Taitz and DOFF on behalf of "Law

26   Offices of Philip Berg, a nonexistent entity.

27        157.    Due to these fraudulent actions committed by Counterclaim Defendants, Taitz,

28   DOFF and OTI suffered significant economic damages in having to defend a law suit from a non-

1  existent entity.

2      158.    The aforementioned conduct of Counterclaim Defendants was an intentional

3  misrepresentation, deceit, or concealment of a material fact known to Counterclaim Defendants

4  with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise

5  causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in

6  conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

7

8  ### XIII. NINTH CLAIM

9  ### FRAUD IN SUING ON BEHALF OF NONEXISTENT ENTITY

10  ### (Taitz and DOFF)

11

12      159.    Taitz and DOFF incorporate by reference all prior paragraphs as if fully pled

13  herein.

14      160.    Counter Counterclaim Defendants Ostella, Berg by and through their attorney

15  Philip Berg filed a law suit against Taitz and DOFF on behalf of "Law Offices of Philip Berg, a

16  non existent entity.

17      161.    In 2013 Randy Berg, signed a pro hac vice, consent to serve as a local, California

18  attorney for plaintiff "Law Offices of Philip Berg", which does not exist.

19      162.    In 2013 Stephen Marcus and Gittler and Bradford submitted to this court pleadings

20  on behalf of "Law Offices of Philip Berg", a nonexistent entity.

21      163.    Counterclaim Defendants committed fraud by filing and maintaining a legal action

22  on behalf of an entity that does not exist.

23      164.    Damages sustained by the counter plaintiffs are actually and proximately related to

24  the actions by the Counterclaim Defendants and third party defendants.

25      165.    Counterclaimants incurred financial damages having to defend a law suit filed by a

26  non-existent entity. Counter plaintiffs estimate the damages to be over $75.000.

27      166.    The aforementioned conduct of Counterclaim Defendants was an intentional

28  misrepresentation, deceit, or concealment of a material fact known to Counterclaim Defendants

with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## XIV. TENTH THIRD CLAIM
### LAWSUIT AGAINST NON-EXISTENT ENTITY
### LAW OFFICES OF ORLY TAITZ
### (Taitz against Ostella and Berg)

167.    Taitz and DOFF incorporate by reference all prior paragraphs as if fully pled herein.

168.    Counter- Counterclaim Defendants filed a frivolous law suit against a non-existent entity, the "Law Offices of Orly Taitz."

169.    Counter -defendants knew that "Law Offices of Orly Taitz" does not exist and never existed as a legal entity. The court relied on this representation and allowed the case to proceed which caused significant damages for the counter-plaintiffs.

170.    Counter-defendants committed fraud and caused Counter Plaintiffs serious financial damages in having to defend a frivolous legal action against an entity that does not exist and never existed.

171. Taitz estimate damages to exceed $75,000 and the damages are actually and proximately related to actions by the defendants. The aforementioned conduct of Counterclaim Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to Counterclaim Defendants with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## XV. ELEVENTH CLAIM

**INVASION OF PRIVACY-FRAUDULENT OBTAINING AND PUBLICATION OF**

**TAITZ'S PAYPAL BANK ACCOUNT INFORMATION**

**(Taitz Against Berg and Ostella)**

172.    Taitz incorporates by reference all prior paragraphs as if fully pled herein.

173.    While this case at hand was in initial stage and discovery was not allowed and without any prior notification of Taitz Counterclaim Defendants illegally issued subpoenas and obtained Taitz's private bank account records with PayPal.

174.    Berg and Ostella published Taitz's private bank records and invaded Taitz's privacy.

175.    Taitz suffered financial damages of diminished donations due to actions by the Counterclaim Defendants and emotional distress.

176.    The aforementioned conduct of these Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

**XVI. TWELFTH CLAIM**

**INVASION OF PRIVACY-ILLEGAL SUBPOENA**

**TO OBTAIN A CONFIDENTIAL POLICE REPORT**

**(Taitz Against Berg and Ostella)**

177.    Counterclaimants incorporate by reference all prior paragraphs as if fully pled herein.

178.    While this case was in initial stages and discovery was not allowed, and without any required notification of Taitz, Counterclaim defendants issued illegal subpoenas to obtain a confidential police report which was made by Taitz in regards to diversion of funds from DOFF.

179.    This report was a summary by a sheriff made based on an oral statement. Taitz was

36

1  not given this report for review and signature, the report was a preliminary summary by a sheriff

2  and contained multiple errors. No action was taken by the sheriff's department based on this

3  report, as Taitz was told to file a police report in New Jersey, where the former web master for

4  DOFF, Ostella, resided. Additionally, Taitz was told by the sheriff's detective to file a civil

5  complaint against the Counterclaim Defendants.

6      180.    Counterclaim defendants have used this preliminary confidential report, which was

7  obtained by the Counterclaim Defendants as a result of illegal subpoena in order to defame Taitz,

8  accuse her of multiple misdeeds and attempt to extort money from Taitz as a result of this illegally

9  obtained report.

10     181.    As a result of these actions by the Counterclaim Defendants Taitz sustained

11 economic damages and emotional distress.

12     182.    The aforementioned conduct of these Counterclaim Defendants was done with the

13 intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

14 injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

15 disregard of her rights, so as to justify an award of exemplary and punitive damages.

16

17                     **XVII. THIRTEENTH CLAIM**

18                  **CONVERSION OF WEB ADDRESSES**

19                  **(Taitz and DOFF Against Ostella)**

20

21     183.    Taitz and DOFF incorporate by reference all prior paragraphs as if fully pled

22 herein.

23     184.    Ostella has used, are continuously using and preventing Taitz and DOFF from

24 using the DefendOurFreedoms.us, DefendourFreedoms.com, DefendOurFreedoms.net,

25 DefendOurFreedoms.org web addresses, all to the financial and other detriment of Taitz and

26 DOFF notwithstanding repeated numerous requests and demands. Ostella continued using the

27 DOFF website after blocking Taitz and DOFF from the website and Ostella and Berg used the

28 DOFF website and web addresses to promote Berg, all to the financial detriment of Taitz and

DOFF. The aforementioned conduct of these Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## XVIII.  FOURTEENTH CLAIM

### FRAUD AND CONSPIRACY TO COMMIT FRAUD IN CLAIMING THAT JUDGE ROBRENO CONDUCTED AN IN-CAMERA EXAMINATION OF LISA LIBERI'S IDS

**(Taitz against Berg and Ostella)**

185. The instant matter was first filed in the Eastern District of Pennsylvania. Taitz immediately filed a motion to dismiss the case due to lack of jurisdiction and lack of diversity of citizenship. During the August 7, 2009 hearing, prior presiding judge on the case, Judge Robreno, demanded to see Liberi's IDs as proof of her citizenship for the purposes of diversity. Liberi stated that she has only her Social Security card and did not have her drivers' license. Liberi and her attorney and co-plaintiff Philip Berg promised Judge Robreno to file with the court Liberi's IDs. Liberi and Berg never filed Liberi's IDs as demanded by Judge Robreno and have been in contempt of court for seven years now.

186. When Taitz demanded to dismiss the case due to lack of jurisdiction and lack of diversity of citizenship since Liberi refused to file with the court her IDs and prove diversity of citizenship, Liberi, Berg, Ostella and Adams entered in a conspiracy to defraud the court and claim that there was an in-camera examination of Liberi's IDs by the prior judge, Eduardo Robreno, and jurisdiction of the court was established. There was never such an examination of IDs.

187.  Due to this egregious fraud by the Counterclaim Defendants, Taitz and DOFF were subjected to over eight years of litigation in the federal court, even though there was never any jurisdiction of the court.

188.   As a result Taitz and DOFF sustained significant damages in the form of legal costs and fees and enormous emotional distress.

# XIX. FIFTEENTH CLAIM

## Unfair Competition (15 U.S.C. 1125(a))

### (Taitz and Doff Against Ostella and Berg)

189.    Taitz realleges and incorporates herein by reference each and every foregoing paragraph of this Counterclaim as if set forth in full.

190.    Taitz's trademarks are entitled to protection under Section 43(a) of the Lanham Act.

191.    These Counterclaim Defendants' use and promotion of what they claimed were their own websites and marks were indeed the same as and/or confusingly similar to Taitz's and DOFF's Websites and Marks to identify these Counterclaim Defendants' products and services will likely cause confusion or cause mistake, or deceive as to the affiliation, connection, or association of Taitz with these Counterclaim Defendants, or as to the origin, sponsorship or approval by Taitz of these Counterclaim Defendants' goods and services.

192.    These Counterclaim Defendants' use of the Marks and Websites as aforesaid without Taitz's consent or permission constitutes a false description of origin, false or misleading description of fact, or false or misleading representation of fact as those terms are used in Section 43(a) of the Lanham Act.

193.    Taitz has been damaged by these Counterclaim Defendants' use of the Marks and Name and will suffer irreparable harm should these Counterclaim Defendants be allowed to use the Marks and Name rather than transfer the websites incorporating the Marks and Name.

194.    The aforementioned conduct of these Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

195.    Taitz is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins these Counterclaim Defendants from any use of any website incorporating the name phrase "defend our freedoms," "defend our freedoms foundation," or "doff," any usage

1   whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring

2   that these Counterclaim Defendants transfer all rights to any website rights or other rights to

3   "defend our freedoms," "defend our freedoms foundation," or "DOFF"; and requires that these

4   Counterclaim Defendants relinquish (1) all claim to any of the Marks or Websites and (2) all funds

5   obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly

6   the lawful property of Taitz.

7

8                           **XX. SIXTEENTH COUNTERCLAIM**

9                             **Common Law Unfair Competition**

10                       **(Taitz and DOFF Against Ostella and Berg)**

11

12          196. Taitz realleges and incorporates herein by reference each and every foregoing

13   paragraph of this Counterclaim as if set forth in full.

14          197.    Taitz's and DOFF's Name and Marks are inherently distinctive and have acquired

15   secondary meaning. These Counterclaim Defendants are using a confusingly similar trademark to

16   identify similar goods and services marketed by them in competition with Taitz in the same trade

17   area where Plaintiff has established good will.  Taitz used the Marks and Names prior to the

18   misuse by these Counterclaim Defendants.

19          198.    Taitz has been damaged by these Counterclaim Defendants' use of the Marks and

20   Name and will suffer irreparable harm should these Counterclaim Defendants be allowed to use

21   the Marks and Name rather than transfer the websites incorporating the Marks and Name.

22          199.    The aforementioned conduct of these Counterclaim Defendants was done with the

23   intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

24   injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

25   disregard of her rights, so as to justify an award of exemplary and punitive damages.

26          200.    Taitz is further entitled to, and should be awarded, a preliminary and permanent

27   injunction that enjoins these Counterclaim Defendants from any use of any website incorporating

28   the name phrase "defend our freedoms," "defend our freedoms foundation," or "doff," any usage

1   whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring

2   that these Counterclaim Defendants transfer all rights to any website rights or other rights to

3   "defend our freedoms," "defend our freedoms foundation," or "DOFF"; and requires that these

4   Counterclaim Defendants relinquish (1) all claim to any of the Marks or Websites and (2) all funds

5   obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly

6   the lawful property of Taitz.

7

8                              **XXI. SEVENTEENTH COUNTERCLAIM**

9                                  **Cybersquatting (15 U.S.C. 1125(d))**

10                          **(TAITZ and DOFF Against Ostella and Berg)**

11

12      201.    Taitz realleges and incorporates herein by reference each and every foregoing

13   paragraph of this Counterclaim as if set forth in full.

14      202.    Upon information and belief, these Counterclaim Defendants have a bad faith

15   intent to profit from the registration and use of the Websites by creating an association with

16   Taitz's Defend Our Freedoms Foundation and DOFF trademarks as to source or sponsorship.

17      203.    The second-level domain names portion of the knowmore.com Internet domain

18   names are confusingly similar to, and dilutes the distinctive quality of, Taitz's famous trademarks.

19      204.    Taitz has been damaged by these Counterclaim Defendants' unlawful use of the

20   Marks and Websites and will suffer irreparable harm.

21      205.    These Counterclaim Defendants' acts, as aforesaid, are in violation of the Anti-

22   cybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. §

23   1125(d).

24      206.    The aforementioned conduct of these Counterclaim Defendants was done with the

25   intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

26   injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

27   disregard of her rights, so as to justify an award of exemplary and punitive damages.

28      207.    Taitz is further entitled to, and should be awarded, a preliminary and permanent

1  injunction that enjoins these Counterclaim Defendants from any use of any website incorporating

2  the name phrase "defend our freedoms," "defend our freedoms foundation," or "doff," any usage

3  whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring

4  that these Counterclaim Defendants transfer all rights to any website rights or other rights to

5  "defend our freedoms," "defend our freedoms foundation," or "DOFF"; and requires that these

6  Counterclaim Defendants relinquish (1) all claim to any of the Marks or Websites and (2) all funds

7  obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly

8  the lawful property of Taitz.

9

10  ## XXII. EIGHTEENTH COUNTERCLAIM FOR RELIEF

11  ### Trademark Dilution (15 U.S.C. 1125(c))

12  ### (Taitz and DOFF Against Ostella and Berg)

13

14  208.    Taitz realleges and incorporates herein by reference each and every foregoing

15  paragraph of this Counterclaim as if set forth in full.

16  209.    Taitz's defendourfreedoms.xxx and DOFF marks are famous marks and had

17  become famous prior to Counterclaim Defendants' first use of the Internet domain name and mark

18  in conjunction with these Counterclaim Defendants' goods and services offered to the public as

19  alleged.

20  210.    Taitz's defendourfreedoms.xxx and DOFF marks are inherently distinctive to the

21  public and the trade with respect to goods and services.

22  211.    By such wrongful acts, Counterclaim Defendants have, and unless restrained by the

23  Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill

24  associated with Plaintiff's famous marks by diluting and blurring its distinctive quality.

25  212.    Counterclaim Defendants' aforementioned acts constitute willful dilution of Taitz's

26  Websites and Marks in violation of the Federal Trademark Dilution Act, codified at Section 43(c)

27  of the Lanham Act, 15 U.S.C. § 1125(c).

28  213.    The aforementioned conduct of these Counterclaim Defendants was done with the

1  intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

2  injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

3  disregard of her rights, so as to justify an award of exemplary and punitive damages.

4      214.    Taitz is further entitled to, and should be awarded, a preliminary and permanent

5  injunction that enjoins these Counterclaim Defendants from any use of any website incorporating

6  the name phrase "defend our freedoms," "defend our freedoms foundation," or "doff," any usage

7  whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring

8  that these Counterclaim Defendants transfer all rights to any website rights or other rights to

9  "defend our freedoms," "defend our freedoms foundation," or "DOFF"; and requires that these

10  Counterclaim Defendants relinquish (1) all claim to any of the Marks or Websites and (2) all funds

11  obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly

12  the lawful property of Taitz.

13

14  **XXIII. NINETEENTH COUNTERCLAIM FOR RELIEF**

15  **Trademark Infringement, California Business &**

16  **Professions Code § 14200 - 14202**

17  **(Taitz and Doff Against Berg and Ostella)**

18

19      215.    Taitz realleges and incorporates herein by reference each and every foregoing

20  paragraph of this Counterclaim as if set forth in full.

21      216.    Taitz's Marks and Name are entitled to protection under Section § 14200–14202 of

22  the California Model State Trademark Law.

23      217.    These Counterclaim Defendants' use and promotion of the Websites and Marks the

24  same as and confusingly similar to Taitz's Websites and Marks to identify these Counterclaim

25  Defendants' products and services will likely cause confusion or cause mistake, or deceive as to

26  the affiliation, connection, or association of Taitz with these Counterclaim Defendants, or as to the

27  origin, sponsorship or approval by Taitz of these Counterclaim Defendants' goods and services.

28      218.    These Counterclaim Defendants' use of the accused mark constitutes a false

description of origin, false or misleading description of fact, or false or misleading representation

of fact as those terms are used in Section 14200 et seq. of the California Model State Trademark

Law.

219.    These Counterclaim Defendants' use of the Taitz Websites and Names as aforesaid

is without Taitz's consent or permission. Taitz has been damaged by these Counterclaim

Defendants' use of the Marks and Name and will suffer irreparable harm should these

Counterclaim Defendants be allowed to use the Marks and Name rather than transfer the websites

incorporating the Marks and Name.

220.    Taitz is further entitled to, and should be awarded, a preliminary and permanent

injunction that enjoins these Counterclaim Defendants from any use of any website incorporating

the name phrase "defend our freedoms," "defend our freedoms foundation," or "doff," any usage

whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring

that these Counterclaim Defendants transfer all rights to any website rights or other rights to

"defend our freedoms," "defend our freedoms foundation," or "DOFF"; and requires that these

Counterclaim Defendants relinquish (1) all claim to any of the Marks or Websites and (2) all funds

obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly

the lawful property of Taitz.


## XXIV. TWENTIETH COUNTERCLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(Taitz and Doff Against Berg and Ostella)**


221.    Taitz realleges and incorporates herein by reference each and every foregoing

paragraph of this counterclaim as if set forth in full.

222.    In doing the acts aforesaid concerning the wrongful obtaining of donations and

advertising revenues, these Counterclaim Defendants received money that was intended to be used

for the benefit of Taitz and DOFF.

223.    Instead, these Counterclaim Defendants received and kept the money for their own

1   use and not for the benefit of Taitz and DOFF.

2        224.   These Counterclaim Defendants have not given the money to Taitz and DOFF.

3        225.   The aforementioned conduct of these Counterclaim Defendants was done with the

4   intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing

5   injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious

6   disregard of her rights, so as to justify an award of exemplary and punitive damages.

7        226.   Taitz is further entitled to, and should be awarded, a preliminary and permanent

8   injunction that enjoins these Counterclaim Defendants from any use of any website incorporating

9   the name phrase "defend our freedoms," "defend our freedoms foundation," or "doff," any usage

10   whatsoever of "Defend Our Freedoms Foundation" and/or "DOFF," and an injunction requiring

11   that these Counterclaim Defendants transfer all rights to any website rights or other rights to

12   "defend our freedoms," "defend our freedoms foundation," or "DOFF;" and requires that these

13   Counterclaim Defendants relinquish all claim to any of the Marks or Websites and all funds

14   obtained by these Counterclaim Defendants through the Marks and Websites or otherwise rightly

15   the lawful property of Taitz and returned to her.

16

17   ## XXV. TWENTY-FIRST CLAIM

18   ## INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

19   ### (Taitz Against Berg and Ostella)

20

21        227.   Taitz incorporates by reference all prior paragraphs as if fully pled herein.

22        228.   Berg and Ostella acted in concert and defamed Taitz.

23        229.   Berg and Ostella acted in concert and perpetrating fraud, forging documents,

24   falsifying court records, stealing donations, website, list of donors and future profits.

25        230.   As a direct result of such unconscionable continuous malicious actions Taitz

26   suffered a severe emotional distress and hormonal depletion. She receives and continues to receive

27   medical treatment due to severe emotional distress caused by the actions of counter defendants.

28        231. All of those acts caused and contributed to emotional distress suffered by Taitz.

1  Actions by the defendants were so egregious that they shock conscience and warrant damages,

2  including punitive and exemplary damages, for severe emotional distress.

3

4  ### XXVI. TWENTY-SECOND CLAIM

5  ### INTERFERENCE WITH PROSPECTIVE ADVANTAGE

6  **(Taitz and Doff Against Berg and Ostella)**

7

8      232.    Taitz incorporates by reference all prior paragraphs as if fully pled herein.

9      233.    DOFF  drew financial advantage from its websites: defendourfreedoms.us,

10  defenourfreedoms.net, defendourfreedoms.com, defendourfreedoms,org. The main page was

11  defendourfreedoms.us, where DOFF drew financial benefit from advertising and received

12  donations via PayPal. Proceeds were used mainly to subsidize work by the President of DOFF, Dr.

13  Orly Taitz, Esq. to do public interest work in defending constitutional freedoms of the US citizens.

14      234.    Counter defendants interfered with prospective advantage of DOFF and Taitz when

15  former web master, Ostella, locked Taitz out of the website, replaced Taitz account with her

16  personal account in relation to PayPal donations on the site and used the website of DOFF for

17  personal financial gains, and to advertise Berg. Due to this interference Taitz and DOFF lost

18  prospective advantage and continues to lose prospective advantage estimated to exceed $75,000.

19

20  ### XXVII. TWENTY-THIRD CLAIM

21  ### APPROPRIATION OF LIKENESS

22  **(Taitz and DOFF against Ostella)**

23

24      235.  Taitz incorporate all prior paragraphs as if fully pled herein.

25      236.  Ostella took over the website for DOFF and replaced the DOFF PayPal account with

26  her personal PayPal   account and continued soliciting donations.

27      237.   Ostella kept at the top of the website a picture of Taitz speaking at the National Press

28  club. She also kept the name of DOFF and underneath she had a donate button with the word

"donate."

238.   Ostella appropriated likeness of Taitz and DOFF in order to collect donations and draw economic benefit.

239.   The aforementioned conduct of Ostella was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## XXVIII. TWENTY-FOURTH

## MALICIOUS PROSECUTION and ABUSE OF PROCESS

### (Taitz Against Ostella)

240.   Taitz incorporates by this reference all prior paragraphs as if fully pled herein.

241.   Without any probable cause and with malice Ostella filed a police report in North Brunswick, New Jersey, claiming that Taitz is seeking to have Ostella's children professionally kidnapped.

242.   Based on Ostella's declaration under penalty of perjury, this report led to criminal proceedings that were resolved in favor of Taitz. "15. I was provided a Court date in North Brunswick to appear regarding the criminal threats made by Taitz. The Court sent a subpoena to Orly Taitz to appear for criminal court to establish whether there was sufficient cause to charge her criminally. Taitz never appeared. The Judge handling this procedure stated he had spoken with the Federal Bureau of Investigations (FBI); and he had to close the proceedings." p8. 07.25.2011 Declaration by Ostella in case at hand Dkt 312 Page ID #7228

243.   Ostella admitted under penalty of perjury that she knew that her allegations against Taitz were not true: At the December 12, 2010 hearing in the case (Dkt. No. 201-7) Ostella admitted that the allegations of stalking were fabricated by Berg. Ostella also admitted that she knew that Taitz did not travel to stalk Ostella or to kidnap Ostella's children:

By Ms. Taitz: "Q      Ma'am, have you--you have accused me of stalking you and you have accused me--I mean I am an attorney and you have accused me of trying to hire a hitman to

1  kidnap your children.
2       A       I did not make those statements.
        Q       Who made those statements.
3       A       Those weren't made by me.
        Q       But can you tell me who made those statements? Where--
4       A       They are in the court filings on this.
        Q       And who made those--
5       A       I don't know who writes what.
        Q       And who made those court filings?
6       A       They came from my attorney's law office.
        Q       You mean they came from Mr. Berg, right?
7       A       His law office, yes.
8       Q       And how did he come up with this idea that I tried to hire someone to kidnap your
   children? Can you explain?
9       A       Oh, that?
        A       Yes
10      A     That wasn't hit man. That was different. Are you talking about--okay. Because if
11 you're talking about the kidnapping of my children, that was--
        Q       Ye.s
12      A       --different from Ruben Nieto.
        Q       Okay, How--I mean you--you have accused me of serious crimes.
13      A       Yes I have.
        Q       And on what basis?
14      A       You came to New Jersey after the last court date and drove around New Jersey,
15 drove past my child's school, drove past my house.
        Q       Ma'am--
16      A       I--
        Q       Ma'am, excuse me. Where--from what, where do you get it? You--there is--there is-
17 -I--there is no evidence to that. I would--
18      A       Yes, there is.
        Q       I went to New Jersey to report you, report the fact that you locked me out of the
19 account of my foundation and you replaced my PayPal with your PayPal. I went to New Jersey to
   report diversion of funds from my foundation Instead, you accuse me of going to New Jersey to
20 kidnap your children. From what?
21      A       No, I didn't accuse you of going to kidnap my children on that trip. I have an
   affidavit.
22      The witness:    Tab K. sir, in the binder I gave  you.
        The court:      To what effect?
23      The witness:    Tab K is the gentleman that was with her when she drove around New
   Jersey.
24       Ms. Taitz: He is not here. This is--he is the--
        The witness: His affidavit is here.
25 Ms. Taitz: But this is hearsay. I cannot question him.
        The witness: Affidavits are not hearsay.
26 By Ms. Taitz:
        Q       Does it say anywhere in that affidavit that I was trying to kidnap your children?
27      A       No, I did not say it was.
28      Q       Does it say that I went to report you to the police, yes or no?

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

1    A    Yes, you came--
2    Q    Okay. Thank you."
     (Dkt. No. 201-7, pg. 129, lines 24-25, pg. 130 in the case at hand)

3    244.    The aforementioned conduct of Ostella was done with the intention on their part of

4    thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable

5    conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so

6    as to justify an award of exemplary and punitive damages.

7

8                        **XXIX. TWENTY-FIFTH CLAIM**

9    **VIOLATION OF CA UNIFORM TRADE SECRETS ACT AND RELEASE OF**

10                **CONFIDENTIAL INFORMATION Cal.Civ.Code §§3426.1(a)**

11                        **(Taitz Against Ostella and Berg)**

12

13   245.    Taitz incorporates by this reference all prior paragraphs as if fully pled herein.

14   246.    Names, addresses, e-mail addresses, phone numbers and amounts of prior

15   donations represented trade secrets and confidential information of DOFF.

16   247.    After April 11, 2009 Ostella was no longer a web master of DOFF and no longer

17   had any affiliation with DOFF.

18   248.    Ostella used her status as former web master of DOFF to access aforementioned

19   confidential information and trade secrets of DOFF.

20   249.    Without any consent of DOFF  and without any consent of Taitz, president of

21   DOFF, Ostella breached her duty as a web master, misappropriated trade secrets and confidential

22   information of donors and used this confidential information and trade secrets to solicit donations

23   from donors for her personal use and for use and financial benefit of Berg.

24   250.    Additionally, Ostella forwarded  aforementioned  confidential information and

25   trade secrets to attorney Philip Berg, who conducted a competing donations drive. Ostella and

26   Berg knew that aforementioned information represents trade secret and confidential information of

27   DOFF. Ostella and Berg knew that aforementioned trade secrets and confidential information were

28   obtained by improper means, without any express or implied consent of Taitz or DOFF  and  drew

---

49

1    benefit from such confidential information.

2        251.    DOFF was injured by aforementioned actions by Ostella and Berg.

3

4                        **XXX. TWENTY-SIXTH CLAIM**

5    **PETITION UNDER 18 USC 3332 TO FORWARD TO FEDERAL GRAND JURY**

6    **EVIDENCE OF OFFENSES AGAINST CRIMINAL LAWS COMMITTED BY COUNTER**

7                        **-DEFENDANTS AND THIRD PARTIES**

8                    **(Taitz and Doff Against Ostella and Berg)**

9

10       252.   Taitz and DOFF incorporate by reference all prior paragraphs as if fully pled herein.

11       253.   18 USC 3332 states "It shall be the duty of each such grand jury impaneled within

12   any judicial district to inquire into offenses against the criminal laws of the United States alleged

13   to have been committed within that district. Such alleged offenses may be brought to the attention

14   of the grand jury by the court or by any attorney appearing on behalf of the United States for the

15   presentation of evidence. Any such attorney receiving information concerning such an alleged

16   offense from any other person shall, if requested by such other person, inform the grand jury of

17   such alleged offense, the identity of such other person, and such attorney's action or

18   recommendation."

19       254.    Taitz and DOFF in the paragraphs above have provided the court with the evidence

20   of crimes against the criminal laws of the United States committed by the Counterclaim

21   Defendants and third party defendants, among them defendants entering a conspiracy to forge

22   documents and submit forged documents to court; fraud, egregious forgery/falsification of an

23   official court transcript of December 20, 2010 court hearing, removal of 14 pages out of the court

24   transcript, which was done by Court Reporter Donna Anders in collusion with Berg and Ostella,

25   fabrication of an ex-parte in camera examination of Liberi's IDs, which never took place, bringing

26   their complaint against defendants based on fraud and allegation that Liberi was defamed by her

27   criminal record, while she was never defamed and she is indeed a felon who was convicted in

28   California on ten felony counts of grand theft and forgery.   This Court has multiple examples of

50

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

1   crimes against criminal laws of the United States committed by Ostella, Berg, Anders and

2   Tilghman.  Counter-Plaintiffs petition the court to forward to the Grand Jury for the Central

3   District of California evidence of such crimes against the criminal laws of the US committed by

4   the Plaintiffs and counter-defendants.

5      255.   Among the crimes to be forwarded to the grand jury is forgery of the official court

6   transcript committed by the Court Reporter Donna ANDERS, namely removal of 14 pages from

7   an official court transcript of the December 20, 2010 hearing in the case at hand, rearrangement of

8   the remaining pages in order to cover up aforementioned forgery and falsification of the table of

9   contents of the aforementioned  transcript and removal of all mention of the cross examination of

10  party Lisa Ostella, which comprises the 14 pages of transcript removed by Anders. It is requested

11  that this Honorable Court:

12     a.   Forward to the Federal Grand jury evidence of RICO conspiracy of the defendants:

13  Anders, Ostella and Berg to forge official court transcript.

14     b.      Forward to Federal Grand Jury evidence of Counter-Defendant Ostella submitting

15  to this court forged documents with forged (cut and pasted) signature of Taitz, submitting to court,

16  including court of Appeals "documents" where the signature of Taitz was cut and pasted from the

17  document created several months after the alleged date of the fabricated document.

18     c.   Forward to the Federal Grand Jury evidence of Ostella and Berg fabricating a court

19  hearing, namely fabricating an ex parte in camera document examination of Liberi's IDs by the

20  prior judge on the case, Judge Eduardo Robreno. There was never such in camera document

21  examination and from August 2009 defendants are in contempt of court as they never presented

22  the court with Liberi's Identification. Fabricating an ex-parte in camera examination of records,

23  which never took place, is a serious crime and if not criminally prosecuted, puts into question

24  integrity of the court system. If a party is allowed to fabricate a hearing that never took place,

25  anything can be fabricated with impunity and no law-abiding citizen can get justice.

26                              **TWENTY SEVENTH CLAIM**

27          **DEFAMATION PER SE, CREATING A LINKEDIN ACCOUNT WHICH STATES**

28             **THAT TAITZ HAS ONLY A MASTER OF LAW, NOT JD, THEREFOR NOT**

**ELIGIBLE TO PRACTICE LAW**

256. Taitz realleges and incorporates herein by reference all prior paragraph of this Counterclaim as if set forth in full.

257. ROES 1-20, who are believed to be agents of Ostella and Berg created a LinkedIn website, where they described Orly Taitz as having only a Master of Law decree and not a Juris Doctor, a Doctor of Law, degree. It is Taitz's informed belief that ROES are connected to Ostella and Berg.

258.       Taitz has a Juris Doctor degree and is a licensed attorney.

259.       One with only a Master's degree in law cannot practice law as an attorney, which is defamation per se, as it implies and alleges that Taitz does not have education necessary to practice law.

260.       Said defamation per se does not require proof of specific damages, as it shows Taitz not fit for profession, for practice of law.  Not withstanding that, actions by counter defendants caused Taitz estimated over $75,000 in damages and severe emotional distress.

261.       The aforementioned conduct of these Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

**TWENTY EIGHTH CLAIM**
**DEFAMATION PER SE OF TAITZ**

**ALLEGATION THAT TAITZ IS NOT A DOCTOR OF DENTAL SURGERY**

262.       Taitz realleges and incorporates herein by reference each and every foregoing paragraph of this Counterclaim as if set forth in full.

263.       ROES1-10, who Taitz believes to be connected to named counter defendants or associates and agents of counter defendants, created a LinkedIn website, where they described Orly Taitz as having only a Ph.D. degree in Dentistry and not a D.D.S. (Doctor of Dental Surgery) degree.

264.     Taitz has a Doctor of Dental Surgery degree and is a licensed dentist.

265. One without a D.D.S degree cannot practice dentistry, which is a defamation per se, as it implies and alleges that Taitz does not have education necessary to practice Dentistry.

266.     Said defamation per se does not require proof of specific damages, as it claims that Taitz is not qualified for her profession of being a dentist.

267.     The aforementioned conduct of these Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## V. PRAYER

Wherefore Counterclaimants pray that the Court render a judgment in their favor as follows:

For Counterclaims     1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21, 22, 23, and 24

1.     Compensatory and general damages in an amount $10,000.00

2.     Punitive and exemplary damages in an amount of $10,000,000 to make examples of Counterclaim Defendants and Third Party Complaint Defendants;

3.     For costs of suit incurred herein; and

4.     For such other and further relief as this Court may deem just and proper.


For Counterclaims     4, 15, 16, 17, 18, 19, and 20, 27, 28:

1.     Compensatory and general damages in an amount of $10,000,000

2.     Punitive and exemplary damages in an amount of $10,000,000 to make examples of Counterclaim Defendants and Third Party Complaint Defendants;

3.     Injunctive and declaratory relief;

4.     For costs of suit incurred herein; and

5.     For such other and further relief as this Court may deem just and proper.


For Counterclaim 5:

1.     Compensatory and general damages in an amount of $10,000,000

2.      Punitive and exemplary damages in an amount of $10,000,000 to make examples of Counterclaim Defendants and Third Party Complaint Defendants;

3.      Treble damages pursuant to RICO;

4.      Injunctive and declaratory relief;

5.      For costs of suit incurred herein; and

6.      For such other and further relief as this Court may deem just and proper.

For Counterclaim  25:

1.      Compensatory damages of $100,000,000;

2.      Punitive and exemplary damages in an amount to make examples of Counterclaim Defendants and Third Party Complaint Defendants;

4      For costs of suit incurred herein; and

5.      For such other and further relief as this Court may deem just and proper.

For Counterclaims 26:

Under 18 USC 3332 forward to the Grand Jury for the Central District of California evidence of offenses against criminal laws of the United States committed by Counterclaim Defendants and Third Party Complaint Defendants.

## THIRD PARTY COMPLAINT AGAINST SHIRLEY WADDELL, DONNA ANDERS, MATHEW TILGHMAN and ROES 1-10

## JURISDICTION, VENUE AND PARTIES

1.      These are claims arising out of the same alleged events, transactions and occurrences that are set forth in the Plaintiff's various Complaints. Third Party Complaint Plaintiffs Taitz and Doff hereby incorporate every fact stated, argument made and allegation made

54

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

1   in the Counterclaim as though fully set forth herein.

2       2.    Third Party Complaint Defendants SHIRLEY WADDELL ("Waddell"), DONNA

3   ANDERS ("Anders") and MATHEW TILGHMAN ("Tilghman") and Roes 1-10 all acted in

4   collusion with Counterclaim Defendants Ostella and Berg as set forth in Taitz's and DOFF's

5   Counterclaim to commit nefarious acts against Taitz and DOFF.

6       3.    On information and belief, Anders and Tilghman  reside in the State of New Jersey

7   but the actions taken by them were done on a national, indeed international, basis and were

8   particularly aimed at Taitz and DOFF in California. Shirley Waddell is the mother of a former

9   plaintiff in this case, Lisa Liberi. Waddell's address is unknown at this time.  Additionally

10  Jurisdiction is under 28 U.S.C. §1332(a). The amount of controversy is over $75,000.

11      4.    The true names and capacities, whether individual, corporate, associate,

12  governmental entities, or otherwise of Third Party Complaint Defendants designated herein as

13  ROES 1 through 10, inclusive, are unknown to Taitz and DOFF who therefore sue those

14  counterdefendants by such fictitious names. Taitz is informed and believes and based thereon

15  alleges that each of the Third Party Complaint Defendants designated herein as a ROE is in some

16  manner legally responsible for and/or equitably responsible for the events and happenings referred

17  to herein. When the identities of such Third Party Complaint Defendants are ascertained, Taitz

18  will seek leave of Court to amend this Third Party Countercomplaint to reflect their true names

19  and capacities.

20      5.    Taitz is informed and believes and based thereon alleges that, all times pertinent to

21  this action, each of the Third Party Complaint Defendants, including the Third Party Complaint

22  Defendants designated herein as ROES 1 through 10, inclusive, were the agents and/or employees

23  of each of the remaining Third Party Complaint Defendants and were at all times acting within the

24  course and scope of that agency and/or employment.

25

26  **FIRST CLAIM**

27  **RICO**

28  **PREDICATE ACTION:**

## ALTERING COURT TESTIMONY IN TRANSCRIPT

### (Taitz and DOFF Against Anders, Tilghman and ROES 1-10)

6.      Donna Anders, Mathew Tilghman and ROES 1-10 prepared the transcript of a December 20, 2010 hearing in the case Liberi, Ostella et al v Taitz et al, which was held before of Hon. Judge Eduardo Robreno in the Eastern District of Pennsylvania. (The instant matter began in the Eastern District of Pennsylvania, before Judge Robreno, and later transferred to California.) During the cross-examination, Ostella's testimony included very damaging admissions.

7.      Firstly, she admitted that she, as a webmaster, locked Taitz, the president of Defend Our Freedoms Foundation, out of the website for Defend Our Freedoms and the PayPal account linked to that website, replaced and continued soliciting donations.

8.      Ostella further admitted that she knew that Taitz traveled to New Jersey to file a police report against her, yet she and her attorney manufactured outrageous defamatory allegations that Taitz traveled to New Jersey because she wanted to hire a hit-man to kill Ostella and kidnap her children.

9.      Third party defendants Mathew Tilghman and Donna Anders colluded with Ostella and her attorney Philip Berg to falsify the official court transcript and remove from the transcript the whole cross examination of Ostella that was extremely damaging to Ostella and Berg.

10.      After Taitz threatened to report Anders to FBI for forgery of an official transcript, which was transmitted by mail and wire, Anders added 14 pages to the official transcript, which included Ostella's cross-examination and she put back in the Table of Contents a notation about cross-examination of Ostella.

11.      On information and belief, Taitz alleges that Anders acted in concert with Berg, Ostella giving her incentive to commit egregious forgery of official court records to aid Ostella and thus Berg and ROES 1-10.

12.      The aforementioned conduct of these Third Party Complaint Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in

conscious disregard of her rights, so as to justify an award of actual damages, exemplary and punitive damages and statutory treble damages under RICO.

### SECOND CLAIM

### DEFAMATION OF CHARACTER OF TAITZ- DEFAMATION PER SE

### (Taitz and DOFF against Waddell, OSTELLA, BERG and Roes 1-10)

13.     Third Party Complaint Plaintiffs Taitz and DOFF hereby incorporate by reference all prior paragraphs as if fully pled herein.

14.     Ostella used Liberi's mother, Waddell to send e-mails to Taitz supporters and donors and disperse defamatory libelous statements about Taitz.

15.     Waddell sent e-mails to donors stating that Taitz attempted to hire a hit-man to kill Liberi and kidnap Ostella's children.

16.     Taitz never attempted to hire anyone to kill Liberi nor kidnap Ostella's children.

17.     These defamatory/libelous allegation lowered Taitz standing in the community. Taitz is a licensed attorney. Allegation of crime allegedly committed by Taitz represented Defamation Per Se. Damages in defamation per se are presumed without proof of specific damages. However, Taitz suffered over an estimated $75,000 in damages due to loss of income and donations.

18.     The aforementioned conduct of these Third Party Complaint Defendants was done with the intention on their part of thereby depriving Taitz of income, reputation, property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of damages in excess of the jurisdictional limit of this Court as well as exemplary and punitive damages.

### THIRD CLAIM
### DEFAMATION PER SE, CREATING A LINKEDIN ACCOUNT WHICH STATES

### THAT TAITZ HAS ONLY A MASTER OF LAW, NOT JD, THEREFOR NOT

### ELIGIBLE TO PRACTICE LAW

19.Taitz realleges and incorporates herein by reference all prior paragraph of this Counterclaim as if set forth in full.

20. ROES 1-10, who are believed to be agents of Ostella and Berg created a LinkedIn website, where they described Orly Taitz as having only a Master of Law decree and not a Juris Doctor, a Doctor of Law, degree. It is Taitz's informed belief that ROES are connected to Ostella and Berg.

21. Taitz has a Juris Doctor degree and is a licensed attorney.

22. One with only a Master's degree in law cannot practice law as an attorney, which is defamation per se, as it implies and alleges that Taitz does not have education necessary to practice law.

23. Said defamation per se does not require proof of specific damages, as it shows Taitz not fit for profession, for practice of law.  Not withstanding that actions by counter defendants caused Taitz estimated over $75,000 in damages and severe emotional distress.

24. The aforementioned conduct of these Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

**FOURTH CLAIM**
**DEFAMATION PER SE OF TAITZ**

**ALLEGATION THAT TAITZ IS NOT A DOCTOR OF DENTAL SURGERY**

25. Taitz realleges and incorporates herein by reference each and every foregoing paragraph of this Counterclaim as if set forth in full.

26. ROES1-10, who Taitz believes to be connected to named counter defendants or associates and agents of counter defendants, created a LinkedIn website, where they described Orly Taitz as having only a Ph.D. degree in Dentistry and not a D.D.S. (Doctor of Dental Surgery) degree.

27. Taitz has a Doctor of Dental Surgery degree and is a licensed dentist.

28. One without a D.D.S degree cannot practice dentistry, which is a defamation per se, as it implies and alleges that Taitz does not have education necessary to practice Dentistry.

29. Said defamation per se does not require proof of specific damages, as it claims that Taitz is not qualified for her profession of being a dentist.

30. The aforementioned conduct of these Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages.

## FIFTH CLAIM

## INTERFERENCE WITH PROSPECTIVE ADVANTAGE

### (Taitz and DOFF Against ROES 1-10)

31. Taitz and Doff incorporate by reference all prior paragraphs as if fully pled herein.

32.     Taitz is a licensed dentist. ROES 1-10, who were never treated by Taitz,  have posted 50 negative reviews about Taitz and her dental practice on line, in publications such as Healthgrades.com.

As a result of these fraudulent and malicious publications, Taitz's rating went down, which caused her to lose patients and caused her business to go down.

33.     Later, these 50 reviews were deleted, but can be found in the database of HealthGrades.com.

34.     Due to this interference Taitz and DOFF lost prospective advantage estimated to exceed $75,000.

## SIXTH CLAIM

### Forgery and Alteration

### of an Income Tax Return

### (against ROES 1-10)

COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.

35.     In violation of 18 USC § 1028 and CA Penal Code 530.5 ROES 1-10, believed to be persons connected to and/or agents of Berg and Ostella stole Taitz's Social Security number and filed with the IRS a bogus tax return and a bogus request for refund to be forwarded to one or more of their bank account numbers.

36.     Taitz was notified by the IRS that her identity was stolen, however IRS representative refused to provide Taitz with the name and other identifying information of the thief without a court order or a court subpoena. Such an order will be requested during the discovery phase of this litigation.

37.     The aforementioned conduct of Counterclaim Defendants was done with the intention on their part of thereby depriving Taitz of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Taitz to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages in addition to the treble damages authorized by the RICO Statutes.

## SEVENTH CLAIM

## PETITION UNDER 18 USC 3332 TO FORWARD TO FEDERAL GRAND JURY EVIDENCE OF OFFENSES AGAINST CRIMINAL LAWS COMMITTED BY COUNTER -DEFENDANTS AND THIRD PARTIES

### (Taitz and Doff Against Anders, Tilghman, Ostella, Berg, ROES 1-10)

38.   Taitz and DOFF incorporate by reference all prior paragraphs as if fully pled herein.

39.   18 USC 3332 states "It shall be the duty of each such grand jury impaneled within any judicial district to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation."

40.   Taitz and DOFF in paragraphs above have provided the court with the evidence of crimes against the criminal laws of the United States committed by the Anders, Tilghman  and ROES 1-10, among them defendants entering a conspiracy to forge documents and submit forged documents to court; fraud, egregious forgery/falsification of an official court transcript of December 20, 2010 court hearing, removal of 14 pages out of the court transcript, which was done by Court Reporters Donna Anders and Mathew Tilghman  in collusion with Berg and Ostella, fabrication of an ex-parte in camera examination of Liberi's IDs, which never took place, bringing this complaint against counter-defendants based on fraud and allegation that Liberi was defamed by her criminal record, while she was never defamed and she is indeed a felon who was convicted in California on ten felony counts of grand theft and forgery.   This Court has multiple examples of crimes against criminal laws of the United States committed by defendants and plaintiffs petition the court to forward to the Grand Jury for the Central District of California evidence of such crimes against the criminal laws of the US committed by the defendants.

41.   Among the crimes to be forwarded to the grand jury is forgery of the official court transcript committed by the Court Reporters Donna ANDERS and Mathew Tilghman , namely removal of 14 pages from an official court transcript of the December 20, 2010 hearing in the case at hand, rearrangement of the remaining pages in order to cover up aforementioned forgery and falsification of the table of contents of the aforementioned  transcript and removal all mention of the cross examination of party Lisa Ostella, which comprises the 14 pages of transcript removed by Anders. It is requested that this Honorable Court forward to the Federal Grand jury evidence of RICO conspiracy of the defendants: Anders, Ostella and Berg to forge official court transcript.

42.   Forward to Federal Grand Jury evidence of Counter-Defendant Ostella submitting to this court forged documents with forged (cut and pasted) signature of Taitz, submitting to court, including court of Appeals "documents" where the signature of Taitz was cut and pasted from the document created several months after the alleged date of the fabricated document.

## VI. PRAYER

Wherefore Third Party Complaint Plaintiffs pray that the Court render a judgment in their favor as follows:

For Claim 1:

1.      Compensatory damages in an amount to be determined at time of trial according to proof;

2.      Punitive and exemplary damages in an amount to make examples of Counterclaim Defendants and Third Party Complaint Defendants;

3.      Treble damages pursuant to RICO;

4.      Injunctive and declaratory relief;

5.      For costs of suit incurred herein; and

6.      For such other and further relief as this Court may deem just and proper.

For Claim 2, 3, 4, 5, 6:

1.      Compensatory damages in an amount to be determined at time of trial according to proof;

2.      Punitive and exemplary damages in an amount to make examples of Counterclaim Defendants and Third Party Complaint Defendants;

3.      For costs of suit incurred herein; and

4.      For such other and further relief as this Court may deem just and proper.

For Claim 7:

Under 18 USC 3332 forward to the Grand Jury for the Central district of California evidence of offenses against criminal laws of the United States committed by Counterclaim Defendants and Third Party Complaint Defendants.

DATED: _____11.03___, 2017           **LAW OFFICES OF ORLY TAITZ**

**COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:      ___/s/ Orly Taitz_____
         Orly Taitz, Esq.
         Attorney for Counterclaimants and
         Third Party Complaint Plaintiffs,
         ORLY TAITZ and DEFEND OUR
FREEDOMS FOUNDATION, INC.


DATED:   __11.03._____, 2017      **THE LAW FIRM OF MARC STEVEN COLEN**


By:      ___/s/ Marc Colen_____
         Marc Steven Colen, Esq.
         Attorney for Counterclaimants and
         Third Party Complaint Plaintiffs,
         ORLY TAITZ and DEFEND OUR
FREEDOMS FOUNDATION, INC.

**COUNTERCLAIM AND THIRD PARTY COMPLAINT BY ORLY TAITZ AND DEFEND OUR FREEDOMS FOUNDATION, INC.**

Certificate of service

I certify that all parties in this case were served on 11.03.2017 with the attached pleadings via ECF

Lila Dubert

11.03.2017