1  Orly Taitz, Esq., State Bar #223433
   **LAW OFFICES OF ORLY TAITZ**
2  29839 Santa Margarita Pkwy, Ste 100
   Rancho Santa Margarita, CA 92688
3  Telephone (949) 683-5411
   Email: orly.taitz@hushmail.com
4
   Marc Steven Colen, Esq., State Bar #108275
5  **LAW FIRM OF MARC STEVEN COLEN**
   3610 Central Ave., Ste 400
6  Riverside, CA 92506-5907
   Telephone (951) 394-8265
7
   Attorneys for Counterclaimants and Third Party Complaint Plaintiffs, ORLY TAITZ
8  and DEFEND OUR FREEDOMS FOUNDATION, INC.

9

10              **UNITED STATES DISTRICT COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

12

| | |
|---|---|
| 13  LISA M. OSTELLA, | Case No. 8:11-CV-00485-AG (AJW) |
| 14       Plaintiff, | |
| 15            v. | **OPPOSITION TO MOTION TO DISMISS/STRIKE** |
| 16  ORLY TAITZ, | |
| 17       Defendant. | Date of Hearing:  December 18, 2017 |
| 18  | Time of Hearing: 10:00 a.m. Judge:  Hon. Andrew Guilford Courtroom:  10D |
| 19  | Pre-Trial Conference: February 26, 2018 |
| 20  | Trial Date: March 27, 2018 |
| 21  | |
| 22  ORLY TAITZ and DEFEND OUR FREEDOMS FOUNDATION, INC., | |
| 23       Counterclaimants, | |
| 24            v. | |
| 25  LISA M. OSTELLA and PHILIP BERG, | |
| 26       Counterclaim Defendants. | |
| 27  *Caption continued next page* | |
| 28  | |

1

ORLY TAITZ and DEFEND OUR
FREEDOMS FOUNDATION, INC.,

       Third Party Complaint Plaintiffs,

           v.

SHIRLEY WADDELL, DONNA
ANDERS, MATHEW TILGHMAN and
ROES 1-10,

       Third Party Complaint Defendants.

**TO THE COURT, ALL PARTIES, AND/OR THEIR ATTORNEYS OF RECORD:**

**COME NOW** Defendants, Counterclaimants, and Third Party Complaint Plaintiffs ORLY TAITZ ("Taitz") and Defend Our Freedoms Foundation, Inc. ("DOFF") and hereby submit their Opposition to Plaintiff Lisa Ostella's Motion to Dismiss and/or Strike Defendants' Counterclaim and Third Party Complaint

DATED: December 7, 2017      **LAW OFFICES OF ORLY TAITZ**

                            By:   ***/Orly Taitz/***_____
                                  Orly Taitz, Esq.
                                  Attorney for Counterclaimants and
                                  Third Party Complaint Plaintiffs,
                                  ORLY TAITZ and DEFEND OUR
                                  FREEDOMS FOUNDATION, INC.

DATED:  December 7, 2017     **THE LAW FIRM OF MARC STEVEN COLEN**

                            By:   */Marc Steven Colen/*
                                    Marc Steven Colen, Esq.
                                  Attorney for Counterclaimants and
                                  Third Party Complaint Plaintiffs,
                                    ORLY TAITZ and DEFEND OUR
                                  FREEDOMS FOUNDATION, INC.

2

1

2

**TABLE OF CONTENTS**

3   Table of Authorities                                                           4

4   I. Introduction and Short Statement of the Case                6

5   II. Legal Argument                                                             8

6   III. Ostella's Motion to Dismiss the Counter Complaint Should Be Stricken,

7   as It Was Filed Without Leave of Court, Without a Meet and Confer of Counsel

8   and in Violation of Local Rules                                            10

9   IV. Taitz Did Not Need to Seek Joinder of Defend Our Freedoms Foundation 11

10  V. Ostella Fails to Show That Any of the Causes of Action

11  Fail Under 12(B)(6)                                                         13

12  VI. Ostella Addresses Only One Set of Claims, for Fraud, and Erroneously

13  Claimed that Fraud was Not Pled With Adequate Specificity      13

14  VII. The Statute of Limitations Did Not Run As Tortuous Behavior of Ostella Is

15  Ongoing                                                                        17

16  VIII. The Statue of Limitations Did Not Run as This Was the First

17  Opportunity for Taitz and Doff to File A Counter-Complaint Against Ostella 18

18  IX. The Dimished Privacy Rights Argument is Without Merit       19

19  X. Doff and Defend Our Freedoms are Protected Intellectual Property   22

20  XI. Conclusion and Prayer                                             23

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Appletree v. City of Hartford*, 555 F.Supp. 224 (D.Conn.1983)          19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)          9

*Baker v. Gold Seal Liquors*, 417 U.S. 467 (1974)          19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)          8, 9

*Brewer v. Indymac Bank*, 609 F.Supp.2d 1104 (2009)          9

*Burlington v. Milliken*, 690 F.2d 380, 389 (4th Cir.1982), cert. denied (1983) 20

*Channell v. Citicorp Nat'l Services, Inc*., 89 F.3d 379 (7th Cir. 1996)          19

*Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997)          10

*Electronic Equipment v. Seiler*, 122 Cal.App.3d 834 (1981).          21

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016)          9

*Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir.1978)          18

*Hospital Bldg. v. Trustees of Rex Hosp.*, 86 F.R.D. 694 (E.D.N.C.1980)          19

*Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009)          10

*Krupski v. Costa Crociere S.p.A*., 560 U.S. 538, 541 (2010)          19

*Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352 (9th Cir. 1985)          21

*Linker v. Custom-Bilt Machinery, Inc*., 594 F.Supp. 894 (E.D.Pa.1984)          19

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)          10

*Neitzke v. Williams*, 490 U.S. 319 (1989)          9

*Newdow v. Lafevre*, 598 F. 3d 628 (9th Cir. 2010)          9

*Odom v. Microsoft Corp*., 486 F.3d 541 (9th Cir. 2007)          9

*Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246 (9th Cir.1987)          18

*Religious Tech. Center v. Scott*, 82 F.3d 423 (9th Cir.1996)          20

*Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208 (9th Cir, 1957)          9

*Sams v. Beech Aircraft*, 625 F.2d 273 (9th Cir.1980)          19

*Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)                                                    20

*Schreiber v. Serv–Well* 806 F.2d 1393 (9th Cir.1986)                                 9

*Secular Organizations for Sobriety v. Ullrich*, 243 F.3d 1125 (9th Cir. 2000)  9, 21

*Sikes v. Rubin Law Offices, P.C.*, 102 F.R.D. 259  19 (N.D.Ga.1984)         19

*Skilstaf v. CVS Caremark*, 669 Fed 3d 1005 (9th Cit., 2012)                   9

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010)                    10

*Trindade v. Superior Court*, 29 Cal.App.3d 857 (1973)                             21

**STATUTES**

15 U.S.C. 1051                                                                    21

18 U.S.C. 3332                                                                    16

35 U.S.C. 3(a)                                                                   21

35 U.S.C. 6(a)                                                                   19

Fed. R. Civ. P. 8(a)                                                             8

Fed. R. Civ. P. 9(b)                                                            10

Fed. R. Civ. P. 12(b)(1)                                                      17

Fed. R. Civ. P. 12(b)(6)                                             8, 13, 15, 17

Fed. R. Civ. P. 13(a)                                                          19

Fed. R. Civ. P. 15(c)(1)(C)                                                  19

California Anti-SLAPP Code of Civil Procedure 425.16               17

**LOCAL RULES**

L.R. 7-9            11

**SECONDARY AUTHORITY**

Wright & A. Miller, <u>Federal Practice and Procedure</u>, 3d ed. 2004)        8, 20

**OPPOSITION TO MOTION TO DISMISS/STRIKE COUNTERCLAIM AND THIRD PARTY COMPLAINT BY TAITZ AND DOFF**

## I. INTRODUCTION AND SHORT STATEMENT OF THE CASE

This case revolves around the actions of Lisa Ostella, former web master for Orly Taitz's Defend Our Freedoms Foundation ("DOFF").  Ostella offered Orly Taitz, president of DOFF, to register web addresses for Taitz's foundation in order to create a website and a PayPal account to collect donations to help cover expenses of Taitz and her foundation.

After about three months, Ostella blocked Taitz out of a website for the foundation and continued running the website using the picture of Taitz on the front page of the website, using the name of the foundation and the web address of the foundation and replaced the foundation PayPal account with her personal PayPal account at "donate" button of the website.  In doing so, she solicited donations for her own use.

Taitz had to create a new website and for a limited period of time, one month, between mid-April to mid-May of 2009, posted notations on the new website advising the public that the website that is managed by Ostella is not connected to Defend Our Freedoms Foundation and all donations given there would not go to the foundation, but instead to Ostella personally.

In 2011 Taitz made one update, advising the public that after two years there was no response to her complaint to the FBI in relation to the aforementioned activities of Ostella.

On December 20, 2010 Ostella testified under penalty of perjury during a court hearing in this case wherein she admitted to locking Taitz out of the website and related PayPal accounts. Hon. Eduardo Robreno, then presiding judge in this case, issued the binding ruling and factual finding that,

> "On Cross Examination, Ostella conceded that she has locked Taitz out of her website www.defendourfreedoms.org and her associated PayPal accounts"

Memorandum of Judge Eduardo Robreno 12.23.2010 DKT 376-2 Liberi v

Taitz 11-cv-485 AG.

Ostella also used the website of DOFF to promote another attorney, Philip Berg, who also solicited donations. Thus, while Ostella admitted to locking Taitz and DOFF from the website and continuing to collect donations to the financial detriment of Taitz, and while Taitz's speech was found to be privileged speech[1], Ostella colluded with her prior attorney, Philip Berg, with the purpose of retaliating against Taitz for disclosures made by Taitz.  Ostella engaged and is engaging in ongoing vicious defamation of Taitz, of Taitz's husband and of donors and supporters of Taitz, particularly those who dared to speak up about actions by Ostella.

For example, Ostella and Berg fabricated outrageous and defamatory statements including that Taitz sought to have Ostella's children professionally kidnapped, that she sought to hire a hitman to kill Ostella's children, and that the husband of Taitz is hacking into people's computers and spying on people. By her own admission, Ostella instigated a criminal court hearing in New Jersey, where Ostella claimed that Taitz threatened to kidnap Ostella's children. That case was immediately dismissed, however those horrific defamatory allegations destroyed the reputation of Taitz, who is a licensed attorney and a licensed doctor of Dental Surgery. Later, during 12.20.2010 hearing before Judge Robreno in this case at hand, Ostella admitted under oath that allegations of Taitz threatening to kidnap Ostella's children, were a fabrication by her and her attorney.

Ostella also fabricated defamatory allegations that Taitz allowed Ostella to forge Taitz's signature.  Ostella also made fabrications to the effect that donors and

---

[1] Further, The Court of Appeals found that Taitz engaged in protected activities under the anti-SLAPP statute based on free speech on matters of public importance. (Court of Appeals Case No. 13-56253; Dkt. No. 676.)

supporters of Taitz were and are engaged in forgery, hacking into computers, and stalking of Ostella. Ostella filed frivolous legal actions against the husband of Taitz and his company, Daylight Chemical. Those were dismissed by Hon. Andrew Guilford. Additionally, Ostella filed legal actions against some 20 other individuals and entities connected to Taitz. All of those were dismissed by Hon. Andrew Guilford. Other cases were dismissed in the courts in Pennsylvania, Texas and Florida. All of those frivolous actions were a scorched earth policy of retaliation by Ostella for Taitz honestly stating that Ostella locked Taitz out and ran a web site using the picture of Taitz and the name of Defend Our Freedoms foundation and collected donations to herself through that web site making donors believe that this is the web site of DOFF. Exhibits 2 and 3 of the counter complaint show printouts from the internet archive of the website, which was managed by Ostella using the picture of Taitz and the name of DOFF, while Ostella no longer had any connection to DOFF.

Ostella continues the holdover of the web addresses of the DOFF to this day, hereby depriving DOFF of donations. Indeed, as presented in detail in the Counter-Complaint, Ostella is engaged in a racketeering scheme together with her former attorney, Berg, to deprive Taitz and DOFF of donations and defame Taitz.

## II. LEGAL ARGUMENT

A defendant may move to dismiss a complaint if it believes that the plaintiff has failed to state a claim for relief. Fed. R. Civ. P. 12(b)(6). All claims in the Counter-Complaint are well pled, with quotations and citations to documents in the Court's docket.  Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." With that liberal pleading standard, the purpose of a motion under Rule 12(b)(6) is "to test the formal sufficiency of the statement of the claim for relief." Wright & A. Miller, Federal

Practice and Procedure § 1356, p. 354 (3d ed. 2004).

To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If anything, Taitz may have placed more into the Counter-Complaint than was actually the minimum needed.

In analyzing the complaint's sufficiency, a court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf v. CVS Caremark*, 669 Fed 3d 1005, 1014 (9th Cit., 2012) (citing *Newdow v. Lafevre*, 598 F. 3d 628, 642 (9th Cir. 2010)). But the assumption of truth does not apply to legal conclusions. *Ashcroft*, 556 U.S. at 678. Further, *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Unresolved factual disputes precluded a ruling on a motion to dismiss. Whether consumers have been or will be misled as required to state a claim of false advertising under California law is a factual question that cannot be resolved on a motion to dismiss for failure to state a claim upon which relief can be granted. *Brewer v. Indymac Bank*, E.D.Cal. 2009, 609 F.Supp.2d 1104, 1108.

Motions to dismiss complaint for failure to state a claim upon which relief can be granted are viewed with disfavor because of possible waste of time in case of reversal of a dismissal of the action, and because primary objective of the law is to obtain a determination of the merits of any claim, and therefore a case should be tried on the proofs rather than the pleadings. *Rennie & Laughlin, Inc. v. Chrysler*

9

*Corp.*, C.A.9 (Cal.) 1957, 242 F.2d 208, 211.

Fraud claims must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031 (9th Cir. 2016). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." The "circumstances" include "the time, place, and specific content of false representations as well as the identities of the parties." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986)).

A plaintiff cannot simply allege "neutral facts necessary to identify the transaction," but must "set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) But even under Rule 9(b), the pleading standard for state of mind is more relaxed. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally")

In the event that any of Taitz's and DOFF's claims are deemed insufficient, Taitz and DOFF must be granted leave of court to file a First Amended Counterclaim and Third Party Complaint. Leave to amend should be granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts," *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)), or "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).

## III. OSTELLA'S MOTION TO DISMISS THE COUNTER COMPLAINT SHOULD BE STRICKEN, AS IT WAS FILED WITHOUT A LEAVE OF COURT, WITHOUT A MEET AND CONFER OF COUNSEL AND IN

# **VIOLATION OF LOCAL RULES**

In this case the court set a pre-filing restrictions, where a party needs to submit a short (two page) letter to this Court requesting leave of court to file a motion. (Dkt No 227). Ostella did not obtain a leave of court to file a motion to dismiss at hand and she did not even submit a letter to the court requesting a leave of court to file such a motion. Further, Ostella's attorney did not conduct the necessary meet and confer with the opposing counsel prior to filing this motion.  See Local Rule 7-3. Additionally, local rules require 28 days between filing a motion and a hearing.  According to L.R. 7-9 <u>opposition to motion is due 21 days before the hearing.  Ostella.s attorney, Florida attorney, Mr. Lorenzo, who is representing Ostella pro hac vice,  set a motion within 17 days from filing. He made it impossible to file the opposition  21 days before the hearing.</u> He did not allow the  Court required time  to review the pleadings.

Counter Plaintiffs Taitz and DOFF lodged with the court on December 7, 2017 an emergency ex-parte motion  requesting the court to strike this motion to dismiss that was filed without the required leave of court and in violation of local rules, without giving opposition any time to respond. Dkt No769. Since no response from the court was received, counter plaintiffs are filing this opposition at hand.

<u>It is noteworthy that Defendant and Counter-Plaintiff Taitz followed the rules.</u> She submitted to this court a required two-page letter seeking a leave of court to dismiss the Second Amended Complaint (SAC). When 21 days past and the court did not respond to the request, Taitz filed an answer to the SAC with the reservation of rights. Plaintiff and counter -defendant Ostella was obligated to do the same. She was obligated to file an answer to the counter-complaint within 21 days. She did not do so. As such, this court should strike this motion to dismiss as it was filed without a leave of court to do so and grant Taitz and DOFF a default judgment against Ostella on their counter-complaint.

## IV. TAITZ DID NOT NEED TO SEEK JOINDER OF
## DEFEND OUR FREEDOMS FOUNDATION

Defend Our Freedoms Foundation has been a party in this case since the case was filed. Moreover, Taitz and DOFF sought a dismissal of the First Amended Complaint by Philip Berg, who did not file any opposition to motions to dismiss. Since this court never issued an order to dismiss the First Amended Complaint by Plaintiff Berg against DOFF, DOFF remained a party in this case and a joinder was not required. [Additionally, Ostella erroneously refers to document Dkt No 719. This document was filed a year ago, on November 14, 2016, and is a Notice of Joinder with Taitz in opposition to motion by Ostella to file SAC in opposition re: Notice Of Motion And Motion to For Leave to Amend First Amended Complaint 706 filed by Defendants Defend Our Freedoms Foundations, Inc., Orly Taitz, Inc. (Taitz, Orly) (Entered: November 14, 2016)] This document was not a request for the court to allow joinder, rather it was simply a notice that on November 24, 2016 DOFF and Taitz jointly filed a motion opposing Ostella's motion to file a second amended complaint.

Additionally, in her own pleadings Ostella shows DOFF as an indispensable party: Ostella admits to locking DOFF from the website she managed as a web master and replacing DOFF PayPal account with her personal account <u>"Ostella changed the PayPal script for the donation button to reflect her own account on defendourfreedoms.net" Liberi et al Memorandum personally signed by Ostella Dkt No 186-2, p 20 Liberi v Taitz 11-cv-485.</u>  Similarly, Ostella admitted to the same during December 20, 2010 hearing in the case at hand. Ostella admitted to hijacking the web addresses and website for DOFF, using the name and the web address of DOFF and picture of Taitz, president of DOFF, to divert donations to her own PayPal and credit card accounts. Unsuspected donors believed that they are donating to DOFF. For this reason, DOFF is an indispensable party, as Ostella's actions

1   caused significant injuries to DOFF.

2

3   ## V. OSTELLA FAILS TO SHOW THAT ANY OF THE

4   ## CAUSES OF ACTION FAIL UNDER 12(b)(6)

5

6   In her motion to dismiss under 12(b)(6) Ostella makes a general statement

7   that all the causes of action should fail. However, Ostella failed to provide any legal

8   argument, precedent or factual bases that would justify granting her 12(b)(6)

9   motion. Ostella did not address any specific causes of action and did not provide any

10  legal justification showing how these specific causes of action fail.  Contrary to

11  Ostella's claims, Counter Plaintiffs provided detailed causes of action and detailed

12  proof of Ostella's direct liability, based on the pleadings and exhibits.

13

14  ## VI. OSTELLA ADDRESSES ONLY ONE SET OF CLAIMS, FOR FRAUD,

15  ## AND ERRONEOUSLY CLAIMED THAT FRAUD WAS NOT PLED WITH

16  ## ADEQUATE SPECIFICITY

17

18  Ostella attempts to negate only one set of claims, claims one through three for

19  fraud, without providing any argument relating connection to other claims.

20  However, even as these three claims is concerned, Taitz and DOFF, indeed, pled

21  fraud and misrepresentation in great detail.

22  Starting in section II, General Allegations, from paragraph10 page 4 of the

23  counter complaint, Taitz pled in great detail her correspondence with Ostella, she

24  provided the dates of the e-mails and statements by Ostella, starting from December

25  17, 2008, which led to justifiable reliance on Ostella's offer to create a website and

26  PayPal account for DOFF. Later, on April 11, 2009, Ostella breached the trust of

27  Taitz, she blocked Taitz from the website and continued running the website using

28  the name of Defend Our Freedoms foundation, using the picture of Taitz, soliciting

donations for herself and for Berg and linking the donation button to her personal PayPal and credit card accounts. Taitz pled fraud with required specificity, meeting the requirements of FRCP 9(b).  Specifically, it is stated in the counter-complaint that,

"10.     On December 17, 2008, Ostella suggested to Taitz that Taitz create a PayPal account to get donations from the public to help Taitz pay for expenses of her pro bono work. On December 17, 2008 Ostella sent an e-mail to Taitz: "Do you want me to make you a PayPal account with your account? I'll need a tax ID and I can set it up. Or wait until the foundation/ tax shelter/fictious (sic) name thing is worked out? Lisa Ostella.

"11.     On the next day, December 18, 2008, Taitz wrote to Ostella: "Lisa, I thought of a name for the foundation. Defend Our Freedoms Foundation. What do you think?" Within half an hour, Ostella responded: "Defend Our Freedoms sounds good." Immediately after this communication, Ostella, as a web master, through her company GoExcelGlobal, registered the web addresses for Taitz under the name "Defend Our Freedoms" which was chosen by Taitz for her foundation.

"12.     Within hours of Taitz giving Ostella the name she chose for the foundation, Ostella wrote to Taitz: "Your website is up and the domain secured. It can take up to 3 days for this to be viewable live.http://www.defendourfreedoms.org. I am also working on your youtube channel:http://www.youtube.com/user/drOrlyTV." Ostella clearly represented to Taitz that this was Taitz's website and Taitz's web addresses.  Ostella advised Taitz that she got a block of web addresses defendourfreedoms.com, .us, .net, .org for the Defend Our Freedoms Foundation and the PayPal account on the website will be linked to the account for the foundation. Ostella specifically advised Taitz that she needed to register all of those web addresses for the foundation so that "squatters" will not divert traffic and

donations from the foundation.  The subsequent account for PayPal was under the name DefendOurFreedoms with the primary e-mail address being orly.taitz@gmail.com and the primary contact being Orly Taitz.  Only a few months later Ostella ended up being the "squatter."

"13.     Based on Ostella's representations to Taitz, and acting in justifiable reliance on them, Taitz allowed Ostella to assist her to create an online blog and website connected to web addresses defendourfreedoms.net, defendourfreedoms.com, defendourfreedoms.us, and defendourfreedoms.org. Ostella had control of the blog and the website and Taitz was not aware that some web masters use their position as web masters to draw personal benefit from the websites they created for others."

Ostella's 12(b)(6) motion does not provide any opposition to:

4. Fourth Claim-Conversion

5. Fifth Claim-RICO

    A. First Predicate Act-Wire Fraud

    B. Second Predicate Act-Forgery

    C. Forgery and Alteration of an Official Document

    D. Forgery of Tax Return

    E.  Fraud

6.  Sixth Claim -Abuse of Process

7. Seventh Claim - Defamation of Character of Taitz

8. Eighth Claim- Fraud in Suing on Behalf of Nonexistent Corporations

    (Ostella sued on behalf of defunct GoExcelGlobal)

9. Ninth Claim - Fraud in Suing on Behalf of Nonexistent entity

10 Tenth Claim-fraud in suing against Nonexistent Entity

11. Eleventh Claim-Invasion of Privacy

**OPPOSITION TO MOTION TO DISMISS/STRIKE COUNTERCLAIM AND THIRD PARTY COMPLAINT BY TAITZ AND DOFF**

(While Ostella claims that Taitz is a public figure and has a diminished expectation of privacy, this argument does not provide a justification for using illegal subpoenas, used by Ostella and Berg without proper notification to Taitz, while the case was stayed, no discovery allowed, to illegally access private PayPal bank accounts of Taitz.)

12. Twelfth Claim-Invasion of Privacy

(While Ostella claims that Taitz is a public figure and has a diminished expectation of privacy, this argument does not provide a justification for using illegal subpoenas, used by Ostella and Berg without proper notification to Taitz, while the case was stayed, no discovery allowed, to illegally access private police report of Taitz filed as an informant.)

13. Thirteenth Claim-Conversion of Web Addresses

14 Fourteenth Claim-Fraud on the Court

15. Fifteenth Claim-Unfair Competition

16. Sixteenth Claim-Common Law Unfair Competition

17 Seventeenth Claim-Cybersquatting

18. Eighteenth Claim-Trademark Dilution

19. Nineteenth Claim-Trademark Infringement

20. Twentieth Claim-Unjust Enrichment

21. Twenty First Claim-Intentional Infliction of Severe Emotional Distress

22. Twenty Second Claim- Interference with Prospective Advantage

23. Twenty Third Claim-Appropriation of Likeness

24. Twenty Fourth Claim-Malicious Prosecution

(Ostella instigating criminal prosecution of Taitz based on Ostella's false defamatory statements of alleged "criminal threats" by Taitz,

16

where Ostella claimed that Taitz threatened to have Ostella's

children . The case was dismissed, no criminal threats by Taitz were

found)

25. Twenty Fifth Claim-Violation of CA Uniform Trade Secrets Act

and Release of Confidential Information

26. Petition under 18 USC 3332 to Forward to Federal Grand Jury

Evidence of Offenses Against Criminal Laws committed by

Counter Defendants

27.Twenty Seventh Claim-Defamation

28. Twenty Eighth Claim-Defamation

Additionally, Ostella does not have standing to seek to dismiss the Third

Party Complaint, as it is brought against the third parties, not Ostella, and she

did not provide any substantive opposition to the third party complaint.

## VII. THE STATUTE OF LIMITATIONS DID NOT RUN AS
## TORTIUOUS BEHAVIOR OF OSTELLA IS ONGOING

Counter-Defendant Ostella's tortiuous behavior is ongoing and as such the

statute of limitations did not run. Currently, Ostella is still fraudulently holding over

the codes for the web address (domains) of Defend Our Freedoms Foundation and

depriving Taitz and the foundation of use of those web addresses and, as such,

depriving DOFF and Taitz of donations.  Ostella is a part of an ongoing racketeering

scheme with her former attorney, Philip Berg, to deprive Taitz and DOFF of

donations and in vicious defamation of Taitz. Ostella is still fraudulently using the e-

mail addresses of donors and sharing them with Berg.

As stated in the counter complaint and exhibit 8 to the counter complaint, as

recently as August 27, 2017,  Berg has sent a mass e-mail to a number of those

addresses, to multiple donors, soliciting his book "Obamascare", where Berg

dedicated a whole chapter to defaming Taitz and drawing financial benefit. It shows that both fraud and RICO are ongoing. Additionally, Ostella is still retaining all proceeds from fraudulently using the name and likeness of Taitz and DOFF, running the web site under the name of DOFF and collecting donations. Ostella engaged in forgery of Taitz's signature by copying  and pasting this signature from one document to others. Until there is injunctive relief by this court and an award of actual and punitive damages against Ostella, this tortuous behavior will continue and damages will multiply.

## VIII. THE STATUTE OF LIMITATIONS DID NOT RUN AS THIS WAS THE FIRST OPPORTUNITY FOR TAITZ AND DOFF TO FILE A COUNTER COMPLAINT AGAINST OSTELLA

Until the present time, Taitz challenged the original complaint and the first amended complaint by Ostella. Only recently, on October 13, 2017, this court allowed Ostella to file her Second Amended Complaint. Taitz submitted to court a request for leave of court to dismiss the SAC under 12(b)(6), 12(b)(1) and antiSLAPP 425.16. As this court did not respond within 21 days to a request for leave to file motions to dismiss, Taitz filed an answer and a mandatory counter complaint. Taitz did not engage in latches and did not violate a statute of limitations as she filed her counter-complaint in an ongoing case at the first opportunity to do so.

"Compulsory" counterclaims are claims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). The Ninth Circuit applies a "logical relationship test" to determine whether a counterclaim is compulsory. Under this test, the court "analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."

1    *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir.1987)

2    (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir.1978)). If a defendant fails to

3    bring a compulsory counterclaim, he is barred from asserting that claim in a future

4    proceeding. Fed.R.Civ.P. 13(a); *Sams v. Beech Aircraft*, 625 F.2d 273, 276 n. 4 (9th

5    Cir.1980) (citing *Baker v. Gold Seal Liquors*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504,

6    41 L.Ed.2d 243 (1974)); see also *Channell v. Citicorp Nat'l Services, Inc.*, 89 F.3d

7    379, 385 (7th Cir.1996).

8        "As noted above, the Pochiros' claim that John was defamed centers around

9    statements allegedly made by Prudential in relation to John's use of Prudential's

10   confidential records. Not only do the facts necessary to prove the two claims

11   substantially overlap, but the collateral estoppel effect of Prudential's victory in the

12   first action would preclude the Pochiros from denying the truth of Prudential's

13   statements. In such a situation, the defamation claim must be considered a

14   compulsory counterclaim to the earlier action. See, e.g., *Linker v. Custom-Bilt*

15   *Machinery, Inc.*, 594 F.Supp. 894, 899–900 (E.D.Pa.1984) (defamation claim is

16   compulsory counterclaim to securities action); *Sikes v. Rubin Law Offices, P.C.*, 102

17   F.R.D. 259, 260–62 (N.D.Ga.1984) (libel and slander claims are compulsory

18   counterclaims to action to enjoin enforcement of a covenant not to compete);

19   *Appletree v. City of Hartford*, 555 F.Supp. 224, 229–30 (D.Conn.1983) (libel and

20   slander claims are compulsory counterclaims to civil rights action against police

21   officer); *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 86 F.R.D. 694, 697–700

22   (E.D.N.C.1980) (slander claim is compulsory counterclaim in antitrust action)."

23   *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d at 1251.

24       Fed. R. Civ. P. 15(c)(1)(C) provides the federal standard for whether a

25   pleading relates back. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010)

26   ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended

27   pleading 'relates back' to the date of a timely filed original pleading and is thus

28   itself timely even though it was filed outside an applicable statute of limitations.").

1    In order for an amended complaint to relate back under Rule 15(c)(1)(C), the

2    following conditions must be met: "(1) the basic claim must have arisen out of the

3    conduct set forth in the original pleading; (2) the party to be brought in must have

4    received such notice that it will not be prejudiced in maintaining its defense; (3) that

5    party must or should have known that, but for a mistake concerning identity, the

6    action would have been brought against it." *Schiavone v. Fortune*, 477 U.S. 21, 29

7    (1986).

8    Factors (1) and (2) apply to the Counterclaim which thus relates back to

9    Plaintiffs' initial Complaint. Factor (3) is inapplicable.

10   6 Wright, Miller & Kane §  1419, at 152 ("[T]he majority view appears to be

11   that the institution of plaintiff's suit tolls or suspends the running of the statute of

12   limitations governing a compulsory counterclaim." "[T]the institution of plaintiff's

13   suit tolls or suspends the running of the statute of limitations governing a

14   compulsory counterclaim.' " *Burlington Indus. v. Milliken & Co*., 690 F.2d 380, 389

15   (4th Cir.1982), cert. denied, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983)

16   (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

17   Practice and Procedure §  1419, at 109 (1971)). This view reflects the rationale put

18   forth by Wright, Miller & Kane:

19       "This approach precludes plaintiff, when the claim and counterclaim are
20   measured by the same period, from delaying the institution of the action until the
     statute has almost run on defendant's counterclaim so that it would be barred by the
21   time defendant advanced it. Nor is plaintiff apt to be prejudiced by the tolling of the
     statute, since he presumably has notice at the time he commences his action of any
22   counterclaim arising out of the same transaction as his suit. Moreover, the
23   necessarily close relationship between the timely claim and the untimely
     counterclaim should insure that the latter is not "stale" in the sense of evidence and
24   witnesses no longer being available[.]"

25   This approach is followed in the Ninth Circuit. *Religious Tech. Center v.*

26   *Scott*, 82 F.3d 423 (9th Cir.1996); ("[A] compulsory counterclaim relates back to the

27   filing of the original complaint.")

28   It is also the approach in California State Courts. *Jones v. Mortimer*, 28

Cal.2d 627, 633 (1946). A cross-complaint need only be subject-matter related to the plaintiff's complaint -- i.e., arise out of the same occurrence -- to relate back to the date of filing the complaint for statute of limitation purposes. Weil & Brown, Cal. Practice Guide, Civil Procedure Before Trial (1987) ¶ 6:338-6:339 at p. 6-58.

"[T]he courts have fashioned a rule that a statute of limitations is suspended or tolled as to a defendant's then unbarred causes of action against the plaintiff arising out of the same transaction by the filing of the plaintiff's complaint." *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co*., 122 Cal.App.3d 834, 844 (1981). "'The principle underlying the rule that a statute of limitations is suspended by the filing of the original complaint is that the plaintiff has thereby waived the claim and permitted the defendant to make all proper defenses to the cause of action pleaded." *Trindade v. Superior Court*, 29 Cal.App.3d 857, 859-860 (1973).

## IX. THE DIMINISHED PRIVACY RIGHTS ARGUMENT IS WITHOUT MERIT

Ostella is claiming diminished privacy rights. Firstly, this argument relates only to 11th and 12th causes of action, Invasion of Privacy  and does not relate to any other causes of action. However, even if one believes that Taitz had diminished privacy rights, which she didn't, it still did not justify fraudulent and torious behavior of Ostella. 11th cause of action relates to Ostella's invasion of Taitz's privacy, when she and her attorney, Philip Berg, issued fraudulent subpoenas to obtain Taitz's private PayPal bank records. At a time, the case was stayed, no dicovery was allowed, Ostella and Berg did not provide any mandatory notification to Taitz, deprived her of an ability to submit an opposition and by stealth, fraudulently sent a subpoena and obtained Taitz's PayPal bank account information. Similarly, as pled in the 12th cause of action,

1  they acted fraudulently and served a subpoena on the Sheriff's department to

2  obtain Tait'z confidential informant report, while the case was stayed and no

3  subpoenas allowed, and without any mandatory notification to Taitz and without

4  giving Taitz any ability to file an opposition.  This tortuous, fraudulent behavoir

5  is not justified, even if one claims diminished expectation of privacy.

6

7  ## X. DOFF AND DEFEND OUR FREEDOMS ARE

8  ## PROTECTED INTELLECTUAL PROPERTY

9

10  DOFF is a federally registered service mark under 15 U.S.C.A. § 1051 and 35

11  U.S.C.A. §§ 3(a), 6(a) for use in "public advocacy to promote awareness of

12  constitutional rights and freedoms," first used on September 20, 2009. Filing

13  occurred on February 26, 2016 and the mark was officially registered on November

14  1, 2016.  The registrant is Defend Our Freedoms Foundation, a California

15  Corporation located in Rancho Santa Margarita, California. The registration number

16  is 5072090.

17  For the time period between September 20, 2009 and November 1, 2016,

18  DOFF was a protected mark since the mark immediately acquired secondary

19  meaning, which is the mental association by a substantial segment of consumers and

20  potential consumers between the alleged mark and a single source of the product or

21  service *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352 (9th Cir. 1985); see also,

22  *Secular Organizations for Sobriety v. Ullrich*, 243 F.3d 1125 (9th Cir. 2000).

23  That secondary meaning has been attached to DOFF and Defend Our

24  Freedoms and their ownership by Taitz is established by the volume of persons

25  visiting Taitz's website as discussed in Ostella's motion.  On page 7, lines 7 *et seq*.,

26  the motions states that "Taitz's has orchestrated an elaborate Internet campaign . . . .

27  Taitz's Internet campaign has been so successful that Alexa rates her site in the top

28  1% among a million sites. As of November 2017, the visitor counter on her pages

are exceeding 93 million visitors." On page 9, lines 1-2, the motion states that "Ostella knew that TAITZ is the mouth piece of DOFF." On page 10, lines 6 and 24, Ostella notes the equivalence of Taitz and Doff. On page 13, lines 19 *et seq*., the motion states that "TAITZ's site http://orlytaitzesq.com, has over 93 million visitors as of November 11, 2017, has over 500 linked sites…." On page 14, lines 11 *et seq*., the motions state that Taitz's online presence, using the marks DOFF and Defend Our Freedoms, make "a very public, very clearly written statement online on her http://orlytaitzesq.com" website.

## IX. CONCLUSION and PRAYER

Taitz and DOFF first respectfully request that this Honorable Court strike the motion on the grounds that (a) Ostella did not even request leave of Court to file such a motion, (b) did not engage in the required meet and confer as required, and (c) did not provide the required notice to Taitz's and DOFF's counsel.  Additionally, Taitz and Doff request that the Court deny the motion based on the facts, law and argument provided herein and as will provided at the hearing on this frivolous motion.

In the event that the Court finds the Counterclaim and Third Party Complaint to be lacking in some way, Taitz and Doff request leave of court to file a first amended counterclaim and third-party claim.

Lastly, Taitz and Doff request that the Court grant leave to file a motion for attorneys fees and sanctions to compensate Taitz and DOFF for the attorney's fees that they suffered to prepare this opposition as well as the other documents and activities necessitated by Ostella's frivolous motion.

///

///

///

1   DATED: December 10, 2017          **LAW OFFICES OF ORLY TAITZ**

2

3                                     By:   /s/***Orly Taitz/***_____

4                                           Orly Taitz, Esq.
                                            Attorney for Counterclaimants and
5                                           Third Party Complaint Plaintiffs,
                                            ORLY TAITZ and DEFEND OUR
6                                           FREEDOMS FOUNDATION, INC.

7   DATED:   December 10, 2017        **THE LAW FIRM OF MARC STEVEN
                                      COLEN**
8

9

10                                    By:   /Marc Steven Colen/

11                                          Marc Steven Colen, Esq.
                                            Attorney for Counterclaimants and
12                                          Third Party Complaint Plaintiffs,
                                            ORLY TAITZ and DEFEND OUR
13                                          FREEDOMS FOUNDATION, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS/STRIKE COUNTERCLAIM AND THIRD PARTY COMPLAINT BY TAITZ AND DOFF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Certificate of service
I, Orly Taitz, declare that all parties in this case were served with attached pleadings
via ECF
/s/ Orly Taitz
12.10.2017

**OPPOSITION TO MOTION TO DISMISS/STRIKE COUNTERCLAIM AND THIRD PARTY COMPLAINT BY TAITZ AND DOFF**