Jose B. Lorenzo
**Lorenzo Law Firm, P.A.**
2040 Delta Way
Tallahassee, FL 32303
Ph:  (855) 757-2757
Email:  admin@lorenzolawfirm.com

*Counsel for Plaintiff Lisa M. Ostella*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LISA OSTELLA,<br><br>     Plaintiff,<br><br> vs.<br><br>ORLY TAITZ,<br><br>     Defendant. | CIVIL ACTION NUMBER:<br><br>**8:11-cv-00485-AG (AJW)**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW AND AUTHORITIES IN SUPPORT FOR MOTION FOR SUMMARY JUDGMENT AS TO ALL FOUR OF PLAINTIFF'S CLAIMS**<br><br>Date of Hearing:<br>Time of Hearing:  10:00 a.m.<br>Location:  Courtroom 10D<br><br>Discovery Cutoff:  None<br>Pretrial  Conf.: None<br>Trial Date:  None |

## <u>MEMORANDUM OF LAW AND AUTHORITORIES</u>
## <u>IN SUPPPORT FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

PAGE(s)

TABLE OF CONTENTS....................................................................i-ii

TABLE OF AUTHORITIES.........................................................iii-x

I.     INTRODUCTION.................................................................1

II.    ABBREVIATED STATEMENT OF FACTS.........................1-5

    A.     Taitz is a blogger with immense publicity..................................1

    B.     Ostella is a private person...........................................................2

    C.     Ostella developed a web-product.................................................2

    D.     Taitz falsely claims a hack occurred.....................................2, 3

    E.     Taitz wrongfully accuses Ostella to law enforcement....................3

    F.     Ostella ends access to blog to allow for an investigation....................3

    G.     Taitz reports from and about her PayPal records accusing Ostella......3

    H.     Taitz PayPal records contradict Donation Diverting Claims............3

    I.     Taitz published 11 libelous posts....................................................4

    J.     Taitz's Knowingly Lacks factual support for her Statements............5

III.   ARGUMENT FOR SANCTIONS....................................................5-8

    A.     Taitz's refusal to disclose and provide discovery is sanctionable.............................................................................5, 6

    B.     Taitz's actions are sanctionable under 28 U.S.C. §1927.............6- 8

IV.    ARGUMENT FOR SUMMARY JUDGMENT.........................8-10

    A.     Summary Judgment is Appropriate Where Facts are not in Dispute............................................................8, 9

    B.     Summary Judgment Is Appropriate in Libel Per Se Cases Such as This One Where Only Questions of Law Are Presented............................................................9, 10

    C.     Defendants' "Content" Statement is Libelous *Per se*...................10

I

## D. <u>**TABLE OF CONTENTS**</u> – Continued

PAGE(s)

V.  **ANALYSIS**.................................................................11-19

    A.  Ostella's Second Amended Complaint..............................11-19

        *Claim I - Invasion of Privacy – False Light Publicity*..............11-13

        *Claim II – Invasion of Privacy – Appropriation of Name*...........13-15

        *Claim III – Cyber-Harassment*....................................15, 16

        *Claim IV – Defamation "per se" – "Libel per se"*.....................17-19

VI.  **DAMAGES**...............................................................19-22

VII.  **CONCLUSION**..........................................................23

**CERTIFICATE OF SERVICE**...................................................24

# TABLE OF AUTHORITIES

**CASE**                                                                    **PAGE(s)**

Abuemeira v. Stephens (2016) 246 Cal.App.4th 1291, 1299
[201 Cal.Rptr.3d 437]……………………………………………….……..18

Alameda Books, Inc. v. City of Los Angeles,
631 F.3d 1031, 1043 (9th Cir. 2011)………………………………….8

Anheuser-Busch, Inc. v. Natural Beverage Distributors,
69 F.3d 337, 348 (9th Cir.1995)……………………………………….6, 7

Anthoine v. North. Cent. Counties Consortium,
571 F.Supp.2d 1173 (E.D. Cal. 2008)……………………………...9

Armstrong v. Shirvell, 596 Fed.Appx. 433 (6th Cir.2015), cert. denied,
___ US ___, 136 S.Ct. 403, 193 L.Ed.2d 315 (2015)…………………….22

Axelbank v. Rony, 277 F.2d 314, 318 (9th Cir. 1960)………………………19

Barnes-Hind, Inc. v. Super. Ct., 181 Cal. App. 3d 377, 381 (1986)……………...17

Baker v. PrivatAir, Inc.,
Los Angeles County Superior Court BC322198, 12/13/05………………………22

Bates v. Campbell (1931) 213 Cal. 438, 443……………………………...19

B.K.B. v. Maui Police Dep't,
276 F.3d 1091, 1107 (9th Cir. 2002)……………………………………….7

Boyich v. Howell, 221 Cal. App. 2d 801, 802 (Cal. Ct. App. 1963)……………...17

## TABLE OF AUTHORITIES - Continued

**CASE**                                                                          **PAGE(s)**

Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991).................................7

Christian Research Institute v. Alnor (2007) 148 Cal.App.4th 71, 80...............18

Christoff v. Nestle USA, Inc., 47 Cal.4th 468,
97 Cal.Rptr.3d 798, 213 P.3d 132, 137 (2009)………………………………….....20

Clark v. McClurg, 215 Cal. 279, 284, 9 P.2d 505 (Cal. 1932)…………………..9

Cohen v. Hansen,
Case No. 2:12-cv-01401-JCM-PAL (D. Nev. March 1, 2016)………………….....22

Dethlefsen v. Stull,
86 Cal. App. 2d 499, 502 (Cal. Ct. App. 1948)…………………………………....19

Douglas v. Anderson, 656 F.2d 528, 535(9th Cir. 1981)………………………..8

Downing v. Abercrombie & Fitch,
265 F.3d 994, 1010 (9th Cir. 2001)……………………………………………..9, 14

Earp v. Ornoski, 431 F.3d 1158, 1170 (9th Cir. 2005),
cert. denied, 547 U.S. 1159 (2006)…………………………………………………8

Eastwood v. Superior Court, 149 Cal.App.3d 409, 416,
198 Cal.Rptr. 342 (1983)………………………………………………………14

IV



# TABLE OF AUTHORITIES - Continued

**CASE**                                                                                      **PAGE(s)**

F.T.C. v. Network Services Depot, Inc.,
617 F.3d 1127, 1139 (9th Cir. 2010)..................................................8

Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001)................................7

Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007)...........................9

Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001)..............................7

Goodman v. Staples The Office Superstore, LLC,
644 F.3d 817, 826 (9th Cir. 2011)....................................................6

Haeger v. Goodyear Tire & Rubber Co.,
813 F.3d 1233, 1243 (9th Cir.2016)..................................................7

Hebrew Acad. of S.F. v. Goldman, 42 Cal.4th 883,
70 Cal.Rptr.3d 178, 173 P.3d 1004, 1007 (2007)...............................19, 20

Hoffman v. Construction Protective Serv., Inc.,
541 F.3d 1175, 1179 (9th Cir. 2008).................................................6

In re Keegan Mgmt. Co., Sec. Lit., 78 F.3d 431, 436 (9th Cir. 1996).................7

Information Control Corp. v. Genesis One Computer Corp.,
611 F.2d 781, 783 (9th Cir. 1999)....................................................9

## TABLE OF AUTHORITIES - Continued

**CASE**                                                                      **PAGE(s)**

Jones v. Corbis Corp., 815 F.Supp.2d 1108, 1113 (C.D.Cal.2011)
*aff'd,* 489 Fed.Appx. 155 (9th Cir.2012)....................................................14

Larue v. Brown, 235 Ariz. 440,
333 P.3d 767, 773 (Ariz.Ct.App.2014)....................................................20

Lefebvre v. Lefebvre (2011) 199 Cal. App. 4 696....................................18

Leyshon v. Diehl Controls North America, Inc.,
407 Ill.App.3d 1, 349 Ill.Dec. 368, 946 N.E.2d 864, 877 (2010)....................22

Leon v. IDX Systems, 464 F.3d 951, 958 (9th Cir. 2006)............................7

M. G. v. Time Warner, Inc. (2001) 89 Cal.App.4th 623, 636
[107 Cal.Rptr.2d 504]....................................................11

MacLeod v. Tribune Pub. Co., 343 P.2d 36, 52 Cal.2d 536 (Cal. 1959)..............9

Maher v. Devlin (1928) 203 Cal. 270, 275....................................................19

Medical Marijuana, Inc. v. ProjectCBD.com,
(2016) 6 Cal.App.5th 602, 616....................................................11

Medifast, Inc. v. Minkow, No. 10–CV–382 JLS (BGS),
2011 WL 1157625, at *1 (S.D.Cal. Mar. 29, 2011)....................................20

**TABLE OF AUTHORITIES** - Continued

**CASE**                                                                          **PAGE(s)**

Michaels v. Internet Entertainment Group, Inc.,

5 F. Supp. 2d 823, 836 (CD Cal. 1998)......................................................14

Miller v. City of Los Angeles, 661 F.3d 1024, 1036 (9th Cir. 2011)..................7

Newcombe v. Adolf Coors Co., 157 F.3d 686, 695 (9th Cir. 1998)..............9, 14

New York Times v. Sullivan (1964) 376 U.S. 254, 279-80

[11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412].....................................13

Oja v. U.S. Army Corps of Eng'rs,

440 F.3d 1122, 1129 (9th Cir.2006)........................................................19

O'Lee v. Compuware Corp., No. A111774,

2007 Cal. App. Unpub. LEXIS 2691,

2007 WL 963450 (Cal. Ct. App. Apr. 2, 2007)...........................................22

Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.,

682 F.2d 802, 806 (9th Cir.1982)............................................................6

Plumb v. Stahl, 54 Cal. App. 645, 646, 202 P. 468 (1921)..........................17

Price v. Stoessel, 620 F.3d 992, 998 (9th Cir. 2010)..................................9

Primus Automotive Fin. Servs., Inc. v. Batarse,

115 F.3d 644, 649 (9th Cir. 1997)...........................................................7

**TABLE OF AUTHORITIES** - Continued

<u>CASE</u>                                                                                           <u>PAGE(s)</u>

<u>Rockridge Trust v. Wells Fargo, N.A.</u>,

985 F. Supp. 2d 1110, 1155 (N.D. Cal. 2013)……………………………………15

<u>Sanders v. Walsh</u>, 219 Cal. App. 4th 855, 862 (2013)……………………………17

<u>SDV/ACCI, Inc. v. AT & T Corp.</u>, 522 F.3d 955, 959 (9th Cir. 2008)…………18

<u>Scott v. Solano County Health and Social Services Department</u>,

459 F.Supp.2d 959 (E.D. Cal. 2006)………………………………………………9

<u>Shively v. Bozanich</u>, 31 Cal. 4th 1230, 1243, 80 P.3d 676 (2003)………………19

<u>Slaughter v. Friedman</u> (1982) 32 Cal.3d 149,

185 Cal.Rptr. 244, 649 P.2d 886…………………………………………………9, 19

<u>Snider v. Nat'l Audubon Soc'y, Inc.</u>, 1992 WL 182186, at *4,

1992 U.S. Dist. Lexis 10017, *12 (E.D.Cal.1992)………………………………17

<u>Solano v. Playgirl, Inc.</u>, 292 F.3d 1078, 1082 (9th Cir. 2002)…………………12

<u>Stevens v. Snow</u> (1923) 191 Cal. 58, 63……………………………………………19

<u>Taus v. Loftus</u>, 54 Cal. Rptr. 3d 775, 804, 40 Cal 4th 683,

151 P.2d 1185 (Cal. 2007)………………………………………………………9, 17

## TABLE OF AUTHORITIES - Continued

**CASE**                                                           **PAGE(s)**

Walker v. Kiousis, 93 Cal. App. 4th 1432, 1441 (Ct. App. 2001).....................17

Weinberg v. Feisel (2003) 110 Cal.App.4th 1122, 1136
[2 Cal.Rptr.3d 385]...............................................................17

Yeager v. Bowlin, 693 F. 3d 1076, 1082 (9th Cir. 2012)..............................20

Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,
259 F.3d 1101, 1106 (9th Cir.2001)...........................................6

### FEDERAL STATUTES

**STATUTE**                                                        **PAGE(s)**

28 U.S.C. § 1927................................................................6, 7

### CALIFORNIA STATUTES

**STATUTE**                                                        **PAGE(s)**

Calif. Civil Code §45...............................................................9, 17
Calif. Civil Code §45(a)..........................................................17
Calif. C. Civ. Proc. §527.6(3)....................................................15
Calif. C. Civ. Proc. §527.6(b)....................................................15
Calif. C. Civ. Proc. §527.6(6)(A)................................................16
Calif. C. Civ. Proc. §527.6(6)(B)................................................16
Cal. Civ. Code §3344(a) (2013)................................................15

# FEDERAL RULES OF CIVIL PROCEDURE

**RULE**                                                                 **PAGE(s)**

Rule 26...................................................................................5
Rule 26(a)...........................................................................5, 6
Rule 37...................................................................................6
Rule 37(c)(1).........................................................................6

# LOCAL RULES

**RULE**                                                                 **PAGE(s)**

Rule 16-2...............................................................................6

# MISC.

Prosser, Torts 2nd Ed., p. 787.............................................19

X

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>:

Plaintiff, Lisa  Ostella (Ostella), asserts four claims in her Second Amended Complaint (SAC):  Invasion of Privacy – *False Light Publicity*; Invasion of Privacy – *Appropriation of Name*; Cyber-harassment; and Defamation - *libel per se* filed against Defendant, Orly Taitz.  The claims are a result of Taitz's 11 authored posts from her Internet blog accusing Ostella of committing fraud and diverting funds.  Four questions are to be answered by this Motion for Summary Judgment (MSJ): i). Are Taitz's posts invading privacy - *False light publicity* of Ostella?  ii). Are Taitz's posts invading privacy - *Appropriating* Ostella's name?  iii). Are Taitz's posted statements about Ostella *cyber harassing* Ostella?, and iv) Are Taitz's posted statements about Ostella *libelous Per se*?

## II.    <u>ABBREVIATED STATEMENT OF FACTS</u>:

### A. <u>Taitz is a blogger with immense publicity</u>

As a blogger, Taitz published 11 posts from http://www.orlytaitzesq.com accusing Ostella, private person, of stealing funds and hijacking a blog. [**EXB. #1 through 11**] [PPUF[1] ¶1]   Taitz, also filed a police report and an F.B.I report accusing Ostella of the same.  [**EXB. #5, 11, 16; PPUF ¶ 7, 11 & 16**].  The exhibits provided show that these posts have remained as last printed as January 8, 2018 and November 11, 2017 on the Internet. [**EXB. #1 - #11, #13; PPUF ¶ 3 – 14, 16**]  Taitz's blog publicity is tremendous with a visitor count exceeding 94 million and enjoying a top tear ranking of 1% on the Internet. [**EXB. #29 and #30; PPUF ¶ 32 & 33**], plus enjoying commercial incentives through advertising.

---

[1] Plaintiff Proposed Statement of Uncontroverted Facts ["PPUF"]

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

1

## B. <u>Ostella is a private person</u>

Ostella provides webservices with 17 years of experience and knowledge of C-language, coding, and design. **[PPUF ¶ 38]** Ostella offers, from her area of the tri-state New Jersey, ecommerce site maintenance and administration, hosting, web-product design and composition, and she buys domains and creates spec site for sale. The Internet is Ostella's life-blood, for her operations, marketing of services, clientele communications and shared word-of-mouth referrals. **[PPUF ¶ 38]** Before Taitz accused Ostella on the Internet, Ostella's clients were a variety of social groups, politically affiliated groups, and community associations. After all, from 2700 miles away, Taitz found out about Ostella's services and sought her web services for Taitz's www.drorly.blogspot.com site. Ostella always remained a private person, a behind the scenes web-geek.

## C. <u>Ostella developed a web-product</u>

Ostella developed a web-product with the domains she owned,[2] with the intention to sell it to Taitz. **[PPUF ¶ 35]** Once it was ready to test, she invited Taitz on February 3, 2009, to test use the web-product. **[PPUF ¶ 35]**

## D. <u>Taitz falsely claims a hack occurred</u>

During her use, Taitz claimed to own the blog to the general Internet public, though she did not. **[PPUF ¶ 30]** Taitz claimed a hack occurred, but none did. Taitz disregarded all of Ostella's explanations as to why there was not a hack and still filed an FBI report claiming a hack. **[PPUF ¶ 30]** Taitz lacked the basis to claim there was a hack. Ostella was the only one who would know if a hack occurred. Taitz disregarded Ostella's explanation of the email suffix glitch causing

---

[2] Ostella purchased the domain *defendourfreedoms* with suffixes *.com*, *.net*, *.info*, *.org*, and *.us*, on December 18, 2008. [PSUF ¶2].

1   error messages to donors, and still publicly claimed a hack occurred. **[EXB. #26**
2   **and # 27; PPUF ¶ 29 & 30]**.

3         **E.  Taitz wrongfully accuses Ostella to law enforcement**

4         Taitz filed a second filing with the FBI, which accused Ostella of diverting

5   funds. **[EXB. #5; PPUF ¶ 7]** Taitz also filed a report with the Orange County

6   Sheriff's Department, accusing Ostella of taking $10,000 and stating that she had a

7   criminal record, i.e. that she was a/k/a Lisa Liberi, a person who a criminal record.

8   **[PPUF ¶ 19]**

9         **F.  Ostella ends access to blog to allow for an investigation**

10        Ostella started to transfer Taitz's content to another file after Ostella told

11  Taitz to correct her FBI report. **[PPUF ¶ 44]**   Ostella had told Taitz to find another

12  webmaster if she did not correct her report to the FBI.  Hence, Ostella stopped

13  transferring the content files to *defendourfreedoms.net* and all access to the beta

14  blogsite ended to allow for an investigation. **[PPUF ¶ 45]**   Ostella was not able to

15  sell the web-product to Taitz.  Ostella would not hijack her own web-product that

16  client did not buy.

17        **G.  Taitz reports from and about her PayPal records accusing Ostella**

18

19        Taitz posts claim that she reviewed her PayPal donation account records that

20  she controls. **[EXB #1- #13, #16; PPUF ¶ 3 – 14, & 16]**, Taitz even controlled the

21  donate plugin that Ostella created and gave to Taitz on December 28, 2008. **[EXB**

22  **#25; PPUF ¶ 28]**  Ostella's bank is not associated with Taitz's PayPal donation

23  accounts. **[EXB #20 - #24; PPUF ¶ 23 - 27]**

24        **H.  Taitz PayPal records contradict Donation Diverting Claims**

25        Taitz's subpoenaed PayPal records contradict Taitz's criminal accusation of

26  Ostella. Taitz PayPal donation records do not show that donations were diverted.

27  Taitz has had these records at her disposal. **[EXB #20 - #24; PPUF ¶ 23 - 27]**

28

## I.  Taitz published 11 libelous posts

1.    4/17/2009 - *"More explosive Information dossier #6"* a posting of *dr_TAITZ@yahoo.com* email on *www.orlyTAITZesq.com*, **EXB. #11; PPUF ¶ 13**.

2.    4/18/2009 *"Follow up on Lisa Liberi, Paralegal to Phil Berg"* a posting from www.orlyTAITZesq.com.  **EXB. #1; PPUF ¶  3.**

3.    4/18/2009 – *"Don't Be Fooled"* posted on www.orlyTAITZesq.com, **EXB. #2**; PPUF  ¶  **4.**

4.    4/19/2009 – *"Every day I get such evidence of missing or misdirected funds"* posted on www.orlyTAITZesq.com.  **EXB. # 3; PPUF ¶** 5.

5.    4/20/2009 - *"About Lisa Ostella - don't patronage diverting funds from a nonprofit, don't be part of slander"* posted an email on www.orlyTAITZesq.com. **EXB. #4; PPUF ¶ 6.**

6.    4/21/ 2009 – *"Update on Lisa Ostella and Lisa Liberi,"* posted a letter written to Mr. Al Barrs on www.orltyTAITZesq.com  verifying the filed OCSO report. **EXB. #5; PPUF ¶** 7.

7.    4/23/2009 – *"ORLY, Rush Limbaugh put article that mentions you on his website!!!"* on www.orlytaitzesq.com. **EXB. #6; PPUF ¶** 8.

8.    4/23/2009 – *"Fwd: Lisa Ostella Internet Fraud in North Brunswick, N.J."* on www.orlytaitzesq.com. **EXB. #7; PPUF ¶** 9.

9.    5/19/ 2009 – *"NJ Police"* posted on  www.orlyTAITZesq.com. **EXB. #8; PPUF ¶ 10 & 11.**

10.    1/29/2010 – *"I Need Your Help"* on www.orlytaitzesq.com. **EXB #9; PPUF ¶ 12.**

11.    3/3/ 2011 – *"Who are these people in Germany threatening me?"* posted on  www.orlyTAITZesq.com.  **EXB. #10; PPUF ¶ 13.**

## J. **Taitz's Knowingly Lacks factual support for her Statements**

Because Taitz never had the factual information to support her accusations of Ostella, Taitz sought to ask for information, from supporters, in January 29, 2010 post [**EXB #9; PPUF ¶ 12.**].  Taitz is still at it, nearly nine (9) years after her libelous statements started, asking people, on <u>March 10, 2018,</u> through her *Twitter* account,[3] for information.[**EXB #37; PPUF ¶ 50**]  Taitz's actions are brazen and reprehensible, especially so, since Taitz has done every possible filing and appeal, to delay this case and prevent discovery, and frustrate timely adjudication of this case.  In the absence of cooperating in discovery, and not producing supporting information for her allegations, the Defendant fervently seeks help.  At this late juncture, it appears that the Defendant is in a desperate search for credibility.

## III.   **ARGUMENT FOR SANCTIONS**

### A. **Taitz's refusal to disclose and provide discovery is sanctionable**

Taitz has not provided information to support the truth of her accusations.  Since inception of this case, Taitz has not provided defense supportive information addressing truthfulness of her statements.  Taitz did not productively respond to 2016 and 2017 discovery requests nor has Taitz provided Rule 26 disclosures,[4]

---

[3] https://twitter.com/DrOrlyTaitzEsq/status/972508369117265920?ref_src=twsrc%5Etfw&ref_url=https%3A%2F%2Fs9e.github.io%2Fiframe%2Ftwitter.min.html%23972521065510526977

[4] Fed. R. Civ. P. 26(a) states in pertinent part:

(a)Required Disclosures.

(1) *Initial Disclosure.*

(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:(i) the name and, if known, the address and telephone number of each individual likely to have

even after Ostella provided her Rule 16-2 Meet and Confer Pre-trial Conference Disclosures including exhibits, on February 3, 2018.

Taitz repeatedly abused the Anti-SLAPP Act provisions, without proving truthfulness, and has kept asserting the mere existence of a "cause" with the words "defend our freedoms *foundation*" to refuse providing information to support her written accusations of Ostella or to prevent discovery of her information.

Taitz's willful refusing to cooperate with discovery, disclosures, and pretrial conference memorandum is sanctionable.[5]  Taitz's answer and affirmative defenses to the Ostella Second Amended Complaint (SAC) can be stricken.[6]  *See* also, Hoffman.[7]  Taitz did not comply, with Rule 26 and Rule 37.[8] Taitz's conduct has prejudiced Ostella's ability to  prosecute this case by denying the opportunity to assess "whatever" Taitz seeks to introduce, "now".

discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;…(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

[5]*See* Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 (9th Cir.1982) ("It is firmly established that the courts have inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders.").
[6] *See* Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir.1995)).
[7]*See* Hoffman v. Construction Protective Serv., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008)).
[8] The parties are prevented, pursuant to Rule 37, Fed. R. Civ. P. 37(c)(1)[8], from using information or witness not disclosed to the other party. (*See* Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011). This is the case "even absent a showing in the record of bad faith or willfulness."(*See* Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001)).

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

6

## B. <u>Taitz's actions are sanctionable under 28 U.S.C. §1927</u>

Under 28 U.S.C. § 1927,  courts are empowered to sanction ". . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . [by compelling them] to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. Courts interpret § 1927 sanctions as requiring a showing of "subjective bad faith," which "is present when an attorney knowingly or recklessly raises a frivolous argument."[9] Taitz being an attorney and being actively involved in this case as party and counsel is subject to its authority.

In <u>Primus,</u> the 9th Circuit Court  noted "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." In the court's view, "the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." [10] Taitz throughout this case has diverted from the facts, by excessive, wasteful, and vexatious filings, to suppress the truth

Taitz has caustically attacked Ostella and her counsel without merit and has disrespected the Court's orders.  Disrespecting the Court is an abusive litigation tactic that is reprehensible.[11]  Even if procedural rules exist which sanction the same conduct, Court's inherent power supersedes to invoke its power.[12]  Taitz's

---

[9] <u>B.K.B. v. Maui Police Dep't,</u> 276 F.3d 1091, 1107 (9th Cir. 2002) (quoting <u>In re Keegan Mgmt. Co., Sec. Lit.,</u> 78 F.3d 431, 436 (9th Cir. 1996)).

[10]<u>Primus Automotive Fin. Servs., Inc. v. Batarse,</u> 115 F.3d 644, 649 (9th Cir. 1997)).

[11] <u>Leon v. IDX Systems,</u> 464 F.3d 951, 958 (9th Cir. 2006). This includes the Court's authority to sanction conduct abusive of the judicial process. <u>Chambers v. NASCO, Inc.,</u> 501 U.S. 32, 43-45 (1991).

[12] <u>Haeger v. Goodyear Tire & Rubber Co.,</u> 813 F.3d 1233, 1243 (9th Cir.2016) (citations and internal quotations omitted).

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

7

conduct throughout this case, has displayed a vexatious pursuit. Such  is sanctionable.[13] The nine (9) years this case has been on the books is due to the exhaustive and needless filings by Taitz, only serving to frustrate the timely dispensation of this case.  Taitz affirmative defenses should be stricken and Taitz should not be able to introduce any evidence, as she has failed to disclose it to Ostella.

## IV.   ARGUMENT FOR SUMMARY JUDGMENT

### A.   Summary Judgment is Appropriate Where Facts are not in Dispute

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will  bear the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In this instance, there is no genuine dispute as to any material fact because the issue is one of law.  In such instances, summary judgment is a favored procedure. Tokio Marine & Fire Ins. Co., Ltd. v. United Air Lines, Inc., 933 F. Supp. 1527, 1529 (C.D. Cal. 1996).  Summary judgment is useful in this matter.  Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565 (Fed Cir. 1991).  This case is without issues of credibility of witnesses, motivation and intent, bias, or state of mind; hence, summary judgment is proper in this case.  See 9th Circuit cases.[14]  Summary judgment should be

[13] See Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir.1995) Miller v. City of Los Angeles, 661 F.3d 1024, 1036 (9th Cir. 2011); Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001); Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001).
[14] Earp v. Ornoski, 431 F.3d 1158, 1170 (9th Cir. 2005), cert. denied, 547 U.S. 1159 (2006); motivation or intent, Douglas v. Anderson, 656 F.2d 528, 535(9th Cir. 1981); bias, Alameda Books, Inc. v. City of Los Angeles, 631 F.3d 1031, 1043 (9th Cir. 2011); or a person's state of mind. F.T.C. v. Network Services Depot, Inc., 617 F.3d 1127, 1139 (9th Cir. 2010).

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

8

granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Given the paucity of Taitz's information, any "bald assertions by Taitz that genuine issues of material fact exist will be deemed insufficient.[15]

### B. Summary Judgment Is Appropriate in Libel Per Se Cases Such as This One Where Only Questions of Law Are Presented.

Libel is an unprivileged written publication that is false and that causes another to be exposed to hatred, contempt, ridicule or causes to be shunned or avoided, or which has a tendency to injure him in his occupation.[16] Libel is an invasion of the interest in a person's reputation.[17] The Libelous publication cannot be accidental without intent and factual nature.[18] The Libel must be made to one or more people who could understand the defamatory meaning and impact.[19]

Libel *per se* is actionable on its face as it is read by the general public. *See* Slaughter; MacLeod; Downing; Crowe; and Clark.[20] If a publication is shown to

---

[15] Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007).
[16] Calif. Civil Code §45.
[17] Anthoine v. North. Cent. Counties Consortium, 571 F.Supp.2d 1173 (E.D. Cal. 2008).
[18] Price v. Stoessel, 620 F.3d 992, 998 (9th Cir. 2010),
[19] Scott v. Solano County Health and Social Services Department, 459 F.Supp.2d 959 (E.D. Cal. 2006). *See also,* ". . .libel . . . has a natural tendency to injure a person's reputation. Taus v. Loftus, 54 Cal. Rptr. 3d 775, 804, 40 Cal 4th 683, 151 P.2d 1185 (Cal. 2007).
[20] Clark v. McClurg, 215 Cal. 279, 284, 9 P.2d 505 (Cal. 1932). In both instances, no factual inquiry is required. A libel that is defamatory without the need to introduce explanatory matter is libel on its face or "per se" libel. Id. § 45a; Slaughter v. Friedman (1982) 32 Cal.3d 149, 185 Cal.Rptr. 244, 649 P.2d 886. Examples of libelous publications that can have such a tendency are those asserting a refusal to pay just debts, Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 783 (9th Cir. 1999), and mental derangement, Crowe v. County of San Diego, 608 F.3d 406, 441 (9th Cir. 2008). Libels per se are actionable even if they are susceptible to innocent interpretations. MacLeod v. Tribune Pub. Co., 343 P.2d 36, 52 Cal.2d

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

9

1  be *libelous per se*, such as attributing criminality as is the case in Taitz's

2  accusations of Ostella, damages are presumed. Summary judgment motions,

3  therefore, are particularly appropriate where, as here, a *libel per se* is asserted.

4

5  ### C.    Defendants' "Content" Statement is Libelous *Per se*.

6      The primary question presented by this motion for summary judgment is

7  whether Taitz's statements that Ostella *took funds, diverted, or committed fraud* in

8  11 posts is libel on its face.  Ostella argues that it is Libel.  *First*, there is no

9  question that Taitz authored all of the post and did so with intent to publish.  The

10  post were done to reach tens of millions on the Internet via Taitz's own blog.

11  *Second*, there is no question that Taitz's statements were intended as factual

12  statements and not opinion.  It was capable of being proved true or false: i.e., either

13  Ostella *"diverted funds"* or *"not diverted funds"*, either Ostella *"committed fraud"*

14  or *"not committed fraud."*

15

16      Taitz did not care to verify the truth of her statement though having her

17  PayPal records in possession. *Third*, there is no doubt that Taitz statements were

18  about Lisa Ostella. *Fourth*, there is no question that the statements are all false.

19  Taitz's PayPal records contradict her accusations of Ostella.  Taitz's libel

20  statements had intent and planning to reach millions by accusing Lisa Ostella of

21  criminal activity from Taitz's own blog in a repetitive manner.  <u>Hence, Ostella's

22  Motion for Summary Judgment is warranted.</u>

23

24

25

26

27  536 (Cal. 1959).  Whether a publication is libelous on its face is a question of law to be decided
from the bench. <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1010 (9th Cir. 2001); (citing

28

## V.   ANALYSIS

### A.  Ostella's Second Amended Complaint:

Ostella's SAC outlines four (4) Causes of 'Action for Taitz's false reports to law enforcement and 11 postings on her website/blog, www.orlytaitzesq.com and www.taitzreport.com,[21] accusing Ostella of criminal activity.

### *Claim I - Invasion of Privacy – False Light Publicity:*

For Summary Judgment in her favor, Ostella's false light claim establishes the following: **(1)** Taitz published numerous posts, for hundreds of thousands of people to read on the Internet daily, creating false implications of criminality of Ostella; **(2)** Taitz's posted criminal accusations of Ostella are highly offensive to a reasonable person and it has the tendency of injuring Ostella's business reputation; **(3)** Taitz's posts have been repetitive and continuous showing a thoughtful harmful intent; and **(4)** Ostella's reputation damages are reasonably expected from Taitz's postings. *See* Solano,

Further, Ostella argues that the 9th Circuit in Flowers, stated "…"false light" cause of action "is in substance equivalent to ... [a] libel claim, and should meet the same requirements of the libel. Flowers v. Carville, 310 F.3d 1118, 1133 (9th Cir. 2002). [22] All the false light claim elements are in this case.[23]

---

Newcombe v. Adolf Coors Co., 157 F.3d 686, 695 (9th Cir. 1998).
[21] Taitz launched www.taitzreport.com June 2017 republishing all her false accusations of criminality against Ostella.
[22] A **"false light" claim**, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such. Medical Marijuana, Inc. v. ProjectCBD.com (2016) 6 Cal.App.5th 602, 616, citing M. G. v. Time Warner, Inc. (2001) 89 Cal.App.4th 623, 636 [107 Cal.Rptr.2d 504].
[23] *Fales Light elements* (a) the defendant disclosed to one or more persons information about or concerning the plaintiff that was presented as factual but that was actually false or created a false impression about him; (b) the information was understood by one or more persons to whom it

Taitz blogged accusing Ostella of *diverting funds* in a repetitive Internet campaign from 2009 through 2011 [**EXB. # 1 – 11, 13; PPUF ¶ 3 – 14, 16**].  Taitz did so while ignoring the truth of her financial records in her control for review and that are contrary to her accusations of Ostella.  Taitz's accusations of Ostella pertain to Taitz's own PayPal donation account and what she saw in her own PayPal donations account.  Subpoenaed records contradict what Taitz has accused Ostella of doing, [**EXB# 20, 21, 22, 23; PPUF ¶ 23 - 27**].

Taitz also claimed that Ostella *hijacked the blog* web-product.  Taitz did not own it because Ostella was never able to consummate the web-product transaction with Taitz, amid Taitz's Internet claims of being hacked, reporting to the FBI, claiming publicly that she owned the blog, and then accusing Ostella of diverting fund. Taitz essentially created a <u>chaotic mess</u> for Ostella making it impossible to sell Taitz the web-product. In this chaotic mess created by Taitz, she did not regard the truth about her ownership to claim that Ostella "hijacked" the blog.

Any reasonable person wanting a webmaster would not seek Ostella's services fearing that she would hijack their site.  Taitz has been a master of deception, publicly destroying Ostella's character and professional reputation, placing Ostella in a false light.  Taitz's claim that Ostella diverted funds and hijacked a site, was a perfect way to destroy Ostella.  Any reasonable person can fathom the personal, professional, and social negative impact being deemed a criminal on the Internet can have on a person, especially from a blog that has a visitor counter exceeding 96 million as of 1/18/2018, is ranked in the top 1% by

---

was disclosed as stating or implying something highly offensive that would have a tendency to injure the plaintiff's reputation; (c) by clear and convincing evidence, the defendant acted with constitutional malice; and (d) The plaintiff was damaged by the disclosure. *See* <u>Solano v. Playgirl, Inc.</u>, 292 F.3d 1078, 1082 (9th Cir. 2002).

---

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

12

Alexa, has over 500 linked websites, and these accusations have been endured for almost nine (9) years.

Taitz's posted accusations demonstrate actual malice,[24] because Taitz was aware that   i). Ostella owns the *defendourfreedoms* domains as she had not paid for Ostella's services, ii). that the blog and the PayPal account were not "hacked," [**EXBS #26 and #27; PPUF ¶ 29 & 30**], and iii). that Taitz is aware that her own Bank of America account is the only account associated with her PayPal donation accounts. [**EXB# 20, 21, 22, 23, 24; PPUF ¶ 23 - 27**]

Taitz's 11 posted statements and published law enforcement reports, accusing Ostella as she has continuing for nearly nine (9) years, creates a reasonable assessment that Ostella has been damaged and will be for the foreseeable future by virtue of the publications being on the Internet with almost perpetual duration. Hence, *Google keyword* search [Lisa Ostella] results "*Crimes Lisa Ostella*" – *OrlyTaitzEsq.com*. [**EXB #13; PPUF ¶ 16**], as of January 8, 2018.

Therefore, Ostella has met her burden and Summary judgment in her favor is warranted for *Claim I – False Light Publicity*.

### Claim II - Invasion of Privacy – Appropriation of Name:

For Summary Judgment in her favor, Ostella's claim of commercial misappropriation establishes the following: **(1)**. Taitz use of Ostella's, **(2)**. Taitz's appropriating Ostella's name for Taitz's commercial advantage, **(3)**. Taitz

---

[24] **Actual malice'** —is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan (1964) 376 U.S. 254, 279-80 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412].

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

13

appropriated without Ostella's consent; and **(4)**. the appropriation injured Ostella.[25] In <u>Downing</u>, the 9th Circuit stated, any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner ... for purposes of advertising ... without such person's prior consent... shall be liable for any damages sustained by the person."[26]  Ostella's ownership of her name and likeness is a legally recognized right.[27]

Further, Ostella argues that her name appears on Taitz blog cite proximate to advertisements on Taitz's blog and Taitz posts plea for donations.  This relation between Taitz requesting donations via her blog, her blog acquiring sponsoring advertisements, proximately to Lisa Ostella's name in posts, demonstrates the common law requirement of a direct connection between the alleged use of the name and the commercial purpose.

Needless to say, Taitz's blog visitor counter registers increase through the years as well as increases in advertising.  Taitz has financially benefited at the expense of Ostella, by appropriating Ostella's name in a narrative on her blog so that potential donors would have sympathy for Taitz and her claimed causes. Taitz's written statements created a <u>sensational narrative</u> that Ostella misdirected funds by embezzling from her foundation, that Ostella had a criminal history, that Ostella committed fraud, and that Taitz needed donor support to fend off what she

---

[25] **Elements for Appropriation of Name** – *See* <u>Newcombe v. Adolf Coors Co.</u>, 157 F.3d 686, 692 (9th Cir.1998), <u>Jones v. Corbis Corp.</u>, 815 F.Supp.2d 1108, 1113 (C.D.Cal.2011) *aff'd,* 489 Fed.Appx. 155 (9th Cir.2012).
[26] <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1001 (9th Cir.2001) (citing <u>Eastwood v. Superior Court</u>, 149 Cal.App.3d 409, 416, 198 Cal.Rptr. 342 (1983)).
[27]   <u>Michaels v. Internet Entertainment Group, Inc.</u>, 5 F. Supp. 2d 823, 836 (CD Cal. 1998). "The common law of California recognizes this right of publicity in a person's name, likeness and identity."

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

14

1   claimed Ostella did.  Taitz willfully violated Ostella's right to privacy under

2   California law.[28]

3       Therefore, Ostella has met her burden and Summary judgment in her favor is

4   warranted for *Claim II – Appropriation of Name*

5       ### Claim III - Cyber-Harassment:

6

7   For Summary Judgment in her favor, Ostella claims that Taitz has cyber

8   harassed her by Taitz accusing her online, through Taitz's 11 posts and published

9   law enforcement reports, that accused Ostella of diverting funds, of committing

10  fraud, and of hijacking the blog. To a webmaster, like Ostella, whose life-blood for

11  her business is the Internet, it is absolutely devastating on many levels.  Taitz

12  accusing Ostella as she has if cyber harassment[29] without any legitimate purpose,

13  and has caused emotional distress that comes with being accused of committing

14  theft and fraud. **[EXB # 1 - 11, 13, 16; PPUF ¶ 3 – 14, 16, & 19]**  This effect is

15  compounded by Taitz brandishing herself as credible because she is a lawyer and

16  touts that she should be trusted for what she states and claims.  All of Taitz's

17  postings about Ostella have an *intentional harassing* effect on Ostella that <u>any</u>

18  reasonable person can appreciate.[30]

19

20

21  [28]  **Cal. Civ. Code** § 3344(a) (2013).

22  [29]  **Harassment: Calif. C. Civ. Proc. 527.6(3)**"Harassment" is defined as ". . . *a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses*

23  *the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause*

24  *substantial emotional distress to the plaintiff.*" (§ 527.6, subd. (b), italics added.)

25  [30]  *See* <u>Rockridge Trust v. Wells Fargo, N.A.</u>, 985 F. Supp. 2d 1110, 1155 (N.D. Cal. 2013).)

26  Any reasonable person would be caused to suffer substantial emotional distress from being criminally accused as Ostella has been by Taitz's numerous publications. (*See* Cal. Civ. Proc.

27  Code § 527.6)

28

Further, Ostella argues that, Taitz repetitive pattern of postings, aggravates the harassment, and that it would cause any *reasonable person to suffer substantial emotional distress*.  Taitz's posts coax donors and followers to garner bad sentiments toward Ostella.  Ostella has felt the stigma of being accused and the apprehension of possible backlash from Taitz's followers and financial supporters, Taitz has intentionally and repeatedly placed Ostella in a harassing and hostile environment for almost nine (9) years.

Ostella argues that it established the requisite elements of experiencing cyber harassment and merits that a retraining order be imposed on Taitz, pursuant to California Code of Civil Procedure §527.6.[31]  By enjoining Taitz, Taitz should be ordered to strike all posts naming Lisa Ostella that are in the United Stated on servers and outside the United States on servers, and enjoined, from **(1)** Engaging in acts on the Internet commonly referred to as `Spoofing' which includes using false names in e-mails or postings to or regarding Ostella; and **(2)** Posting on websites, Blogs, or otherwise putting information on the Internet of a negative nature against Ostella.  Furthermore, that Taitz is prevented from seeking retribution against relatives of Lisa Ostella, and shall not post about Ostella's family.  Furthermore, Taitz is to pin a retraction pursuant to Cal. Civ. §48a, to the top of blog for 1 year) apologizing and reversing what has been said about Lisa Ostella.

Therefore, Ostella has met her burden and Summary judgment in her favor is warranted for *Claim II – Cyber Harassment*

---

[31] "[a] person who has suffered harassment . . . may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section." § 527.6(6)(A) and (B).

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

16

1

2
***Claim IV - Defamation "per se" – "Libel per se":***

3
For Summary Judgment in her favor, Ostella's claim for *defamation, Libel*

4
*per se*, establishes the following: **(1).** a publication[s] "postings' to tens of millions

5
to read occurred, **(2).** the postings are based on false information, **(3).** the postings

6
are defamatory, and (4). the postings are unprivileged, and that **(5).** the postings

7
cause damages."[32] Ostella also established that Orly Taitz is the author and

8
publisher of the posts.  Where a statement is libel *per se*, damage to reputation is

9
presumed, and the Plaintiff need not show actual damage.[33]

10
Further, Ostella argues, there is <u>no doubt,</u> at all, of the <u>tenor</u> of Taitz's

11
accusations of Ostella that have lasted through nearly nine (9) years on the

12
Internet.  California law establishes that statements are defamatory *per se*, if they

13
accuse a person unambiguously charge a crime, dishonesty, fraud, . . . , or are

14
falsehoods that injure one in his office, business, profession, or occupation.[34]

15
Taitz's 11 posts and published law enforcement reports accusing Ostella of

16

_____

17
[32] *See* <u>Taus v. Loftus</u>, 40 Cal. 4th 683, 720 (2007) (citation omitted). *Also See* **Libel,** Libel is the

18
written form of **defamation**, defined as "a false and unprivileged publication by writing. . . or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or

19
obloquy. . . or which has a tendency to injure him in his occupation." <u>Sanders v. Walsh</u>, 219 Cal. App. 4th 855, 862 (2013), Cal. Civ. Code § 45. **Libel *per se*** is a statement that is defamatory on

20
its face. <u>Id</u>. § 45(a); <u>Barnes-Hind, Inc. v. Super. Ct.</u>, 181 Cal. App. 3d 377, 381 (1986).

21
[33] Libel that is defamatory without requiring explanation is libel on its face or libel *per se*, and is

22
actionable without the need to prove damages. Civ. Code § 45a; <u>Walker v. Kiousis</u>, 93 Cal. App. 4th 1432, 1441 (Ct. App. 2001).False allegations of criminal conduct are one example of libel

23
*per se*. (*See* <u>Weinberg v. Feisel</u> (2003) 110 Cal.App.4th 1122, 1136 [2 Cal.Rptr.3d 385]).

[34] *See* <u>Boyich v. Howell</u>, 221 Cal. App. 2d 801, 802 (Cal. Ct. App. 1963); <u>Snider v. Nat'l</u>

24
<u>Audubon Soc'y, Inc.</u>, 1992 WL 182186, at *4, 1992 U.S. Dist. Lexis 10017, *12 (E.D.Cal.1992)

25
(denying motion to dismiss where "the clear implication from the article is that plaintiff is being investigated by the I.R.S."); <u>Barnes-Hind, Inc.</u>, 181 Cal. App.3d at 385 ("Perhaps the clearest

26
example of **libel *per se*** is an accusation of crime."); <u>Plumb v. Stahl</u>, 54 Cal. App. 645, 646, 202 P. 468 (1921) ("it has always been held that it is libel *per se* to charge a person with the

27
commission of a crime involving moral turpitude").

28
Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

17

1   diverting funds, hijacking a blog, and committing fraud, is just that, i.e.,

2   *defamation – libel per se*.  In Christian Research Institute, the Court stated that a

3   defendant's website had stated that a  "Federal Criminal Mail Fraud Investigation"

4   had been launched against plaintiffs, constituted libel under Civ. Code § 45).[35]

5       Taitz's has committed Libel and it was done in an aggravated manor.  Taitz

6   repeated libel is a series of false and unprivileged publications by writing on her

7   blog www.orlytaitzesq.com, exposing Lisa Ostella to injury in her occupation.[36]

8   Such a libel is one that has a natural tendency to injure a person's reputation.

9       Taitz disregard the truth of her records, explanations, and events.  As a

10  licensed professional, Taitz was fully aware her PayPal donation records, status of

11  web-product ownership, her limited knowledge of the web-products C-panel, and

12  her own bank account's association to her donations accounts.

13      Moreover, Ostella argues that Taitz accused Ostella falsely to law

14  enforcement. [**EXB# 16; PPUF ¶ 19**].  Taitz was aware of Ostella's identity and

15  Taitz should have known that Ostella did not take $10,000 as Taitz reported in her

16  Orange County Sheriffs Dept. report and in her FBI report asserted in *Dossier 6*.

17  [**EXB# 13 - 17; PPUF ¶ 16 - 20**] Taitz disregards what her PayPal records

18  demonstrate which contradicts her law enforcement reports accusing Ostella.

19  Ostella asserts that false reporting is not protected public interest or protected

20  speech.[37]

---

[35]  *See* Christian Research Institute v. Alnor (2007) 148 Cal.App.4th 71, 80.
[36]  *See* SDV/ACCI, Inc. v. AT & T Corp., 522 F.3d 955, 959 (9th Cir. 2008).
[37]  *See* Abuemeira v. Stephens (2016) 246 Cal.App.4th 1291, 1299 [201 Cal.Rptr.3d 437] quoting Lefebvre v. Lefebvre (2011) 199 Cal. App. 4 696 [where the defendant's police report was determined to be ***false*** . . . against the Plaintiff].

Plaintiff's Motion for Summary Judgment                    18
Lorenzo Law Firm, P.A.

Taitz has falsely accused Ostella of committing criminal activity, fraud and theft which has brought to Ostella disrepute which is tantamount to *Libel per se* action.[38]  Caselaw history places Taitz posting clearly as *defamation, Libel per se.*[39]

Therefore, Ostella has met her burden and Summary judgment in her favor is warranted for *Claim IV – Defamation Per Se / Libel Per Se.*

## VI.   **DAMAGES:**

Taitz's libelous accusations of Ostella draw punitive treatment.[40]   Taitz's posts have been last seen on the *World Wide Web*,[41] having devasting impact, as late as January 8, 2018, constituting 8-3/4 years of being viewable by tens of millions of visitors.[42] Any person would reasonably fathom being harmed if they

---

[38] *See* Axelbank v. Rony, 277 F.2d 314, 318 (9th Cir. 1960)(a letter written to a News Agency **falsely accusing** Plaintiff of pirating a film was libel *per se* because the letter on its face suggested Plaintiff was untruthful, he received stolen property, and he intentionally misappropriated literary property);  Slaughter v. Friedman, 32 Cal. 3d 149, 153-54 (1982). Falsely charging a person with a violation of confidence reposed in him or with treachery to his associates is also actionable *per se.*

[39] *See* Dethlefsen v. Stull, 86 Cal. App. 2d 499, 502 (Cal. Ct. App. 1948)( a **published letter** stating that plaintiff received partnership funds that he failed to deposit to the firm's account was held libelous on its face); Bates v. Campbell (1931) 213 Cal. 438, 443*(***an accusation** that plaintiff, a publicity agent, continued to use the employer's stationery after discharge from her employment, *misleading various persons*, was a charge of breach of confidence and trust, and tended to injure plaintiff in her occupation, was ***libelous per se***.); Maher v. Devlin (1928) 203 Cal. 270, 275, Stevens v. Snow (1923) 191 Cal. 58, 63 (imputing business misconduct in single transaction or occurrence).[emphasis added]

[40] *See* Shively v. Bozanich, 31 Cal. 4th 1230, 1243, 80 P.3d 676 (2003); Prosser, Torts 2nd *Ed.*, p. 787. One who publishes false and libelous statements is liable for general, special and punitive (exemplary damages). Each repetition of the defamatory statements is a separate publication, giving rise to a separate cause of action.

[41] Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122, 1129 (9th Cir.2006) ("the publication of defamatory on the web has the potential to be vastly more offensive and harmful than it might otherwise be in a more circumscribed publication.").

[42] One "general rule" is that a statement is republished when it is "repeat[ed] or recirculate[d] ... to a new audience." Hebrew Acad. of S.F. v. Goldman, 42 Cal.4th 883, 70 Cal.Rptr.3d 178, 173

---

were criminally accused, as Taitz has done to Ostella for nearly 9 years, accusing Ostella of committed fraud, hijacking a website and stealing funds.

Since Ostella is a webmaster, dependent on the Internet as her professional life-blood, Taitz accusing her online is severe having a <u>perpetual disastrous effect</u> on Ostella's present and future life and retirement potential. Taitz's planned, organized online campaign to destroy Ostella's online reputation has an endless impact into Ostella's retirement years.

Ostella has lost her clientele and prospects are severely limited because of Taitz's posts. <u>Each post</u>, lasting on the *World Wide Web*, for nearly 9 years, has an <u>individual negative affect</u> on Ostella's career, present and future. Taitz should be punitively treated for each post and its years of publicity online. Taitz's efforts to obstruct and prolong this case should be as well considered. Taitz has been her own *judge and jury* accusing Ostella online for tens of millions to read, <u>without having</u> the information to support it and not caring about the truth.

Ostella, therefore seeks the following:

i). General/presumed Damages in the amount of $10,000,000.00,

ii). Special/Compensatory Damages    $5,000,000.00,

iii). Punitive/Exemplary Damages as determined by the Court, and

iv). Equitable relief, in addition to monetary damages outlined in (i)-(iv), by way of an injunction, an Order stating that:

---

P.3d 1004, 1007 (2007); <u>Yeager v. Bowlin</u>, 693 F. 3d 1076, 1082 (9th Cir. 2012) (holding that "a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience"); <u>Larue v. Brown</u>, 235 Ariz. 440, 333 P.3d 767, 773 (Ariz.Ct.App.2014)(comments and replies to a defamatory post constitute a new cause of action); <u>Christoff v. Nestle USA, Inc.</u>, 47 Cal.4th 468, 97 Cal.Rptr.3d 798, 213 P.3d 132, 137 (2009); <u>Medifast, Inc. v. Minkow</u>, No. 10–CV–382 JLS (BGS), 2011 WL 1157625, at *1 (S.D.Cal. Mar. 29, 2011) (the single publication rule "does not address the issue of repeated publications of the same libelous matter over a substantial period of time.")

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

20

a.      Order Taitz to publicly state a retraction, pursuant to *Cal. Civ.* §48a, of all her posts and publications about Ostella on her websites/blogs, and social media sites; and make a formal public apology on her websites/blogs and social media accounts for her false statements and allegations;

b.      Ordering Taitz to remove any and all postings and publication about and naming Lisa Ostella, or any other third party as associated with Lisa Ostella from all her websites/blogs, website/bog archives, and all her social media and public forum sites;

c.      Enjoining Taitz from ever mentioning or alluding to Lisa Ostella and any of her family members, online and offline, including but not limited to Taitz's websites/blogs, social media sites, public forums or through e-mail; and

d.      Enjoining Taitz from ever mentioning or alluding to Lisa Ostella and family members and neighbors online and offline, including but not limited to Taitz's websites/blogs, social media sites, public forums or through e-mail.

v).    Enjoining Taitz from contacting Ostella, her husband, Frank Ostella, Children, Parents, Siblings or any other family member or neighbors, at their residence, or place of business and or school.

vi.)    Costs incurred in this Action including costs associated with legal representation, by Ostella amount to $ 188,300

vii).    Pre-Judgment and Post-Judgment Interest; and

viii).    Other relief deemed by the Court as just and proper.

---

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

21

1

2       Case law supports what Ostella seeks by virtue of the following cases: *See* Baker v. PrivatAir, Inc. Los Angeles County Superior Court BC322198,

3   12/13/05;[43] O'Lee v. Compuware Corp., No. A111774, 2007 Cal. App. Unpub.

4   LEXIS 2691, 2007 WL 963450 (Cal. Ct. App. Apr. 2, 2007);[44]

5   Armstrong v. Shirvell, 596 Fed.Appx. 433 (6th Cir.2015), cert. denied, ___ US

6   ___, 136 S.Ct. 403, 193 L.Ed.2d 315 (2015);[45] Leyshon v. Diehl Controls North

7   America, Inc., 407 Ill.App.3d 1, 349 Ill.Dec. 368, 946 N.E.2d 864, 877 (2010);[46]

8   and Cohen v. Hansen, Case No. 2:12-cv-01401-JCM-PAL (D. Nev. March 1,

9   2016).[47]

10

11

12

13

14   [43] Baker – Result - verdict against first defendant for employment-related defamation totaled $14 million, plus $10 million in punitive damages; verdict against second defendant totaled $10

15   million for defamation, plus $10,000 in punitive damages; verdict against third defendant totaled $2 million for defamation, plus $1,500 in punitive damages; and verdict against fourth defendant

16   totaled $10 million for defamation, plus $2,500 in punitive damages).

[44] O'Lee  - Result - Appellate Court upheld award by Jury to O'Lee for a defamatory statement

17   of Fraud $550,000 and McCarthy $600,000 in compensatory damages and $5 Million each for punitive damages, punitive damages lowered by the trial court to O'Lee for $1.65 Million and to

18   McCarthy $1.8 Million).

[45] Armstrong - Result - (Jury awarded Armstrong $4.5 million in total damages, $750,000 in

19   compensatory damages and $500,000 in exemplary damages for defamation, $1,000,000 in

20   compensatory damages for casting Armstrong in a false light, $1,750,000 in compensatory damages for intentional infliction of emotional distress, $100,000 in compensatory damages and

21   $400,000 in exemplary damages for stalking for publications on the internet and wrongful actions from April 2010 to September 30, 2010.  Sixth Cir. reduced the judgment in Armstrong's

22   favor to $3.5 Million. Deducting $750,000 for Armstrong's False Light Claim as duplicative

23   award).

[46] Leyshon – Result - (defamation claim, the jury awarded the plaintiff $2 million in

24   compensatory damages and $10 million in punitive damages, the jury found the statement was

25   defamation *per se*, Trial Court granted request for remittitur and reduced the punitive award to $6 Million, judgment upheld);

26   [47] Cohen – Result - (jury awarded Cohen, damages totaling $38.3 Million against Northwest defendants for defamation *per se* and false light invasion of privacy amounting to Fraud

27   allegations made in internet website publications).

28

## VII.   **CONCLUSION**

Ostella respectfully requests this Court to grant Ostella's Motion Summary Judgment against Defendant Orly Taitz and enter Judgment against Orly Taitz for the award and damages as the Court deems appropriate.

Respectfully submitted,

Dated:  March 27, 2018

/s/J.B. Lorenzo
Jose B. Lorenzo
Lorenzo Law Firm, P.A.
*Counsel for Plaintiff*

Plaintiff's Motion for Summary Judgment
Lorenzo Law Firm, P.A.

23

## CERTIFICATE OF SERVICE

I, J.B. Lorenzo, hereby certify that a true and correct copy of Plaintiff Lisa

Ostella's, Memorandum of Law in support of Plaintiff, Lisa Ostella's Motion for

Summary Judgment and Damages was served this 27th day of March, 2018,

electronically through the Court's ECF filing system upon the following:

**SCHUMANN ‖ ROSENBERG, LLP**
Kim Schumann, Esquire
Jeffrey Cunningham, Esquire
3100 S. Bristol Street, Suite 400
Costa Mesa, CA 92626
kschumann@srrlawfirm.com
jcunningham@srrlawfirm.com
*Attorney for Defendant Orly Taitz*

**LORENZO LAW FIRM. P.A**


 /s/ J.B. Lorenzo
Jose B. Lorenzo
2040 Delta Way
Tallahassee, FL 32303
admin@lorenzolawfirm.com
*Attorney for Plaintiff*